MATTHEW J. ADLER (SBN 273147)
Matthew.Adler@dbr.com
DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111-4180
Telephone:      415-591-7500
Facsimile:      415-591-7510

JEFFREY S. JACOBSON (*pro hac vice*)
Jeffrey.Jacobson@dbr.com
DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York  10036-2714
Telephone:      212-248-3140
Facsimile:      212-248-3141

Attorneys for Defendant
EPIC GAMES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY DOE, a minor, by and through his Guardian, JANE DOE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EPIC GAMES, INC.,<br><br>Defendant. | Case No. 4:19-cv-3629<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Action Filed:   June 21, 2019<br><br>Hearing Date:  October 1, 2019<br>Time:              2:00 p.m.<br>Courtroom:       1<br><br>*[Declaration of John Farnsworth; [Proposed] Order filed concurrently herewith]*<br><br>Trial Date:     None set |

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

- i -

CASE NO. 4:19-cv-3629

## NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

TO THE COURT AND PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 1, 2019 at 2:00 p.m., or as soon thereafter as this matter may be heard by the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, 4th Floor of the above-entitled court located at 1301 Clay Street, Oakland, CA 94612, Defendant Epic Games, Inc. ("Epic Games"), by and through its counsel of record, will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing all claims in the Complaint of plaintiff "Johnny Doe," a minor, who has filed suit by and through his guardian, "Jane Doe" (together, "Plaintiffs").

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support, the Declaration of John Farnsworth and exhibits thereto filed concurrently herewith, [Proposed] Order, as well as all papers and pleadings on file herein, and such argument as properly may be presented at the hearing.

Dated: August 26, 2019                    DRINKER BIDDLE & REATH LLP


By: */s/  Jeffrey S. Jacobson*
    Jeffrey S. Jacobson (p*ro hac vice*)
    Matthew J. Adler

Attorneys for Defendant
EPIC GAMES, INC.

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................. 1

II.  FACTUAL BACKGROUND ........................................................................... 2

III. ARGUMENT .................................................................................................. 4

    A.   The Disability of Infancy Is a "Shield, Not a Sword." ............................ 4

    B.   Plaintiffs Are Not Entitled to a Declaratory Judgment. ........................... 7

    C.   Plaintiffs Cannot Pursue Claims Under the CLRA. ................................. 8

        1.   Virtual Currency Is Not a "Good" or "Service." ........................... 8

        2.   Johnny Doe Was in No Way "Misled." .......................................... 9

    D.   Epic Games Did Not Breach the Implied Duty of Good Faith. ............. 10

    E.   Epic Games Committed No "Negligent Misrepresentation." ................ 11

    F.   Plaintiffs Do Not Adequately Plead Any Violation by Epic Games of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. ............. 11

        1.   Plaintiffs Allege Nothing "Unlawful." ......................................... 12

        2.   Epic Games Did Not Act "Unfairly." ........................................... 12

        3.   Epic Games Did Not Act "Fraudulently." ..................................... 13

        4.   Plaintiffs Have an Adequate Remedy at Law. .............................. 13

    G.   Epic Games Has Not Been "Unjustly Enriched." ................................. 14

    H.   Plaintiffs' Irrelevant Attacks on *Fortnite* Do Not Change the Result. ................... 15

IV.  CONCLUSION .............................................................................................. 16

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

- iii -

CASE NO. 4:19-cv-3629

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Barber v. U.S. Bank*,
    698 F. App'x 352 (9th Cir. 2017) ..............................................................10

*Berry v. American Express Publishing, Inc.*,
    147 Cal. App.4th 224 (2007).................................................................8, 9

*Burnand v. Irigoyan*,
    30 Cal. 2d 861 (1947) ........................................................................2

*C.M.D. v. Facebook, Inc.*,
    621 F. App'x 488 (9th Cir. 2015) ............................................................7

*Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*,
    2 Cal.4th 342 (1992) ......................................................................10

*Civil Service Emp. Ins. Co. v. Superior Court*,
    22 Cal.3d 362 (1978) ........................................................................9

*Durkee v. Ford Motor Co.*,
    2014 WL 4352184 (N.D. Cal. Sept. 2, 2014) ...............................................14

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
    885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) ...............................................5, 7

*Falk v. Nissan N. Am., Inc.*,
    2018 WL 2234303 (N.D. Cal. May 16, 2018) ...............................................13

*Ferrington v. McAfee, Inc.*,
    No. 10-V-1455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010)...........................9

*Foley v. Interactive Data Corp.*,
    765 P.2d 373 (Cal. 1988) ..................................................................10

*Fonseca v. Goya Foods Inc.*,
    2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ...............................................14

*Grube v. Amazon.com, Inc.*,
    No. 16-CV-126-LM, 2017 WL 3917602 (D.N.H. Sept. 6, 2017)..............................6

*Hastings v. Dollarhide*,
    24 Cal. 195 (1864) ..........................................................................5

*I.B. v. Facebook, Inc.*,
    82 F. Supp. 3d 1115 (N.D. Cal. 2015) ..................................................2, 7

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*I.B. v. Facebook, Inc.*,
   905 F. Supp. 2d 989 (N.D. Cal. 2012) ............................................................... *passim*

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ...............................................................................13

*In re: MacBook Keyboard Litig.*,
   No. 5:18-cv-2813-EJD, 2019 WL 1765817 (N.D. Cal. Apr. 22, 2019)...................10

*MacGreal v. Taylor*,
   167 U.S. 688 (1897) ......................................................................................5

*Madrid v. Perot Sys. Corp.*,
   130 Cal. App. 4th 440 (2005)...........................................................................13

*Mandani v. Volkswagen Grp. of Am., Inc.*,
   2019 WL 652867 (N.D. Cal. Feb. 15, 2019)..............................................13, 15

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ...............................................................10

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ......................................................................................13

*Munning v. Gap, Inc.*,
   238 F. Supp. 3d 1195 (N.D. Cal. 2017) .....................................................13, 15

*Nguyen v. Nissan N. America Inc.*,
   2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) ....................................................14

*Paster v. Putney Student Travel, Inc.*,
   No. CV 99-2062 RSWL, 1999 WL 1074120 (C.D. Cal. June 9, 1999) ...................5

*Philips v. Ford Motor Co.*,
   2015 WL 4111448 (N.D. Cal. July 7, 2015) ......................................................14

*Smith v. Keurig Green Mountain, Inc.*,
   No. 18-cv-6690-HSG, 2019 WL 2716552 (N.D. Cal. June 28, 2019) ...................14

*T.K. v. Adobe Sys., Inc.*,
   No. 17-CV-4595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018).......... *passim*

*T.K. v. Adobe Sys., Inc.*,
   No. 17-CV-4595-LHK, 2018 WL 4003313 (N.D. Cal. Aug. 22, 2018) ....................2

*UMG Recordings, Inc. v. Global Eagle Ent'mt*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015).............................................................11

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT                    - v -                    CASE NO. 4:19-cv-3629

**STATUTES, RULES & REGULATIONS**

28 U.S.C. § 2201 *et seq.*................................................................................................4

Cal. Civ. Code § 1761(a) ...............................................................................................8

Cal. Civ. Code § 1770(a) ...............................................................................................8

Cal. Civ. Code § 1770(a)(5) ..........................................................................................9

Cal. Civ. Code § 1770(a)(14) ........................................................................................9

Cal. Fam. Code § 6700 ..................................................................................................4

Cal. Family Code § 6701(c) .......................................................................................5, 7

Cal. Family Code § 6710 ...........................................................................................5, 6

California's Consumers' Legal Remedies Act.......................................................... *passim*

Fed. R. Civ. P. 12(b)(6)............................................................................................2, 15

Song-Beverly Consumer Warranty Act .......................................................................14

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ...........................................11

**OTHER AUTHORITIES**

https://www.visaprepaidprocessing.com/ content/PRC608/CP608-T00-
    002/_Docs/Docs/Program.Terms.MainContent.pdf.........................................3, 4

James Chang & Farnaz Alemi, *Gaming the System: A Critique of Minors'
    Privilege to Disaffirm Online Contracts*, 2 UC IRVINE L. REV. 627, 651 n.115
    (2012) .............................................................................................................6

Restatement (Third) of Agency § 3.05, cmt. B, illus. 1 (2006) .......................................5

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

- vi -

CASE NO. 4:19-CV-3629

# I.   __INTRODUCTION__

Ostensibly, the Complaint by "Johnny Doe," brought by and through his mother "Jane Doe" (together, "Plaintiffs"), alleges that Defendant Epic Games, Inc. ("Epic Games") would not permit Johnny to "disaffirm" an in-application purchase he made to enhance his experience while playing the video game *Fortnite*. The Complaint, however, does not allege that Johnny Doe actually notified Epic Games of any intention to disaffirm his purchase, or that Epic Games refused such a request from him. The Complaint, in fact, appears to allege nothing more than that Epic Games cannot describe an item as "non-refundable" without violating a California minor's right to disaffirm contracts. The claim fails because neither the California Family Code, nor any other law, precludes Epic Games from describing in-game purchases as "non-refundable."

In a pair of cases from this District, courts have allowed minors to pursue claims under the California Family Code against California-based companies after those companies *affirmatively refused* requests to disaffirm online purchases. In both of those (1) the minor plaintiffs explicitly communicated their intention to disaffirm transactions, and the defendants rebuffed them; and (2) the defendants were California-based and expected California law to apply to the transaction. This case involves neither of those circumstances.

Epic Games is headquartered in Cary, North Carolina, and the End User License Agreement ("EULA") to which all *Fortnite* players must agree before playing specifies that North Carolina law will govern any disputes. *See* Ex. A to Declaration of John Farnsworth (Farnsworth Decl.), at ¶¶ 9, 10. Plaintiffs do not allege that they ever communicated an intent to disaffirm or sought a refund and, just as importantly, the Complaint does not allege that Johnny Doe has ceased playing *Fortnite*. Case law confirms that a minor cannot simultaneously "disaffirm" an online contract while still using the software to which he gained access by accepting the contract.

More fundamentally, California law has never been construed to allow minors to purchase entertainment with their own money and then "disaffirm" their purchases after being entertained. When video games were played mostly in arcades, courts in this State saw no lawsuits from minors contending they could use the California Family Code to reclaim the quarters they spent on Pac-Man. When home gaming systems with cartridges became prevalent, courts saw no cases from

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT                                  - 1 -                                CASE NO. 4:19-CV-3629

1   minors contending the California Family Code let them return older games for a refund when they

2   were ready to move on to newer games.  The adage that "one deals with infants at his peril,"

3   *Burnand v. Irigoyan*, 30 Cal. 2d 861, 866 (1947) (allowing minors to cancel a real estate contract),

4   in fact, has never previously been thought to allow minors to demand refunds for movies after

5   watching them or to return packs of baseball cards after not finding the cards they most desired.

6   This, however, is exactly the result for which Plaintiffs' Complaint argues.

7       Disaffirmation, moreover, is an individual claim not susceptible to class treatment.  In both

8   cases from this District that allowed minor plaintiffs to pursue disaffirmation claims after the

9   defendants denied their disaffirmation requests, the courts denied class certification.  The court in

10  *I.B. v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012) ("*I.B. I*"), dismissed those

11  plaintiffs' claims under California's Consumers' Legal Remedies Act ("CLRA") because the

12  CLRA does not apply to purchases of virtual currency for use in video games.  In a subsequent

13  decision—*I.B. v. Facebook, Inc.*, 82 F. Supp. 3d 1115, 1132 (N.D. Cal. 2015) ("*I.B. II*"), the court

14  refused to allow those plaintiffs to pursue any "restitution" claims on a class basis.  The court in

15  *T.K. v. Adobe Sys., Inc.*, No. 17-CV-4595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018)

16  ("*T.K. I*"), similarly dismissed CLRA claims as well as claims for violation of the implied duty of

17  good faith and fair dealing and for injunctive relief.  *See id.* at *7, *9, *14.  *See also T.K. v. Adobe*

18  *Sys., Inc.*, No. 17-CV-4595-LHK, 2018 WL 4003313 (N.D. Cal. Aug. 22, 2018) ("*T.K. II*")

19  (dismissing injunctive claims from amended complaint).

20      For all these reasons, and as explained further below, the Court should dismiss Plaintiffs'

21  Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

22                    **II.    FACTUAL BACKGROUND**

23      As Plaintiffs' Complaint admits, Epic Games' highly popular video game *Fortnite* is

24  "offered for free and may be downloaded at no cost."  Compl. ¶ 2.  "*Fortnite* is an open-world

25  survival video game in which players collect weapons, tools, and resources…in order to survive

26  and advance in the game."  *Id.* ¶ 10.  Players can play *Fortnite* without making any in-game

27  purchases.  If players choose to make in-game purchases, they can do so only with Epic Games'

28  virtual currency, called "V-Bucks."  *See id.* ¶ 19.  Players can earn V-Bucks from game play and

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT                 - 2 -                 CASE NO. 4:19-cv-3629

therefore need not purchase V-Bucks with real dollars.  *See id.* ¶ 20.  If a player wishes to purchase V-Bucks with currency, he can do so on a one-time basis by providing payment information or else "enter[]…a payment method"—*i.e.*, a credit card or PayPal account information—and store it in his *Fortnite* account.  *Id.* ¶ 26.

According to the Complaint (¶ 29), Johnny Doe "downloaded and installed *Fortnite* in and around 2018."  The Complaint alleges that he "plays" the game—present tense—on "different platforms…, including Sony Playstation 4 and [a] Windows 10 Personal Computer."  *Id.*  It acknowledges that before playing *Fortnite*, a player must accept the *Fortnite* EULA, and if the player is a minor, the EULA clearly states that an adult must accept it.  *See id.* ¶ 30.  The Complaint is silent as to whether it was Johnny Doe or his parent who accepted the *Fortnite* EULA.

The Complaint also is silent as to whether Johnny Doe's parent ever entered payment information into his *Fortnite* account.  The Complaint claims (¶ 35) that Johnny Doe "has used his own money through gift cards received on social occasions including birthdays and such," and it is those alleged "own money" transactions on which the Complaint centers.  The Complaint includes no details about what types of "gift cards" Johnny Doe used to make these purchases, making it impossible for Epic Games to determine how the terms and conditions applicable to his use of gift cards may affect his claims in this matter.  This omission is critical because the terms of the payment method govern such key question as who is deemed to be the "cardholder" and whether the user of the card has the legal status of "agent."  As an illustrative example, the Terms and Conditions governing use of gift cards issued by IBC Bank/ Commerce Bank make clear that the *purchaser* of the gift card is the cardholder, and if the purchaser gifts the card, the giftor is "authorizing such other person to make transactions using the card, and [] will be fully responsible for any and all use of the gift card by such other person."  *See* https://www.visaprepaidprocessing.com/ content/PRC608/CP608-T00-002/_Docs/Docs/Program.Terms.MainContent.pdf.

The Complaint then is vague, at best, regarding what Johnny Doe allegedly purchased from Epic Games using V-Bucks he bought with his "own money."  All the Complaint alleges is that Johnny Doe "has made several in-App purchases that were labeled non-refundable, including for example, Battle Pass or Battle Pass Tiers."  Notably, the Complaint does not say that Johnny Doe

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

- 3 -

CASE NO. 4:19-cv-3629

made any of these specified purchases with his "own money." The Complaint (¶ 13) includes screen shots of advertisements for a "Battle Bundle" and a "Battle Pass" for *Fortnite*'s Season 9, which launched on August 1, 2018. In the lower right-hand corner of both screen shots, the advertisements state that "[t]his purchase is not eligible for refund." *Id.* The Complaint does not say that Johnny Doe saw these particular on-screen descriptions or purchased these exact items.

The Complaint (¶ 35) alleges that Johnny Doe "wanted to cancel" a purchase but does not allege that he ever communicated this "want" to Epic Games. It claims only "[o]n information and belief" that "Epic [Games] does not allow in-App purchases to be refunded, except, on some platforms, Epic [Games] may allow refund of a total of three items throughout the lifetime of the user and only from those purchases made from the last 30 days." *Id.* ¶ 13. This "information and belief" hedge is notable. *Compare* Compl. ¶ 33 ("Plaintiff Johnny Doe wanted to disaffirm the contracts but was not allowed to do so.") *with id.* ¶ 35 ("Plaintiff Johnny Doe wanted to cancel those purchases but was not allowed to do so under Epic [Games'] non-refundable policy.")[1] The clear implication of Plaintiffs' failure to allege an actual attempt to disaffirm is that Plaintiffs never actually sought a refund—not "minutes" after the purchase (*id.* ¶ 14) or at any time afterwards. Just as notably, Plaintiffs allege that Epic Games "denies" that "contracts between [it] and [minors] are voidable," *id.* ¶ 59, but they cite no statement by Epic Games to Plaintiffs or anyone else containing such a "deni[al]."

## III.   ARGUMENT

### A.   The Disability of Infancy Is a "Shield, Not a Sword."

A minor can validly enter into a contract, and then applicable state law may allow the minor to disaffirm that contract. *See, e.g.,* Cal. Fam. Code § 6700. For as long as the California Family Code has allowed minors to disaffirm contracts, however, it has protected *both parties* to the contract, at least to the extent possible. "A court of equity will look at the real transaction, and will

---

[1] No language appears in the Complaint affirmatively expressing Plaintiffs' intent to disaffirm the agreement. Instead the Complaint seeks determination that the agreements "are voidable at the option" of Plaintiffs or other putative class members. *See also* Compl. ¶ 61 ("This claim for declaratory judgment is brought pursuant to 28 U.S.C. § 2201 *et seq.*, seeking a determination by the Court that… (b) the sales contracts between Defendant and the Children of class members, relating to the purchase of Game Currency, ***are voidable*** at the option of the respective class members on behalf of their minor children. . . .") (emphasis added.)

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

do justice to the adult if it can be done without disregarding or impairing the principle that allows an infant, upon arriving at majority, to disaffirm his contracts made during infancy." *MacGreal v. Taylor*, 167 U.S. 688, 700 (1897). "The law intends [the right to disaffirm] simply as a shield to prevent the infant from injustice"; it is not "a sword to be used to the injury of others." *Id. See also Hastings v. Dollarhide*, 24 Cal. 195, 216 (1864) (same); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) (California disaffirmation law cannot "be used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit."); *Paster v. Putney Student Travel, Inc.*, No. CV 99-2062 RSWL, 1999 WL 1074120, at *1 (C.D. Cal. June 9, 1999) ("Plaintiff, however, cannot accept the benefits of a contract and then seek to void it in an attempt to escape the consequences of a clause that do not suit her.").

This principle is why a minor cannot demand a refund on the way out of a movie, or for a toy after he has played with it. Disaffirmation is an equitable remedy. To allow a minor to disaffirm an entertainment purchase after enjoying the entertainment is not fair or equitable.

Unsurprisingly, the sole case allowing disaffirmation of an entertainment purchase is distinguishable. In *I.B. I*, one of the two minor plaintiffs stole his parents' debit card and, without authorization, charged over $1,000 in "Facebook Credits" usable to make purchases within Facebook. *See* 905 F. Supp. 2d at 996. The other minor plaintiff sought and received permission from his mother to charge $20 to his mother's credit card for Facebook Credits, but ultimately spent several hundred dollars without his mother's permission. *See id.* The *I.B.* plaintiffs contended that their transactions *were void* under Cal. Family Code § 6701(c), and not *merely voidable* under Cal. Family Code § 6710, because the minors used effectively stolen funds that therefore were "not in the immediate possession or control of the minor." *Id.* at 999–1000. Here, by contrast, Plaintiffs allege that Johnny Doe used "his own money" for the purchases—gift cards with a Visa or MasterCard logo—and do not claim that he spent any money without permission.

When a parent gives a child access to the parent's credit card and the ability to charge purchases with it, "disaffirmation" of the transaction is not possible. In that circumstance, the minor is acting as the parent's agent with *actual* (and not merely apparent) authority, and the parent is liable for purchases made by the minor. *See* Restatement (Third) of Agency § 3.05, cmt. B, illus.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

- 5 -

CASE NO. 4:19-CV-3629

1 (2006); James Chang & Farnaz Alemi, *Gaming the System: A Critique of Minors' Privilege to Disaffirm Online Contracts*, 2 UC IRVINE L. REV. 627, 651 n.115 (2012) ("When parents authorize minors to use their credit cards, they confer upon the minors the power to create additional obligations to pay between the cardholder—the parent—and the issuing bank …. The cardholder has no right to disaffirm due to [lack of] capacity."); *see also, e.g., Grube v. Amazon.com, Inc.*, No. 16-CV-126-LM, 2017 WL 3917602 (D.N.H. Sept. 6, 2017) (minor's use of a credit card gave defendant sufficient reason to believe that the child acted with at least apparent authority to bind the cardholder).[2]

Plaintiffs admit that one must provide credit or debit payment information in order to make a purchase within *Fortnite*. *See* Compl. ¶ 26. The Complaint does not allege that Johnny Doe used a parent's credit card without permission, and it is silent as to whether he is seeking to disaffirm any purchases he made with his parents' credit accounts. Instead, Plaintiffs use vague wording— "Johnny Doe, a minor, has used his own money through gift cards received on social occasions"— to allege that Johnny used his own funds when making at least some of his in-app purchases from Epic Games. *Id.* ¶ 35. Importantly, for this reason, the Complaint does not contend that Johnny Doe's transactions are void, but only that they are voidable.[3] *See id.* ¶ 59; Prayer ¶ 2(i).

Companies, moreover, are not expected to read minds. Disaffirmation requires communication. After the two minor plaintiffs in *I.B.* charged Facebook purchases without permission, those plaintiffs' parents contacted Facebook and sought refunds, but Facebook did not provide them. *See I.B. I*, 905 F. Supp. 2d at 996 ("Bohannon tried to obtain a refund from Facebook," and "Wright submitted a complaint to Facebook"). Their claims appear to have

---

[2] Neither *T.K.* nor *I.B.* involved minors who used an adult's credit card with permission. In *I.B.*, as discussed above, one of the minor plaintiffs stole a parent's credit card; the other plaintiff exceeded the limited permission his parent gave him to use her credit card. *See I.B. I*, 905 F. Supp. 2d at 996. In *T.K.*, the minor plaintiff used her own debit card to secure access to Adobe's software. *See T.K. I*, 2018 WL 1812200, at *1.

[3] The Complaint alleges that "[a] parent or guardian may disaffirm a contract on behalf of a minor." Compl. ¶ 58. This is not the law. As the *I.B.* court recognized, "[t]he plain meaning of [Cal. Family Code §] 6710 provides that only the minor, acting through a legal representative, may disaffirm his contract." *I.B.*, 905 F. Supp. 2d at 1004 (citation and quotation omitted). Guardians must represent minors in court, but guardians have no "independent right to disaffirm contracts entered into by their children, when not acting in a representative capacity on behalf of the minor." *Id.*

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

- 6 -

CASE NO. 4:19-CV-3629

survived motions to dismiss *only* because they actually sought refunds.  It was not enough that Facebook had stated online that "all sales are final."  *I.B. II*, 82 F. Supp. 3d at 1119.  The minor plaintiff in *T.K.* also requested a refund for two monthly charges that Adobe imposed after the plaintiff's one-year gift subscription to Adobe's cloud computing platform had expired.  Adobe refunded one of the charges, but it did not refund the other until after T.K. had sued.  *See T.K. I*, 2018 WL 1812200 at *1.

The plaintiff in *T.K.* sought to avoid *future* obligations and also a refund of prior charges from times that she had not used Adobe's software.  That she had stopped use of the software was pivotal.  The plaintiffs in *I.B.*, similarly, had stopped using Facebook.  In *C.M.D. v. Facebook, Inc.*, 621 F. App'x 488 (9th Cir. 2015), by contrast, the plaintiffs were continuing to use Facebook after suing to disaffirm their online agreements with the company.  The Ninth Circuit held that "Section 6701(c) of the Family Code is meant to prevent minors from contracting away future rights," not to allow a minor "to apply to his own use that part of the transaction which may bring to him a benefit, and repudiate the other, which may not be to his interest to fulfill."  *Id.* at 489 (citation omitted).  "By continuing to use facebook.com after bringing their action, Plaintiffs manifested an intention not to disaffirm the contract."  *Id.  See also E.K.D. ex rel. Dawes*, 885 F. Supp. 2d at 899 ("California law is in accord with the equitable principle that minors, if they would disaffirm a contract, must disaffirm the entire contract, not just the irksome portions.") (internal quotation and citation omitted).  Here, the Complaint is silent as to whether Johnny Doe is continuing to play *Fortnite*.

## B.   Plaintiffs Are Not Entitled to a Declaratory Judgment.

Plaintiffs lack statutory standing to pursue the first count of the Complaint, for a declaratory judgment.  *See* Compl. ¶¶ 55–61.  They premise their request on Epic Games supposed "deni[al]" that "contracts between [it] and members of the Class are voidable," *id.* ¶ 59, but provide no support for this assertion.  The Complaint seems only to hypothesize that if Johnny Doe really had "changed [his] mind [about an in-app purchase] in a matter of minutes," *id.* ¶ 14, Epic Games would have refused his request for a refund of that purchase.  This is mere conjecture, however, and it is at odds with Plaintiffs' (correct) allegation that Epic Games has a flexible refund policy.  *See id.* ¶ 13.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT                    - 7 -                    CASE NO. 4:19-CV-3629

Plaintiffs are correct that Epic Games has sold certain in-game items accompanied by statements that the purchases are "not eligible for refund." *Id.* They do not allege, however, that Johnny Doe bought these particular items with V-Bucks he purchased with his own money or saw these statements before or after doing so. Plaintiffs also fail to acknowledge that a request for a refund and a minor's request to disaffirm a contract are entirely separate concepts.

*In T.K. I*, the court allowed the plaintiffs' claim for declaratory relief to proceed only because the plaintiff's complaint "show[ed] an apparent dispute between the parties about the legal effect of disaffirmance, insofar as Adobe initially refused to refund all of T.K.'s payments made under the renewal agreement and did so only after T.K. filed this action." *T.K. I*, 2018 WL 1812200, at *13. Here, by contrast, Plaintiffs have not alleged and cannot allege that the parties dispute "the legal effect of disaffirmance" or that Epic Games "refused" any request by Johnny Doe. Plaintiffs, therefore, cannot pursue declaratory relief.

**C.    Plaintiffs Cannot Pursue Claims Under the CLRA.**

    **1.    Virtual Currency Is Not a "Good" or "Service."**

The second count of Plaintiffs' Complaint is a claim under the CLRA. Even if Plaintiffs were not barred by the EULA from asserting claims under non-North Carolina law, this claim fails on its own terms. Cal. Civ. Code § 1770(a) proscribes specific acts or practices "in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." The purchase of virtual currency for use within a video game, however, constitutes neither "goods" nor "services," and therefore cannot form the basis of a claim under the CLRA.

Although virtual in-game currency is relatively new, the bar on bringing CLRA claims for similar transactions is not. In *Berry v. American Express Publishing, Inc.*, 147 Cal. App.4th 224, 227 (2007), the Court of Appeal held that "the extension of credit, such as issuing a credit card, separate and apart from the sale or lease of any specific goods or services, does not fall within the scope of the [CLRA]." "Goods," as defined in Cal. Civ. Code § 1761(a), "means tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods…." The *Berry* court held that "[t]he extension of credit is not a tangible chattel." 147 Cal. App.4th at 229.

1    *Berry* went on to examine the history of the CLRA's enactment and note that "the

2    Legislature unmistakably narrowed the act's scope by limiting liability to transactions involving

3    the actual or contemplated sale or lease of goods or services." *Id.* at 232.  That is why, for example,

4    "the California Supreme Court observed that the CLRA did not apply to an automobile insurance

5    policy, 'because insurance is technically neither a good nor a service within the meaning of the

6    act." *Id., quoting Civil Service Emp. Ins. Co. v. Superior Court*, 22 Cal.3d 362 (1978).

7        *I.B.* applied this same concept to Facebook's in-game "Credits," which is what the plaintiffs

8    in *I.B.* purchased with their parents' credit cards.  The *I.B.* plaintiffs attempted to rely on "authorities

9    applying the CLRA to electronic goods and services," but no prior case had "address[ed] the type

10   of digital currency" at issue in *I.B.*, which also is at issue here.  *I.B. I*, 905 F. Supp. 2d at 1008.  The

11   *I.B.* court held that neither in-game virtual currency nor in-game purchases made with that currency

12   are "goods" and that the CLRA therefore does not apply.  *See id.*, *citing, e.g., Ferrington v. McAfee,*

13   *Inc.*, No. 10-V-1455-LHK, 2010 WL 3910169, at *14 (N.D. Cal. Oct. 5, 2010) ("California law

14   does not support Plaintiffs' contention that software is a tangible good or service for purposes of

15   the CLRA.").

16       This case, which involves the same kind of virtual currency, should yield the same result.

17   Plaintiffs claim that Epic Games' V-Bucks are "goods," allowing them to pursue a CLRA claim.

18   Compl. ¶¶ 64–65.  V-Bucks, like Facebook Credits, are in-game virtual currency, and the

19   authorities above demonstrate that they are not goods under the CLRA.  Accordingly, as in *I.B. I*,

20   905 F. Supp. 2d at 1008, this Court should dismiss Plaintiffs' CLRA claim without leave to amend.

21       **2.     Johnny Doe Was in No Way "Misled."**

22       Plaintiffs' CLRA claim suffers from a second, independently fatal flaw:  Johnny Doe claims

23   neither that he saw any statements about purchases he made being "not eligible for refund" or that,

24   even if he had, these statements caused him damages, as required by Cal. Civ. Code § 1770(a)(5)

25   and (a)(14).  Again, he alleges no actual "denial" by Epic Games of his purported right to disaffirm.

26       In *T.K. I*, 2018 WL 1812200, at *7, the court dismissed the plaintiff's CLRA claim because

27   she "d[id] not allege that she actually read the terms of service or relied on those terms," despite

28   premising her CLRA claim on them.  She also could not claim to have been harmed by the "no

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT                          - 9 -                          CASE NO. 4:19-CV-3629

refund" provision within the terms of service because she sustained her alleged injury "after exercising the very right she alleged that Adobe misled her about—her right to disaffirm." *Id. See also, e.g., Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009) (dismissing CLRA claim against software firm for lack of sufficient damage claims). The same is true here.

### D.   Epic Games Did Not Breach the Implied Duty of Good Faith.

The *T.K. I* court also dismissed that plaintiff's claim for violation of the implied duty of good faith and fair dealing for reasons that resonate in this case: "T.K. has not alleged that any of Adobe's actions frustrated her right to receive the benefits of the contract." *T.K. I*, 2018 WL 1812200, at *9. The implied duty "only covers the express covenants or promises of the contract," and Adobe "did not expressly promise [the plaintiff] the right to disaffirm. *Id.* (internal quotation omitted). *See also Barber v. U.S. Bank*, 698 F. App'x 352, 353 (9th Cir. 2017), *citing Foley v. Interactive Data Corp.*, 765 P.2d 373, 394 (Cal. 1988); *In re: MacBook Keyboard Litig.*, No. 5:18-cv-2813-EJD, 2019 WL 1765817 (N.D. Cal. Apr. 22, 2019) ("The purpose of the implied covenant is 'to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose.'"), *quoting Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal.4th 342, 373 (1992).

Here, as in *T.K.*, Plaintiffs do not claim that Epic Games' EULA or any other statement Plaintiffs characterize as a "contract" said anything about minors' ability to disaffirm contracts under California's or any other state's laws. Plaintiffs' Complaint references the EULA's requirement that an adult must agree to it. *See* Compl. ¶ 75. Plaintiffs then contend that Epic Games fails to "tak[e] steps" to ensure "Parent or Guardian consent" to in-app purchases. *Id.* ¶ 76. Yet Plaintiffs admit that *Fortnite* players must enter a payment method in order to make in-app purchases, *see id.* ¶ 26, and they contend that Johnny Doe was able to make his "own money" purchases—purportedly without parental permission—by entering details of "gift cards" he received and apparently did not disclose to his parents. *Id.* ¶ 35. Plaintiffs do not explain how any of this supposedly violates an "express covenant or promise" of any contract between Plaintiffs and Epic Games. Accordingly, this claim, too, should be dismissed.

**E.      Epic Games Committed No "Negligent Misrepresentation."**

Plaintiffs' fourth count is a claim for "negligent misrepresentation."  *See* Compl. ¶¶ 79–83.  Plaintiffs claim that Epic Games did "not giv[e] notice to [sic] its non-refundable policy at the time of purchases."  *Id.* ¶ 81.  Yet, the Complaint states that Epic Games "may allow refund of a total of three items through the lifetime of the user" if requested within 30 days of a purchase," and identifies which items cannot be refunded within this policy.  *Id.* ¶ 13.  The Complaint does not contend that Epic Games said anything at all about whether it believes this policy implicates a minor's legal rights to disaffirm contracts when they satisfy the conditions necessary to exercise that right.  The *Fortnite* EULA, moreover, says explicitly that although "purchases of Purchased Game Currency and Content are final and not refundable," this policy does not apply "as otherwise required by applicable law."  Farnsworth Decl. Ex. A, at ¶ 18.

Under the California law that Plaintiffs claim (and Epic Games disagrees) applies, "[t]he elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."  *UMG Recordings, Inc. v. Global Eagle Ent'mt*, 117 F. Supp. 3d 1092, 1111 (C.D. Cal. 2015).  Plaintiffs here allege *none* of those elements.  Saying that certain in-game purchases are "non-refundable" does not impact a minor's right to disaffirm a contract.  Plaintiffs thus allege no misrepresentations, no intent to induce purchases based on misrepresentations, no detrimental reliance on any statements Epic Games made, and no damages resulting from a supposed "denial" of Johnny Doe's disaffirmation rights (which "denial," moreover, Plaintiffs do not allege actually happened).  The claim for negligent misrepresentation, therefore, cannot stand.

**F.      Plaintiffs Do Not Adequately Plead Any Violation by Epic Games of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.**

Plaintiffs' fifth count claims that Epic Games violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, under all of that law's "unlawful," "unfair," and "fraudulent" conduct prongs.  *See* Compl. ¶¶ 84–88.  Plaintiffs do not, however, validly allege claims under any of the UCL's prongs.  Additionally, Plaintiffs' UCL claim is equitable in nature

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

- 11 -

CASE NO. 4:19-CV-3629

and seeks only restitution.  Notwithstanding Epic Games' request for dismissal of each claim alleged in the Complaint, the fact that Plaintiffs have pleaded claims that could give rise to an adequate remedy at law, similarly, requires dismissal of Plaintiffs' UCL claim.

### 1. Plaintiffs Allege Nothing "Unlawful."

Plaintiffs contend that Epic Games violated "the minor's right to disaffirm contract, CLRA, breach of good faith and fair dealing, and negligent misrepresentation, as discussed above."  Compl. ¶ 86.  Plaintiffs' CLRA, implied duty, and negligent misrepresentation claims, however, fail to satisfy the elements of those claims.  This leaves only Plaintiffs' assertion that Epic Games acted contrary to Johnny Doe's "right to disaffirm" his contract with Epic Games.  Plaintiffs, however, have not pleaded this claim sufficiently, either, because their Complaint does not claim that Johnny Doe communicated any pre-suit intention to disaffirm or that Epic Games denied him his purported "right" to disaffirm.

### 2. Epic Games Did Not Act "Unfairly."

Plaintiffs claim that Epic Games "engages in unfair practices by actively advertising, marketing, and promoting Apps as 'free' with the intent to induce minors to purchase Game Currency in a manner likely to deceive the public."  Compl. ¶ 87.  Plaintiffs admit, however, that *Fortnite* is indeed free to download.  *See id.* ¶ 2.  Plaintiffs do not identify any statements from Epic Games suggesting that in-app purchases are *not* available, or any other statements that they consider "deceptive."  Nor do Plaintiffs claim, because they cannot claim, that Epic *requires* in-app purchases or that *Fortnite* cannot be played without them.  The only statements by Epic Games that Plaintiffs actually quote are the descriptions of a "Battle Bundle" and Battle Pass" available for purchase at an unspecified time.  *Id.* ¶ 13.  Leaving aside that the Complaint does not contend Johnny Doe bought these items or read these statements, Plaintiffs identify nothing misleading about them.  They accurately state the number of V-Bucks required to purchase them and stated that these particular items fell outside of Epic Games' refund policy.  In no sense, therefore, did Epic Games "mislead" Plaintiffs or anyone about these in-game enhancements.

///

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

- 12 -

CASE NO. 4:19-CV-3629

### 3.   Epic Games Did Not Act "Fraudulently."

Plaintiffs appear to allege that Epic Games acted "fraudulently" by supposedly "omit[ing] giving information on the amounts spent on in-app purchases." Compl. ¶ 88.  Elsewhere, Plaintiffs allege that *Fortnite* players have "no way of knowing and cannot track the money already spent," *id.* ¶ 18, and that Epic Games "does not provide players a history of their purchases in-game or otherwise," *id.* ¶ 25.  Plaintiffs do not, however, explain why a player cannot "track" purchases that, by definition, must be made with a credit/debit card or PayPal.  They also do not explain why they believe Epic Games must provide a "history of their purchases in-game" or else be guilty of a UCL violation.  No such obligation exists and, accordingly, the claim fails.

### 4.   Plaintiffs Have an Adequate Remedy at Law.

Several of Plaintiffs' claims in this case seek equitable relief.  As the U.S. Supreme Court has observed, however, "[i]t is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (citations and internal quotations omitted).  "Consequently '[a] plaintiff seeking equitable relief . . . must establish that there is no adequate remedy at law available.'" *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017) (citation omitted).

California's UCL provides only equitable remedies.  *See Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 452 (2005) (holding that "it is well established that individuals may not recover damages" under the UCL), *quoting Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144, 1150 (2003).  Here, Plaintiffs seek only the equitable remedy of restitution under the UCL. Compl. ¶¶ 84–93.  Numerous courts have barred California consumer protection claims seeking only equitable relief at the motion to dismiss stage "where plaintiffs have alleged other claims presenting an adequate remedy at law." *Munning*, 238 F. Supp. 3d at 1203; *see also Mandani v. Volkswagen Grp. of Am., Inc.,* 2019 WL 652867, at *3 (N.D. Cal. Feb. 15, 2019) (quoting *Munning* and dismissing without leave to amend CLRA and UCL claims seeking only equitable relief where plaintiff had an adequate remedy at law); *Falk v. Nissan N. Am., Inc.*, 2018 WL 2234303, at *9–10 (N.D. Cal. May 16, 2018) (finding plaintiffs were "barred from seeking equitable relief" because

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

- 13 -

CASE NO. 4:19-CV-3629

they had "sufficiently pled claims that provide for damages"); *Nguyen v. Nissan N. America Inc.*, 2017 WL 1330602, at *3–4 (N.D. Cal. Apr. 11, 2017) (dismissing claims seeking equitable relief under the UCL and CLRA "because Plaintiff ha[d] an adequate remedy at law in the form of Plaintiff's claims for damages" under the CLRA, California's Song-Beverly Consumer Warranty Act, and Magnuson-Moss); *Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (dismissing claims for equitable relief under the CLRA and UCL, because plaintiff's other claims presented her with an adequate remedy at law); *Durkee v. Ford Motor Co.*, 2014 WL 4352184, at *3 (N.D. Cal. Sept. 2, 2014) ("Because the UCL provides for only equitable remedies, and plaintiffs have an adequate remedy at law for the alleged Song–Beverly Act violation, plaintiff's UCL claim must be dismissed.").

The same result should follow here. Plaintiffs' Complaint elsewhere seeks legal remedies. (*See, e.g.*, Compl. ¶¶ 70, 78, 83 and Prayer ¶ 4.) The availability of relief under the UCL "is subject to fundamental equitable principles, including inadequacy of the legal remedy," but the Complaint contains no serious factual allegations of inadequacy of a legal remedy. *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015). Nor could Plaintiffs make such an allegation. Instead, the legal remedies Plaintiffs seek, which include damages under the CLRA, Breach of Duty of Good Faith and Fair Dealing, and Negligent Misrepresentation claims, would be adequate to redress the alleged harm were they not all subject to dismissal for failure to state a claim. *See Nguyen*, 2017 WL 1330602, at *4; *Durkee*, 2014 WL 4352184, at *3. The equitable relief claims pleaded under the UCL, therefore, and all of Plaintiffs' other claims that are equitable in nature, should be dismissed.

## G.    Epic Games Has Not Been "Unjustly Enriched."

Plaintiffs' final claim is for "unjust enrichment" and "restitution." These claims fail for the same reason as the other claims set forth above: Johnny Doe has not alleged that he requested to disaffirm his contract with Epic Games or that Epic Games unjustly refused such a request. Further, "unjust enrichment" is not a stand-alone cause of action in California. It is merely another way of stating that the defendant "fail[ed] to make restitution under circumstances where it is equitable to do so." *Smith v. Keurig Green Mountain, Inc.*, No. 18-cv-6690-HSG, 2019 WL 2716552, at *7

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT                    - 14 -                    CASE NO. 4:19-CV-3629

(N.D. Cal. June 28, 2019).  Plaintiffs' inability to claim that Epic Games refused a request by Johnny Doe to disaffirm his contract precludes any finding that Epic Games failed to "make restitution" in response to a valid request for it.  This distinguishes Plaintiffs' case from *T.K. I*, 2018 WL 1812200, at *10, where the court permitted T.K.'s unjust enrichment claim only "based on Adobe's initial refusal to refund all of her payments."

Additionally, as set forth above with regard to Plaintiffs' UCL claim, Plaintiffs have an adequate remedy at law in the form of potential damages. *See Munning*, 238 F. Supp. 3d at 1203; *see also Mandani*, 2019 WL 652867, at *7.  In light of this, Plaintiffs cannot seek the equitable remedy of restitution pleaded.  For these reasons, Plaintiffs' final claim for Unjust Enrichment or Restitution should be dismissed.

## H.   Plaintiffs' Irrelevant Attacks on *Fortnite* Do Not Change the Result.

Separate from Plaintiffs' claims about when and how Johnny Doe supposedly should have been able to disaffirm his in-app purchases, the Complaint asserts a number of baseless attacks against *Fortnite* and video games generally.  Plaintiffs contend, for example, that games are addictive, and they make an inflammatory and wholly inapt comparison to "crack cocaine and heroin."  Compl. ¶ 11; *see also id.* ¶ 2.  Plaintiffs refer to Federal Trade Commission lawsuits against Apple, Amazon, and Google, pursuant to which those companies agreed to refund money for "unauthorized" purchases made with parents' credit cards, which, by admission, Johnny Doe's purchases were not. *Id.* ¶ 36.  Plaintiffs undoubtedly littered the Complaint with these allegations in order to portray Epic Games in a negative light.  These should not distract, however, from the central and fatal infirmity of Plaintiffs' claims:  Because Plaintiffs do not and cannot claim that Epic Games refused a valid request by Johnny Doe to disaffirm any contract he made with the company, the Court should dismiss all of Plaintiff's claims pursuant to Rule 12(b)(6).

///

///

///

///

///

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

- 15 -

CASE NO. 4:19-CV-3629

# IV.   CONCLUSION

For the foregoing reasons, Epic Games respectfully requests that the Court dismiss each of Plaintiffs' claims alleged in the Complaint.

Dated:  August 26, 2019

DRINKER BIDDLE & REATH LLP


By: */s/ Jeffrey S. Jacobson*
Matthew J. Adler
Jeffrey S. Jacobson (*pro hac vice*)

Attorneys for Defendant
EPIC GAMES, INC.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

- 16 -

CASE NO. 4:19-cv-3629