MATTHEW J. ADLER (SBN 273147)
Matthew.Adler@dbr.com
DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111-4180
Telephone:     415-591-7500
Facsimile:     415-591-7510

JEFFREY S. JACOBSON (*pro hac vice*)
Jeffrey.Jacobson@dbr.com
DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
Telephone:     212-248-3140
Facsimile:     212-248-3141

Attorneys for Defendant
EPIC GAMES, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY DOE, a minor, by and through his Guardian, JANE DOE, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>EPIC GAMES, INC., a North Carolina corporation,<br><br>    Defendant. | Case No. 4:19-cv-3629<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**DEFENDANT EPIC GAMES INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Action Filed:  June 21, 2019<br><br>Hearing Date:  October 1, 2019<br>Time:                2:00 p.m.<br>Courtroom:        1<br><br>*[Declaration of John Farnsworth; [Proposed] Order filed concurrently herewith]*<br><br>Trial Date:   None set |

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE TRANSFER

CASE NO. 4:19cv3629

## NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE TRANSFER

TO THE COURT AND PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 1, 2019 at 2:00 p.m., or as soon thereafter as this matter may be heard by the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, 4th Floor of the above-entitled court located at 1301 Clay Street, Oakland, CA 94612, Defendant Epic Games, Inc. ("Epic Games"), by and through its counsel of record, will and hereby does move this Court for an order to compel plaintiff "Johnny Doe," a minor, who has filed suit by and through his guardian, "Jane Doe" (together, "Plaintiffs"), to arbitrate their dispute with Epic Games pursuant to the End User License Agreement ("EULA") in effect between Plaintiffs and Epic Games. The EULA was affirmatively accepted on June 7, 2019 by a person signed into Johnny Doe's *Fortnite* account. Epic Games afforded Plaintiffs a 30-day opportunity to opt out of the requirement to arbitrate disputes, but Plaintiffs did not exercise that opportunity. The contract therefore requires Plaintiffs to arbitrate their claims. Alternatively, Epic Games seeks to dismiss the action for improper venue pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1406(a), or transfer of this matter to the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404(a).

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support, the Declaration of John Farnsworth and exhibits thereto filed concurrently herewith, the [Proposed] Order, as well as all papers and pleadings on file herein, and such argument as properly may be presented at the hearing.

Dated: August 26, 2019                    DRINKER BIDDLE & REATH LLP


By: */s/ Jeffrey S. Jacobson*
    Jeffrey S. Jacobson (p*ro hac vice*)
    Matthew J. Adler

Attorneys for Defendant
EPIC GAMES, INC.

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE TRANSFER

- i -                    CASE NO. 4:19CV3629

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 3

I.      Epic Games and Fortnite. ....................................................................................... 3

II.     Plaintiff's Agreement to the Fortnite EULAs. ....................................................... 3

ARGUMENT ...................................................................................................................... 7

I.      The Court Should Compel Arbitration of the Complaint. ....................................... 7

        A.      The Doe Account's Acceptance of the Amended EULA is Binding. .......... 7

        B.      This Dispute Falls Squarely Within The Scope Of The Agreement. .......... 9

II.     Alternatively, This Case Should Be Dismissed Or Transferred. ........................... 9

        A.      Dismissal Or Transfer To The Eastern District Of North Carolina Is
                Appropriate Based on Improper Venue Under 28 U.S.C. § 1391(b) and 28
                U.S.C. § 1406(a). ....................................................................................... 10

                1.      Venue Does Not Lie Here Under § 1391(b)(1) Because Epic Games
                        Does Not Reside in the Northern District of California. ................. 10

                2.      Venue Does Not Lie under § 1391(b)(2) Because No Events Giving
                        Rise to Plaintiffs' Claims Occurred in This District. .................... 12

                3.      Section 1391(b)(3) Does Not Apply Because the Action May Be
                        Brought in the Eastern District of North Carolina. ...................... 12

                4.      This Action Must Be Dismissed or Transferred. ........................... 13

        B.      The Binding Forum Selection Clause in all Fortnite End User License
                Agreements Requires All Disputes to be Heard in North Carolina. ........... 13

        C.      Alternatively, A Traditional § 1404(a) Analysis Equally Favors Transfer. .......... 15

                1.      Convenience to the Parties and Witnesses, and the Location of
                        Relevant Evidence, Tip In Favor of North Carolina. .................... 17

                2.      Transfer of the Action to the Eastern District of North Carolina Will
                        Save the Parties and the Court Time and Expense. ....................... 18

                3.      The Parties' Respective Contacts Weigh in Favor of Transfer. ........ 18

                4.      Plaintiff's Choice of Forum Should Be Given Little Weight In This
                        Class Action Suit. ......................................................................... 18

CONCLUSION ................................................................................................................. 19

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE TRANSFER

- ii -

CASE NO. 4:19cv3629

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ambriz v. Coca Cola Co.*,
No. 13-cv-03539-JST, 2014 WL 296159 (N.D. Cal. Jan 27, 2014) ........................................19

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333. (2010) ........................................................................................................................8

*AT&T Tech., Inc. v. Comm. Workers of America*,
475 U.S. 643 (1986) ........................................................................................................................9

*Atlantic Marine Constr. Co. v. U.S. District Court for Western District of Texas*,
134 S. Ct. 568 (2013) ......................................................................................................2, 13, 14, 15

*Billing v. CSA-Credit Sols. of Am.*,
No. 10-cv-0108 BEN (NLS), 2010 WL 2542275 (S.D. Cal. June 21, 2010) ...........................19

*The Bremen v. Zapata Off-Shore Co.*,
401 U.S. 1 (1972) ..........................................................................................................................14

*Bristol Myers Squibb Co. v. Superior Court of Cal.*,
137 S. Ct. 1773 (2017) ..................................................................................................................12

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ......................................................................................................................11

*Burns v. Gerber Prod. Co.*,
922 F. Supp. 2d 1168 (E.D. Wash. 2013) ....................................................................................18

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ........................................................................................................8

*Cohn v. Oppenheimerfunds, Inc.*,
No. 09cv1656-WQH-BLM, 2009 WL 3818365 (S.D. Cal. Nov. 12, 2009) ..............................18

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) ......................................................................................................11

*Dahdoul Textiles, Inc. v. Zinatex Imports, Inc.*,
No. 2:15-cv-4011-ODW(ASx), 2015 WL 5050514 (C.D. Cal. Aug. 25, 2015) ........................18

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ......................................................................................................10, 11, 12

*Daugherty v. Experian Info. Solutions, Inc.*,
847 F. Supp. 2d 1189 (N.D. Cal. 2012) ..........................................................................................8

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ........................................................................................................................8

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,           - iii -                    CASE NO. 4:19cv3629
OR IN THE ALTERNATIVE TRANSFER

*Dupler v. Orbitz, LLC,*
    No. CV182303RGKGSJX, 2018 WL 6038309 (C.D. Cal. July 5, 2018).................................9

*E. & J. Gallo Winery v. Andina Licores S.A.,*
    446 F.3d 984 (9th Cir. 2006)..............................................................................................14

*eBay Inc. v. Digital Point Sols., Inc.,*
    608 F. Supp. 2d 1156 (N.D. Cal. 2009) .............................................................................10

*F.T.C. v. Wright,*
    No. 2:13-CV-2215-HRH, 2014 WL 1385111 (D. Ariz. Apr. 9, 2014)................................18

*Fireman's Fund Ins. Co. v. M.V. DSR Atl.,*
    131 F.3d 1336 (9th Cir. 1997), *as amended* (Mar. 10, 1998) ...........................................14

*Hanson v. TMX Finance, LLC,*
    No. 218CV00616RFBCWH, 2019 WL 1261100 (D. Nev. Mar. 19, 2019) .............................6

*Hatfield v. Halifax PLC,*
    564 F.3d 1177 (9th Cir. 2009)............................................................................................15

*Jang v. Boston Sci. Scimed, Inc.,*
    No. CV 10-3911 ODW, 2010 WL 11463889 (C.D. Cal. Aug. 9, 2010) ...............................17

*Jones v. GNC Franchising, Inc.,*
    211 F.3d 495 (9th Cir. 2000)........................................................................................16, 17

*K&H Mfg. Co. v. Strong Indus., Inc.,*
    No. 07-01636-PHX-DGC, 2008 WL 65606 (D. Ariz. Jan. 4, 2008) .....................................14

*Krohm v. Epic Games, Inc.*
    5:19-cv-00173 (N.D. Ill.), Dkt. No. 13 (transfer order dated Apr. 30, 2019) .................3, 16, 19

*L.A. Printex Indus., Inc. v. Le Chateau, Inc.,*
    No. CV 10-4264 ODW, 2011 WL 2462025 (C.D. Cal. June 20, 2011) ................................17

*Lentini v. Kelly Servs. Inc.,*
    No. C17-3911 WHA, 2017 WL 4354910 (N.D. Cal. Oct. 2, 2017) .......................................14

*Macias v. Excel Bldg. Servs., LLC,*
    767 F. Supp. 2d 1002 (N.D. Cal. 2011) .................................................................................9

*McKee v. Audible, Inc.,*
    No. CV 17- 1941-GW (Ex), 2017 WL 4685039.................................................................7, 8, 9

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ..................................................................................................................8

*Murphy v. Schneider Nat'l, Inc.,*
    362 F.3d 1133 (9th Cir. 2004)..............................................................................................14

*Nedlloyd Lines B.V. v. Superior Court,*
    3 Cal.4th 459 (1992) ...........................................................................................................15

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,          - iv -                CASE NO. 4:19cv3629
OR IN THE ALTERNATIVE TRANSFER

*Newthink LLC v. Lenovo (U.S.) Inc.*,
  No. 2:12-cv-5443-ODW(JCx), 2012 WL 6062084 (C.D. Cal. Dec. 4, 2012) ........................17

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014)............................................................................................7, 8

*Ostroff v. Alterra Healthcare Corp.*,
  433 F. Supp. 2d 538 (E.D. Pa. 2006) ......................................................................................9

*Parson v. Oasis Legal Fin., LLC*,
  214 N.C. App. 125 (2011)................................................................................................14, 15

*Perkins v. CCH Computax, Inc.*,
  333 N.C. 140 (1992) ...............................................................................................................14

*Piedmont Label Co. v. Sun Garden Packing Co.*,
  598 F.2d 491 (9th Cir. 1979)..................................................................................................10

*R.A. v. Epic Games, Inc.*,
  Case No. 2:19-cv-014488 (C.D. Cal.), Dkt. No. 39 (transfer order dated July
  31, 2019) ...................................................................................................................... *passim*

*R.A. v. Epic Games, Inc.*,
  Case No. 2:19-cv-014488-GW-E (C.D. Cal., Dkt. No. 39) ....................................................16

*Rio Properties, Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002).................................................................................................11

*Schlessinger v. Holland America, N.V.*,
  120 Cal. App. 4th 552 (2004)..................................................................................................15

*Shearson/Am. Express, Inc. v. McMahon*,
  482 U.S. 220 (1987) ..................................................................................................................8

*Shute v. Carnival Cruise Lines*,
  897 F.2d 377 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991)............................11

*Smith, Valentino & Smith, Inc. v. Superior Court*,
  17 Cal. 3d 491 (1976) ..............................................................................................................15

*Swift v. Zynga Game Network, Inc.*,
  805 F.Supp. 2d 904 (N.D. Cal. 2011) .......................................................................................7

*Trudeau v. Google LLC*,
  349 F. Supp. 3d 869 (N.D. Cal. 2018) ......................................................................................7

*U.S. Bank, N.A. v. PHL Variable Ins. Co.*,
  No. 2:11-cv-9517-ODW(RZx), 2012 WL 3848630 (C.D. Cal. Sept. 4, 2012)........................16

*United Tactical Sys. LLC v. Real Action Paintball, Inc.*,
  108 F. Supp. 3d 733 (N.D. Cal. 2015) ....................................................................................12

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)..................................................................................................................16

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,         - v -                    CASE NO. 4:19cv3629
OR IN THE ALTERNATIVE TRANSFER

*Wash. Mut. Bank, FA v. Superior Court*,
   24 Cal. 4th 906 (Cal. 2001) ...........................................................................................15

*Weber v. Amazon.com, Inc.*,
   No. CV 17-8868-GW(Ex), 2018 WL 6016975 (C.D. Cal. June 4, 2018) ...........................7, 8

**STATUTES, RULES & REGULATIONS**

9 U.S.C. § 4 ................................................................................................................................8

28 U.S.C. § 1391 ......................................................................................................................19

28 U.S.C. § 1391(b) ...........................................................................................................2, 9, 10

28 U.S.C. § 1391(b)(1) ........................................................................................................10, 12

28 U.S.C. § 1391(b)(2) ..............................................................................................................12

28 U.S.C. § 1391(b)(3) ..............................................................................................................12

28 U.S.C. § 1391(c)(2) ..............................................................................................................10

28 U.S.C. §1391(d) ...................................................................................................................10

28 U.S.C. § 1404(a) .............................................................................................................*passim*

28 U.S.C. § 1406(a) ............................................................................................................10, 13

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE TRANSFER

- vi -

CASE NO. 4:19cv3629

## INTRODUCTION

This case does not belong in a California courtroom.  It belongs in arbitration, as Plaintiffs agreed as a condition of playing a video game offered by Defendant Epic Games, Inc. ("Epic Games").  Alternatively, it belongs in the Eastern District of North Carolina, both pursuant to Plaintiffs' agreement to a venue provision and to the traditional analysis under 28 U.S.C. § 1404(a).

Plaintiffs' suit arises from in-game purchases that "Johnny Doe" allegedly made while playing Epic Games' highly popular video game *Fortnite*.  To play *Fortnite*, Plaintiffs had to download the *Fortnite* software, create a *Fortnite* account, and affirmatively agree to the *Fortnite* EULA.  Epic's records reflect that a *Fortnite* account was created in Johnny Doe's name on or about March 4, 2018, and that the account's creator accepted the then-effective EULA by checking an "I agree" box and then taking the second step of click an "Accept" button. *See* Declaration of John Farnsworth ("Farnsworth Decl.," attached as Exhibit 1) ¶¶ 17 & Ex. A.  The EULA in effect in March 2018—along with all previous and subsequent versions of the *Fortnite* EULA since the game's launch in the summer of 2017—requires all litigated disputes to be heard in North Carolina and be governed by North Carolina law.  *Id.* ¶ 9 & Exs. A & B.

In March 2019, Epic issued an amended EULA.  *See* Farnsworth Decl. ¶¶ 12-14 & Ex. B. Near the beginning of the new EULA, in boldfaced, capitalized type, Epic Games advised players that "[t]his Agreement contains a binding, individual arbitration and class action waiver provision" that requires all persons subject to it "to resolve disputes in binding, individual arbitration and give up the right to go to court individually or as part of a class action." This prominent notice at the outset of the EULA also advised players that they "have a time-limited right to opt out of this waiver," and the EULA included straightforward instructions on how to do so in a paragraph labeled "Your 30-Day Right to Opt Out."  *Id.* ¶¶ 13-14 & Ex. B at p. 1.

In the morning of June 7, 2019, a person who was logged onto Johnny Doe's *Fortnite* account, from the same Internet Protocol ("IP") address that had been used to create the account in March 2018, affirmatively accepted Epic Games' amended EULA, again by checking an "I agree" box and then selecting an "accept" button.  The EULA provided that "to enter into [it]" a person "must be an adult of the legal age of majority" and that if the player is a minor, "your parent or

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE TRANSFER                    - 1 -                    CASE NO. 4:19cv3629

1    legal guardian must consent to this Agreement."  Farnsworth Decl. ¶¶ 13-14, 20 & Ex. B at p. 1.

2    Once the Doe Account's user accepted the EULA on June 7, 2019, Plaintiffs had 30 days to opt out

3    of the requirement to arbitrate disputes. That 30-day period lapsed on July 7, 2019, without

4    Plaintiffs having exercised the opt-out right in the manner set forth in the EULA.[1]  *See id.* ¶ 22.

5    Accordingly, Plaintiffs are bound to arbitrate this dispute.

6        In the alternative, should the Court elect not to compel arbitration, this case should be

7    transferred to the Eastern District of North Carolina, for three reasons:

8        *First*, venue is not proper in this Court under 28 U.S.C. § 1391(b).  Plaintiffs allege nothing

9    about their residency beyond that they reside "in California."  Compl. ¶ 4.  Plaintiffs base their

10   decision to venue the case in the Northern District on Epic Games purportedly having a "principal

11   place of business located in Larkspur, California."  *Id.* ¶ 7.  That claim, however, is false.  Epic

12   Games does have a roughly 50-employee facility in Larkspur, but none of those employees is a

13   decision-maker or potential fact witness with respect to any of Plaintiffs' claims in this matter, and

14   Larkspur cannot reasonably be considered a "principal place" of Epic Games' business.  Farnsworth

15   Decl., ¶¶ 2-7.  Plaintiffs' Complaint thus has not established either general or specific jurisdiction

16   over Epic Games in this District.

17       *Second*, Plaintiffs' allegations in this case concern purchases Johnny Doe allegedly made

18   while playing *Fortnite*.  The EULA that Plaintiffs accepted in March 2018 requires all disputes

19   between Epic Games and *Fortnite* players to be heard in the Eastern District of North Carolina and

20   decided under North Carolina law.  *See* Farnsworth Decl. ¶ 9 & Ex. 1.  Under the analysis required

21   by *Atlantic Marine Constr. Co. v. U.S. District Court for Western District of Texas,* 134 S. Ct. 568,

22   575-76 (2013), this venue agreement is enforceable and compels transfer.

23       *Third,* even if Plaintiffs attempt to "disaffirm" the EULA, and the Court thereby looks only

24   at the "traditional" transfer factors under 28 U.S.C. § 1404(a) rather than the EULA's venue

25

26   ───────────────
     [1] Plaintiff has not disaffirmed the EULA entered into with Epic Games. The Complaint alleges
27   Johnny Doe "wanted to disaffirm the contract" (Complaint ¶¶ 33, 35), but (1) it is not clear whether
     this allegation refers to the EULA or to one or more individual in-game purchases, and (2) Plaintiffs
28   do not allege the requisite next step, namely, that he communicated any disaffirmation. Indeed,
     Plaintiff's Complaint merely seeks the right to void contracts *at his option*.  *See id.* ¶ 61.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,           - 2 -          CASE NO. 4:19CV3629
OR IN THE ALTERNATIVE TRANSFER

provision, the balancing test points to the Eastern District of North Carolina as the proper venue for this case. As Plaintiffs' Complaint (Dkt. No. 1 ¶ 5) admits, Epic Games' headquarters is in Cary, North Carolina. All of the relevant policy decisions, including those related to its refund policies, were made at or near that headquarters, and all of the relevant Epic Games witnesses are residents of North Carolina. *See* Farnsworth Decl. ¶¶ 2-6.

Notably, this case is the third class action filed against Epic Games in recent months. Both other courts transferred the cases to North Carolina. *See Krohm v. Epic Games, Inc.* 5:19-cv-00173 (N.D. Ill.), Dkt. No. 13 (transfer order dated Apr. 30, 2019); *R.A. v. Epic Games, Inc.*, Case No. 2:19-cv-014488 (C.D. Cal.), Dkt. No. 39 (transfer order dated July 31, 2019). The arbitration agreement was not yet at issue in *Krohm*, and the *R.A.* court transferred the case even after the minor plaintiff in that case purported to disaffirm the *Fortnite* EULAs, finding the § 1404(a) balancing test warranted transfer even apart from the EULAs' venue provisions. *See id*.

## FACTUAL BACKGROUND

### I.   Epic Games and *Fortnite*.

Epic Games, based in Cary, North Carolina (*see* Compl. ¶ 5), is the creator of *Fortnite*, "an open-world survival video game in which players collect weapons, tools, and resources…in order to survive and advance in the game. *Id*. ¶ 10. Players can play *Fortnite* without making any in-game purchases. If players choose to make in-game purchases, they do so with Epic Games' virtual currency, called "V-Bucks," which players can earn through game play and/or purchase with money. *Id*. ¶¶ 19-20. Players who wish to purchase V-Bucks with money can, but need not, save a method of payment in their accounts, rather than having to enter the payment method manually for each purchase. *See id*. ¶ 26.

According to the Complaint, Johnny Doe "downloaded and installed *Fortnite* in and around 2018." Compl. ¶ 29. Epic Games' records show that a *Fortnite* account was created in his name on March 4, 2018. *See* Farnsworth Decl. ¶ 17.

### II.   Plaintiff's Agreement to the *Fortnite* EULAs.

Anyone who wants to play *Fortnite*, in any mode and on any platform, first must agree to the *Fortnite* EULA. *See* Farnsworth Decl. ¶¶ 9-14. The EULA, which explains a player's rights

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,        - 3 -        CASE NO. 4:19CV3629
OR IN THE ALTERNATIVE TRANSFER

and obligations related to the gaming experience, is a standard "clickwrap" agreement, which players must affirmatively accept by completing a two-step process:  Players first must click a box that reads, "I have read and agree with the End User License Agreement."  Next, players must confirm again by clicking an "Accept" button.  *Id.* ¶¶ 13-14.

From the inception of the game, every version of its EULA, including the version to which the creator of Johnny Doe's *Fortnite* account agreed on March 4, 2018, has required disputes to be heard in North Carolina, where Epic Games is based, and governed by North Carolina law.  *See* Farnsworth Decl. ¶ 9 & Ex. A ¶ 11.  The EULA, then as now, stated:

> **Amendments of this Agreement**
>
> **Epic may issue an amended Agreement, Terms of Service, or Privacy Policy at any time in its discretion by posting the amended Agreement, Terms of Service, or Privacy Policy on its website or by providing you with digital access to amended versions of any of these documents when you next access the Software. If any amendment to this Agreement, the Terms of Service, or Privacy Policy is not acceptable to you, you may terminate this Agreement and must stop using the Software. Your continued use of the Software will demonstrate your acceptance of the amended Agreement and Terms of Service as well as your acknowledgement that you have read the amended Privacy Policy.** [*Id.* Ex. A § 14.]

Epic Games' records reflect that Plaintiffs set up two different payment profiles for in-game purchases in Johnny Doe's account.  One used a PayPal account with Johnny Doe's email address that charged a credit card belonging to Jane Doe.  The other used a Visa card belonging to Jane Doe.  *See* Farnsworth Decl. ¶ 19.

Epic Games amended its EULA in March 2019.  When a user of Johnny Doe's *Fortnite* account accessed the account on June 7, 2019, Epic Games displayed the new EULA on-screen and required affirmative acceptance by an adult before the account could be used to continue playing *Fortnite*.  *See* Farnsworth Decl. ¶¶ 13-14, 20.  The Doe Account user accepted the new EULA by first checking the box labeled "I have read and agree with the End User License Agreement," and then clicking the button labeled "Accept."  *Id.*, ¶¶ 14, 20.

One of the significant changes in the March 2019 EULA was a requirement to arbitrate disputes.  The new EULA called out this amendment in boldfaced, all capitalized type at its outset:

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE TRANSFER

- 4 -

CASE NO. 4:19cv3629

**THIS AGREEMENT CONTAINS A BINDING, INDIVIDUAL ARBITRATION AND CLASS-ACTION WAIVER PROVISION. IF YOU ACCEPT THIS AGREEMENT, YOU AND EPIC AGREE TO RESOLVE DISPUTES IN BINDING, INDIVIDUAL ARBITRATION AND GIVE UP THE RIGHT TO GO TO COURT INDIVIDUALLY OR AS PART OF A CLASS ACTION, AND EPIC AGREES TO PAY YOUR ARBITRATION COSTS FOR ALL DISPUTES OF UP TO $10,000 THAT ARE MADE IN GOOD FAITH (SEE SECTION 12). YOU HAVE A TIME-LIMITED RIGHT TO OPT OUT OF THIS WAIVER.**

Farnsworth Decl. ¶¶ 12-13 & Ex. B.

The EULA's arbitration provisions require "Disputes" between Epic and players to "be settled by binding individual arbitration conducted by the Judicial Arbitration Mediation Services, Inc. ('JAMS') subject to the U.S. Federal Arbitration Act and federal arbitration law and according to the JAMS Streamlined Arbitration Rules and Procedures effective July 1, 2014 (the 'JAMS Rules') as modified by this agreement." Farnsworth Decl., ¶ 21 & Ex. B § 12.3. The EULA defines Disputes" broadly to include "any dispute, claim, or controversy…between You and Epic that relates to your use or attempted use of Epic's products or services and Epic's products and services generally, including without limitation the validity, enforceability, or scope of this Binding Individual Arbitration section." It further specifies that "You and Epic agree to arbitrate all Disputes regardless of whether the Dispute is based in contract, statute, regulation, ordinance, tort (including fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory." *Id.*, Ex. B, § 12.3.1. "[W]hether a dispute is subject to arbitration under this Agreement will be determined by the arbitrator rather than a court." *Id.*

The EULA provides that arbitrations must be conducted individually, not on a class basis, and that those who accept the EULA "agree to only bring Disputes in an individual capacity and shall not seek to bring, join, or participate in any class or representative action, collective or class-wide arbitration, or any other action where another individual or entity acts in a representative capacity." *Id.*

Under the header "**Your 30-Day Right to Opt Out**," the EULA advised players that "[y]ou have the right to opt out of and not be bound by the arbitration and class action waiver provisions set forth in this Agreement." Farnsworth Decl., Ex. B, § 12.6. It instructed players who wished to

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE TRANSFER                    - 5 -                    CASE NO. 4:19CV3629

exercise this right to send written notice to Epic Games at a specified address and stated, again in bold-faced type, that "**[t]o be effective, this notice must be postmarked or deposited within 30 days of the date on which you first accepted this Agreement unless a longer period is required by applicable law; otherwise, you will be bound to arbitrate disputes in accordance with this section.**" *Id.*

Plaintiffs' right to opt out expired 30 days after the Doe Account's acceptance of the new EULA on June 7, 2019, and they did not exercise that right in the specified manner within this time period. *See id.* ¶ 22. Their filing of this lawsuit on June 21, 2019, did not follow the EULA's opt-out requirements and therefore did not constitute an effective opt-out. *See Hanson v. TMX Finance, LLC*, No. 218CV00616RFBCWH, 2019 WL 1261100, at *3 (D. Nev. Mar. 19, 2019) (compelling arbitration because a Plaintiff's filing of a complaint during the arbitration clause's sixty-day opt out period did not satisfy "the plain terms of the opt-out provision of the agreement [which] required Plaintiff to send a writing containing certain information to Defendant at a certain address").

The EULA to which Plaintiffs agreed in March 2018, and the current EULA to which they agreed in June 2019, both provide that North Carolina law will apply to any court-litigated disputes. *See* Farnsworth Decl. ¶ 9, Ex. A § 11, Ex. B § 11. The amended EULA, like the original EULA, also requires players to "submit to the exclusive jurisdiction of the Superior Court of Wake County, North Carolina, or, if federal court jurisdiction exists, the United States District Court for the Eastern District of North Carolina." *Id.*, Ex. A § 11, Ex. B § 11. The amended EULA differs only in that this venue provision applies to "any Disputes deemed not subject to binding individual arbitration." *Id.* For arbitrable disputes, the EULA provides that "[i]f an in-person hearing is required, the hearing will take place either in Wake County, North Carolina, or where You reside; **you choose**." *Id.*, Ex. B § 12.3.2.

Plaintiffs' Complaint (¶ 29) states that "Johnny Doe downloaded and installed *Fortnite*," but contains no allegations about who accepted the EULA. The Complaint ostensibly concerns his desire to "disaffirm" one or more in game purchases he says he made without his parents' knowledge or permission using a debit card he received as a gift. *See id.* ¶¶ 33, 35. Plaintiffs,

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE TRANSFER

- 6 -

CASE NO. 4:19CV3629

1  however, do not allege that Johnny Doe wishes to disaffirm either the March 2018 or the June 2019

2  EULA, that he *can* do so, or that he ever communicated to Epic Games any intention to do so.

3  **ARGUMENT**

4  **I.    The Court Should Compel Arbitration of the Complaint.**

5      **A.    The Doe Account's Acceptance of the Amended EULA is Binding.**

6      Epic Games' *Fortnite* EULA is a standard "clickwrap" agreement that requires players to

7  "click a button explicitly agreeing to the terms of the contract."  *See, e.g., Nguyen v. Barnes &*

8  *Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014); *see also McKee v. Audible, Inc.*, No. CV 17-

9  1941-GW (Ex), 2017 WL 4685039, at *6 (collecting cases holding that such agreements are binding

10  "even if the user does not actually read the terms of services").

11      There can be no dispute that Epic Games provided clear notice of the amended EULA.  A

12  pop-up box displayed the new EULA on players' devices when they accessed their *Fortnite*

13  accounts after Epic made the amendments, and Epic required players to check a box that stated "I

14  have read and agree with the End User License Agreement," and then click an "Accept" button.

15  Farnsworth Decl. ¶¶ 13-14.  The amended EULA also prominently called out the new inclusion of

16  an arbitration requirement and players' time-limited right to opt out of it.  *See id.*; *see also Swift v.*

17  *Zynga Game Network, Inc.,* 805 F.Supp. 2d 904, 912 (N.D. Cal. 2011) (finding clickwrap

18  agreement enforceable where presentation provided user with access to the terms of service and

19  required user to affirmatively accept the terms, even where the terms were not presented on the

20  same page as the acceptance button).

21      Epic Games gave Plaintiffs, like all *Fortnite* players, a 30-day right to opt out of the arbitration

22  requirement.  They did not exercise this option.  *See, e.g., Trudeau v. Google LLC*, 349 F. Supp. 3d

23  869, 876 (N.D. Cal. 2018) (compelling arbitration where plaintiff "did not follow the arbitration opt-

24  out procedures" of amended terms of service); *see also id.* at 881 (Google "provided ample notice to

25  [users], required them to accept or decline, and gave them a valid opportunity to opt out.").

26      As the court held in *Weber v. Amazon.com, Inc.*, No. CV 17-8868-GW(Ex), 2018 WL

27  6016975, at *7-*8 (C.D. Cal. June 4, 2018), the key question is whether Epic Games and Plaintiff

28  mutually assented to Epic Games' amended EULA.  Epic Games' method of promulgating the new

1   EULA leaves no room for arguments about lack of constructive notice or procedural

2   unconscionability.  "Reasonable notice in this context requires that the consumer had either actual

3   or constructive notice of the terms of service; constructive notice occurs when the consumer has

4   inquiry notice of the terms of service, like a hyperlinked alert, and takes an affirmative action to

5   demonstrate assent to them.  *Id.* at *7, *citing Nguyen*, 763 F.3d at 1176-79.  Here, Epic Games

6   ensured that each player received actual notice, barring any claim of *procedural* unconscionability:

7   The EULA appeared on-screen to every player and every player had the individual choice to

8   affirmatively assent to it or discontinue playing *Fortnite*.  *See McKee*, 2017 WL 4685039, at *12

9   (also finding that a contract's being "one of adhesion…does not render it procedurally

10  unconscionable"), *citing AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-47. (2010).

11      The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration."

12  *Concepcion*, 563 U.S. at 339 (citation omitted).  The FAA also requires courts to "rigorously

13  enforce agreements to arbitrate."  *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226

14  (1987).  The Supreme Court has instructed that "any doubts concerning the scope of arbitrable

15  issues should be resolved in favor of arbitration, whether the problem at hand is the construction of

16  the contract itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H.*

17  *Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  A party aggrieved by the

18  refusal of another party to arbitrate under a written agreement may petition the Court for an order

19  compelling arbitration as provided for in the parties' agreement.  *See* 9 U.S.C. § 4.

20      "By its terms, the [FAA] leaves no room for the exercise of discretion by a district court,

21  but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues

22  as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470

23  U.S. 213, 213 (1985) (emphasis in original); *see also* 9 U.S.C. § 4.  "The court's role under the

24  [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if

25  it does, (2) whether the agreement encompasses the dispute at issue.  If the response is affirmative

26  on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance

27  with its terms."  *Daugherty v. Experian Info. Solutions, Inc.*, 847 F. Supp. 2d 1189, 1193 (N.D. Cal.

28  2012), *quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,     - 8 -     CASE NO. 4:19CV3629
OR IN THE ALTERNATIVE TRANSFER

1   "While the Court may not review the merits … 'in deciding a motion to compel arbitration, [it]

2   may consider the pleadings, documents of uncontested validity, and affidavits submitted by either

3   party.'" *Macias v. Excel Bldg. Servs., LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011), *quoting*

4   *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 540 (E.D. Pa. 2006).

5        These authorities confirm the enforceability of Epic Games' EULA.  Procedurally, Epic

6   Games promulgated the new EULA in a standard "clickwrap" manner that courts around the

7   country enforce uniformly.  The EULA's substantive provisions are even more consumer-friendly

8   than the agreement enforced in *McKee*.  The court in *McKee* carefully examined precedent

9   construing the same types of provisions and found them *not* to be unconscionable.  *See McKee*,

10   2017 WL 4685039, at *13.  In particular, the court recited "the breadth of case law permitting [class

11   action] waivers."  *Id.* (citing cases).  Epic Games' agreement to pay a claimant's arbitration fees

12   (*see* Farnsworth Decl. ¶ 21, Ex. B § 12.3.3) also is more consumer-friendly than the provision

13   analyzed and found fair in *Dupler v. Orbitz, LLC*, No. CV182303RGKGSJX, 2018 WL 6038309

14   at *4 (C.D. Cal. July 5, 2018) (compelling arbitration).

15       **B.**    **This Dispute Falls Squarely Within The Scope Of The Agreement.**

16        Epic Games' amended EULA defines "Disputes" broadly to include "any dispute, claim, or

17   controversy…between You and Epic that relates to your use or attempted use of Epic's products or

18   services and Epic's products and services generally, including without limitation the validity,

19   enforceability, or scope of this Binding Individual Arbitration section."  Farnsworth Decl. ¶ 21, Ex.

20   B § 12.3.1.  "Any doubts as to whether a particular dispute falls within the scope of the agreement

21   are typically resolved in favor of arbitration."  *Dupler*, 2018 WL 6038309, at *3, *citing AT&T Tech.,*

22   *Inc. v. Comm. Workers of America*, 475 U.S. 643, 650 (1986).  Plaintiffs allege that while playing

23   *Fortnite*, Johnny Doe made in-game purchases, at least some of which he now wishes to "disaffirm."

24   These plainly are claims about Plaintiffs' "use or attempted use of Epic's products or services," and

25   therefore are "Disputes" that must be arbitrated pursuant to the EULA.

26   **II.**    <u>**Alternatively, This Case Should Be Dismissed Or Transferred.**</u>

27       This Court should compel arbitration of all of Plaintiffs' claims.  To any extent this Court may

28   hold Plaintiff's claims not to be subject to arbitration, however, the *Fortnite* EULA requires those

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE TRANSFER

- 9 -

CASE NO. 4:19CV3629

non-arbitrable claims to be litigated in the United States District Court for the Eastern District of North Carolina. Both the EULA and the analysis under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1404(a) support transfer.

### A. Dismissal Or Transfer To The Eastern District Of North Carolina Is Appropriate Based on Improper Venue Under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1406(a).

#### 1. Venue Does Not Lie Here Under § 1391(b)(1) Because Epic Games Does Not Reside in the Northern District of California.

It is Plaintiffs' burden to demonstrate that their chosen venue is proper and complies with 28 U.S.C. § 1391(b). *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). Conclusory allegations of venue will not suffice. *See eBay Inc. v. Digital Point Sols., Inc.*, 608 F. Supp. 2d 1156, 1161 (N.D. Cal. 2009) (on consideration of a motion to dismiss for improper venue, "the allegations in the complaint need not be accepted as true and the Court may consider evidence outside the pleadings"). Section 1391(b) provides that an action may be brought *only* in: (1) a district "in which any defendant resides, if all defendants are residents of the State in which the district is located;" (2) a district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or (3) if there is "no district in which an action may otherwise be brought," any district "in which any defendant is subject to the court's personal jurisdiction with respect to such action."

Under § 1391(b)(1), venue can be proper in this District only if Epic Games "resides" here. As set forth above, an entity's residency, for venue purposes, is defined by § 1391(c)(2), which provides that it "shall be deemed to reside … in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." Because California has more than one judicial district, Epic Games is deemed to reside in the Northern District only if its contacts "would be sufficient to subject it to personal jurisdiction *if [the Northern] district were a separate State*." *Id.* §1391(d) (emphasis added).

Personal jurisdiction may be general or specific. General jurisdiction focuses on whether the defendant is "at home" in the forum. It "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE TRANSFER

- 10 -

CASE NO. 4:19CV3629

be deemed at home in all of them." *Daimler AG v. Bauman*, 134 S. Ct. 746, 762 n.20 (2014).  As the Supreme Court has explained, "only a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." *Id.* at 760.  For a corporation, this "limited set of affiliations" justifying the exercise of general jurisdiction is generally held to be the state of incorporation and the corporation's principal place of business. *Id.*  Here, as Plaintiffs' Complaint (¶ 5) admits, Epic Games' headquarters and principal place of business are in Cary, North Carolina. *See* Farnsworth Decl. ¶¶ 2-6.  Epic Games was incorporated in Maryland in 1993.  *See id.* ¶ 2. Those are the only two places, therefore, in which Epic Games is subject to general jurisdiction.

Epic Games' office in Larkspur, California, is a satellite office with roughly 50 employees. None of the employees are involved in policy-making on any subject, much less the subjects raised by Plaintiff's Complaint.  *See* Farnsworth Decl. ¶¶ 2-6.  Epic Games, therefore, is not subject to general jurisdiction in this District.

Plaintiffs have not established specific, or "case-linked," jurisdiction, in the Northern District, either.  Such jurisdiction arises where *all* of the following criteria are satisfied: (1) the defendant has performed some act or consummated some transaction with the forum by which it purposefully availed itself of the privilege of conducting business in California; (2) the plaintiff's claims arise out of or result from the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002), *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985).  A plaintiff bears the burden of demonstrating the first two prongs. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).  A lawsuit arises out of a defendant's contacts with a forum state if there is a direct nexus between the claims being asserted and the defendant's activities in the forum. *See Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991).

Plaintiffs' boilerplate and false jurisdictional allegations concerning Epic Games' Larkspur office do not satisfy these elements.  Plaintiffs admit that Larkspur is not Epic Games' headquarters, and they plead nothing to support the bare claim that Epic Games "conducts substantial business in this District" or that "a substantial part of the acts and omissions complained of occurred in this

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,       - 11 -       CASE NO. 4:19CV3629
OR IN THE ALTERNATIVE TRANSFER

District." Compl. ¶ 7.  Because Plaintiffs do not even plead that *they* reside in this District, they have not established that any of the alleged acts and omissions giving rise to the Complaint occurred in the District.  Indeed, Plaintiffs allege no more than that they are residents of California generally (not the Northern District), and that Epic Games has a physical location in Larkspur which is not its principal place of business.  This does not suffice.  *See Daimler*, 134 S. Ct. at 762 n.20.

All policymaking related to refunds occurred in or around Cary, North Carolina.  *See* Farnsworth Decl. ¶ 5.  Because Plaintiffs' claims do not arise out of or relate to any Northern California-related activity by Epic Games, the requisite "direct nexus" does not exist.  *See Bristol Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1782 (2017).  Thus, this Court lacks specific jurisdiction over Epic Games, and venue does not lie under § 1391(b)(1).

### 2.   Venue Does Not Lie under § 1391(b)(2) Because No Events Giving Rise to Plaintiffs' Claims Occurred in This District.

Under § 1391(b)(2), "a substantial part of the events or omissions giving rise to the claim" must have occurred in the plaintiff's chosen venue, or "a substantial part of property that is the subject of the action" must be situated there.  "To determine whether a substantial part of the events giving rise to the claim occurred in the forum, the court first considers what acts or omissions by the defendants give rise to the plaintiffs' claims."  *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 752 (N.D. Cal. 2015) (citation omitted).  As set forth above, Plaintiffs' claims stem from Epic Games' alleged refund and disclosure policies. These marketing-based claims arose from decisions that did not take place in California and have no factual nexus to the state, nor do they involve any property in California.  *See* Farnsworth Decl. ¶¶ 5-7.  Thus, venue does not lie in this Court under § 1391(b)(2), either.

### 3.   Section 1391(b)(3) Does Not Apply Because the Action May Be Brought in the Eastern District of North Carolina.

Section 1391(b)(3) is a fallback provision that applies *only* if there is "no district in which an action may otherwise be brought."  This venue provision does not apply here because, as set forth below, the action could have—and, by the terms of the EULA, should have—been brought in the Eastern District of North Carolina, Epic Games' headquarters.

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,           - 12 -          CASE NO. 4:19CV3629
OR IN THE ALTERNATIVE TRANSFER

### 4. This Action Must Be Dismissed or Transferred.

Plaintiffs have not met their burden to establish proper venue. Thus, under 28 U.S.C. § 1406(a), this Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." If the Court decides to transfer the action, the Eastern District of North Carolina is a proper venue for Plaintiff and the most convenient venue for the parties and witnesses.

### B. The Binding Forum Selection Clause in All *Fortnite* End User License Agreements Requires All Disputes to be Heard in North Carolina.

Even if Plaintiffs had a valid basis to sue in this District, which they did not, and the arbitration clause did not apply, which it does, the Court still should transfer the case to the Eastern District of North Carolina. Epic Games' EULA allows Plaintiffs to elect to *arbitrate* a dispute in their home county, but it has a North Carolina forum clause for *litigation*. Because the parties agreed to a forum selection clause, the Supreme Court's decision in *Atlantic Marine Constr. Co. v. U.S. District Court for Western District of Texas,* 134 S. Ct. 568 (2013)—where a plaintiff violated a contract requiring litigation to occur in Virginia by suing instead in Texas—controls how the Court must consider this transfer motion. *Atlantic Marine* explained that the normal "weigh[ing of] the relevant factors [under § 1404(a)] … changes when the parties' contract contains a valid forum selection clause, which represents the parties' agreement as to the most proper forum." *Id.* at 579.

> The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system. For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases. [*Id.* at 581.]

The "calculus changes" in that "[f]irst, the plaintiff's choice of forum merits no weight." *Atlantic Marine*, 134 S. Ct. at 581. Instead, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . ." *Id.* Courts also may not "consider arguments about the parties' private interests" because their agreement to a forum selection clause "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses." *Id.* at 582.

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE TRANSFER

- 13 -

CASE NO. 4:19CV3629

Finally, "when a party … flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice of law rules." *Id.* "[T]he practical result" of this streamlined analysis "is that forum-selection clauses should control except in unusual cases." *Id.* at 582. The Supreme Court directed the Fifth Circuit to decide whether there existed any "public-interest factors that might support the denial of [the] motion to transfer," noting that no such factors "are apparent on the record before us." *Id.* at 584.

Plaintiffs' Complaint does not challenge the EULA's venue clause, nor would they have any basis to do so. A forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997), *as amended* (Mar. 10, 1998), *citing The Bremen v. Zapata Off-Shore Co.*, 401 U.S. 1, 10, (1972). "Both the Supreme Court and the [Ninth Circuit] have construed this exception narrowly." *Lentini v. Kelly Servs. Inc.*, No. C17-3911 WHA, 2017 WL 4354910, at *1 (N.D. Cal. Oct. 2, 2017), *citing Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004). There is a "strong policy in favor of the enforcement of forum selection clauses," and a plaintiff's desire to litigate elsewhere does not outweigh it. *K&H Mfg. Co. v. Strong Indus., Inc.*, No. 07-01636-PHX-DGC, 2008 WL 65606, at *4 (D. Ariz. Jan. 4, 2008), *citing E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 992 (9th Cir. 2006). Enforcement is only "unreasonable" where it would contravene a strong public policy of the transferor forum—a narrow exception not implicated in this case. *Id.*

The result is the same under federal common law, North Carolina law (per the EULA), or California law. In North Carolina, a plaintiff seeking to avoid enforcement of a forum selection clause carries "a heavy burden and must demonstrate that the clause was the product of fraud or unequal bargaining power or that the enforcement of the clause would be unfair or unreasonable." *Parson v. Oasis Legal Fin., LLC*, 214 N.C. App. 125, 135 (2011), *quoting Perkins v. CCH Computax, Inc.*, 333 N.C. 140, 146 (1992). In *Parson*, the court held it to be error that the lower court found enforcement of the forum selection clause to be unreasonable based solely on the potential value of the damages claimed. *Id.*, 214 N.C. App. at 135. California similarly enforces contractual forum selection clauses unless they are unreasonable. *See Smith, Valentino & Smith,*

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,     - 14 -     CASE NO. 4:19CV3629
OR IN THE ALTERNATIVE TRANSFER

*Inc. v. Superior Court*, 17 Cal. 3d 491, 495-96 (1976).   The burden of demonstrating unreasonableness is on the plaintiff.  *See Schlessinger v. Holland America, N.V.*, 120 Cal. App. 4th 552, 558-59 (2004).

*Atlantic Marine* requires Plaintiffs to carry their burden in opposing transfer solely by reference to public interest factors.   "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine*, 134 S. Ct. at 582 n.6.  This is not a localized controversy; it is between a North Carolina company and California residents regarding alleged misrepresentations made from North Carolina.  Familiarity with the law weighs in favor of transfer because the EULA provides that disputes are be governed by North Carolina law.

The parties' choice of law reflected in a contract clause will govern provided the chosen state bears a substantial relationship to the parties of their transaction and enforcement of the provision does not violate a fundamental public policy of California." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182-83 (9th Cir. 2009).  "A substantial relationship exists between a party and the state that party is domiciled, resides, or is incorporated in." *Id.*, *citing Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459 (1992) (incorporation and domicile create substantial relationship).  "Enforcing a choice of law provision does not violate a fundamental public policy of California if doing so would not create a conflict with California law." *Id.* (citations omitted).  "The burden is on the party opposing the choice-of-law provision to establish both the 'fundamental conflict' and 'materially greater interest' prongs." *Id.*, *quoting Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906 (Cal. 2001).

### C.      Alternatively, A Traditional § 1404(a) Analysis Equally Favors Transfer.

Plaintiffs have not attempted to disaffirm either EULA at issue in this case.  Even if they could and do disaffirm both EULAs, or the Court otherwise declines to apply the EULAs North Carolina choice of law clause, the traditional transfer factors analyzed under 28 U.S.C. § 1404(a) would nevertheless compel the conclusion that this case belongs in the Eastern District of North Carolina.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE TRANSFER                - 15 -                CASE NO. 4:19CV3629

By happenstance, this case is the third class action brought against Epic Games in recent months and filed in districts other than the required venue of North Carolina.  The courts in both other cases transferred them to the Eastern District of North Carolina.  In the first case, which did not involve a companion motion to compel arbitration, the Hon. Harry Leinenweber issued a brief transfer order sending a plaintiff's claims out of the Northern District of Illinois.  *See Krohm v. Epic Games, Inc*. 5:19-cv-00173 (N.D. Ill.), Dkt. No. 13.  In the second-filed case, the Hon. George Wu transferred a minor's complaint against Epic Games out of the Central District of California even after the minor purported to disaffirm both the new EULA with its arbitration provision and the prior EULA with its choice of law clause.  *See R.A. v. Epic Games, Inc.*, Case No. 2:19-cv-014488-GW-E (C.D. Cal., Dkt. No. 39).  That case concerned in-game purchases by a minor playing *Fortnite*.  In granting transfer to North Carolina, Judge Wu found:

> On balance, while Plaintiff's choice of forum is subject to some deference, the Court would conclude that the parties' contacts with North Carolina, the amount of witnesses located there, and the fact that the Central District of California bench is vastly understaffed weigh in favor of transfer.  Otherwise, the factors involved in the traditional § 1404(a) analysis are largely neutral…. The operative facts surrounding [allegations] occurred in North Carolina.  As such, the Court would transfer the action to the Eastern District of North Carolina.  [*Id.* at 15-16.]

Should the Court decline to compel arbitration, the result here should be the same as in *R.A.* The operative facts surrounding the design and marketing of Epic's products, as well as development of Epic Games' refund policy at issue, occurred in North Carolina.  As set forth below, analysis of the factors set forth under § 1404(a) mandate transfer.

The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted).  "[C]ourts have broad discretion to adjudicate [§ 1404(a) motions to transfer] 'according to an individualized, case-by-case consideration of convenience and fairness.'"  *U.S. Bank, N.A. v. PHL Variable Ins. Co.*, No. 2:11-cv-9517-ODW(RZx), 2012 WL 3848630, at *1 (C.D. Cal. Sept. 4, 2012), *quoting Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Section 1404(a) only defines three factors to

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE TRANSFER

- 16 -

CASE NO. 4:19CV3629

1  consider: the convenience of the parties, the convenience of witnesses, and the interest of justice.

2  However, under Ninth Circuit precedent, other factors that the Court may consider include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation…, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, (8) the ease of access to sources of proof, (9) the presence of a forum selection clause, and (10) the relevant public policy of the forum state.

8  *Newthink LLC v. Lenovo (U.S.) Inc.*, No. 2:12-cv-5443-ODW(JCx), 2012 WL 6062084, at *1 (C.D.

9  Cal. Dec. 4, 2012), *quoting Jones*, 211 F.3d at 498.

### 1.   Convenience to the Parties and Witnesses, and the Location of Relevant Evidence, Tip In Favor of North Carolina.

12      "[T]he convenience and cost of attendance of witnesses" is the most important factor in the

13  § 1404(a) analysis. *Newthink LLC*, 2012 WL 6062084, at *1; *see also L.A. Printex Indus., Inc. v.*

14  *Le Chateau, Inc.*, No. CV 10-4264 ODW (FMOx), 2011 WL 2462025, at *3 (C.D. Cal. June 20,

15  2011); *Jang v. Boston Sci. Scimed, Inc.*, No. CV 10-3911 ODW (VBKx), 2010 WL 11463889, at

16  *3 (C.D. Cal. Aug. 9, 2010).  That factor tips only in one direction:  North Carolina.  Plaintiffs'

17  Complaint concerns Epic Games' marketing of certain in-game purchase opportunities and its

18  refund policies with respect to in-game purchases.  The Epic Games' employees who are familiar

19  with these topics work at or near Epic Games' Cary, North Carolina headquarters.  *See* Farnsworth

20  Decl. ¶ 5.  "For these witnesses, the most convenient forum is obvious."  *Newthink LLC*, 2012 WL

21  6062084, at *1.  Assessing this factor in the *R.A.* case, Judge Wu transferred the case to the Eastern

22  District of North Carolina finding:

> Despite the potential inconvenience to Plaintiff by transferring to another forum, the reality is that one party will have to travel cross-country for this trial depending on where the venue is located.  At this time, [Epic] has made persuasive arguments that the people with the most knowledge about the operative facts of this case … are in North Carolina, which would support transfer due to convenience to both parties to litigate in the forum where these acts occurred.  While the Court recognizes [Epic] may be better positioned to absorb the costs of litigation, the Court is not convinced that argument overcomes the fact that nearly all of the witnesses and operative facts are in North Carolina, especially considering that Plaintiff is

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,        - 17 -        CASE NO. 4:19CV3629
OR IN THE ALTERNATIVE TRANSFER

asserting a class action and has not provided any information about whether he, or his counsel, will bear the costs of litigating the claims.

*R.A.,* Dkt. No. 39 at 13.  Similarly, in this case, the operative facts surrounding the marketing and sale of V-Bucks and the development and implementation of *Fortnite's* refund policy occurred in North Carolina. Accordingly, this factor weighs decisively in favor of transfer to North Carolina.

### 2.   Transfer of the Action to the Eastern District of North Carolina Will Save the Parties and the Court Time and Expense.

Additionally, it will be less costly to litigate this case in North Carolina:  The defendant maintains its headquarters in North Carolina and the relevant witnesses are located there.  *See F.T.C. v. Wright*, No. 2:13-CV-2215-HRH, 2014 WL 1385111, at *4 (D. Ariz. Apr. 9, 2014). Further, to the extent any relevant witness is a former employee or otherwise disinclined to testify, a North Carolina court will be much better positioned than one in California to issue compulsory process.  Plaintiffs, by contrast, cannot "point to any relevant evidence or witness that may be in California," other than themselves.  *See Dahdoul Textiles, Inc. v. Zinatex Imports, Inc.*, No. 2:15-cv-4011-ODW(ASx), 2015 WL 5050514, at *4 (C.D. Cal. Aug. 25, 2015).

### 3.   The Parties' Respective Contacts Weigh In Favor of Transfer.

"[M]isrepresentations and omissions [] are deemed to occur in the district where they are transmitted or withheld, not where they are received."  *Cohn v. Oppenheimerfunds, Inc.*, No. 09cv1656-WQH-BLM, 2009 WL 3818365, at *5 (S.D. Cal. Nov. 12, 2009) (citation omitted); *see also Burns v. Gerber Prod. Co.*, 922 F. Supp. 2d 1168, 1171 (E.D. Wash. 2013) ("Thus, the crux of the present case is not Washington, the state where Plaintiff purports to have purchased a falsely advertised product, but rather New Jersey, the state where Gerber is headquartered and allegedly issued misrepresentation concerning its products.")  Here, Plaintiffs allege that Epic Games made misrepresentations and omissions in connection with the sale of V-Bucks and *Fortnite*'s refund policy, which are matters determined by employees located in North Carolina, not California.

### 4.   Plaintiff's Choice of Forum Should Be Given Little Weight In This Class Action Suit.

Plaintiffs' choice to sue in California carries significantly less weight by virtue of their attempt to represent a class.  In class actions, courts do not defer to the named plaintiffs' choice of

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE TRANSFER

- 18 -

CASE NO. 4:19CV3629

1  forum. *See Billing v. CSA-Credit Sols. of Am.*, No. 10-cv-0108 BEN (NLS), 2010 WL 2542275, at
2  *5 (S.D. Cal. June 21, 2010); *see also Ambriz v. Coca Cola Co.*, No. 13-cv-03539-JST, 2014 WL
3  296159, at *6 (N.D. Cal. Jan 27, 2014) ("Although some of these factors are neutral, only one
4  points in favor of the Northern District: Plaintiff's choice of forum. And in a case such as this one,
5  where the plaintiff has brought an action on behalf of a class and the operative facts have not
6  occurred within the forum, the plaintiff's choice … is entitled to less weight.")

7      Notably, the *R.A.* court transferred that case even though those plaintiffs sought to represent
8  a California-only class. In *Billing*, similarly, the court considered a motion to transfer to the
9  Northern District of Texas where the plaintiff resided in California and sought to represent a
10 California-only class. 2010 WL 2542275, at *2. In balancing the § 1404(a) factors, the court found
11 that plaintiff's choice of forum should be "given less weight" when bringing claims on behalf of a
12 class. *Id.* at *5. Weighing all of the other factors, it found the action should be transferred to the
13 Northern District of Texas. *See id.* at *5-6. Here, by contrast, Plaintiffs are seeking to represent a
14 putative *nationwide* class, which counsels even more against deference to their venue choice.

15     If the Court declines to compel arbitration, therefore, it should transfer Plaintiffs' claims to
16 the Eastern District of North Carolina, as the prior courts in the *R.A.* and *Krohm* cases did.

17                              **<u>CONCLUSION</u>**

18     For each of the foregoing reasons, Epic Games respectfully requests that this Court compel
19 arbitration, or in the alternative, either dismiss this case for improper venue pursuant to 28 U.S.C.
20 § 1391 or else transfer this case to the Eastern District of North Carolina pursuant to the EULA, or
21 28 U.S.C. § 1404(a).

22

23 Dated: August 26, 2019                    DRINKER BIDDLE & REATH LLP

24

25                                          By: */s/ Jeffrey S. Jacobson*
                                               Jeffrey S. Jacobson (p*ro hac vice*)
26                                             Matthew J. Adler

27                                          Attorneys for Defendant
                                            EPIC GAMES, INC.
28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION,                - 19 -                CASE NO. 4:19CV3629
OR IN THE ALTERNATIVE TRANSFER