Peter R Afrasiabi (SBN 193336)
pafrasiabi@onellp.com
Deepali A. Brahmbhatt (SBN 255646)
dbrahmbhatt@onellp.com
ONE LLP
4000 MacArthur Blvd., East Tower, Suite 500
Newport Beach, CA 92660
Telephone:     (949) 502-2870
Direct:          (650) 600-1298
Facsimile:     (949) 258-5081

John E. Lord (SBN 216111)
jlord@onellp.com
ONE LLP
9301 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90210
Telephone:     (310) 866-5157
Facsimile:     (310) 943-2085

Attorneys for Plaintiff
Johnny Doe, a minor and through his Guardian, Jane Doe, on
behalf of himself and all others similarly situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY DOE, a minor, by and through his Guardian, JANE DOE, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> EPIC GAMES, INC., a North Carolina corporation, <br><br> Defendant. | Case No.  4:19cv3629-YGR <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE TRANSFER; MEMORANDUM IN SUPPORT OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date:          October 1, 2019 <br> Time:          2:00 pm <br> Courtroom:   1 <br><br> **CLASS ACTION** |

## TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ 1

II.     ISSUES TO BE DECIDED .......................................................................... 2

III.    FACTS .................................................................................................... 3

IV.     THE COURT SHOULD NOT COMPEL ARBITRATION BECAUSE PLAINTIFF HAS EXERCISED HIS STATUTORY RIGHT OF DISAFFIRMANCE, AND THE ARBITRATION PROVISION WOULD STILL NOT APPLY REGARDLESS OF DISAFFIRMANCE ........................................................................................ 5

        A.      Plaintiff's Service of the CLRA Letter and Filing of the Instant Suit Disaffirms the EULA, and As a Result There is No Valid Agreement to Arbitrate .............................. 5

        B.      The Arbitration Provision Does Not Apply Because Agreements to Arbitrate Claims for Public Injunctive Relief Under The CLRA Are Not Enforceable in California, Regardless of Disaffirmance. ........................................ 7

        C.      The Arbitration Provision Would Still Not Apply, Regardless of Disaffirmance and Unenforceability through CLRA .................................. 8

V.      THE COURT SHOULD NOT DISMISS FOR IMPROPER VENUE OR TRANSFER THE CASE TO EASTERN DISTRICT OF NORTH CAROLINA ...................................... 9

        A.      Venue is Proper under 28 U.S.C. 1391(b) because Defendant has Waived Personal Jurisdiction Thereby Establishing Proper Venue, and, Nonetheless, the Court has Personal Jurisdiction over Defendant .................................... 9

        B.      A Section 1404 Analysis Weighs Against Transfer ........................................ 11

                1.      Plaintiff's Choice of Forum Weighs Against Transfer Given Plaintiff and Defendant's Significant Contacts with this Forum ............................. 12

                2.      Convenience of Parties and Witnesses Weighs Against Transfer ............... 13

                3.      Access to Evidence Weighs Against Transfer ....................................... 15

                4.      This District's Familiarity With Governing California Law Weighs Against Transfer .......................................................... 15

                5.      Other Factors Are Neutral or Weigh Against Transfer. ........................ 16

        C.      Disaffirmance of the EULA nullifies the Forum Selection Clause, and Moreover, It is Unenforceable ................................................ 17

PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER

**VI.    CONCLUSION** ....................................................................................................18

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                     **Page(s)**

*123 Specht v. Netscape Communs. Corp.*
   306 F.3d 17 (2d Cir. 2002)..................................................................................... 18

*Abdullah v. Abdullah*,
   50 Cal. App. 115 (1920) .................................................................................... 6, 8

*Agasino v. American Airlines*,
   No. 19-cv-03243-LB, 2019 WL 3387803 (N.D. Cal. July 26, 2019)..................... 10

*Alul v. American Honda Motor Company, Inc*.,
   No. 16-04384 JST, 2016 WL 9116934 (N.D. Cal. Dec. 7, 2016) ......................... 11

*Ambriz v. Coca Cola Co.*,
   No. 13-cv-3359, 2014 WL 296159 (N.D. Cal. Jan. 27, 2014)................................ 13

*AT&T Corp. v. Teliax, Inc.*,
   No. 16-cv-01914-WHO, 2016 WL 4241910 (N.D. Cal. Aug. 11, 2016) ....................... 10, 11

*Barnes & Noble v. LSI Corp.*,
   823 F. Supp. 2d 980 (N.D. Cal. 2011) ................................................................... 11

*Berg v. Traylor*,
   148 Cal. App. 4th 809 (2007) ................................................................................. 6

*Brackett v. Hilton Hotels Corp.*,
   619 F.Supp.2d 810 (N.D. Cal. 2008) ..................................................................... 16

*Carr v. U.S.*,
   560 U.S. 438 (2010)................................................................................................. 8

*Celli v. Sports Car Club of Am., Inc.*,
   29 Cal. App. 3d 511 (1972) ..................................................................................... 9

*Doe1 v. AOL LLC*,
   552 F.3d 1077 (9th Cir. 2009) .............................................................................. 17

*Evancho v. Sanofi–Aventis U.S. Inc.*,
   No. 07-00098 SI, 2007 WL 1302985 (N.D. Cal. May 3, 2007) ............................ 15

*In re Ferrero Litig.*,
   768 F. Supp. 2d 1074 (S.D. Cal. 2011)................................................................. 16

*I.B. ex rel. Fife v. Facebook, Inc.*,
   905 F. Supp. 2d 989 (N.D. Cal. 2012) ................................................................... 6

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

*G.A. Braun v. Landster Ranger, Inc.*,
    No. 19-cv-02259-JCS, 2019 WL 3068341 (N.D. Cal. July 12, 2019)......................................... 12

*Goodworth Holdings Inc. v. Suh*,
    239 F. Supp. 2d 947 (N.D. Cal. 2002) ................................................................................. 9, 17

*Hendricks v. StarKist Co.*,
    No. 13-cv-729 YGR, 2014 WL 1245880 (N.D. Cal. Mar. 25, 2014) ........................................ 16

*Holliday v. Lifestyle Lift, Inc.*,
    No. 09–4995 RS, 2010 WL 3910143 (N.D. Cal. Oct. 5, 2010) ................................................ 15

*Jimenez v. Menzies Aviation Inc*,
    No. 15-CV-02392-WHO, 2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) ................................... 9

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ................................................................................................. 14

*Lopez v. Kmart Corp.*,
    2015 WL 2062606 (N.D. Cal. May 4, 2015) ..................................................................... 5, 6, 7

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ................................................................................................. 12

*Markel Am. Ins. Co. v. Pac. Asian Enters., Inc.*,
    No. 07-5749-SC, 2008 WL 2951277 (N.D. Cal. July 28, 2008) ............................................. 10

*McGill v. Citibank N.A.*,
    2 Cal.5th 945 (2017) ........................................................................................................... 7, 8

*Morse v. ServiceMaster Glob. Holdings Inc.*,
    2012 WL 4755035 (N.D. Cal. Oct. 4, 2012)............................................................................ 8

*Niemann v. Deverich*,
    98 Cal. App. 2d 787 (1950) .................................................................................................... 5

*Rodriguez v. California Highway Patrol*,
    89 F. Supp. 2d (N.D. Cal. March 13, 2000)........................................................................... 10

*Simpson Strong-Tie Company, Inc. v. Oz-Post International*,
    No. 3:18-cv-01188-WHO, 2018 WL 3956430 (N.D. Cal. August 17, 2018) .................... 14, 15, 16

*Spencer v. Collins*,
    156 Cal. 298 (1909) ............................................................................................................... 6

*T. K. v. Adobe Sys. Inc.*,
    No. 17-CV-04595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) .................................... 6

*Trudeau v. Google LLC*,
    349 F. Supp. 3d 869 (N.D. Cal. 2018) ................................................................................... 6

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ........................................................................................................... 11

*Van Slyke v. Capital One Bank*,
    503 F. Supp. 2d 1353 (N.D.Cal.2007) ............................................................................... 13

*Ward v. Certain Underwriters at Lloyd's of London*,
    No. 18-cv-07551-JCS, 2019 WL 2076991 (N.D. Cal. May 10, 2019) ................................ 10

*Weber v. Amazon.com, Inc.*,
    2018 WL 6016975 (C.D. Cal. June 4, 2018) ......................................................................... 6

**Statutes**

28 U.S.C. § 1391(b) ................................................................................................... 1, 3, 9, 10

28 U.S.C. § 1391(b)(1) ...................................................................................................... 10

28 U.S.C. § 1391(b)(2) (1999) .......................................................................................... 10

28 U.S.C. § 1391(c)(2) ....................................................................................................... 10

28 U.S.C. § 1404 ............................................................................................................ 3, 11

28 U.S.C. § 1406 ............................................................................................................ 1, 11

Cal. Bus. & Prof. Code §17200 ................................................................................... 2, 3, 15

Cal. Fam. Code § 6700 ..................................................................................................... 5, 6

Cal. Fam. Code § 6712 .......................................................................................................... 6

California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*................. 2, 3, 15, 17

Federal Arbitration Act (FAA) .............................................................................................. 7

**Other Authorities**

2 Newberg on Class Actions § 6:36 (5th ed.) ..................................................................... 11

Fed. R. Civ. P. 12 ....................................................................................................... 1, 9, 10

Fed. R. Civ. P. 12(b) ...................................................................................................... 1, 10

Fed. R. Civ. P. 12(b)(2) ................................................................................................. 1, 3, 9

Fed. R. Civ. P.12(b)(3) .......................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 1

Fed. R. Civ. P. 12(g)(2) ................................................................................................. 1, 10

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

Fed. R. Civ. P. 12(h)(1)(A) ................................................................................................................. 10

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

In response to Plaintiff's Complaint, Defendant filed the instant motion to compel arbitration, or alternatively, for dismissal or transfer for improper venue, in addition to filing a motion to dismiss under Fed. R. Civ. 12(b)(6), and another motion (in essence a motion for reconsideration) regarding Plaintiff's motion to proceed under pseudonym.  Defendant's strategy of filing numerous motions in the hopes that something sticks falls flat.  All of Defendant's motions should be denied.

With respect to the instant motion, arbitration should not be compelled because Plaintiff has exercised his statutory right of disaffirmance.  As a result, there is no valid agreement to arbitrate. Numerous cases in this District make this clear.  Moreover, to the extent there is no disaffirmance, only the amended EULA contains an arbitration provision.  And by Defendant's admission, Plaintiff did not accept the arbitration provision in the amended EULA until June 7, 2019, and thus opted out within the 30-day opt out requirement by filing this suit on June 21, 2019.  Lastly, agreements to arbitrate claims for public injunctive relief under the CLRA (as alleged here) are not enforceable in California.

Defendant's alternative motion to dismiss for improper venue fails because Defendant moved "pursuant to 28 U.S.C. 1391(b) and 28 U.S.C. 1406(a)" rather than under Fed. R. Civ. P. 12(b)(2) or Fed. R. Civ. P.12(b)(3).  (Dkt. 21, [Notice of Motion] at i.)  Indeed, nowhere in Defendant's motion does it move under Fed. R. Civ. P. 12.  This does not appear to be an oversight, but a tactical decision to only move under Fed. R. Civ. P. 12(b)(6) in its initial motion.  A party waives a defense based on lack of personal jurisdiction by omitting it from its first Fed. R. Civ. P. 12(b) motion.  Fed. R. Civ. P. 12(g)(2).  As such, Defendant has waived any personal-jurisdiction arguments by failing to move to dismiss and is subject to personal jurisdiction here with respect to this case for the purposes of establishing venue.

Defendant's alternative motion to transfer venue to the Eastern District of North Carolina also fails because the convenience factors favor the case staying in this District.  Private factors weigh against transfer based on the extensive contacts both Plaintiff and Defendant have in this District. For example, Plaintiff downloaded the Fortnite game at issue in this District; Plaintiff played the Fortnite game in this District; Plaintiff allegedly executed the original and amended EULAs (now disaffirmed) in this District; and Plaintiff filed suit in this District.  Further, Defendant attempts to downplay its contacts within this District.

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

Defendant has an office in Larkspur (Marin County) that houses approximately 50 employees, and Defendant maintains additional employees in San Francisco not housed in Larkspur.  A recent job posting for Epic Games shows that it is seeking two lead engineers, a quality assurance analyst, and an android developer for these locations.  Indeed, Defendant's job posting states that it seeks engineers who can "hold the technical vision for a growing engineering team" in the San Francisco Bay Area.  Further, it appears that the bulk of Defendant's software engineers and Chief Technology Officer reside in this District.  This proves critical as Defendant's source code and engineering software is at issue in this case.

With respect to the location of potential witnesses, Defendant has failed to identify any Epic Games employee that cannot be made available in this District. And Defendant has not identified a single non-party witness who resides closer to the Eastern District of North Carolina than this District.

Defendant further argues that this is the third case against Epic Games in recent months and both other courts transferred the cases to North Carolina.  (Dkt. 21 ("Mot.") at 3.)  Yet, neither of these two other cases were filed in this District.  They were filed in other districts that lacked the extensive contacts present here.

Public interests also favor transfer because Plaintiff asserts violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and violation of California Business & Professional Code §17200, among other claims.  Plaintiff has not asserted and will not asset any violation of a North Carolina statutory claim.  Defendant's motion ignores this Court's greater familiarity with California law.

In sum, it is hard to accept Defendant's motion to transfer venue as a bona fide request to transfer based on convenience.  More likely, Defendant seeks to transfer in a strategic effort to gain geographic leverage.  This is not an acceptable reason to transfer.

For these reasons, Defendant's instant motion and alternative motions must be denied.

## II.    ISSUES TO BE DECIDED

1.    Whether an arbitration provision applies when there is disaffirmance or opt-out from the End User License Agreement ("EULA") by a letter pre-suit and subsequent filing of a lawsuit?

PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER

2.      Whether an arbitration provision applies when (i) the first allegedly accepted EULA did not include an arbitration provision, (ii) a disaffirming letter was sent, and (iii) a lawsuit was filed before the expiration of the opt-out period of the amended EULA that included the arbitration provision?

3.      Regardless of disaffirmance, whether agreements to arbitrate claims for public injunctive relief under the CLRA are enforceable in California?

4.      Whether the terms of the EULA including a forum selection or arbitration provision apply to in-App purchases, in dispute here, that appear at a later time and do not include notice to the terms of the EULA at the time of purchase?

5.      Whether venue is proper under 28 U.S.C. 1391(b) where Defendant has waived personal jurisdiction by not moving under 12(b)(2), thereby establishing proper venue, and when, nonetheless, the Court has personal jurisdiction over Defendant?

6.      Whether transfer should be denied under Section 1404 where the lead plaintiff resides in this District, and the private and public factors weigh against transfer?

## III.    FACTS

Plaintiff Johnny Doe, by and through his guardian Jane Doe, brought a class action against Defendant alleging violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, violation of California Business & Professional Code §17200, and a series of other claims including declaratory relief that the contracts entered into between the minor class members and Defendant may be disaffirmed and rendered void.  (*See* Dkt. 1 [Complaint].)

Defendant released the video game Fortnite in 2017.  (*Id.* at ¶ 5.)  The video game has been immensely popular, with an estimated 200 million gamers playing Fortnite.  (*Id.*)  It is known for its addictive tendencies.  (*Id.* at ¶ 11.)  Players, especially minors, spend money on microtransactions within the game, which consist of in-App purchases.  (*Id.* at ¶¶ 12, 13.)  Though many minors contract with Defendant in these microtransactions, Defendant does not allow for a general refund, as many items remain non-refundable and outside of Defendant's refund policy.  (*Id.* at ¶ 13.)

Plaintiff Johnny Doe, a minor, downloaded and installed Fortnite in and around 2018.  (*Id.* at ¶ 29.) Upon downloading the software for the video game, it appears that Johnny Doe accepted the terms an End

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

User License Agreement (EULA).  (*See* Dkt. 21-1 [Farnsworth Decl.] at Ex. A.)  Minor Plaintiff, Johnny Doe, does not recollect seeing, reading or agreeing to the EULA and Johnny Doe's parents did not see, read, or agree to Defendant's EULA at the alleged time of Johnny's acceptance.  (*See* accompanying declaration of Jane Doe ("Doe Decl.") at ¶¶ 3-5.)  After accepting the EULA and downloading the Fortnite game, Plaintiff began making several in-App microtransaction purchases that were labeled non-refundable, including for example, Battle Pass. (Dkt. 1 [Complaint] at ¶ 33.)  Plaintiff Johnny Doe has also used his own money through gift cards to make in-app purchases.  (*Id.* at ¶ 35; Doe Decl. at ¶ 8.)

On May 17, 2019, Plaintiff's counsel sent a letter notifying Defendant of Plaintiff Johnny Doe's legal right to disaffirm contracts, particularly the microtransaction in-game purchases.  (*See* accompanying declaration of John E. Lord ("Lord Decl."), Ex. A.) (hereinafter the "CLRA letter").  In the letter, Plaintiff demanded that Defendant "correct, repair, replace or otherwise rectify the Fortnite video game non-refundable policy."  (*Id.*)  Plaintiff concluded by stating he would file a class action complaint if Defendant did not respond within 30 days.  (*Id.*)

On June 7, 2019, Plaintiff logged on the Fortnite video game and allegedly accepted, for the first time, an amended EULA that contained a mandatory arbitration provision.  (*See* Dkt. 21-1 [Farnsworth Decl.] at ¶ 20, Ex. B (the "amended EULA")). Similar to the original EULA, Johnny Doe's parents did not see, read or agree to Defendant's amended EULA at the time of Johnny's alleged acceptance.  (Doe Decl., ¶¶ 3-5.)

On June 21, 2019, Plaintiff filed suit in this District.  (*See generally* Dkt. 1 [Complaint].)  Plaintiff filed in this District because Plaintiff resides in this District.  (Doe Decl., ¶ 2).  Plaintiff also downloaded the Fortnite game at issue in this District; Plaintiff played the Fortnite game in this District; and Plaintiff allegedly executed the original and amended EULAs (now disaffirmed) in this District.  (Doe Decl., ¶¶ 6-7.)  Aside from Plaintiff's contacts, Defendant has an office in Larkspur [Marin county] that houses approximately 50 employees.  (Dkt. 21-1 [Farnsworth Decl.] at ¶ 7.)  Defendant also maintains additional employees in San Francisco not housed in Larkspur.  Recent job postings by Epic Games shows that it is seeking two lead engineers and an android developer, among other employees, for the Larkspur and San Francisco locations. (Lord Decl., Ex. B.)  Further, it appears from a Linkedin profile page that Epic Games

1   Chief Technology Officer, Mr. Kim Libreri also resides in this District.  (Lord Decl., Ex. C.)  A tweet from

2   an Epic Games employee also states that "Kim Libreri and myself are building a team here in the Bay Area

3   . . . ."  (Lord Decl., Ex. D.)  This tweet touts Epic Games' intention to build out its Bay Area offices.  *Id.*

4   Further, Epic Games recently filed a Statement of Information with the CA Secretary of State.  (Lord Decl.,

5   Ex. E.)

6   **IV.   THE COURT SHOULD NOT COMPEL ARBITRATION BECAUSE PLAINTIFF HAS
7          EXERCISED HIS STATUTORY RIGHT OF DISAFFIRMANCE, AND THE
            ARBITRATION PROVISION WOULD STILL NOT APPLY REGARDLESS OF
8          DISAFFIRMANCE**

9          **A.   Plaintiff's Service of the CLRA Letter and Filing of the Instant Suit Disaffirms the
                  EULA, and As a Result There is No Valid Agreement to Arbitrate**

10          Defendant seeks to compel arbitration based upon Plaintiff's acceptance of the amended EULA.

11  (Mot. at 7.)  Yet, by serving the CLRA letter and by filing suit, Plaintiff has disaffirmed the amended EULA,

12  and as a result there is no valid agreement to arbitrate.

13          In California, a minor may contract "in the same manner as an adult, subject to the power of

14  disaffirmance." *See* Cal. Fam. Code. § 6700[1].   The doctrine of disaffirmation is to protect "a minor against

15  himself and his indiscretions and immaturity as well as against the machinations of other people and to

16  discourage adults from contracting with an infant." *Niemann v. Deverich,* 98 Cal. App. 2d 787, 793 (1950).

17          Here, Plaintiff's service of the CLRA letter and the filing of the instant lawsuit suffice to timely

18  disaffirm the contract.  Particularly, in the CLRA letter dated May 17, 2019, Plaintiff through his attorneys

19  stated his legal right to disaffirm and stated that "Epic's current nonrefundable policy violates the laws of

20  the state of California with respect to contracting with minors."  (Lord Decl., Ex. A.)  This letter stated that

21  "Our client can legally disaffirm contracts with Epic Games, Inc. ("Epic") for in-App Purchases" and

22

23

24  _____

25  [1] In California, federal courts apply the law of the state where the contract was formed with respect to
    "issues concerning contract formation." *See, e.g., Lopez v. Kmart Corp.*, 2015 WL 2062606, at *4 (N.D.
26  Cal. May 4, 2015) (citing *Ingle v. Circuit City Stores, Inc.*, 328 F.3d, 1165, 1170 (9th Cir. 2003)). Here,
    any contract between Plaintiff and Defendant would have been formed in California, where Plaintiff was
27  playing the game and clicked through the EULAs.  (Doe Decl., ¶¶ 2-7.)  As such, California law should be
    used to analyze whether Plaintiff disaffirmed the EULAs.  Defendant also relies on California law in its
28  motion to compel arbitration.

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

Plaintiff's intention to file "a Class Action Complaint." (*Id.*)  The filing of the instant suit also qualifies as disaffirmance because plaintiff alleged that "Plaintiff brings this Declaratory Judgment action for a minor's right to disaffirm in-app purchases in Epic's video game Fortnite including non-refundable purchases and any use of minor's one or more gift cards." (Dkt. 1 [Complaint] at ¶ 1.)

These acts constitute disaffirmance especially where "no specific language is required to communicate an intent to disaffirm." *Berg v. Traylor*, 148 Cal. App. 4th 809, 820 (2007).  A minor may disaffirm a contract by "any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect." *Spencer v. Collins*, 156 Cal. 298, 303 (1909).  "Express notice to the other party is unnecessary." *Abdullah v. Abdullah*, 50 Cal. App. 115, 119 (1920) ("[F]iling of the action for a recovery. . . would be a sufficient notice to the defendant of a disaffirmance of the contract . . . ."). "[D]isaffirmation by a minor rescinds the entire contract, rendering it a nullity." *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1000 (N.D. Cal. 2012).

Disaffirmance is Plaintiff's statutory right under Cal. Fam. Code § 6700.  Applying Cal. Fam. Code § 6700, both the original and amended EULAs are voidable, including the arbitration provision found in the amended EULA.  Thus, the arbitration clause contained within the amended EULA does not apply.  Numerous cases from this District have made this clear.  *See, e.g., T. K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018); *Lopez v. Kmart Corp.*, No. 15–01089–JSC, 2015 WL 2062606 (N.D. Cal. May 4, 2015); *I.B. ex rel. Fife*, 905 F. Supp. 2d at 1000.  While California law specifically excludes certain contracts from disaffirmance, such as a contract for necessaries for the minor, like food, shelter, clothing or education, none of these statutory exceptions apply.  Cal. Fam. Code § 6712. And Defendant has not argued that they do.

Defendant's reliance on *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018) and *Weber v. Amazon.com, Inc.*, 2018 WL 6016975 (C.D. Cal. June 4, 2018) are misplaced.  Both cases did not involve a minor as a contracting party and thus did not address the issue of disaffirmance.  Defendant's motion ignores this issue all together.

Accordingly, both the original and amended EULAs are voidable and have been disaffirmed by Plaintiff.  The arbitration clause is not applicable.  Thus, this Court should deny the motion to compel

arbitration and this case must proceed on the pleadings. *Lopez*, 2015 WL 2062606 at *7 ("In short, although Plaintiff entered into a valid arbitration agreement with Kmart, he has exercised his statutory right of disaffirmance, thereby rescinding the contract and rendering it a nullity… as a result, there is no valid agreement to arbitrate … so the Court must deny Kmart's motion.").

> **B.     The Arbitration Provision Does Not Apply Because Agreements to Arbitrate Claims for Public Injunctive Relief Under The CLRA Are Not Enforceable in California, Regardless of Disaffirmance.**

Assuming that the original and amended EULAs are not void by Plaintiff's disaffirmance (which is not the case), the arbitration provision still would not apply because agreements to arbitrate claims for public injunctive relief under the CLRA are not enforceable in California. *McGill v. Citibank N.A.,* 2 Cal.5th 945 (2017).

In *McGill*, the California Supreme Court held that a provision of a credit card account agreement waiving the right to seek public injunctive relief in any forum was contrary to California public policy and was thus unenforceable under California law, and the Federal Arbitration Act (FAA) did not preempt California public policy prohibiting credit card account agreements from waiving the right to seek public injunctive relief in any forum. *Id.* There, plaintiff McGill filed a class action based on Citibank's alleged deceptive marketing plan where the operative complaint alleged claims under the CLRA, and related state claims. *Id.* at 953. For relief, the complaint requested, among other things, an injunction prohibiting Citibank from continuing to engage in its allegedly illegal and deceptive practices. *Id.*

Pursuant to the arbitration provision, defendant Citibank petitioned to compel McGill to arbitrate her claims on an individual basis. The trial court denied the petition because agreements to arbitrate claims for public injunctive relief under the CLRA are not enforceable. *Id.* The California Court of Appeals reversed holding that the FAA preempted and such California law, and ordered the claims to arbitration. *Id.* The California Supreme Court reversed. The California Supreme Court held that public injunctive relief remained a remedy available to private plaintiffs under the CLRA, and concluded that the arbitration provision at issue was invalid and unenforceable under California law insofar as it purports to waive Plaintiff's statutory right to seek such relief. *Id.* at 961.

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

Here, Plaintiff has alleged violation of the CLRA, and has sought public injunctive relief. (*See* Dkt. 1 [Complaint] at ¶¶ 62-71.) As the FAA does not preempt this California policy, it is well settled that the arbitration provision here is not enforceable as it purports to waive Plaintiff's statutory right to seek injunctive relief under the CLRA, as held in *McGill,* 2 Cal.5th 945.

### C. The Arbitration Provision Would Still Not Apply, Regardless of Disaffirmance and Unenforceability through CLRA

Assuming that Plaintiff did not disaffirm, and Plaintiff's seeking of injunctive relief under the CLRA is arbitrable (which is not the case), the arbitration provision still would not apply for the following reasons.

First, the arbitration provision exists only in the amended EULA, and not the original EULA. By Defendant's own admission, Plaintiff allegedly agreed to the amended EULA on June 7, 2019. (Mot. at 4.) Defendant has not argued, nor can it, that the arbitration provision would apply retroactively. The plain language of the amended EULA suggests that Epic only intended for the agreement to apply prospectively because of its consistent use of the present tense. It states in pertinent part "YOU AND EPIC AGREE TO RESOLVE DISPUTES . . . AND GIVE UP THE RIGHT TO GO TO COURT." Dkt. 21-1 [Farnsworth Decl.], Ex. B at 1. Under the canons of contract interpretation, use of the present tense is a strong indicator of prospective action. *See, e.g., Carr v. U.S.*, 560 U.S. 438 (2010) ("This Court has previously described a statute's 'undeviating use of the present tense' as a 'striking indic[ator]' of its "prospective orientation.'); *see also Morse v. ServiceMaster Glob. Holdings Inc.,* 2012 WL 4755035, at *5 (N.D. Cal. Oct. 4, 2012) (denying defendant's motion to compel arbitration of claims that predate the execution of the arbitration agreement "[b]ecause the arbitration language is not retroactive on its face"). Here, the Complaint alleges that Plaintiff downloaded and installed Fortnite in or around 2018. (Dkt. 1 [Complaint] at ¶ 29.) Thus, even if the amended EULA is not void, the arbitration provision would not apply to events that occurred before June 7, 2019.

Second, by Defendant's admission, Plaintiff allegedly did not accept the arbitration provision in the amended EULA until June 7, 2019. (Mot. at 4; Dkt. 21-1 [Farnsworth Decl.] at ¶ 20.) The amended EULA specifically provides for a 30-day right to opt out. (*Id*. at Ex. B at 13.) Plaintiff thus opted out within the 30 days by filing this suit on June 21, 2019. *See Abdullah*, 50 Cal. App. at 119 ("Express notice to the other

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

party is unnecessary " and "[F]iling of the action for a recovery. . . would be a sufficient notice to the defendant of a disaffirmance of the contract . . . ."); *see also Celli v. Sports Car Club of Am., Inc.*, 29 Cal. App. 3d 511, 517 (1972).

Third, Plaintiff served the CLRA letter on Defendants *before* Johnny Doe accepted the amended EULA that contained the arbitration provision on June 7, 2019.  (*See* Lord Decl. Ex. A.)  The CLRA contemplated litigation by stating Plaintiff would file a complaint.  *Id.*  Courts routinely exercise their discretion to invalidate or refuse to enforce arbitration agreements implemented while a class action litigation is pending if the agreement might interfere with members' rights.  *See, e.g., Jimenez v. Menzies Aviation Inc*, No. 15-CV-02392-WHO, 2015 WL 4914727, at *6 (N.D. Cal. Aug. 17, 2015).

Lastly, the dispute here does not relate to the generic use of the software, but rather it relates to in-App purchases.  (*See* Dkt. 1 [Complaint], *e.g.,* at ¶¶ 1-18.)  The EULA is not displayed or accepted at the time of in-App purchases that are at issue here.  The EULA's reference to in-App purchases, *i.e.*, Game Currency and Content, are, at best, preliminary negotiations or an agreement to agree, because there is no final offer or binding contract for the Game Currency and Content, and Epic is under no legal obligation to make any future offer, and a user has full discretion to accept or reject the offer.  *See Goodworth Holdings Inc. v. Suh*, 239 F. Supp. 2d 947, 956–57 (N.D. Cal. 2002) (citing *Copeland v. Baskin Robbins U.S.A*. 96 Cal.App.4th 1251 (2002).)  Thus, Defendant's argument that the dispute falls squarely within the scope of the agreement fails, (Mot. at 9.), because each in-App purchase constitutes an independent contract and there exists an issue of fact as to whether the EULA applies at all to the in-App purchases.

## V.     THE COURT SHOULD NOT DISMISS FOR IMPROPER VENUE OR TRANSFER THE CASE TO EASTERN DISTRICT OF NORTH CAROLINA

### A.   Venue is Proper under 28 U.S.C. 1391(b) because Defendant has Waived Personal Jurisdiction Thereby Establishing Proper Venue, and, Nonetheless, the Court has Personal Jurisdiction over Defendant

Defendant, in the alternative, moved for dismissal or transfer based on improper venue.  (Mot. at 10.)  Critically, however, Defendant did not move to dismiss for lack of personal jurisdiction.  (*See* Mot. wherein Defendant does not refer to Federal Rule of Civil Procedure 12(b)(2) (personal jurisdiction), or to any dismissal under Rule 12.)  It therefore has waived any personal-jurisdiction arguments and is subject to

9                                 Case No. 4:19cv3629-YGR

personal jurisdiction here with respect to this case. Fed. R. Civ. P. 12(g)(2), (h)(1)(A); *see Agasino v. American Airlines*, No. 19-cv-03243-LB, 2019 WL 3387803, at *3 (N.D. Cal. July 26, 2019) (By failing to move to dismiss for lack of personal jurisdiction, defendant "therefore has waived any personal-jurisdiction arguments and is subject to personal jurisdiction here with respect to this case."). Thus, because Defendant is subject to personal jurisdiction, venue is proper under 28 U.S.C. § 1391(b)(1) and (c)(2). *Id.*

Defendant's raising of jurisdictional issues in attempting to establish residency under 28 U.S.C. 1391(b) does not save them from waiver. *See Ward v. Certain Underwriters at Lloyd's of London*, No. 18-cv-07551-JCS, 2019 WL 2076991, at *4 (N.D. Cal. May 10, 2019) ("As far as this Court is aware, every court to consider the issue has held that personal jurisdiction even based on waiver is sufficient to establish 'residency' for the purpose of § 1391(c)(2)."); *AT&T Corp. v. Teliax, Inc.*, No. 16-cv-01914-WHO, 2016 WL 4241910, at *2 (N.D. Cal. Aug. 11, 2016) ("A party waives a defense based on lack of personal jurisdiction by omitting it from its first Rule 12(b) motion.... [B]ecause [defendant] did not contest personal jurisdiction, it is therefore 'subject to personal jurisdiction' in this District for the purposes of establishing venue."); *Markel Am. Ins. Co. v. Pac. Asian Enters., Inc.*, No. 07-5749-SC, 2008 WL 2951277, at *2 (N.D. Cal. July 28, 2008) ("[Defendants], each having brought a Rule 12 motion without challenging personal jurisdiction, have waived that defense. As each of the Defendants is subject to personal jurisdiction in this District, each is considered to reside here for the purposes of venue.").

Even assuming Defendant did not waive its residency argument and did move to dismiss for lack of personal jurisdiction (which it did not), venue would still be proper under § 1391(b)(2). Defendants argue that the proper venue is the Eastern District of North Carolina rather than the Northern District of California because the "marketing-based claims" did not take place in California. (Mot. at 12.) Venue is proper, however, in any District "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2) (1999). *Rodriguez v. California Highway Patrol*, 89 F. Supp. 2d, 1131, 1136 (N.D. Cal. March 13, 2000). Section 1391(b)(2) does not require that a majority of the events occur in the district where suit is filed, nor does it require that the events in that district predominate. *Id.* Looking at Plaintiff's individual action, Plaintiff downloaded the Fortnite game at issue in this District; Plaintiff played the Fortnite game in this District; any alleged execution of the original and amended EULAs (now

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

disaffirmed) occurred by Plaintiff in this District; and Plaintiff filed suit in this District.  (Doe Decl., ¶¶ 2, 6-7.)  *See also* 2 Newberg on Class Actions § 6:36 (5th ed.) ("The analysis of where a substantial part of the events took place, in a class action, looks to the events concerning the named plaintiffs' claims, not all of the class members' claims.").

Further, Defendant's argument that Plaintiff's claims do not "relate to any Northern California-related activity by Epic Games" does not withstand scrutiny.  (Mot at 12.) This District houses many of Defendant's engineers, including many of its software engineers and its CTO.  (Lord Decl., Exs. B-E.)  These engineers presumably worked and continue to work on Defendant's source code.  Source code for the Fortnite video game including software design and development directly relate to this action because, at a minimum, source code shows Epic's targeting of minors, promoting minors' addictive buying, and building an ecosystem catered to promote minor spending without any tracking of age verification or parental consent.

Lastly, moving under 28 U.S.C. § 1406(a) does not help.  Since venue is proper here, the Court cannot invoke section 1406(a).  *See AT&T Corp.*, 2016 WL 4241910, at *2 (After establishing that venue is proper, "Accordingly, no transfer or dismissal is proper pursuant to 28 U.S.C. § 1406.").  Indeed, section 1404(a) provides the only discretionary means by which the Court could transfer this case, if a transfer were justified.  As shown below, the balance of section 1404(a) factors weigh against transfer.

**B.    A Section 1404 Analysis Weighs Against Transfer.**

In determining whether to transfer an action pursuant to section 1404(a), the court considers the following factors: (1) the plaintiff's choice of forum, (2) the convenience of the parties and witnesses, (3) ease of access to the evidence, (4) familiarity of each forum with the applicable law, (5) feasibility of consideration of other claims, (6) any local interest in the controversy, and (7) the relative court congestion and time of trial in each forum.  *Barnes & Noble v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011).  "The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer." *Alul v. American Honda Motor Company, Inc.*, No. 16-04384 JST, 2016 WL 9116934 (N.D. Cal. Dec. 7, 2016) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).  A transfer is not appropriate if the result merely shifts the inconvenience from one party to another.  *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964).

As shown below, each of the factors is either neutral or weighs against transfer.  Defendant cannot meet its burden showing that the balance of factors clearly favors transfer.

**1.    Plaintiff's Choice of Forum Weighs Against Transfer Given Plaintiff and Defendant's Significant Contacts with this Forum**

As a general rule, the plaintiff's choice of forum is given significant weight and will not be disturbed unless other factors weigh substantially in favor of transfer.  *G.A. Braun v. Landster Ranger, Inc.*, No. 19-cv-02259-JCS, 2019 WL 3068341, at *2 (N.D. Cal. July 12, 2019).  Defendant argues that this factor should be given less weight because of Plaintiff's attempt to represent a class.  (Mot. at 18-19.)  This statement is true, but incomplete.  In judging the weight to be accorded to plaintiff's choice of forum in a class action, consideration must be given to both parties' contacts with the forum, including those relating to the cause of action.  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("In judging the weight to be accorded Lou's choice of forum, consideration must be given to the extent of both Lou's and the Belzbergs' contacts with the forum, including those relating to Lou's cause of action.").  Here, both parties have significant contacts with the forum, including those relating to the cause of action.

For example, Plaintiff resides in this District; Plaintiff downloaded the Fortnite game at issue in this District; Plaintiff played the Fortnite game in this District; any alleged execution of the original and amended EULAs (now disaffirmed) by Plaintiff occurred in this District; and Plaintiff filed suit in this District.  (Doe Decl., ¶¶ 2, 6-7.)  Northern District of California is Plaintiff's chosen forum.

Unsurprisingly, Defendant downplays the importance of its presence in this District. But Defendant not only has an office in Larkspur that houses approximately 50 employees, it also maintains additional employees in San Francisco not housed in Larkspur.  A recent job posting on Epic Games shows that it is seeking two lead engineers, a quality assurance specialist and an android developer and other employees for these locations.  (Lord Decl., Ex. B.)  Further, it appears that many of Defendant's software engineers including a decision-maker, *i.e.*, Mr. Kim Libreri, Defendant's Chief Technology Officer, reside in this District.  (Lord Decl., Ex. C.)  Indeed, Defendant's job posting has stated that it seeks engineers who can "hold the technical vision for a growing engineering team" in the Bay Area.  (Lord Decl., Ex. B.)  This proves critical as Defendant's source code and engineering software is at issue in this case.  Further, Epic

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

Games recently filed a Statement of Information with the CA Secretary of State. (Lord Decl., Ex. E.) Lastly, Epic Games has sent out tweets touting its intention to build out its Bay Area offices. Lord Decl., Ex. D. These contacts suffice to render this factor weighing against transfer.

Plaintiff's reliance on *Ambriz v. Coca Cola Co*., No. 13-cv-3359, 2014 WL 296159 (N.D. Cal. Jan. 27, 2014) is misplaced. In *Ambriz*, the plaintiff conceded it had no contacts with the forum state. The Court stated that "Plaintiff does not allege or argue that he resides in this District, nor that his employment was located here, and defendants have offered evidence that his residence has been, and continues to be, in the Central District ... The vast majority of liability and damages witnesses to this dispute are not located in this District." *Id*. at *7. Thus, unlike in *Ambriz*, Plaintiff here has significant contacts with this forum and is not engaged in forum shopping, as this District has an interest in the parties and subject matter.

Moreover, because no class has yet been certified, Plaintiff is currently the only plaintiff and will bear a fiduciary responsibility to lead the class. Courts in this District have found that the lack of a certified class entitles plaintiff's choice of forum to some deference. *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1363 (N.D.Cal.2007) ("[E]ven if a nationwide class were certified the named plaintiffs would still bear a fiduciary responsibility to lead the class . . . [P]laintiff's choice of forum is still entitled to some deference, even though diminished. This factor cuts against transferring this action.").

Given Plaintiff and Defendant's contacts with this District, Defendant has no legitimate reason for running away from this District. Litigating the case in this District is appropriate. This factor weighs in favor of transfer.

### 2.  Convenience of Parties and Witnesses Weighs Against Transfer

Defendant makes conclusory statements that this factor tips only in one direction -- towards North Carolina. (Mot. at 17.) This is wrong.

Plaintiff's Complaint focuses on the items eligible for refund, if any, on Defendant's Fortnite platform and if/how Fortnite allows its consumers (and its minor consumers) to seek a refund. (*See generally* Dkt. 1 [Complaint]). This information can be confirmed by examining the source code of Defendant's game. This action involves digital technology including source code of the video game Fortnite and how the video game software interacts and operates with minors. Source code will be important and relevant because many

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

of the underlying in-App purchase rules implemented and operated in the underlying software code may not be visible to the user. This will involve discovery into Defendant's code and its engineers who write the code. From publicly available information, many of Defendant's software engineers and its CTO reside in this District, not in North Carolina. (Lord Decl., Exs. B-E.) For example, a recent job posting looking for an engineer to work in the Bay Area office states "Epic Games is looking for a Lead Engineer to manage and hold the technical vision for a growing engineering team in our new Larkspur office… You will be responsible for building and managing a small engineering team." (Lord Decl., Ex. B.) These party witnesses who reside in this District will likely have discoverable information. Defendant's Motion does not identify a single witness, not one, who it intends to call at trial or who will be a relevant witness who cannot be produced in this District.[2]

Further, in considering the convenience of witnesses, "courts have recognized that the convenience of non-party witnesses is more important than the convenience of party witnesses, including representatives of corporate parties." *See Simpson Strong-Tie Company, Inc. v. Oz-Post International*, No. 3:18-cv-01188-WHO, 2018 WL 3956430, *7 (N.D. Cal. August 17, 2018). Here, again, Defendant failed to identify a single relevant non-party witness for whom this District would not be a more convenient forum. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2000) (noting that courts may consider "the availability of compulsory process to compel attendance of unwilling non-party witnesses").

Lastly, Defendant is a large company with significant resources and has hired a national law firm, who has offices in this District. Defendant has not explained why it would be inconvenienced if forced to litigate here. The transfer would merely shift rather than eliminate the inconvenience.

The Defendant bears the burden of showing that the transferee District is more convenient for the party, and more important non-party witnesses. Defendant's Motion fails to meet its burden. This factor weighs against transfer.

---

[2] It would be improper for Defendant to introduce new evidence in the Reply and identify any such witnesses, as Plaintiff would be deprived of an opportunity to respond regarding the relevance of any such witnesses.

### 3.      Access to Evidence Weighs Against Transfer

Access to source code will be required in this case.  Epic's conduct at issue here occurs through its Fortnite video game digital ecosystem.  Many of the underlying rules and policies that are implemented by the source code are hidden from a user of the software.  Inspection of the source code through discovery will allow Plaintiff's access to information that is very relevant to the claims at issue here.  As such, Defendant will likely not produce the source code to Plaintiff, but rather will only permit inspection at counsel office. Defense counsel has an office in this District [San Francisco] but does not appear to have any offices in North Carolina.  As for non-source code evidence, Plaintiff agrees it will be relatively easy to obtain in any District.  *See Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*, 2018 WL 3956430, at *8 (N.D. Cal. Aug. 17, 2018) ("[I]n the age of electronically stored information, the ease of access to evidence is neutral because much of the evidence in this case will be electronic documents, which are relatively easy to obtain in any district.").

Thus, access to evidence slightly weighs against transfer.

### 4.      This District's Familiarity With Governing California Law Weighs Against Transfer

In addition to Plaintiff's declaratory judgment claim, Plaintiff asserts violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, and violation of California Business & Professional Code §17200.  (*See generally* Dkt. 1 [Complaint].)  Plaintiff has not asserted and will not asset any violation of a North Carolina statutory claim.  Clearly, this District will have more familiarity with California law than one in the eastern District of North Carolina.  The assertion of California laws weighs against transfer.

Other courts in this District have ruled similarly.  *See, e.g., Holliday v. Lifestyle Lift, Inc.*, No. 09–4995 RS, 2010 WL 3910143, at *6 (N.D. Cal. Oct. 5, 2010) (finding that plaintiff's choice of forum carries some weight where the alleged violations occurred in the Northern District of California and the subclass advanced claims grounded upon California labor law); *Evancho v. Sanofi–Aventis U.S. Inc.*, No. 07-00098 SI, 2007 WL 1302985, at *2 (N.D. Cal. May 3, 2007) (according plaintiff's choice of forum some weight

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

despite the scattering of putative class members across the nation where one of the named plaintiffs lived and worked in the transferor District and several of the class claims involved California labor laws).

Indeed, Courts have found persuasive the argument that California District courts are more familiar adjudicating issues of California law, including claims for false advertising. *Simpson Strong-Tie Co*, 2018 WL 3956430, at *9;  *Hendricks v. StarKist Co.*, No. 13-cv-729 YGR, 2014 WL 1245880, at *5 (N.D. Cal. Mar. 25, 2014) ("[T]he Court finds merit to the argument that the California District courts are more familiar with the California laws governing the claims here."); *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011) ("A California district court is more familiar with California law than district courts in other states."). This factor favors keeping the case here.

### 5.   Other Factors Are Neutral or Weigh Against Transfer.

The other factors are neutral or weigh in favor of against transfer. The factors that weigh against transfer include local interest, and differential costs of litigation

With respect to the local interest in deciding local controversies, because certification of Plaintiff's alleged class action is not guaranteed, the only instant interest that exists now is Plaintiff's individual claim. Plaintiff resides in this District and executed, and disaffirmed, the EULAs in this District, and this is the District where the individual claim arose.  (Doe Decl., ¶¶ 2-7.)  Thus, this District has the greatest local interest in deciding this controversy.  And, as set forth above, Defendant appears to have intentionally downplayed its activities in this District.

Further, even if Plaintiff's class is certified, then the Northern District would have as equal an interest in adjudicating the class's claims as any other District nationwide, including the Eastern District of North Carolina. Thus, this factor weighs against transfer.

Similarly, a court may also consider the relative means of the parties in deciding a transfer motion. While the relative means of the parties does not carry substantial weight, it is a relevant consideration. *Brackett v. Hilton Hotels Corp.*, 619 F.Supp.2d 810, 820 (N.D. Cal. 2008).  Here, Defendant is a large corporation with hundreds of millions in revenue while Plaintiff is an individual residing in this District. Thus, this factor weighs against transfer.

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

### C.     Disaffirmance of the EULA nullifies the Forum Selection Clause, and Moreover, It is Unenforceable

Defendant's alternatively seeks transfer based on a forum selection clause in the EULA.  Yet, as described above (Section IV-A), Plaintiff's instant suit, and its earlier service of the CLRA letter, disaffirm the EULA.  Thus, the EULA is a nullity and the forum selection clause has no effect.

Moreover, the forum selection clause is unenforceable as a matter of California law, because it violates California public policy against waivers of class action remedies and rights under the California Consumers Legal Remedies Act. *See Doe1 v. AOL LLC*, 552 F.3d 1077, 1082 (9th Cir. 2009).  California has declared "by judicial decision" that the same forum selection clause at issue here contravenes a strong public policy of California—as applied to California residents who brought claims under California statutory consumer law in a California court. *Id.*  Here, as Plaintiff has alleged California statutory claims, having a North Carolina court rule on Plaintiff's CLRA would diminish the rights of California consumers. *Id.*

To the extent the EULA is not rendered a nullity and is deemed enforceable under the CLRA, it can be still be disaffirmed on a transactional level relating to in-App purchases.  Both the original EULA and amended EULA only have an "agreement to agree" on future in-App digital content purchases and game currency.  Pertinently, the license states, "Epic *may* offer you the ability to license… Game Currency or Content" (emphasis added, Dkt. 21-1 [Farnsworth Decl.], Ex. A at ¶ 4, *see also* the amended EULA, *Id.,* Ex. B at ¶ 4).  At the time of installation, allegedly when EULA is accepted the first time, or allegedly when the amended EULA is accepted later, EULA merely includes a reference to a future offer from Epic Games to the end-user that at end-user's discretion may or may not be accepted.  That is, there is no contract for the in-App Content or Game Currency purchases at the time of acceptance of the EULA.  Epic cannot suggest otherwise, because at the time of installation or when the amended, what content or game currency would be purchased is not offered or selected and at what price in terms of money would the Game Currency or Content will be offered or accepted is also uncertain. Epic's offer, at future point of time, was discretionary and Epic was under no legal obligation to make that offer.  Any end-user is also under no legal obligation to accept any of those in-App offers.  Reference of such transactions in the EULA are preliminary negotiations between the parties that may or may not wound up in a final offer and binding contract. *See Goodworth*

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

*Holdings Inc. v. Suh*, 239 F. Supp. 2d 947, 956–57 (N.D. Cal. 2002).  Finding otherwise would violate the fundamental tenets of contract law, not just in California, but nationwide.

Further, the terms of the EULA would not apply to each in-App purchase by default because at the time of the in-App purchase there is no notice and acceptance of the EULA.  *See 123 Specht v. Netscape Communs. Corp.* 306 F.3d 17, 30 (2d Cir. 2002) (applying California law to commercial Internet transaction holding that clicking on a download button was not unambiguous manifestation of assent of the contract terms when there was no reasonably conspicuous notice of the terms).  Here, the entire EULA including its forum-selection clause is not applicable to the in-App purchases that are at dispute.

## VI.   CONCLUSION

For these reasons and such other reasons as may appear just to the Court, the Court should deny Defendant's Motion.

Dated:  September 9, 2019                    **ONE LLP**


                                         By:   /s/ John Lord
                                            Peter R. Afrasiabi
                                            Deepali A. Brahmbhatt
                                            John E. Lord

                                            Attorneys for Plaintiff Johnny Doe and his
                                            Guardian Jane Doe

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

      I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 4000 MacArthur Boulevard, East Tower, Suite 500, Newport Beach, California 92660.

      On September 9, 2019, I caused the document(s) listed below to be served to the address(es) and by the method of service described as follows:

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE TRANSFER; MEMORANDUM IN SUPPORT OF POINTS AND AUTHORITIES IN SUPPORT**

Jeffrey S. Jacobson; jeffrey.jacobson@dbr.com
Ryan M. Salzman; ryan.salzman@dbr.com
DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, CA 90067

*Attorneys for Defendant Epic Games, Inc.*

[ x ]    (BY E-SERVICE) I electronically transmitted the above-described document(s) using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants on this date.

      I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

      Executed on September 9, 2019 at Newport Beach, California.


_____
Lisa Hyska

**PLAINTIFF'S OPP'N TO DEF'S MOT. TO COMPEL ARBITRATION, OR TRANSFER**