Peter R Afrasiabi (SBN 193336)
pafrasiabi@onellp.com
Deepali A. Brahmbhatt (SBN 255646)
dbrahmbhatt@onellp.com
ONE LLP
4000 MacArthur Blvd., East Tower, Suite 500
Newport Beach, CA 92660
Telephone:     (949) 502-2870
Direct:            (650) 600-1298
Facsimile:      (949) 258-5081

John E. Lord (SBN 216111)
jlord@onellp.com
ONE LLP
9301 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90210
Telephone:     (310) 866-5157
Facsimile:      (310) 943-2085

Attorneys for Plaintiff
Johnny Doe, a minor and through his Guardian, Jane Doe, on
behalf of himself and all others similarly situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY DOE, a minor, by and through his Guardian, JANE DOE, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>EPIC GAMES, INC., a North Carolina corporation,<br><br>                    Defendant. | Case No.  4:19cv3629-YGR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**CLASS ACTION**<br><br>Date: October 1, 2019<br>Time: 2 pm<br>Courtroom: 1<br><br>Judge Hon. Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**

I.    ISSUES TO BE DECIDED .................................................................................1

II.   INTRODUCTION AND SUMMARY OF ARGUMENT ............................................2

III.  FACTS ......................................................................................................2

IV.   EPIC'S MOTION TO DISMISS FAILS IN ITS ENTIRETY ................................3

      A.   Legal Standards Governing Motion to Dismiss ................................................3

      B.   Minor Plaintiff's Statutory Right to Disaffirm is Undisputed and Each in-App
           Purchase Can Be Independently Disaffirmed ................................................4

           1.   Each in-App Purchase of game currency or content is an independent business
                transaction between Minor Plaintiff (not Parent) and Epic Games...................5

           2.   EULA does not apply because clickwrap case law requires notice to an online
                end-user for binding consent that is conspicuously missing here......................7

           3.   Minor Plaintiff did not and does not have physical access to a Parent's stored
                credit card or bank account information............................................................7

           4.   Minor Plaintiff's use of gift card does not impact his right to disaffirm ...........8

      C.   Declaratory Judgment Claim is Adequately Pled When Epic's Non-Refund Policy is
           Undisputed and Would Govern Future Transactions........................................9

           1.   In face of a formal Complaint, Epic's quibble about Minor Plaintiff not requesting
                refund before communicating through attorneys, is not relevant and does not go
                towards any alleged elements of the claims............................................................10

           2.   Epic's denial is undisputed based on its publicized non-refund policy ..................12

      D.   CLRA is Sufficiently Pled ............................................................................13

           1.   Epic sells both digital "Content" and "Game Currency", and at minimum, "Content"
                is a "Good" and Game Currency, V-Bucks is used for an "entertainment service" 13

           2.   Complaint sufficiently pleads that Minor Plaintiff is misled and misinformed by the
                video game *Fortnite* ecosystem and the harm occurred by Minor Plaintiff's reliance
                on the misrepresentations..................................................................................15

           3.   Complaint properly pleads highly relevant facts that show the impact of the video
                game *Fortnite* Ecosystem on minors including misleading and misrepresentations15

      E.   Complaint Sufficiently Pleads Breach of Implied Duty of Good Faith and Fair Dealing
           .......................................................................................................................16

**F.    Complaint Sufficiently Pleads Epic's Negligent Misrepresentation** ..............................16

**G.    Complaint Sufficiently Pleads UCL** ...................................................................................17

1.    Complaint sufficiently pleads Epic's "unlawful" and "unfair" conduct..................17

2.    Complaint sufficiently pleads Epic's "fraudulent" conduct ....................................17

3.    Minor Plaintiff has no adequate remedy at law for future transactions..................17

**H.    Complaint Sufficiently Pleads Unjust Enrichment** ........................................................18

**V.    CONCLUSION** ........................................................................................................................18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                      **Page(s)**

3
4
*123 Specht v. Netscape Communs. Corp.*
 306 F.3d 17 (2d Cir. 2002)................................................................................................ 7

5
*Abdullah v. Abdullah*,
 50 Cal. App. 115 (1920) ................................................................................................. 11

6
7
*America Online, Inc. v. Sup. Ct.*,
 90 Cal.App.4th 1, 108 Cal.Rptr.2d 699 (2001)............................................................... 15

8
9
*In re Apple In-App Purchase Litig.*,
 855 F. Supp. 2d 1030 (N.D. Cal. 2012) .............................................................. 5, 10, 13

10
*In re Apple in-App Purchase Litigation*,
 Civ. No. 5:11-cv-01758-EJD (N.D. Cal. October 18, 2013) ..................................... 5, 10

11
12
*In the Matter of Apple Inc.*,
 Docket C-4444 (Mar. 25, 2014)........................................................................................ 5

13
14
*Aral v. Earthlink, Inc.*,
 134 Cal. App. 4th 544 (2005), *abrogated on other grounds*, 563 U.S. 333, 131 S. Ct.
 1740, 179 L. Ed. 2d 742 (2011) .................................................................................. 7, 9

15
16
*Architectural Res. Grp., Inc. v. HKS, Inc.*,
 No. C 12-5787 SI, 2013 WL 568921 (N.D. Cal. Feb. 13, 2013) ................................... 16

17
*Ashcroft v. Iqbal*,
 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................................. 3, 4

18
19
*Astiana v. Hain Celestial Grp., Inc.*,
 783 F.3d 753 (9th Cir. 2015) .......................................................................................... 18

20
21
*Berg v. Taylor*,
 148 Cal. App. 4th 809 (2007) .......................................................................................... 4

22
*Celli v. Sports Car Club of Am., Inc.*,
 29 Cal.App.3d 511, 105 Cal.Rptr. 904 (1972)......................................................... 11, 12

23
24
*Daun v. Truax*,
 56 Cal. 2d 647, 365 P.2d 407 (1961) ............................................................................. 16

25
26
*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
 885 F. Supp. 2d 894 (S.D. Ill. 2012)................................................................................ 6

27
*Doe 1 v. AOL LLC*,
 719 F.Supp.2d 1102 (N.D.Cal.2010) ............................................................................. 14

28

**PLF'S OPPN. TO DEF,'S MOTION TO DISMISS**

*Ferrington v. McAfee, Inc.*,
    No. 10-V-1455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010)........................................ 14

*FTC v. Amazon.com, Inc.*,
    No. C14–1038–JCC, 2016 U.S. Dist. LEXIS 55569 (W.D. Wash. Apr. 26, 2016) ............................... 8

*Goodworth Holdings Inc. v. Suh*,
    239 F. Supp. 2d 947 (N.D. Cal. 2002), aff'd, 99 F. App'x 806 (9th Cir. 2004) ........................ 6

*In the Matter of Google, LLC*,
    Docket C-4449 (Dec. 2, 2014) ............................................................................. 5

*Grube v. Amazon.com, Inc.*,
    No. 16-CV-126-LM, 2017 WL 3917602 (D.N.H. Sept. 6, 2017) ......................................... 8

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
    61 Cal. 4th 988 (2015) .................................................................................... 18

*Khoday v. Symantec Corp.*,
    858 F. Supp. 2d 1004 (D. Minn. 2012)................................................................... 14

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ........................................................................... 4

*Morgan v. AT & T Wireless Services, Inc.*,
    177 Cal.App.4th 1235, 99 Cal.Rptr.3d 768 (2009)....................................................... 14

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ............................................................................ 4

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ........................................................................... 5

*Pastor v. Putney Student Travel, Inc.*
    No. CV 99-2062 RSWL, 1999 WL 1074120 (C.D. Cal. June 9, 1999) ................................... 6

*Pereira v. Toscano*,
    84 Cal.App. 526 ........................................................................................ 11

*S. Cal. Edison Co. v. Hurley*,
    202 F.2d 257 (9th Cir. 1953) ........................................................................... 11

*Shin v. Kong*,
    80 Cal.App.4th 498, 95 Cal.Rptr.2d 304 (1st Dist. 2000) .............................................. 17

*Spencer v. Collins*,
    156 Cal. 298 ........................................................................................... 11

*T.K. v. Adobe Sys., Inc.*,
    No. 17-CV-4595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) ................................... 10

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
    25 Cal. App. 3d 987 (1972) ............................................................................................ 7, 9

*Yeager v. Bowlin*,
    693 F.3d 1076 (9th Cir. 2012) ............................................................................................ 12

**Statutes**

Cal. Bus. & Prof. Code § 17200 et seq. ............................................................................. 3, 10

Cal. Bus. & Prof. Code § 22580 ......................................................................................... 5, 13

Cal. Bus. & Prof. Code § 22581 ................................................................................................ 5

Cal. Fam. Code § 6710 (2010) .................................................................................................. 4

Cal. Fam. Code § 6712 .............................................................................................................. 4

California Legal Remedies Act............................................................................................*passim*

Children's Online Privacy Protection Act ................................................................................. 5

Consumers Legal Remedies Act Cal. Civ. Code § 1750, *et seq.* ........................................ 3, 10

Declaratory Judgment Act ......................................................................................................... 3

Unfair Competition Law ............................................................................................... 1, 10, 17

**Other Authorities**

16 C.F.R. § 312.3 ....................................................................................................................... 5

42 Am. Jur.2d Infants............................................................................................................... 11

California S.B. 568, "Privacy Rights for California Minors in the Digital World" ................ 4, 13

Fed. R. Civ. P. 8(d)(2)............................................................................................................. 18

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 3

Restatement (Second) of Contracts § 7 cmt. b (1979) ............................................................ 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLF'S OPPN. TO DEF,'S MOTION TO DISMISS**

I.      **ISSUES TO BE DECIDED**

1.      Whether each in-App game purchase is an independent contract that can be disaffirmed by Minor Plaintiff, when the material terms of what is offered and at what price is only available at the time of the online transaction, Epic Games, Inc. ("Epic") is under no prior obligation to make an offer and  Minor Plaintiff is under no obligation to accept, *irrespective* of whether the terms from Epic's End User License Agreement (EULA) apply to that contract?

2.      Whether Declaratory Judgment is adequately pled when Epic's non-refund policy is undisputed, Epic concedes that Complaint alleges its non-refund policy correctly, Minor Plaintiff has disaffirmed in-App purchases by a pre-suit letter and subsequent filing of a lawsuit, and Plaintiff seeks declaratory relief for past and future transactions?

3.      Whether California Legal Remedies Act ("CLRA") is sufficiently pled when: (i) Epic sells *Fortnite* video game digital Content that are "goods" in the cyberworld? In the alternative, Plaintiff seeks to amend the Complaint to add "service" under CLRA, given that Epic concedes to operating a service, i.e. offering an "entertainment purchase" that is allegedly exhausted after enjoying or after being entertained?; and (ii) Minor Plaintiff was misled and misinformed by Epic's non-refund policy that is implemented in its *Fortnite* ecosystem that primarily promotes craving to make purchases?

4.      Whether Breach of Implied Duty of Good Faith and Fair Dealing is breached when Epic sells in-App purchases that are "non-refundable" using Game Currency, VBucks that is set at odd amounts and subsequently become stale or are baits that the minor cannot enjoy to its full potential?

5.      Whether Negligent Misrepresentation is sufficiently pled when Epic misleads and misrepresents minors on material facts including non-refund policy and non-disclosure of facts, Plaintiff's harm is a result of his reliance on those misrepresentations?

6.      Whether Unfair Competition Law ("UCL") is adequately pled when Epic's conduct is unlawful and unfair that meets the fraudulent conduct through its non-refund policy and operation of *Fortnite* ecosystem and there is no adequate remedy at law for ongoing or future transactions?

7.      Whether Unjust Enrichment is sufficiently pled as a quasi-contract claim seeking restitution for in-App purchases when contract terms and applicable damages through contract are disputed and any past damages do not provide a sufficient remedy for ongoing or future transactions?

## II.   INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Epic Games, Inc.'s Motion (ECF No. 18) seeking to dismiss each of Plaintiff's claims in the Complaint should be denied.  Epic while conceding many of the alleged facts in the Complaint, defiantly with a "so what" attitude, argues incorrect legal standards by heavily citing unpublished and nonprecedential case law.  Plaintiff does not merely recite the elements of the causes of action, but rather asserts facts that meet and exceed the pleading requirements.

First, Epic does not dispute, nor can it, that it specifically targets children. Yet in a willfully blind manner, Epic proclaims a non-refund policy in violation of the undisputed statutory right to disaffirm by children.

Second, Epic concedes that the non-refund policy is truthfully alleged in the Complaint.  (Epic's Memorandum Supporting its Motion to Dismiss ECF No. 18 ("Epic Memo") at pp. 7-8.)  Epic's *Fortnite* video game is a complex digital ecosystem ("*Fortnite* ecosystem") that thrives on gullible minds of children and is designed to promote addiction to video gaming in children.  Many times, by using third-party payment vendors, Epic passes the buck on refunds to the third-party vendors with detrimental impact on the financial health and mental peace of children and their families.  To support its unlawful policy, Epic cannot hang its hat on the language from its end user license agreement that states "as otherwise required by applicable law." (Epic Memo at p. 11; ECF No. 18-1, Declaration of John Farnsworth ("Epic Decl.") at ¶ 18 and Ex. A.)

Mere entering of credit card or bank account information in a video gaming platform (e.g., Playstation or Xbox) cannot be construed as a blanket permission or authorization by a parent to charge any and all amounts in different independent business transactions that occur at a later date through Epic's video-gaming software using those platforms.  Epic does not implement digital tracking of adult authorization, user age verification, receipts through email confirmation of purchases, historical, monthly or weekly statements or any other mechanisms that would promote caution and care in conducting online transactions.

## III.   FACTS

This is a class action protecting a child's navigation in the digital world of video-gaming.  Well-established tenets of contract and statutory laws protecting minors apply equally in the world of technology. In this class action, Plaintiff brings claims against Epic for declaratory, equitable and monetary relief under the Declaratory Judgment Act, California's contract laws, Consumers Legal Remedies Act Cal. Civ. Code

§ 1750, *et seq.* ("CLRA"), Breach of Good Faith and Fair Dealing, Negligent Misrepresentation, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), and/or for Unjust Enrichment.

Defendant released the video game *Fortnite* in 2017.  (ECF No. 1, "Complaint" at ¶ 5.)  The video game has been immensely popular, with an estimated 200 million gamers playing *Fortnite*.  (*Id.*)  It is known for its addictive tendencies.  (*Id*. at ¶ 11.)  Players, especially minors, spend money on microtransactions within the game, which consist of in-App purchases.  (*Id*. at ¶¶ 12, 13.)  Though many minors contract with Defendant in these microtransactions, Defendant does not allow for a general refund, as many items remain non-refundable and outside of Defendant's refund policy.  (*Id*. at ¶ 13.)

The in-App purchases include purchases of Game Currency and Content.  (Complaint at ¶¶ 2, 13, 17, 19-26, 33, 56.)  For example in-App purchases include "goods" in the cyberworld, *i.e.,* virtual supplies, ammunition, skins, motes, Outfits (*for e.g.,* "Rox Progressive, Sentinel, Bunker Jonesy), Wraps (Sentinel, Ripe), Glider, Harvesting Tool, 1 Music Track, Season Match, Season Friend Match, Battle Pass, Battle Pass tiers that are purchased from Game Currency.  (*Id*.)  Even minutes after purchase, items are not refundable, irrespective of any alleged consumption.  (*Id*. at ¶¶ 14-15.)

Before filing of this lawsuit, on May 17, 2019, Plaintiff's counsel sent a letter notifying Defendant of Plaintiff Johnny Doe's legal right to disaffirm contracts, particularly the microtransaction in-game purchases and Epic's non-refund policy that violates laws of California and most states nationwide.  (*Id*. at ¶ 69.)  Plaintiff subsequently filed this lawsuit on June 21, 2019.  (*Id*.)

## IV.  EPIC'S MOTION TO DISMISS FAILS IN ITS ENTIRETY

### A.   Legal Standards Governing Motion to Dismiss

Epic moves to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard,

the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

A claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Here, Plaintiff has met and exceeded the plausibility standard as set forth below.

**B.     Minor Plaintiff's Statutory Right to Disaffirm is Undisputed and Each in-App Purchase Can Be Independently Disaffirmed**

Minor Plaintiff's statutory right to disaffirm is undisputed in California and in most states nationwide. Cal. Fam. Code § 6710 (2010).  Section 6710 entitles Plaintiff to disaffirm. *Id*.  Filing the instant action was sufficient to disaffirm the contract. *Berg v. Taylor*, 148 Cal. App. 4th 809, 820 (2007).  California law specifically excludes certain contracts from disaffirmance: (1) a contract for necessaries for the minor, such as food, shelter, clothing or education; (2) where things were actually furnished to the minor; and (3) the contract was entered into when the minor was not under the care of a parent or guardian. Cal. Fam. Code § 6712.  None of these exceptions apply, and Defendant has not argued that they do.  Thus, clear application of the rules entitles Plaintiff to disaffirm and he has adequately done so.

To avoid application of this rule, however, Defendant argues an "entertainment" exception that does not exist.  That is, Epic argues that in-App purchases are an "entertainment purchase" that is allegedly exhausted or consumed "after being entertained" or "after enjoying the entertainment."  (Epic Memo at pp. 1, 5.)  It follows that under Epic's own reasoning that the in-App purchases are not basic necessities of food, shelter, clothing or education and none of the exceptions to minor's right to disaffirm apply. Cal. Fam. Code § 6712 (2010).   Moreover, there is no "entertainment" exception to disaffirmance on the basis of consumption for clearly returnable digital "goods."  (*See* Section IV(B)(1)-(2) below.)

Playing of a computer game is playing a game in the digital cyberworld, and a minor's statutory rights to disaffirm applies equally in the digital cyberworld.  *See, for e.g.*, California S.B. 568, "Privacy Rights for California Minors in the Digital World" (Cal. Bus. & Prof. Code § 22580-22581) took effect on Jan. 1, 2015; Children's Online Privacy Protection Act ("COPPA"); Rules 16 C.F.R. § 312.3; *See* Apple Settlement Order by this Court, *In re Apple in-App Purchase Litigation*, Civ. No. 5:11-cv-01758-EJD (N.D. Cal. October 18, 2013). "Apple shall provide full refunds to Account Holders who have been billed by Apple

for unauthorized In-App Charges incurred by minors." FTC Consent Order, *In the Matter of Apple Inc.*, Docket C-4444 (Mar. 25, 2014). "Google shall provide full refunds to Account Holders who have been billed by Google for unauthorized In-App Charges incurred by minors" FTC Consent Order, *In the Matter of Google, LLC*, Docket C-4449 (Dec. 2, 2014).

Thus, Minor Plaintiff's statutory right to disaffirm cannot be questioned.

### 1.   Each in-App Purchase of game currency or content is an independent business transaction between Minor Plaintiff (not Parent) and Epic Games

Both the versions of the end user license agreement ("EULA") that Epic cites, at best, only have an "agreement to agree" or "preliminary negotiations" on future in-App digital content purchases and game currency.  Pertinently, the license states, "Epic ***may*** offer you the ability to acquire licenses to… Game Currency or Content" (Epic Memo Ex. A at ¶ 4 emphasis added; *see also* the later version (the "amended EULA") at; Ex. B at ¶ 4).  At the time of installation, when EULA is allegedly accepted the first time, or when the amended EULA is allegedly accepted later, EULA merely includes a reference to a future offer from Epic Games to the end-user that at end-user's discretion may or may not be accepted.  In many instances, at the time of acceptance of the EULA the digital content that may be offered in the future has not even been created.  At the time of acceptance of the EULA, Epic is under no legal obligation to make any future offers of in-App purchases including Content and Game Currency.  *See In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1036 (N.D. Cal. 2012) (denying motion to dismiss by *questioning* "that the Terms & Conditions constitute a relational contract and that each subsequent transaction between a minor child and Defendant is governed by the terms of the relational contract" when Defendant has not cited any case law to support such a holding.)

There is no final offer or binding contract for the in-App Content or Game Currency purchases at the time of acceptance of the EULA or the amended EULA.  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004)) (Mutual agreement is necessary to form a contract.).  Epic cannot suggest otherwise, because at the time of installation or when the amended EULA is accepted, what content or game currency would be purchased is not offered or selected and at what price in terms of money would the Game Currency or Content will be offered or accepted is also uncertain.  Epic's offer, at future point of time, was discretionary and Epic was

1  under no legal obligation to make that offer.  Any end-user is also under no legal obligation to accept any of

2  those in-App offers.  Reference of such transactions in the EULA are preliminary negotiations between the

3  parties that may or may not wound up in a final offer and binding contract.  *See Goodworth Holdings Inc.*

4  *v. Suh*, 239 F. Supp. 2d 947, 956–57 (N.D. Cal. 2002), aff'd, 99 F. App'x 806 (9th Cir. 2004) (citing *Copeland*

5  *v. Baskin Robbins U.S.A.* 96 Cal.App.4th 1251, 117 Cal.Rptr.2d 875 (2002).)  Finding otherwise would

6  violate the fundamental tenets of contract law, not just in California, but nationwide.  The end-user clicking

7  on the in-App transaction is making an independent transaction each time.  It follows that when the end-user

8  is a minor, he is well within his rights to disaffirm selectively or all of the in-App transactions after purchase.

9       Contract of an in-App purchase occurs between Minor Plaintiff (not Parent) and Epic Games.  Epic

10 does not dispute that the in-App purchases were made by the Minor Plaintiff.  (*See* Epic Memo.)  There is

11 no "entertainment" exception to disaffirmance by any alleged consumption and Defendant's reliance (Epic

12 Memo at p. 5) on *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) from

13 Southern District of Illinois and *unpublished* opinion in *Pastor v. Putney Student Travel, Inc.* No. CV 99-

14 2062 RSWL, 1999 WL 1074120 (C.D. Cal. June 9, 1999) from Central District of California do not apply

15 because: (i) in *Dawes*, the plaintiffs continued to use Facebook and wanted to disaffirm the terms of use that

16 included forum selection clause and there was no dispute as to whether terms of use applied to her use of

17 Facebook.  Here, Plaintiff has disaffirmed the separate and independent contracts of in-App purchases by

18 sending a pre-suit letter and subsequent filing of this lawsuit; and (ii) whereas in *Pastor*, plaintiff had already

19 spent her four weeks on an Indian reservation in Montana and then wanted to disaffirm the contract after

20 suffering injuries during her four-week stay.  Here, the in-App purchases are "goods" in the cyberworld that

21 are not consumed.  For example, virtual supplies, ammunition, skins, motes, Outfits (*for e.g.,* "Rox

22 Progressive, Sentinel, Bunker Jonesy), Wraps (Sentinel, Ripe), Glider, Harvesting Tool, 1 Music Track,

23 Season Match, Season Friend Match, Battle Pass, Battle Pass tiers that are purchased from Game Currency.

24 (Complaint at ¶¶ 2, 13, 17, 19-26, 33, 56.)  Even minutes after purchase, items are not refundable,

25 irrespective of any alleged consumption.  (*Id*. at ¶ 14.)

26 / / /

27 / / /

28 / / /

**PLT.'S OPPN. TO DEF.'S MOTION TO DISMISS**

### 2. EULA does not apply because clickwrap case law requires notice to an online end-user for binding consent that is conspicuously missing here

Epic stretches the applicability of case law on clickwrap to construe a blanket permission, consent or authorization for any and all purchases through perpetuity. Clickwrap agreements that give conspicuous notice operate for software that is purchased at the time of acceptance that is not subject to change and operates in a pre-designed fashion. Here, the contract of in-App purchases is not with the Parent, but with the Minor who clicks and makes that instantaneous purchase in the future. California law is clear that there can be no consent at the time of accepting the EULA, when the material terms of what digital content or game currency may or may not be offered and at what purchase price are unknown. *See Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972) (California law is clear—"an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious."); *Aral v. Earthlink, Inc.*, 134 Cal. App. 4th 544, 559–60 (2005), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) (Absent notice there can be no consent).

Epic does not request acceptance of the EULA at the time of in-App purchase, and as such EULA does not apply to the in-App purchase. *See 123 Specht v. Netscape Communs. Corp.* 306 F.3d 17, 30 (2d Cir. 2002) (applying California law to commercial Internet transaction holding that clicking on a download button was not unambiguous manifestation of assent of the contract terms when there was no reasonably conspicuous notice of the terms). In the alternative, even if the EULA applied to the in-App purchase, the in-App purchase is an independent contract that is separate from the installation and use of the software in its normal operating mode. (*See* Section IV(B)(1) above.) Any EULA related to the in-App purchases has been disaffirmed by the pre-suit letter and the filing of this lawsuit. (*See* Section IV(C)(1).)

### 3. Minor Plaintiff did not and does not have physical access to a Parent's stored credit card or bank account information

Epic attempts to split hairs by a baseless assertion that Minor Plaintiff had access to his parent's credit card information when, in fact, the information was already in Epic's possession through its software that interacted directly and independently with minor's gaming platform. (Complaint at ¶¶ 26, 28-29.) The credit card or bank account information was not in minor's physical possession at any time. At best, Epic

1   can only create an issue of fact on parental consent or authorization for credit card use when the minor is

2   accessing Epic's software and nothing more.  Such an issue of fact cannot be grounds for dismissal under

3   12(b)(6).

4     Epic's reliance to construe "authorization" or "apparent authorization" by citing Restatement,

5   secondary sources as well as an unpublished opinion in *Grube v. Amazon* that applied laws of Utah or New

6   Hampshire (Epic Memo at pp. 5-6.) should be heavily discounted.  Notably here, Epic knows that its software

7   is targeted for minors and does not dispute that minors, not parents, make the in-App purchases.  In *Grube*

8   *v. Amazon*, Amazon had already taken corrective measures before the unpublished opinion was issued.

9   "Amazon now offers parental control settings and the ability to disable all in-app purchases, giving parents

10  like Grube the tools to prevent their children from making in-app purchase without their knowledge and

11  consent."  *Grube v. Amazon.com, Inc.*, No. 16-CV-126-LM, 2017 WL 3917602, at *4 (D.N.H. Sept. 6,

12  2017).  Whereas Grube was prompted to make an affirmative choice with respect to in-app purchases that

13  were password protected, Epic does not have in place even such basic protection to protect the account

14  holder.  *Id*; *see also Id* at *1 relying on *FTC v. Amazon.com, Inc.*, No. C14–1038–JCC, 2016 U.S. Dist.

15  LEXIS 55569 (W.D. Wash. Apr. 26, 2016).

16    In Epic's *Fortnite* ecosystem, there is no digital tracking of any parental authorization or consent.

17  (Complaint at ¶ 26.)  Epic cannot and does not claim otherwise.  (Epic Memo at p. 9.)  Payment to Epic can

18  go inadvertently and without authorization through many channels.  (Complaint at ¶ 26, 28-29.)  Epic

19  operates through independent third-party payment vendors, including, for example, Apple iPhone, Microsoft

20  Xbox, Samsung Galaxy Phones, Sony PlayStation, Xsolla as well as using its own payment system.  (*Id*.;

21  *See also*, Epic Decl." at ¶ 19.)  A parent may put in or store credit card or bank account information on a

22  gaming platform, i.e. the gaming hardware that is different and separate from Epic's *Fortnite* video game

23  including, for example, Sony Playstation, Xbox or Windows 10.  (Complaint at ¶¶ 28-29.)  Epic's software

24  when operating on such platforms may directly read that payment information and apply to transactions that

25  occur in-App, i.e., by minors when playing the game.  (Complaint at ¶¶ 16, 26.)

26      **4.**  **Minor Plaintiff's use of gift card does not impact his right to disaffirm**

27    Complaint alleges use of both financial payment information i.e. with the credit card or bank account

28  information as well as gift cards.  (Complaint at ¶¶ 26, 35.)  Epic concedes that use of gift card may be Minor

1   Plaintiff's own money and Minor Plaintiff would not need a parent's consent or authorization.  (Epic Memo

2   at p. 5.)

3       Epic makes a veiled attempt to walk away from disaffirmation by hiding behind purported consent

4   of the adult who purchased the gift card for the minor.  (Epic Memo at p. 3.)  Clearly specifics of gift card

5   purchases are not relevant here because the contracting act as discussed earlier in Section IV(B)(1)-(2) above

6   is between the Minor Plaintiff and Epic Games.  A purchaser of the gift card is not delegating his contracting

7   authority for the minor to contract with Epic Games.  Holding otherwise gives a twisted and attenuated result

8   from the perspective of contract law.  *See  Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d

9   987, 993 (1972) (California law is clear—"an offeree, regardless of apparent manifestation of his consent,

10  is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document

11  whose contractual nature is not obvious."); *Aral v. Earthlink, Inc.*, 134 Cal. App. 4th 544, 559–60 (2005),

12  *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L.

13  Ed. 2d 742 (2011) (Absent notice there can be no consent).

14      Gift cards, at issue here, include gift cards applied to Epic Games account or Epic Games' gift cards

15  for V-bucks, the *Fortnite* Game Currency, that were sold through many authorized vendors in partnership

16  with Epic, for example, including vendors like Playstation, Xbox, Amazon etc.  (Complaint at 15, 35.)  The

17  origin or source of gift cards is not relevant from contract law perspective.  *Id*.  To the extent details of such

18  use are missing from the Complaint, Epic can easily discern, is better situated, and already in possession of

19  data relating to gift card use for any associated user accounts.  (Epic Decl. at ¶ 17 citing existence of business

20  records of Minor Plaintiff's activities through the *Fortnite* ecosystem; *see also Id*. at ¶ 18-21, giving

21  additional details of user activity tracking within the *Fortnite* ecosystem.)

22      Epic cannot escape disaffirmation by claiming that all purchases through gift cards are

23  "entertainment" that are already consumed.  (*See* Section IV(B)(1)-(2) and IV(D).)

24    **C.**    **Declaratory Judgment Claim is Adequately Pled When Epic's Non-Refund Policy is**
           **Undisputed and Would Govern Future Transactions**

25

26

27       Surprisingly, Epic concedes that Epic misinforms users about Epic's non-refund policy for certain

   products.  (Epic Memo at p. 8 ("Plaintiffs are correct that Epic Games has sold certain in-game items

28  accompanied by statements that the purchases are 'not eligible for refund.'").)  Yet, Epic argues, and falsely

1  claims *no dispute* because allegedly Epic would not have denied a refund request from a minor.  (Epic Memo

2  at pp. 7-8.)  Epic is not disputing the exemplary small text in the Complaint that states, "This purchase is not

3  eligible for refund" provided on many of its digital content and in-App purchases.  (Complaint at ¶ 13.)

4  Epic's practice as a whole, which includes allowing minors to make in-App purchases and representing that

5  those sales are nonrefundable impact future and ongoing interactions between minors and Epic Games.  The

6  very case, *T.K. I* that Epic cites for the proposition that there is no dispute (Epic Memo at p. 8), allowed the

7  declaratory judgment claim in addition to damages for past harm when the declaratory judgment "would

8  govern future interfaces the ***prospect of future interactions*** between Adobe and the Class and Subclass."

9  *T.K. v. Adobe Sys., Inc.*, No. 17-CV-4595-LHK, 2018 WL 1812200 at *13 (N.D. Cal. Apr. 17, 2018) ("*T.K.

10  I*").

11       Epic argues, somehow as a defect, that the Complaint has not alleged that Minor Plaintiff has ceased

12  playing *Fortnite*.  (Epic Memo at pp. 1, 7.)  None of the claims require an allegation that Minor Plaintiff has

13  ceased playing *Fortnite*.  Yet, Epic, itself does not declare any user activity after the date of filing of the

14  Complaint.  (Epic Decl. ¶ 22.)  Here, Declaratory Judgment is the applicable remedy for on-going and

15  continuing interactions that harm Minor Plaintiff, the Class and the Sub-Class.  *Id*; (Complaint at 50.)

16       Cases in this district have made this clear.  For example, in *In re Apple Purchase Litigation*, the

17  Court denied a defendant's motion to dismiss plaintiff's declaratory relief claim under similar circumstances

18  as here.  *In re Apple Purchase Litigation*, 855 F.Supp.2d 1030 (N.D. Cal. 2012).  Similar to the facts here,

19  the Court held that parents had pled plausible claims for declaratory relief, notice under CLRA, Cal. Civil

20  Code § 1750, *et seq*., and Bus & Prof. Code § 17200 *et seq*. with sufficient particularity when children made

21  in-App purchases on a game that was free and did not require any adult verification for in-App purchases.

22  *Id*. at 1033–34 (N.D. Cal. 2012.)

23       **1.    In face of a formal Complaint, Epic's quibble about Minor Plaintiff not
24              requesting refund before communicating through attorneys, is not relevant and
              does not go towards any alleged elements of the claims**

25

26       Again, it is undisputed that Minor Plaintiff formally complained through his undersigned counsel.

27  (Complaint at ¶ 69.) The Complaint includes explicit language that the EULA does not apply to any of the

28  in-App purchases and the Minor Plaintiff is disaffirming one or more of the in-App purchases.  (Complaint

at ¶¶ 1, 14, 33, 45, 56.)  Epic attempts to create confusion by muddying waters that Plaintiff did not lodge a

1   complaint with Epic's support staff regarding its refund policy.  It is not necessary for the Plaintiff to file an

2   unofficial complaint or refund ticket, when attorneys for Plaintiff sent a letter to Epic Games that was

3   responded to by Epic Games' Counsel and Attorney of Record in this action.  (Complaint at ¶ 69).

4       Minor Plaintiff has disaffirmed the in-App purchases by filing of this action.  "Disaffirmance may

5   be made by any act or declaration and express notice to the other party is unnecessary. ***The filing of an***

6   ***action is sufficient*** (*Spencer v. Collins*, 156 Cal. 298; *Pereira v. Toscano*, 84 Cal.App. 526)."  *Celli v. Sports*

7   *Car Club of America, Inc.*, 29 Cal.App.3d 511, 511, 105 Cal.Rptr. 904 (1972) (citing California Supreme

8   Court decisions).  *See generally* 42 Am. Jur.2d Infants; *see also* Restatement (Second) of Contracts § 7 cmt.

9   b (1979); *S. Cal. Edison Co. v. Hurley*, 202 F.2d 257 (9th Cir. 1953) (a minor's contracts or conveyances are

10  voidable).

11      The simple act of filing this action is sufficient for disaffirmation.  Minor Plaintiff has done more

12  than what is sufficient.  In addition to the pre-litigation letter and filing of the Complaint, the Complaint

13  includes explicit language that the EULA does not apply to any of the in-App purchases and the Minor

14  Plaintiff is disaffirming the in-App purchases.  (Complaint at ¶ 31.)  A minor may disaffirm a contract by

15  "any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect." *Spencer*

16  *v. Collins*, 156 Cal. 298, 303 (1909).  "Express notice to the other party is unnecessary." *Abdullah v.*

17  *Abdullah*, 50 Cal. App. 115, 119 (1920) ("[F]iling of the action for a recovery. . . would be a sufficient notice

18  to the defendant of a disaffirmance of the contract . . . ."); *see also Celli v. Sports Car Club of Am., Inc.*, 29

19  Cal. App. 3d 511, 517 (1972).

20      Epic's "all or nothing" application in this context for contract law is misplaced.  Filing of this action

21  to request Epic to fix its in-App purchase policy does not necessarily require Minor Plaintiff to stop playing

22  Epic's videogame.  Since each in-App purchase is an independent contract (Section IV(B)(1)-(2) above),

23  Minor Plaintiff is well within his rights to selectively disaffirm the in-App purchases and continue to play

24  the software in its normal operating mode.  (*Id*.)  Minor Plaintiff, the Class and the Sub-Class use of Epic

25  Games' *Fortnite* ecosystem is continuing and ongoing.  Hence, injunction and restitution apply here.

26      If Epic agrees with the Minor Plaintiff and if indeed there is no dispute regarding the Minor's rights

27  (*see, for e.g.*, Epic Memo at p. 7 stating that it is "mere conjecture" that "Epic Games would have refused

28  his request for a refund of that purchase.")  and Epic's alleged good-faith response in refunding a minor to

stay in compliance with California law, counsel for the Minor Plaintiff respectfully request Epic to make complete the Prayer for relief in the Complaint.

### 2.    Epic's denial is undisputed based on its publicized non-refund policy

Epic's denial is undisputed based on its publicized non-refund policy. "In print and on the internet, statements are generally considered " published" when they are first made available to the public." *Yeager v. Bowlin*, 693 F.3d 1076, 1081-82 (9th Cir. 2012). Non-refund policy statements on Epic Games' website and software are undeniably statements attributed to Epic. *Id*. The Complaint has asserted facts that show Epic's non-refund policy. (Complaint at ¶¶ 1, 13, 35.) Nothing more is needed at the pleading stage. Epic's publicized non-refund policy and awareness of engaging in transactions with minors, both taken together are sufficient denial by Epic to comply with laws for the minors in California and nationwide.

Epic cannot escape liability by its piecemeal approach and turn around to not stand by its publicized non-refund policy with assertions that informal refund requests by Minor Plaintiff would have been honored. (Epic Memo at p. 1, 4.) This is nothing more than speculation and conjecture that is not based in law or fact. Plaintiff's reliance on those misleading statements is reasonable, harm has causal connection to those statements. Epic cannot spring up an alleged duty for Plaintiff to haggle over refunds with Epic pre-suit.

Epic, a multi-billion dollars Corporation Defendant, is well aware that its non-refund policy is not compliant with contracting laws for minors in California and nationwide (Epic Memo at p. 11 stating "this policy does not apply 'as otherwise required by applicable law.'"), yet Epic implements its non-compliant non-refund policy with defiance. Epic is actively misleading and misrepresenting gullible minors who are not aware of their own rights to disaffirm. Epic is claiming that it is not under any legal obligation to act otherwise. (*See* Epic Memo at p. 11 stating "Saying that certain in-game purchases are 'non-refundable' does not impact a minor's right to disaffirm a contract.") This is nothing more than Epic taking advantage of evolving technology space by alleging that case law and statutory rights have not caught up for an explicit direction. Epic does not perform any age verification as well as any does not perform any digital tracking to get parental approval or authorization. (Complaint at ¶¶ 16, 32.) It definitely fails the reasonable care and duty of diligence that goes towards contracting with minors.

Recent statutory law that took effect on January 1, 2015 in California explicitly requires internet operated corporations to "***provide clear instructions*** to a minor who is a registered user of the operator's

---

Internet Web site, online service, online application, or mobile application on how *the user may remove* or, if the operator prefers, *request and obtain the removal of content* or information posted on the operator's Internet Web site, online service, online application, or mobile application." (emphasis added) California S.B. 568, "Privacy Rights for California Minors in the Digital World" (Cal. Bus. & Prof. Code § 22580-22581) took effect on Jan. 1, 2015. While on its face, this statute applies to content created by a minor user, it has *persuasive authority* on standard of care, diligence and obligations on Corporations offering online transactions that target minors.

When minors are contracting on the internet or through an online entertainment service, i.e. Epic's video game *Fortnite* ecosystem, Epic has an affirmative duty to provide clear instructions on how to obtain a refund for all of its in-App game purchases without restrictions. *See Id.*; *see also id.* (for statutory restrictions on online service operators on marketing and advertising of goods or services to minors.)

### D.    CLRA is Sufficiently Pled

Defendant argues that Plaintiff's CLRA claim should be dismissed because virtual currency is not a good or service; and because Plaintiff was not misled. Both these arguments lack merit. Plaintiff put Defendant on notice with a pre-suit letter (Complaint at ¶ 69) specifically pointing Epic's non-refund policy and minor's rights to disaffirm. *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1038 (N.D. Cal. 2012).

### 1.    Epic sells both digital "Content" and "Game Currency", and at minimum, "Content" is a "Good" and Game Currency, V-Bucks is used for an "entertainment service"

Epic sells digital content, including for example, virtual supplies, ammunition, skins, motes, Outfits (*for e.g.,* "Rox Progressive, Sentinel, Bunker Jonesy), Wraps (Sentinel, Ripe), Glider, Harvesting Tool, 1 Music Track  (Complaint at ¶¶ 2, 13, 17, 19-26, 33, 56.), that qualify as digital goods in the cyberworld of video games. Epic's reliance on *Berry* that applied CLRA to extension of credit or insurance is inappropriate because the facts here can be easily distinguished from those in *Berry*. (Epic Memo at p. 8-9.) Epic's content is digital "goods" in the video game world that are closer and more akin to "goods" in the real-world. Application of Epic's content is nowhere close to extension or credit or insurance.

*Ferrington* is an **unpublished** opinion and Epic's reliance on *Ferrington* to not apply CLRA is misplaced. (Epic Memo at p. 9.) The software at issue, in *Ferrington,* was additional anti-virus software

that was sold under the guise of a free trial with automatic renewal through the McAfee software with the McAfee software transmitting the credit card information, and not the user, to this third-party. Here, the digital content is a good in the digital world. Moreover, in *Ferrington*, "the court did not analyze this assertion in any detail and left open the possibility that software could constitute a service." *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1012 (D. Minn. 2012) (discussing and citing *Ferrington* at *19*.).

The *I.B. I* Court did not examine what is at issue here, i.e. digital "Content." Relying on *Ferrington*, the *I.B. I* Court found that Facebook Credits where held to be closer to digital currency for CLRA to not apply. (Epic Memo at 9.) Here, digital "Content" is a "good" in the digital world. Further, Epic concedes that its digital currency, V-Bucks are used to provide an entertainment service. (Epic Memo at p. 5.)

Given the application of digital "good" and use of Game Currency, V-Bucks for an entertainment service, CLRA is adequately pled here. *See Doe 1 v. AOL LLC*, 719 F.Supp.2d 1102, 1112 (N.D.Cal.2010) (holding that CLRA claim against internet service provider sufficiently alleged injury resulting from AOL's public disclosure of confidential member information). Similar to facts in *Morgan*, Epic, here, has misled Minor Plaintiff and the Class by representing that sales are non-refundable for certain items and only three items can be refunded throughout the lifetime. *See Morgan v. AT & T Wireless Services, Inc.*, 177 Cal.App.4th 1235, 1260, 99 Cal.Rptr.3d 768 (2009) (reversing dismissal, based on CLRA notice requirement, of claim alleging that wireless telephone service provider violated CLRA by representing that goods or services have characteristics, uses, or benefits which they do not have); *America Online, Inc. v. Sup. Ct.*, 90 Cal.App.4th 1, 108 Cal.Rptr.2d 699 (2001) (affirming denial of AOL's motion to stay or dismiss action for inconvenient forum in putative consumer class action alleging that charging monthly service fees after plaintiffs terminated AOL subscriptions violated CLRA).

In the alternative and to the extent the Court does not find Epic's Content to be a "good" under CLRA, Plaintiff requests leave to amend the Complaint to add "service," especially since Epic concedes that in-App purchases operate like a "service", i.e. an "entertainment purchase" that is enjoyed or consumed. (Epic Memo at p. 5.)

/ / /

/ / /

/ / /

### 2. Complaint sufficiently pleads that Minor Plaintiff is misled and misinformed by the video game *Fortnite* ecosystem and the harm occurred by Minor Plaintiff's reliance on the misrepresentations

Epic's publicized non-refund policy is a denial that has misled Plaintiff, the Class and the Sub-Class. (*See* Section IV(C)(2) above.)  Minor Plaintiff is misled by the publicized "non-refund" policy on certain items. (Complaint at ¶¶ 1, 13, 35, 66, 81.)  Epic makes the video-game software in-App purchases one-click and very easy to perform.  (Complaint at ¶ 32.)  Epic impermissibly publicizes certain items are non-refundable including making such text very small for the minor plaintiff to view at the time of purchase. (Complaint at ¶ 13; *see also* Epic Memo at p. 8 ("Plaintiffs are correct that Epic Games has sold certain in-game items accompanied by statements that the purchases are 'not eligible for refund.'"); Epic Memo at p. 11 ("Saying that certain in-game purchases are "non-refundable" does not impact a minor's right to disaffirm a contract."))  Epic does not make purchase statements available for a Minor Plaintiff to assess how much he has spent to-date.  (Complaint at ¶ 34.)  Minor Plaintiff, the Class and the Sub-Class have relied on Epic's misrepresentations that have caused the harm.  (Complaint at 33-35; Section IV(C).)

### 3. Complaint properly pleads highly relevant facts that show the impact of the video game *Fortnite* Ecosystem on minors including misleading and misrepresentations

Epic's quibble that Complaint includes irrelevant facts is inappropriate.  It is well-established nationwide, "A child is not held to the same standard of conduct as an adult and is only required to exercise that degree of care which ordinarily is exercised by children of like age, mental capacity and experience." *Daun v. Truax*, 56 Cal. 2d 647, 655, 365 P.2d 407, 412 (1961).  Here, Plaintiff, the Class and the Sub-Class are minors.  Epic does not dispute that minors play its videogame *Fortnite*.  The issues central to the Complaint are a result of actions by minors taken when they are experiencing or within the cyberworld of the video game, *Fortnite* ecosystem.  (Complaint at ¶¶ 24-26.)  Facts showing the reasonableness and reliance of Minor Plaintiff and the Class including tendencies of addiction to video-gaming that subsequently have caused the harm are relevant.  (Complaint at ¶ 12; *see also* Section IV(C)(2) above showing Epic's lack of reasonable care and diligence when dealing with online transactions with Minors.)

/ / /

/ / /

**PLT.'S OPPN. TO DEF.'S MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E.   Complaint Sufficiently Pleads Breach of Implied Duty of Good Faith and Fair Dealing**

Complaint references the agreement at issue here is an independent business transaction that occurs with an in-App game purchase with the minor and Epic Games.  (*See* Section IV(B)(1)-(2) above.)  Epic targets minors to play its video game, *Fortnite*.  Epic's non-refund policies and the videogame *Fortnite* ecosystem together are misleading and misinform minors of their rights. (Complaint at ¶ 17.)  The express terms that are "non-refundable" display, "setting price of in-App purchases in odd amounts of V-bucks" that do not translate easily to real-money spent, ease of purchase not requiring parental approval and not providing a statement of past purchases, collectively act as a breach of implied duty of good faith and fair dealing. (Complaint at 12-26.)

Epic further promotes purchasing by advertising and rolling out digital content, i.e. bait Apps that becomes stale quickly that in turn promotes craving in minors to keep purchasing newer digital content. (Complaint at 47, 67, 77, 87.)  Epic breaches implied duty of good faith and fair dealing, when it expressly misinforms minors of their rights.  Epic has a duty to disclose material facts including amount spent in past-purchases and the timing of when its new digital content will be released to minors.  Minors do not have access to their Parent's credit card statements or bank account information to figure out for themselves how much they have already spent.  (Complaint at ¶ 18.)  Minors do not have access to when a particular "skin" or "emote" will become stale because Epic does not disclose the timing of release of its newer digital content. Epic's actions are a conscious and deliberate act to unfairly frustrate the minors in making more and more in-App purchases and not enjoy purchases already made.  *See Architectural Res. Grp., Inc. v. HKS, Inc.*, No. C 12-5787 SI, 2013 WL 568921, at *6 (N.D. Cal. Feb. 13, 2013) (citing *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387 (1990).)

**F.   Complaint Sufficiently Pleads Epic's Negligent Misrepresentation**

Epic has misrepresented material facts including non-disclosure of facts pertinent to an in-App purchase.  (See Section IV(B)(2) above.)  Plaintiff has complained.  (Section IV(C)(1)) Epic has denied refund. (Section IV(C)(2).)  Plaintiff's harm is a result of his reliance on Epic's misrepresentations. (Section IV(D)(2)-(3).)  Epic makes futile attempts to trivialize all the facts including impact of its video game ecosystem to merely saying "non-refundable." While conceding its non-refundable policy (Epic Memo at

pp. 8, 11), Epic attempts to deny liability by implying that words on its policy do not matter and are without meaning.  Such attempts should be disregarded.

### G.   Complaint Sufficiently Pleads UCL

#### 1.   Complaint sufficiently pleads Epic's "unlawful" and "unfair" conduct

Epic cites no cases to support its proposition that Minor Plaintiff is required to communicate his pre-suit intention to disaffirm.  (Epic Memo at 12.)  On the contrary, the law is opposite.  (*See* Section IV(C)(1) above with case law citations showing express notice is not required and a lawsuit is sufficient.)  While the Minor Plaintiff is not required to, he communicated his pre-suit intention to disaffirm with its letter to Epic Games dated May 17, 2019.  (Complaint at ¶ 69.)  Epic has denied Minor Plaintiff's claim.  (Section IV(C)(2) above.)  Minor Plaintiff has disclosed and alleged sufficient facts showing misleading, misrepresentations and a failure to disclose material facts at the time of contracting.  (Section IV(B)(1)-(4) above.)  Such conduct is unlawful and unfair.

#### 2.   Complaint sufficiently pleads Epic's "fraudulent" conduct

There is a duty to disclose between two contracting parties.  *See Shin v. Kong*, 80 Cal.App.4th 498, 509, 95 Cal.Rptr.2d 304 (1st Dist. 2000) (*citing Wilkins v. Nat'l Broad. Co*., 71 Cal.App.4th 1066, 1082, 84 Cal.Rptr.2d 329 (2d Dist. 1999)).  Non-disclosure of material terms at the time of the contract is fraudulent.  *Id*.  Minors do not have access to their Parents credit card or bank account statements at the time of in-App game purchase.  Minors also do not have information on how soon or quickly a certain digital content will get stale.  (*See* allegations in Complaint about bait Apps at ¶¶ 67, 77; *see also* Complaint at ¶¶ 16-18; *see* Section IV(B)-(C) above.)

#### 3.   Minor Plaintiff has no adequate remedy at law for future transactions

Epic correctly notes that the Complaint does not allege that Johnny Doe has ceased playing *Fortnite*.  (Epic Memo at 1.)  Yet, Epic, itself does not declare any user activity after the date of filing of the Complaint.  (Epic Decl. ¶ 22; *see also* Section IV(C).)  Epic has not cited, and cannot cite, cases to support its proposition that Minor Plaintiff has an adequate remedy at law for future transactions.  Recovery of past damages simply cannot protect Minor Plaintiff on future in-App game purchases if Epic's unlawful, unfair and fraudulent conduct continues.

/ / /

### H.  Complaint Sufficiently Pleads Unjust Enrichment

Plaintiff has sufficiently pled independent business contracts for each of the in-App game purchases. (Section IV(B)(1)-(4), Complaint at ¶ 56.)  The California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment to proceed as a quasi-contract claim seeking restitution. *See Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015).  "To the extent the district court concluded that the cause of action was nonsensical because it was duplicative of or superfluous to Astiana's other claims, this is not grounds for dismissal. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively *763 or hypothetically, either in a single count or defense or in separate ones.")."  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762–63 (9th Cir. 2015).  Here, based on the same facts, each in-App game purchase is an independent online contract that may or may not be subject to the EULA or amended EULA.  (Section IV(B)-(C).)  The contract terms and applicable damages through contract are disputed and any past damages do not provide a sufficient remedy for ongoing or future transactions.  (*Id.*)  Minor Plaintiff may not have an adequate remedy at law for damages for some if not all of the in-App game transactions, and at minimum, for any future transactions.  (Section IV(C) above.)  Minor Plaintiff has sufficiently plead unjust enrichment as a quasi-contract claim seeking restitution.

## V.  CONCLUSION

For these reasons and such other reasons as may appear just to the Court, Plaintiff Johnny Doe and his Guardian Jane Doe, respectfully request that this Court deny Defendant's Motion to dismiss the Complaint in its entirety.


Dated:  September 9, 2019                    **ONE LLP**


By:  ___/s/ Deepali A. Brahmbhatt_____
       Peter R. Afrasiabi
       Deepali A. Brahmbhatt
       John E. Lord

       Attorneys for Minor Plaintiff Johnny Doe and
       his Guardian Jane Doe

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

      I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 4000 MacArthur Boulevard, East Tower, Suite 500, Newport Beach, California 92660.

      On September 9, 2019, I caused the document(s) listed below to be served to the address(es) and by the method of service described as follows:

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Jeffrey S. Jacobson; jeffrey.jacobson@dbr.com
Ryan M. Salzman; ryan.salzman@dbr.com
DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, CA 90067

*Attorneys for Defendant Epic Games, Inc.*

[ x ]    (BY E-SERVICE) I electronically transmitted the above-described document(s) using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants on this date.

      I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

      Executed on September 9, 2019 at Newport Beach, California.

_____
Lisa Hyska