1  MATTHEW J. ADLER (SBN 273147)
   Matthew.Adler@dbr.com
2  DRINKER BIDDLE & REATH LLP
   Four Embarcadero Center, 27th Floor
3  San Francisco, California 94111-4180
   Telephone:    415-591-7500
4  Facsimile:    415-591-7510

5  JEFFREY S. JACOBSON (*pro hac vice*)
   Jeffrey.Jacobson@dbr.com
6  DRINKER BIDDLE & REATH LLP
   1177 Avenue of the Americas, 41st Floor
7  New York, New York 10036-2714
   Telephone:    212-248-3140
8  Facsimile:    212-248-3141

9  RYAN M. SALZMAN (SBN 299923)
   Ryan.Salzman@dbr.com
10 DRINKER BIDDLE & REATH LLP
   1800 Century Park East, Suite 1500
11 Los Angeles, California 90067-1517
   Telephone:    310-203-4000
12 Facsimile:    310-229-1285

13 Attorneys for Defendant
   EPIC GAMES, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY DOE, a minor, by and through his Guardian, JANE DOE, on behalf of himself and all others similarly situated, | Case No. 4:19-cv-3629-YGR |
| | Hon. Yvonne Gonzalez Rogers |
| Plaintiff, | **DEFENDANT EPIC GAMES INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, FOR TRANSFER** |
| v. | |
| EPIC GAMES, INC., a North Carolina corporation, | |
| Defendant. | Action Filed: June 21, 2019 |
| | Hearing Date: October 1, 2019<br>Time:  2:00 p.m.<br>Courtroom: 1 |
| | Trial Date: None set |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

    I.     The Fortnite EULA Compels Arbitration Of Plaintiffs' Dispute. ......................... 2

          A.     Plaintiffs Concede That The EULA Is A Valid "Clickwrap" Agreement. ............................................................................................... 2

          B.     Plaintiffs' Claim Falls Within The EULA's Definition Of "Dispute." .................................................................................................. 3

          C.     Plaintiffs' Claims For Injunctive Relief Are Arbitrable. ............................ 5

          D.     Plaintiffs Never "Disaffirmed" The Original Or Amended EULA. ........... 6

    II.    Alternatively, This Case Should Be Dismissed Or Transferred. ........................... 9

          A.     The EULA's Venue Clause Requires Transfer. ...................................... 10

          B.     Alternatively, A Traditional § 1404(a) Analysis Equally Favors Transfer. .................................................................................................. 12

CONCLUSION ........................................................................................................................ 14

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abdullah v. Abdullah*,
    50 Cal. App. 115 (1920) ............................................................................................................ 3

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2010) .................................................................................................................. 3

*AT&T Tech., Inc. v. Comm. Workers of America*,
    475 U.S. 643 (1986) .................................................................................................................. 4

*Atlantic Marine Constr. Co. v. U.S. District Court for Western District of Texas*,
    134 S. Ct. 568 (2013) .............................................................................................................. 10

*Blair v. Rent-A-Center, Inc.*,
    928 F.3d 819 (9th Cir. 2019) .................................................................................................... 6

*C.M.D. v. Facebook, Inc.*,
    621 F. App'x 488 (9th Cir. 2015) ............................................................................................ 7

*In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*,
    835 F.3d 1195 (10th Cir. 2016) ................................................................................................ 5

*Desert Outdoor Advert. v. Super. Ct.*,
    196 Cal. App. 4th 866, 127 Cal. Rptr. 3d 158 (2011) ............................................................. 5

*Doe 1 v. AOL LLC*,
    552 F.3d 1077 (9th Cir. 2009) ................................................................................................ 11

*Dupler v. Orbitz, LLC*,
    No. CV 18-2303-RGK, 2018 WL 6038309 (C.D. Cal. July 5, 2018) ..................................... 4

*E.K.D. v. Facebook, Inc.*,
    885 F. Supp. 2d 894 (S.D. Ill. 2012) ................................................................................. 7, 11

*Hanson v. TMX Finance, LLC*,
    No. 2:18-CV-616-RFB-CWH, 2019 WL 1261100 (D. Nev. Mar. 19, 2019) ......................... 3

*Hatfield v. Halifax PLC*,
    564 F.3d 1177 (9th Cir. 2009) ................................................................................................ 11

*I.B. v. Facebook, Inc.*,
    No. C 12-1894 CW, 2013 WL 6734239 (N.D. Cal. Dec. 20, 2013) ....................................... 7

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Jimenez v. Menzies Aviation Inc.*,
   No. 15-CV-2392-WHO, 2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) ................................. 5

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ................................................................................................ 14

*Lopez v. Kmart Corp.*,
   No. 15-cv-1089-JSC, 2015 WL 2062606 (N.D. Cal. May 4, 2015) .................................. 8, 9

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) ............................................................................................................ 6

*Morrow v. Norwegian Cruise Line Ltd.*,
   262 F. Supp. 2d 474 (M.D. Pa. 2002) .............................................................................. 7, 10

*Morse v. ServiceMaster Global Holdings Inc.*,
   No. C 10-628 SI, 2012 WL 4755035 (N.D. Cal. Oct. 4, 2012) ............................................. 5

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .................................................................................................................. 4

*Nedlloyd Lines B.V. v. Super. Ct.*,
   3 Cal. 4th 459 (1992) .......................................................................................................... 11

*Paster v. Putney Student Travel, Inc.*,
   No. CV 99-2062, 1999 WL 1074120 (C.D. Cal. June 9, 1999) ...................................... 7, 10

*Peers v. McLaughlin*,
   88 Cal. 294 (1891) .............................................................................................................. 11

*R.A. v. Epic Games, Inc.*,
   No. 2:19-cv-14488-GW-E (C.D. Cal., Dkt. No. 39) ............................................... 12, 13, 14

*S&J Rentals, Inc. v. Hilti, Inc.*,
   No. 2:16-cv-879-MCE-KJN, 2017 WL 1153042 (E.D. Cal. Mar. 28, 2017) ...................... 12

*Shearson/Am. Express, Inc. v. McMahon*,
   482 U.S. 220 (1987) .............................................................................................................. 4

*In re Verisign, Inc., Derivative Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ................................................................................ 5

*Voicemail Club, Inc. v. Enhanced Servs. Billing, Inc.*,
   No. C 12-2189 SI, 2012 WL 4837697 (N.D. Cal. Oct. 10, 2012) ....................................... 12

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**STATUTES, RULES & REGULATIONS**

28 U.S.C. § 1404(a) ................................................................................................ *passim*

Fed. R. Civ. P 10(a) ........................................................................................................ 1

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## INTRODUCTION

The Court has before it three motions from Epic Games. One, addressed here, seeks to compel Plaintiffs to arbitrate this dispute or, in the alternative, asks the Court to transfer the case to the Eastern District of North Carolina, either pursuant to a forum clause in the parties' contract or simply because 28 U.S.C. § 1404(a) makes North Carolina the more appropriate venue. A second motion asks the Court to find that Plaintiffs have not stated a claim upon which relief may be granted. The third would require Plaintiffs, if the Court allows them to litigate rather than arbitrate, to do so in compliance with Federal Rule of Civil Procedure 10(a), with "Jane Doe" identifying herself by her real name and "Johnny Doe" identifying himself by his real initials. If the Court grants the instant motion to compel arbitration, as it should, this would moot the other motions.

Plaintiffs' arguments against compelling arbitration are unavailing. They admit that Plaintiff Johnny Doe accepted Epic Games' End User License Agreement ("EULA"), which included an agreement to arbitrate disputes, and they do not and cannot suggest the arbitration agreement is procedurally or substantively unconscionable. They contend their dispute—a contention that Epic Games should not be able to describe certain in-game purchases as "non-refundable"—falls outside the arbitration agreement. The agreement's definition of "Disputes," however, explicitly includes disputes over in-game purchases. Plaintiffs alternatively argue that the EULA requires them to waive potential claims for "public injunctive relief," but it does not.

Separately, Plaintiffs contend that even if the arbitration agreement is otherwise binding, Johnny Doe has disaffirmed it. He has not. Plaintiffs' Complaint and pre-suit demand letter disaffirmed nothing. Plaintiffs' briefs, perhaps deliberately, have only sown confusion over what (if anything) Johnny has disaffirmed. At no point, in fact, has Johnny unequivocally disaffirmed *anything*, and certainly not the EULA. At most, he merely has asserted a desire and a purported "right" to do disaffirm particular purchases. Because Plaintiffs remain bound to the arbitration agreement that Johnny accepted and has not disaffirmed, the Court should compel arbitration.

Plaintiffs' arguments against transfer similarly fail. Just as Johnny Doe has not disaffirmed the second EULA he accepted in June 2019, which requires him to arbitrate, he has not disaffirmed

DEFENDANT EPIC GAMES INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, FOR TRANSFER - 1 - CASE NO. 4:19-CV-3629-YGR

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the first EULA he accepted in March 2018, which requires him to bring any non-arbitrable disputes in the Eastern District of North Carolina.  It also is too late for Johnny to attempt to disaffirm the earlier EULA because he already has used the in-game enhancements he purchased.  Precedent demonstrates that he cannot equitably avoid dispute resolution terms by retroactively disaffirming a purchase after enjoying its benefits.  Further, even if Johnny could disaffirm and has disaffirmed the EULAs, § 1404(a) still would compel transfer because all or substantially all of the witnesses in this case live and work in North Carolina, where Epic Games is headquartered.

## ARGUMENT

### I. The *Fortnite* EULA Compels Arbitration Of Plaintiffs' Dispute.

Plaintiffs do not dispute that Johnny Doe accepted the *Fortnite* EULAs.  They do not dispute that the EULAs are valid and enforceable "clickwrap" contracts.  Although they argue that their claims do not fall within the June 2019 EULA's broad definition of "Disputes" which must be arbitrated, neither this argument, nor their assertion that California bars arbitration of their claims, has any merit.  Plaintiffs' only remaining defense to enforcement of the arbitration requirement is a claim that Johnny has "disaffirmed" the EULA.  Plaintiffs' pre-suit demand letter, Complaint, and briefing, however, describe only a potential intention to disaffirm certain of Johnny's in-game purchases.  He has never disaffirmed the EULAs, acceptance of which allow him to play *Fortnite*.  For all these reasons, the EULA remains binding and compels arbitration of Plaintiffs' claims.

#### A. Plaintiffs Concede That The EULA Is A Valid "Clickwrap" Agreement.

Plaintiffs' opposition brief concedes that Johnny Doe accepted the *Fortnite* EULA when he established a *Fortnite* player account in March 2018.  *See* Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration (hereafter "Opp. Br.", Dkt. No. 30), at 3 ("it appears that Johnny Doe accepted the [EULA]").  Johnny agreed in that EULA to litigate any disputes over in-game purchases in North Carolina.  Plaintiffs also concede that Johnny accepted the amended EULA.  *See id.* at 4 ("On June 7, 2019, Plaintiff …accepted … an amended EULA.").  That contract requires arbitration of all disputes unless the player opts out of that requirement within 30 days, but it allows

players to choose the venue for arbitration. The amended EULA also contained a North Carolina venue clause for any disputes allegedly not subject to arbitration.

Plaintiffs do not dispute that the EULA is a valid and enforceable "clickwrap" contract. They neither do nor can raise any unconscionability defenses to its enforcement. Their Complaint (at ¶ 31) alleges that "Epic's terms of use including arbitration and class action waivers are not applicable to minors," but Plaintiffs did not reassert that argument in their brief and there is no basis for it in the law. Johnny Doe, like all other *Fortnite* players, had 30 days after accepting the EULA to opt out of the arbitration requirement by sending to a specified address a written notice containing basic information, including the player's "name, mailing address, and account name [used] while playing Fortnite." Farnsworth Decl. (Dkt. 18-1), Ex. B ¶ 12.6.

Plaintiffs never validly opted out. They attempt to argue that the filing of this lawsuit on June 21, 2019, two weeks after Johnny Doe accepted the amended EULA, substituted for following the EULA's straightforward opt-out procedures. *See* Opp. Br. at 8. The cases they cite in support of this argument, however, addressed *disaffirmation* of contracts, not whether a lawsuit substitutes for the method of notice specified in a contract. *See id.* at 8-9 (citing *Abdullah v. Abdullah*, 50 Cal. App. 115 (1920)). Plaintiffs ignored the case Epic Games cited in its opening brief—*Hanson v. TMX Finance, LLC*, No. 2:18-CV-616-RFB-CWH, 2019 WL 1261100, at *3 (D. Nev. Mar. 19, 2019)—which held that filing a lawsuit does not substitute for following a contract's procedures for opting out of arbitration. Just as importantly, Plaintiffs' Complaint did not include Johnny's actual name which Plaintiffs did not provide until after the 30 days had elapsed. *See* Brahmbhatt Decl. (Dkt. No. 33-1) ¶ 4 (admitting that Plaintiffs provided Johnny's name on July 17). Plaintiffs still have not told Epic Games Johnny's address or *Fortnite* account name. Even now, therefore, they have not complied with the EULA's out-out requirements. It should be beyond debate, therefore, that Johnny never effectively opted out of the arbitration agreement.

### B. Plaintiffs' Claim Falls Within The EULA's Definition Of "Dispute."

Courts must favor arbitration as directed by the Supreme Court in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-47 (2010). Plaintiffs do not contest that courts must "rigorously

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, FOR TRANSFER

- 3 -

CASE NO. 4:19-CV-3629-YGR

enforce agreements to arbitrate," *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987), and resolve "any doubts concerning the scope of arbitrable issues … in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Plaintiffs' claims here clearly are arbitrable. The EULA paragraph titled "Disputes We Agree to Arbitrate" defines "Disputes" broadly to include "any dispute, claim, or controversy … between You and Epic that relates to your use or attempted use of Epic's products or services and Epic's products and services generally, including without limitation the validity, enforceability, or scope of this Binding Individual Arbitration section." Farnsworth Decl. ¶ 21, Ex. B § 12.3.1. The EULA includes "Game Currency and Content" among the subjects governed by the agreement, and it states that "[a]ll purchases of Purchased Game Currency and Content are final and are not refundable, transferable, or exchangeable under any circumstances, except as otherwise required by applicable law." *Id.* ¶ 4. Because Plaintiffs' lawsuit precisely concerns whether "applicable law" requires Epic Games to refund his purchases of V-Bucks, there can be no serious debate that their claims represent a "Dispute" governed by the agreement to arbitrate. Even if Plaintiffs could manufacture doubt, the arbitration agreement also contains a broad delegation clause that requires the arbitrator, and not a court, to decide "whether a dispute is subject to arbitration under this Agreement." *Id.* ¶ 12.3.1.

Plaintiffs next argue that even if the definition of Disputes extends to their claims, the arbitration agreement should "not apply to events that occurred before [Johnny Doe accepted the agreement on] June 7, 2019." Opp. Br. at 8. Nothing in the arbitration agreement supports that construction. It states that "[t]o the maximum extent provided by applicable law," *Fortnite* players "shall not seek to bring, join, or participate in any class or representative action." Farnsworth Decl. Ex. B § 12.4. The inclusion of "participate in" makes clear that the agreement applies to pending claims. Even were there doubt about this, "[a]ny doubts as to whether a particular dispute falls within the scope of the agreement are typically resolved in favor of arbitration." *Dupler v. Orbitz, LLC*, No. CV 18-2303-RGK (GSJx), 2018 WL 6038309, at *3 (C.D. Cal. July 5, 2018) (citing *AT&T Tech., Inc. v. Comm. Workers of America*, 475 U.S. 643, 650 (1986)). That is particularly true where, as here, the arbitration agreement explicitly delegates scope decisions to the arbitrator.

Plaintiffs contend that *Morse v. ServiceMaster Global Holdings Inc.*, No. C 10-628 SI, 2012 WL 4755035 (N.D. Cal. Oct. 4, 2012), supports their argument that the arbitration agreement should not apply to acts that occurred before Johnny Doe accepted it. That is a misreading of the case. *Morse* was a multi-plaintiff employment dispute and the court compelled arbitration of most of those plaintiffs' claims. It declined to enforce arbitration only against a single plaintiff who had executed the arbitration agreement "thirteen days *after* he filed a lawsuit in this Court." *Id.* at *3. The court reached that decision not because arbitration agreements can never apply to prior claims, but only because the agreement at issue in that case explicitly applied "only to [the plaintiff's] *prospective employment*" and therefore not to "[c]laims stemming from [his] past employment." *Id.* at *4.

*Morse* distinguished *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1223-24 (N.D. Cal. 2007), where the court considered a broader definition of arbitrable disputes that is almost identical to the *Fortnite* EULA's definition. *Verisign* compelled arbitration of claims that arose before the agreement's execution, and it is consistent with a host of other cases finding that arbitration agreements can cover conduct that occurred before their effective date. *See, e.g.*, *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1202 (10th Cir. 2016) (rejecting "the argument that the agreement to arbitrate "must pre-date the actions giving rise to the dispute" as "contrary to contract principles which govern arbitration agreements.""); *Desert Outdoor Advert. v. Super. Ct.*, 196 Cal. App. 4th 866, 877 (2011) (finding no temporal limitation on arbitration clause). Epic Games' arbitration agreement broadly applies to "all disputes," regardless of when they arose, and therefore covers Plaintiffs' claims.[1]

### C. Plaintiffs' Claims For Injunctive Relief Are Arbitrable.

Plaintiffs' opposition brief makes one final attempt to allege a general defense to the arbitrability of their claims—*i.e.*, a defense that is not specific to Plaintiffs and therefore would not

---

[1] *Jimenez v. Menzies Aviation Inc.*, No. 15-CV-2392-WHO, 2015 WL 4914727 (N.D. Cal. Aug. 17, 2015), is not to the contrary. In *Jimenez*, the defendant adopted a new arbitration policy more than a year after the plaintiff had filed an employment class action, did not advise employees of the pending case, and did not provide opt-out rights. *See id.* at *1. Here, Epic Games promulgated the arbitration agreement on March 15, 2019—two months before Plaintiffs' pre-suit demand letter, and provided opt-out rights. *See* Farnsworth Decl. ¶ 13. This also means that the bulk of Plaintiffs' putative class would be bound to arbitrate even if the Court finds Plaintiffs themselves are not.

require the kind of individual inquiry that dooms any purported class action. They cite *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), and falsely describe *McGill*'s holding to be that "agreements to arbitrate claims for public injunctive relief under the CLRA are not enforceable in California." Opp. Br. at 7. That description is flatly wrong.

As the Ninth Circuit recently restated in *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019), *McGill* held only that "an agreement to *waive the right to seek* public injunctive relief" cannot be enforced. *Id.* at 824 (emphasis added). Plaintiffs admit as much later in their argument. *See* Opp. Br. at 7 (acknowledging that *McGill* "concluded that the arbitration provision at issue was invalid … insofar as it purports to waive Plaintiff's statutory right to seek [injunctive] relief").

In *McGill*, 2 Cal. 5th at 952, Citibank purported to preclude cardholders from pursuing "a … private attorney general action, … in any litigation in any court." The *Fortnite* EULA contains no similar provision blocking claims for public injunctive relief. It states that "[t]he arbitrator may award the same remedies to you individually as a court could, but only to the extent required to satisfy your individual claim." Farnsworth Decl. Ex. B ¶ 12.3. Separately, it provides that "[t]he arbitrator may only award legal or equitable remedies that are requested by You or Epic to satisfy one of our individual claims … [and] may not award relief against Epic respecting any person other than You." *Id.* ¶ 12.3.2. These limitations reinforce the EULA's prohibition on so-called "class arbitration," but they in no way preclude claimants from arbitrating any claim they could have litigated in an individual action. If Plaintiffs convince the arbitrator that they can pursue a public injunctive relief claim against Epic Games under California law, therefore—notwithstanding the EULA's requirement that North Carolina law applies to any disputes—neither Epic Games' EULA nor *McGill* precludes that same claim from proceeding in arbitration.

### D. Plaintiffs Never "Disaffirmed" The Original Or Amended EULA.

The rest of Plaintiffs' argument against requiring arbitration of their dispute is a Johnny Doe-specific contention that he has disaffirmed his June 7, 2019, acceptance of the amended EULA. Plaintiffs' problem, however, is that Johnny has never clearly said what he is or is not "disaffirming." Their briefs profess a desire for Johnny to keep playing *Fortnite*, which means he cannot disaffirm

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S REPLY IN
SUPPORT OF ITS MOTION TO COMPEL
ARBITRATION, OR IN THE
ALTERNATIVE, FOR TRANSFER

- 6 -    CASE NO. 4:19-CV-3629-YGR

the EULA. *See, e.g.*, Dkt. No. 34 at 11 ("[Johnny] is well within his rights to selectively disaffirm the in-App purchases and continue to play [*Fortnite*]...."). This lack of clarity in the briefs about what (if anything) Johnny has disaffirmed may be sloppiness or a strategic choice to retain flexibility. The Court should not presume a disaffirmation that Plaintiffs have not actually communicated.

As Epic Games has demonstrated, disaffirmation is an "all or nothing" proposition. *See* Dkt. No. 18 at 4-5. Three principles apply. First, "a party cannot apply to his own use that part of a transaction which may bring to him a benefit, and repudiate the other, which may not be in his interest to fulfill." *C.M.D. v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015); *see also I.B. v. Facebook, Inc.*, No. C 12-1894 CW, 2013 WL 6734239, at *4 (N.D. Cal. Dec. 20, 2013) ("[I]f a minor seeks to disaffirm a contract … equitable principles dictate that he or she must disaffirm the entire contract, not just the irksome portions.") (internal quotations and citation omitted). Second, and relatedly, if a minor already has enjoyed the benefit of a contract, he cannot disaffirm it after-the-fact in order to avoid its dispute resolution provisions. *See, e.g.*, *Paster v. Putney Student Travel, Inc.*, No. CV 99-2062 RSWL, 1999 WL 1074120, at *1 (C.D. Cal. June 9, 1999) (refusing to allow plaintiff to disaffirm in order to avoid dispute resolution terms after returning from the vacation for which she contracted); *see also Morrow v. Norwegian Cruise Line Ltd.*, 262 F. Supp. 2d 474, 476 (M.D. Pa. 2002) (same). Third, a minor cannot disaffirm an agreement governing his use of software while still enjoying use of that software. *See E.K.D. v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) (applying California law and rejecting attempt to disaffirm); *see also I.B.*, 2013 WL 6734239, at *4 (allowing disaffirmation only because, unlike in this case, those plaintiffs had not alleged a desire to continue using Facebook). As applied to Johnny's dispute with Epic Games, these principles mean he cannot disaffirm the first *Fortnite* EULA's dispute resolution provisions or disaffirm the amended EULA while continuing to play *Fortnite*, as his brief suggests he is doing or intends to do.

Plaintiffs admit that disaffirmation must be "unequivocal" (Opp. Br. at 6), but the Court will find no clear disaffirmation of anything in Plaintiffs' Complaint or pre-suit demand letter. Plaintiffs' May 21, 2019, letter did not disclose Johnny Doe's real name, address, or *Fortnite* username, without which Epic Games could not possibly honor a disaffirmation. It stated only that "[o]ur client can

DEFENDANT EPIC GAMES INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, FOR TRANSFER — - 7 - — CASE NO. 4:19-CV-3629-YGR

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

legally disaffirm contracts with Epic Games for in-App purchases." Lord Decl. (Dkt. No. 31-1), Ex A; *see also* Opp. Br. at 4 (demand letter "notif[ied] Defendant of [Johnny's] legal right to disaffirm contracts, particularly the microtransaction in-game purchases"). A claim about what an unnamed client "can" do is not an actionable disaffirmation of a specified contract.

Sixteen days after Johnny Doe's lawyers sent that letter, Johnny accepted the amended EULA. Disaffirmation is a retroactive act; it cannot be prospective. Plaintiffs' brief does not suggest otherwise. In other words, even if the May 21 letter disaffirmed any of Johnny's *prior* dealings with Epic Games, he then entered into a new contract that the letter could not have disaffirmed.

Plaintiffs next assert that the Complaint, filed on June 21, was a new act of disaffirmation, but that document did not disaffirm anything, either. Leaving aside that, again, the Complaint omitted Johnny Doe's name and other identifying information necessary to disaffirm, the Complaint—like the pre-suit letter—did not clearly say what, if anything, the unnamed plaintiff had disaffirmed. The closest it came was saying that "Plaintiff Johnny Doe *wanted to* disaffirm the contracts, but was not allowed to do so." Compl. ¶ 33 (emphasis added). "Wanted to" is not the same as actually disaffirming, and Plaintiffs did not even identify which "contracts" Johnny "wanted to" disaffirm.

Plaintiffs' opposition briefs, perhaps purposefully, continue the muddle. Their opposition to Epic Games' motion to compel arbitration suggests in some places that Johnny Doe has disaffirmed both "the original and amended EULAs." Opp. Br. at 1, 4, 6, 7. Elsewhere, it says only that Johnny has "disaffirmed the amended EULA," *id.* at 5, or perhaps only that "the EULA … can be still be [sic] disaffirmed on a transactional level relating to in-App purchases." *Id.* at 17. Their opposition to Epic Games' motion to dismiss, by contrast, is considerably more restrained. It explicitly asks "[w]hether each in-App game purchase is an independent contract that can be disaffirmed by Minor Plaintiff" (Dkt. No. 34 at 1); discusses Johnny's right to disaffirm "particularly [his] microtransaction in-game purchases" (*id.* at 3); and speaks of his desire only to "selectively" disaffirm purchases. *Id.* at 6, 11. These statements belie any assertion that Johnny has disaffirmed the *Fortnite* EULA.

Plaintiffs' failure to communicate an actual disaffirmation of the EULA, and Johnny Doe's apparent desire to continue playing *Fortnite*, precludes Plaintiffs from relying on *Lopez v. Kmart*

DEFENDANT EPIC GAMES INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, FOR TRANSFER - 8 - CASE NO. 4:19-CV-3629-YGR

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Corp.*, No. 15-cv-1089-JSC, 2015 WL 2062606 (N.D. Cal. May 4, 2015). In *Lopez*, the plaintiff worked for Kmart in high school and, during his employment, executed a separate agreement requiring arbitration of disputes between him and Kmart unless he opted out of that policy, which he did not do. *See id.* at *1-*2. After the plaintiff turned 18, he filed suit for wage and hour violations and, in his complaint, explicitly disaffirmed the arbitration agreement. *See id.* at *3. Magistrate Judge Corley held he had the right to disaffirm the agreement and, on that basis, denied Kmart's motion to compel arbitration. *See id.* at *5. There was no question in *Lopez* of what agreement the plaintiff disaffirmed, and Judge Corley did not hold that the plaintiff could have *continued* working at Kmart without agreeing to arbitrate disputes. For both reasons, the case therefore is inapposite.

Plaintiffs presumably know that once they assert a clear position with respect to disaffirmation of the EULAs, that decision will have consequences for their claims. "Selective disaffirmation" of certain transactions while still playing *Fortnite*, even if permissible (which it is not), is not the same as "all or nothing" disaffirmation of the *Fortnite* EULA. The Court cannot choose Plaintiffs' path for them, and it cannot presume that Johnny Doe has ceased playing *Fortnite* when his briefing states otherwise. The simple fact is that Plaintiffs have not clearly communicated Johnny's disaffirmation of the amended EULA and its arbitration agreement. "Disaffirmation," therefore is not a valid basis on which to deny Epic Games' motion to compel arbitration.

In sum, Plaintiffs admit that Johnny Doe agreed to arbitrate disputes. The arbitration agreement is in a form and was presented to Johnny in a manner that courts routinely find enforceable. Plaintiffs' dispute falls within the scope of the arbitration agreement, and Plaintiffs did not exercise their limited-time right to opt out of the requirement to arbitrate. Whether or not Johnny *can* disaffirm the agreement to arbitrate is not a question before the Court because Plaintiffs—likely by design—refuse to be clear about what Johnny is or is not "disaffirming." Plaintiffs' agreement to arbitrate, therefore, remains in effect and this Court should compel their compliance with it.

## II. Alternatively, This Case Should Be Dismissed Or Transferred.

Separate from the issue of whether Johnny Doe has disaffirmed the amended EULA to which he agreed in June 2019, Johnny *cannot* disaffirm the venue provisions of the original EULA

that he agreed to in March 2018. That is the lesson of *Paster*, 1999 WL 1074120, at *1, and *Morrow*, 262 F. Supp. 2d at 476. Once a minor has received the benefits of a purchase, he cannot equitably disaffirm the dispute resolution provisions of the contract under which the purchase was made. The EULA's North Carolina venue clause, therefore, binds Plaintiffs, and *Atlantic Marine Constr. Co. v. U.S. District Court for Western District of Texas,* 134 S. Ct. 568 (2013), requires the Court, if it does not compel Plaintiffs to arbitrate their claims, to transfer the case. Further, even if that venue clause were not valid and binding, the traditional 28 U.S.C. § 1404(a) transfer analysis equally demonstrates that the Eastern District of North Carolina is the more appropriate venue for this case.

### A. The EULA's Venue Clause Requires Transfer.

Both the EULA to which Johnny Doe agreed in March 2018 and the amended EULA to which he agreed in June 2019 require non-arbitrable disputes to be heard "exclusive[ly,] … if federal jurisdiction exists, [in] the United States District Court for the Eastern District of North Carolina." Farnsworth Decl. Ex. B ¶ 11; *see id.* Ex. A ¶ 11 ("Any action … to adjudicate any dispute must be brought in … the United States District Court for the Eastern District of North Carolina. You agree to the exclusive jurisdiction and venue of th[is] court[].")

Plaintiffs' brief tries to portray "[the] instant suit, and [their] earlier service of the CLRA [demand] letter," as sufficient to "disaffirm" both EULAs and evade the venue clause. Opp. Br. at 17. As shown above, however, neither document stated a disaffirmation, and other statements in Plaintiffs' briefs suggest a contrary intention. Indeed, even on the same page of the same brief, Plaintiffs try to argue that the EULA "can be disaffirmed on a transactional level relating to in-App purchases," whatever that may mean. Because Plaintiffs could not have played *Fortnite* or accessed in-game purchases without having agreed to the EULA, it is of no moment that Epic Games does not require "acceptance of the EULA" again and again with "each in-App purchase." *Id.* at 18.

Further, even had Plaintiffs clearly communicated disaffirmation of either EULA, which they have not, their attempt to disaffirm would not be effective. *Paster* and *Morrow* demonstrate why Johnny Doe, after having consumed and enjoyed the entertainment he purchased pursuant to the EULA, cannot retroactively disaffirm the EULA to avoid its dispute resolution provisions.

DEFENDANT EPIC GAMES INC.'S REPLY IN
SUPPORT OF ITS MOTION TO COMPEL
ARBITRATION, OR IN THE
ALTERNATIVE, FOR TRANSFER - 10 - CASE NO. 4:19-CV-3629-YGR

Other precedent—*E.K.D.*, 885 F. Supp. 2d at 899—shows that Johnny cannot continue to play *Fortnite* if he purports to disaffirm the EULA. Minors "cannot retain the contract's fruits and at the same time deny its obligations." *Id.* (quoting *Peers v. McLaughlin*, 88 Cal. 294 (1891)). Both principles preclude Johnny from litigating disputes with Epic Games outside North Carolina, where the EULAs require disputes to be venued.

If the Court agrees with Epic Games that Plaintiffs have not validly disaffirmed or cannot disaffirm the original EULA's venue provision, the Court must transfer the case to the Eastern District of North Carolina as specified in the EULA. Plaintiffs had the burden to demonstrate that the choice of law provision should not apply, *see* Dkt. No. 19 at 15, but they have not carried that burden. They certainly cannot dispute that the Eastern District of North Carolina has the required "substantial relationship" to the transactions at issue, given that Epic Games is headquartered there. *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182-83 (9th Cir. 2009); *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459 (1992) (corporate domicile creates substantial relationship).

Plaintiffs' only argument against enforcement of the EULAs' forum selection clause, assuming they are bound to it, is a misplaced reliance on *Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009).[2] In that case, AOL specified a venue for disputes—the *state* (not federal) courts of Virginia—in which "consumer class actions are not available." *Id.* at 1083. The same is not true here, as the Eastern District of North Carolina has the same class action adjudicatory powers that this Court does. Plaintiffs falsely argue that the Virginia state-court-only forum selection clause in *Doe 1* is "the same forum selection clause at issue here." Opp. Br. at 17. Plainly, it is not.

The *Doe 1* court acknowledged that "the party seeking to avoid a forum selection clause bears a heavy burden to establish a ground upon which [the court] will conclude the clause is unenforceable." 552 F.3d at 1083. Since *Doe 1*, numerous courts have distinguished that case and transferred disputes where the state-court-only, class action-waiver problem at issue in *Doe 1* is not

---

[2] Plaintiffs also contend that the EULA should somehow not apply to in-game purchases made pursuant to it. *See* Opp. Br. at 17 (The EULAs constitute "an 'agreement to agree' on future in-App digital content purchases and game currency.") Of course, that is exactly the point of a EULA. It is intended to govern one's enjoyment of interactive software in which in-game purchases are available but not required.

DEFENDANT EPIC GAMES INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, FOR TRANSFER - 11 - CASE NO. 4:19-CV-3629-YGR

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

present. *See, e.g., S&J Rentals, Inc. v. Hilti, Inc.*, No. 2:16-cv-879-MCE-KJN, 2017 WL 1153042, at *4 (E.D. Cal. Mar. 28, 2017); *Voicemail Club, Inc. v. Enhanced Servs. Billing, Inc.*, No. C 12-2189 SI, 2012 WL 4837697, at *3-*4 (N.D. Cal. Oct. 10, 2012). This Court should do the same.

### B. Alternatively, A Traditional § 1404(a) Analysis Equally Favors Transfer.

The Court need not (and, indeed, cannot) conduct the full analysis required under 28 U.S.C. § 1404(a) if it concludes, as it should, that Plaintiffs are bound by the EULA's North Carolina venue provision. Even if the Court conducts a full § 1404(a) analysis, however, it still should find that Plaintiffs' dispute, if not arbitrable, belongs in the Eastern District of North Carolina. That is the conclusion reached in *R.A. v. Epic Games, Inc.*, No. 2:19-cv-14488-GW-E (C.D. Cal., Dkt. No. 39), and Plaintiffs' brief offers no compelling reason why this Court should rule differently.

Plaintiffs base their opposition to transfer, and their attempt to distinguish the *R.A.* case, primarily on Epic Games having a 50-employee facility in Larkspur, California. Plaintiffs do not and cannot dispute, however, that Epic Games' headquarters is in Cary, North Carolina. Further, the Farnsworth Declaration stands unrebutted:

- "Epic Games' senior leadership team works principally at the Cary, North Carolina headquarters or at nearby facilities, as do hundreds of other employees."

- "All of the Epic Games employees involved in the relevant decisions concerning [the marketing of in-game items and Epic Games' refund policies], and to all of the business practices of Epic Games referenced in the Complaint, work in or near the Cary, North Carolina headquarters."

- "None of the employees who work from the Larkspur location are involved in policy-making on any subject, nor is any a decision-maker as to any of Epic Games' marketing or refund policies at issue in Plaintiffs' Complaint."

Farnsworth Decl. ¶¶ 3-5, 7.

Plaintiffs incorrectly assert that engineers at the Larkspur facility "will likely have discoverable information." Opp. Br. at 14. The document they submitted, however, shows that employees in Larkspur do not work on *Fortnite*. *See* Lord Decl. Ex. D (Dkt. No. 31-4) (Epic's "team here in the Bay Area" is "build[ing] the future of Unreal," Epic Games' Unreal Engine 4 product. All the employees with information actually relevant to this case work in North Carolina.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S REPLY IN
SUPPORT OF ITS MOTION TO COMPEL
ARBITRATION, OR IN THE
ALTERNATIVE, FOR TRANSFER

- 12 -   CASE NO. 4:19-CV-3629-YGR

Plaintiffs contend it should matter that Epic Games currently is advertising four job openings in Larkspur for software engineers and developers. *See* Opp. Br. at 12. Notably, however, the document that Plaintiffs proffer shows Epic Games has nearly twice as many *vacant* jobs at "Cary Headquarters NC" (92) as the total number of employees (50) it has at Larkspur. *See* Lord Declaration (Dkt. No. 31-2), Ex. B. The four vacancies at Larkspur rank tenth around the world, below Epic Games' offices in Bellevue, Washington (16 job openings), Montreal, Quebec (10), and seven other cities. *See id.* Larkspur simply is not a principal place of Epic Games' business, and the employees who work there have no relevance to the issues over which Plaintiffs are suing.[3]

Beyond the irrelevant office in Larkspur, Plaintiffs offer only their own residency in this District as a basis for venue.[4] Epic Games' opening brief demonstrated that a plaintiff's choice of forum is entitled to much less weight when that plaintiff is seeking to represent a nationwide class. *See* Dkt. No. 19 at 18-19. Plaintiffs' brief (at 12) admitted that their choice of forum is entitled at least to "less" weight. As the *R.A.* court recognized, "the reality is that one party will have to travel cross-country for trial depending on where the venue is located," and because "nearly all of the witnesses and operative facts are in North Carolina," that is where the case belongs.

Under § 1404(a), convenience of the parties and witnesses is the most important factor in the transfer analysis. That factor favors North Carolina, as the *R.A.* court found. Only secondarily do courts consider the other factors set forth on page 17 of Epic Games' opening brief. The *R.A.* court

---

[3] Plaintiffs' brief also repeatedly asserts that "Defendants' source code and engineering software is at issue in this case." Opp. Br. at 2; *see also id.* at 11, 13, 15. Even were this true, it would not make any Larkspur employee a relevant witness. Under no circumstances, however, will source code be relevant to this dispute. Epic Games' refund policies are set in North Carolina, and players must request refunds by contacting customer service personnel. Nothing supports Plaintiffs' statements that "how Fortnite allows [consumers] to seek a refund … can be confirmed by examining the source code" (*id.* at 13), or that "the underlying [refund] rules and policies … are implemented by the source code" (*id.* at 15). Plaintiffs cite nothing to support either statement.

[4] Plaintiffs' Complaint (at ¶ 4) alleged only that Plaintiffs live "in California," without specifying the District of their residency. On that basis, Epic Games properly moved to dismiss this case as improperly venued. Plaintiffs' only response was a baseless contention that Epic Games somehow "waived" its venue defense by not asserting it in the same brief where presented Rule 12(b)(6) defenses, even though the two briefs were filed together. The Court need not reach this issue, however, because Plaintiffs have corrected the deficiency in their Complaint by affirming that they reside "in the Northern District of California." Jane Doe Decl. (Dkt. No. 32) ¶ 2. This residency declaration allows Plaintiffs to file a case in this District, but does not does not impact either the enforceability of the EULA's venue clause or the propriety of transfer under 28 U.S.C. § 1404(a).

DEFENDANT EPIC GAMES INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, FOR TRANSFER - 13 - CASE NO. 4:19-CV-3629-YGR

considered those other § 1404(a) factors, set forth in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) to be "largely neutral." *R.A.*, Dkt. No. 39, at 15. The same likely is true here, although a few factors tip decidedly to North Carolina.

- The "relevant agreements"—the EULAs—were drafted in North Carolina, and Plaintiffs accepted them in this District. The factor is neutral.

- The parties dispute whether California or North Carolina law will apply to Plaintiffs' substantive dispute, so it is too early to determine which court will have more "familiar[ity] with the governing law."

- Epic Games has employees in this District, but many more in North Carolina, and its contacts with this District are not "rel[evant] to the plaintiff's cause of action."

- As the *R.A.* court found, the overall "cost of litigation" will be lower in North Carolina, where the bulk of witnesses are located.

- If the case were to be tried today, most relevant witnesses would be current Epic Games employees based in North Carolina. By the time the case actually comes to trial, however, it is likely that at least some of those current employees will have become former employees and therefore non-parties. Assuming they remain in the state where they currently reside—North Carolina—a North Carolina court will be better positioned to compel their attendance at trial. Plaintiffs, for their part, have not identified any non-party witnesses whom they may call to testify at trial.

- The "ease of access to sources of proof" tips slightly toward North Carolina, where Epic Games' relevant documents are located.

- "The presence of a forum selection clause" tips to North Carolina.

- "The relevant public policy of the forum state" is, at worst, neutral. North Carolina has as much interest in regulating the conduct of a corporation based there as California does in protecting its residents. Importantly, however, Plaintiffs are seeking to represent a nationwide class that cannot look to California law.

## **CONCLUSION**

Plaintiffs' paramount interests seem to be to litigate confidentially and to stay in this District. Given those interests, it is hard to understand why Plaintiffs are resisting arbitration of this dispute. Arbitration would be confidential, and pursuant to the arbitration agreement, they can choose to have the hearing conducted near their home. Epic Games obviously believes it is doing nothing wrong by describing certain in-game purchases as "non-refundable," and sees no merit in

Plaintiffs' claim for public injunctive relief, but if an arbitrator disagrees, the arbitrator would have the same power as this Court (or the Eastern District of North Carolina) to order a change.

Plaintiffs' arguments against arbitration are unpersuasive. Johnny Doe's agreement to arbitrate is valid and binding, the arbitration agreement clearly covers this dispute, and he has not validly disaffirmed that agreement. The Court therefore should compel arbitration.

If the Court does not compel arbitration, it should transfer this case to North Carolina. Johnny Doe neither has disaffirmed nor can disaffirm the dispute resolution provisions of a contract —the EULA he accepted in March 2018—pursuant to which he already made and enjoyed in-game purchases. He remains bound to those provisions, including the provision requiring him to bring litigated disputes in North Carolina. Separately, even if Johnny Doe has disaffirmed the EULA, the case belongs in North Carolina by operation of the traditional § 1404(a) transfer factors.

For each of the foregoing reasons, and as set forth in Epic Games' opening brief, Epic Games respectfully requests that this Court compel arbitration, or in the alternative, transfer this case to the Eastern District of North Carolina pursuant to the EULA, or 28 U.S.C. § 1404(a).

Dated: September 16, 2019                                  DRINKER BIDDLE & REATH LLP


By: */s/ Jeffrey S. Jacobson*
Jeffrey S. Jacobson (*pro hac vice*)
Matthew J. Adler
Ryan M. Salzman

Attorneys for Defendant
EPIC GAMES, INC.