1    MATTHEW J. ADLER (SBN 273147)
     Matthew.Adler@dbr.com
2    DRINKER BIDDLE & REATH LLP
     Four Embarcadero Center, 27th Floor
3    San Francisco, California 94111-4180
     Telephone:     415-591-7500
4    Facsimile:     415-591-7510

5    JEFFREY S. JACOBSON (*pro hac vice*)
     Jeffrey.Jacobson@dbr.com
6    DRINKER BIDDLE & REATH LLP
     1177 Avenue of the Americas, 41st Floor
7    New York, New York  10036-2714
     Telephone:     212-248-3140
8    Facsimile:     212-248-3141

9    RYAN M. SALZMAN (SBN 299923)
     Ryan.Salzman@dbr.com
10   DRINKER BIDDLE & REATH LLP
     1800 Century Park East, Suite 1500
11   Los Angeles, California  90067-1517
     Telephone:     310-203-4000
12   Facsimile:     310-229-1285

13   Attorneys for Defendant
     EPIC GAMES, INC.

14

15                    **UNITED STATES DISTRICT COURT**

16                    **NORTHERN DISTRICT OF CALIFORNIA**

17

18                                              Case No. 4:19-cv-3629-YGR

19   JOHNNY DOE, a minor, by and through        Hon. Yvonne Gonzalez Rogers
     his Guardian, JANE DOE, on behalf of
20   himself and all others similarly situated,  **REPLY TO PLAINTIFFS' OPPOSITION
                                                  TO MOTION TO DISMISS PLAINTIFFS'**
21                    Plaintiff,                  **COMPLAINT PURSUANT TO FEDERAL
                                                  RULE OF CIVIL PROCEDURE 12(b)(6)**
22            v.
                                                 Action Filed:  June 21, 2019
23   EPIC GAMES, INC.,
                                                 Hearing Date: October 1, 2019
24                    Defendant.                 Time:          2:00 p.m.
                                                 Courtroom:     1
25
                                                 Trial Date:    None set
26

27

28

DRINKER BIDDLE &
   REATH LLP          DEFENDANT EPIC GAMES INC.'S REPLY ISO
 ATTORNEYS AT LAW     MOTION TO DISMISS PLAINTIFFS' COMPLAINT                CASE NO. 4:19-cv-3629-YGR
  SAN FRANCISCO

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ......................................................................................................... 1

II.    ARGUMENT ................................................................................................................ 2

    A.    Plaintiffs' Complaint Omits Nearly Every Fact Relevant To Their Claims. .......... 2

    B.    Plaintiffs Seek Disaffirmation Rights That Are At Odds With The Equities. ........ 3

    C.    Unable To Plead Facts Or Rely On Relevant Precedent, Plaintiffs Set Up Straw Men. ...............................................................................................................5

    D.    Plaintiffs Have Not Satisfied The Elements Of Any Cause of Action. ..................7

        1.    Plaintiffs Are Not Entitled To A Declaratory Judgment...........................7

        2.    Plaintiffs Cannot Pursue A Claim Under the CLRA. ..............................8

            i)    Virtual Currency Is Not A "Good" Or "Service."..........................8

            ii)    Johnny Doe Was In No Way "Misled." ........................................9

        3.    Epic Games Did Not Breach The Implied Duty Of Good Faith.................9

        4.    Epic Games Committed No "Negligent Misrepresentation."...................10

        5.    Plaintiffs Do Not Adequately Plead Any Violation By Epic Games Of The Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. ........ 10

        6.    Epic Games Has Not Been "Unjustly Enriched."....................................11

III.    CONCLUSION............................................................................................................. 12

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
NEW YORK

REPLY MEMORANDUM IN SUPPORT OF MOTION TO
COMPEL ARBITRATION OR TRANSFER    - i -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A.V. v. iParadigms Liab. Co.*,
  544 F. Supp. 2d 473 (E.D. Va. 2008), *aff'd in part, rev'd in part sub nom. A.V.
  ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009)...................................... 4

*American Online, Inc. v. Sup. Ct.*,
  90 Cal.App.4th 1, 108 Cal.Rptr.2d 699 (2001) ...................................................................... 8

*In re Apple In-App Purchase Litig.*,
  855 F. Supp. 2d 1030 (N.D. Cal. 2012) .........................................................................6, 7, 8

*Architectural Res. Grp., Inc. v. HKS, Inc.*,
  No. C 12-5787 SI, 2013 WL 568921 (N.D. Cal. Feb. 13, 2013).......................................... 10

*C.M.D. ex rel. De Young v. Facebook, Inc.*,
  621 F. App'x 488 (9th Cir. 2015) .................................................................................... 4, 11

*Doe 1 v. AOL LLC*,
  719 F. Supp. 2d 1102 (N.D. Cal. 2010) ................................................................................ 8

*Hastings v. Dollarhide*,
  24 Cal. 195 (1864) ................................................................................................................ 7

*I.B. v. Facebook, Inc.*,
  905 F. Supp. 2d 989 (N.D. Cal. 2012) ............................................................................... 8, 9

*I.B. v. Facebook, Inc.*,
  No. C 1201894 CW, 2013 WL 6734239 (N.D. Cal. Dec. 20, 2013)...................................... 4

*Imber-Gluck v. Google, Inc.*,
  No. 5:14-CV-01070-RMW, 2014 WL 3600506 (N.D. Cal. July 21, 2014) ........................... 7

*Khoday v. Symantec Corp.*,
  858 F. Supp. 2d 1004 (D. Minn. 2012) ................................................................................. 8

*MacGreal v. Taylor*,
  167 U.S. 688 (1897)............................................................................................................... 4

*Morgan v. AT&T Wireless Servs., Inc.*,
  177 Cal. App. 4th 1235 (2009) ............................................................................................. 8

*Paster v. Putney Student Travel, Inc.*,
  No. CV 99-2062 RSWL, 1999 WL 1074120 (C.D. Cal. June 9, 1999) ................................ 7

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION TO
COMPEL ARBITRATION OR TRANSFER

- ii -

*Peterson v. AWJ Global Sustainable Fund, LP*,
No. 15-cv-00650-CRB, 2015 WL 5921225 (N.D. Cal. Oct. 11, 2015) .................................. 11

*Shin v. Kong*,
80 Cal. App. 4th 498, 95 Cal. Rptr. 2d 304 (2000) .................................................................. 11

*Smith v. Nationstar Mortg. LLC*,
No. CV 15-02498, 2015 WL 4652699 (C.D. Cal. Aug. 4, 2015) ............................................ 11

*T. K. v. Adobe Sys. Inc.*,
No. 17-CV-04595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) ............................ 4, 9

**STATUTES, RULES & REGULATIONS**

Cal. Civ. Code § 1770(a) ................................................................................................................ 9

California Family Code § 6710 ....................................................................................................... 2

Children's Online Protection Privacy Act ...................................................................................... 5

Consumers Legal Remedies Act ................................................................................................... 8, 9

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION TO
COMPEL ARBITRATION OR TRANSFER

- iii -

1

## I.     INTRODUCTION

2          Plaintiffs' opposition to Epic Games, Inc.'s Rule 12(b)(6) motion (hereafter "Opp. Br.," Dkt

3     No. 34) demonstrates that they have no cognizable claim.

4          The supposed basis of Plaintiffs' Complaint is that Epic Games may not provide refunds or

5     permit minors to disaffirm contracts with the company when applicable law so requires.  Epic

6     Games' Opening Brief (Dkt. No. 18) pointed out, however, that Plaintiffs do not actually allege

7     that they ever communicated to Epic Games a refund request or an intention to disaffirm any

8     contract.  Plaintiffs' brief admits that this is true.  *See* Opp. Br. at 10-11 ("Plaintiff[s] did not lodge

9     a complaint with Epic's support staff regarding its refund policy."); *id.* at 17 (contending that their

10    May 21, 2019, letter to Epic Games was their first communication of Plaintiff's "pre-suit intention

11    to disaffirm").  The Court's analysis of this motion to dismiss can stop right there.

12         Digging deeper, it seemed from Plaintiffs' Complaint as though they were complaining

13    about Epic Games having described some items available for *Fortnite* in-game purchase as "non-

14    refundable."  *See* Compl. ¶ 13 (depicting "non-refundable" items); *id.* ¶ 33 (alleging that Johnny

15    Doe "made several in-App purchases that were labeled non-refundable").  Plaintiffs' opposition

16    brief, however, seems to concede preemptively that they never actually saw these descriptions

17    before or even after Johnny Doe made his purchases.  *See* Opp. Br. at 15 ("non-refundable"

18    descriptions were in "text very small for the minor plaintiff to view at the time of purchase").

19    Probably for that reason, their brief recasts their claim as being about an alleged "publicized non-

20    refund policy," rather than the "non-refundable" descriptions on some items.  *Id.* at 13, 15.  But

21    because Epic Games nowhere has communicated, ever, that minors cannot disaffirm contracts,

22    what Plaintiffs mean when they reference a "publicized non-refund policy" is a mystery.

23         The only online contract at issue in this case is Epic Games' End User License Agreement

24    ("EULA").  Plaintiffs admit that they are suing over the EULA.  *See* Opp. Br. at 12 (identifying

25    "[n]on-refund policy statements on Epic Games' website").  Plaintiff Johnny Doe admits he agreed

26    to the EULA before he could play Epic Games' *Fortnite* game or make any in-game purchases

27    while playing.  *See* Dkt. No. 30 at 3-4.  Both the EULA in effect when Johnny Doe first accepted

28    it and the amended EULA he accepted in June 2019 stated that "[a]ll purchases of Purchased Game

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S REPLY ISO
MOTION TO DISMISS PLAINTIFFS' COMPLAINT                    - 1 -                    CASE NO. 4:19-CV-3629-YGR

1    Currency and Content are final and are not refundable, transferable, or exchangeable under any

2    circumstances, *except as otherwise required by applicable law.*" Farnsworth Decl. (Dkt. No. 18-

3    1) Ex. A ¶ 4 & Ex. B. ¶ 4 (emphasis added); *see also id.* Ex. A & Ex. B ¶ 10 ("*Except to the extent*

4    *required by law,* all payments and fees are non-refundable) (emphasis added).  In other words, far

5    from misleading minors about their potential ability to disaffirm, Epic Games' EULA made clear

6    that players will receive refunds whenever applicable law requires it.

7            Plaintiffs seem to confess having absolutely no idea how Epic Games would have responded

8    to a request from Johnny Doe for a refund of any purchase, particularly if he had made a request

9    "minutes after purchase," before he had used the in-game enhancement he bought.  Opp. Br. at 3.

10   Plaintiffs' Complaint only theorizes about what Epic Games' response *might have been*.  They are

11   engaging in this pure speculation, moreover, without acknowledging the actual words of the only

12   published "policy" statement Epic Games had made about refunds—the EULA—which states that

13   Epic Games will provide refunds when applicable law requires it to do so.

14           Nothing in the EULA or any other document cited by Plaintiffs suggests that Epic Games

15   would disregard its obligations under California Family Code § 6710 or any other law.  Plaintiffs'

16   imagining to the contrary does not state a claim under any of the statutes or common-law causes of

17   action their Complaint invokes.  The Court should dismiss Plaintiffs' Complaint, and because

18   Plaintiffs now have admitted that they never sought a refund from Epic Games before suing, any

19   amendment would be futile.  The dismissal, therefore, should be with prejudice.

## II.    ARGUMENT

### A.    Plaintiffs' Complaint Omits Nearly Every Fact Relevant To Their Claims.

22           As Epic Games showed in its Opening Brief, Plaintiffs' Complaint omits every detail

23   necessary to judge whether Johnny Doe even has a legal right to disaffirm any purchases he made.

24   Plaintiffs' brief (at 10) contends that "the complaint includes explicit language that the EULA does

25   not apply to any of the in-App purchases and the Minor Plaintiff is disaffirming one or more of

26   [his] in-App purchases," and cites paragraphs 1, 14, 33, 45, and 65 of the Complaint as support for

27   this.  The Court will search those paragraphs in vain, however, for any such language, "explicit" or

28   otherwise.  Paragraph 1 states that Plaintiffs are seeking to vindicate "a minor's right to disaffirm,"

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S REPLY ISO
MOTION TO DISMISS PLAINTIFFS' COMPLAINT          - 2 -          CASE NO. 4:19-CV-3629-YGR

1  which is not in question.  Paragraphs 14 and 33 contain bare assertions that "minors are not able to

2  … disaffirm" and that Johnny Doe would not have been able to disaffirm, which purported beliefs

3  Plaintiffs never tested because Johnny never sought a refund.  Paragraphs 45 (describing who might

4  be a "class member") and 65 (stating purported legal violations) are simply irrelevant.  The reality,

5  which Plaintiffs cannot dispute, is that they never have alleged what Johnny purchased or when,

6  nor stated clearly what Johnny would like to disaffirm.

7      Plaintiffs are not even playing it straight with respect to the means Johnny Doe allegedly

8  used to make his purchases.  The Complaint alleges that Johnny used "his own money through gift

9  cards received on social occasions including birthdays and such."  Compl. ¶ 35; *see also id.* ¶¶ 1,

10  15 (contending the case concerns "gift card[s]"); *id.* ¶¶ 38-39 (defining the putative class as minors

11  who made purchases "with their own gift card").  Now that Plaintiffs have disclosed Johnny's

12  identity to Epic Games, however, and realize that Epic Games can investigate whether their claim

13  about his use of "gift cards" is true (which, apparently, it is not), Plaintiffs are hedging.  Their brief

14  (at 8) falsely states that their "[c]omplaint alleges use of both … credit card or bank account

15  information as well as gift cards."  That is not what the Complaint says, and a minor cannot

16  disaffirm authorized transactions he makes with a parent's credit card.  *See* Opening Brief at 5-6.

17      Epic Games' Opening Brief (at 3) showed that if Johnny Doe did use gift cards for in-game

18  purchases, then depending on what kind of card he used, the card's terms and conditions may

19  preclude Plaintiffs' claims for the same reason they could not sue over purchases made using a

20  parent's credit card: the terms may provide that the adult giftor of the card is the actual "purchaser."

21  Plaintiffs' only response to this argument was a contention, unsupported by any authority, that "a

22  purchaser of the gift card is not delegating his contracting authority for the minor to contract with

23  Epic Games."  Opp. Br. at 9.  This is exactly wrong, as the exemplar gift card terms that Epic

24  Games put before the court show.  Plaintiffs' failure to describe what kind of gift card Johnny

25  allegedly used is a separate reason to dismiss the Complaint.

26  **B.    Plaintiffs Seek Disaffirmation Rights That Are At Odds With The Equities.**

27      Disaffirmation of any contract is an equitable concept.  *See* Opening Brief at 4-5.  Courts

28  must "do justice to the adult," if possible, "without disregarding or impairing the principle that

1   allows an infant … to disaffirm his contracts." *Id.* (quoting *MacGreal v. Taylor*, 167 U.S. 688, 700

2   (1897)).  Without knowing what contracts or individual purchases Johnny Doe is trying to disaffirm

3   and under what circumstances, the Court cannot determine whether it would be equitable to allow

4   disaffirmation.  Plaintiffs' attempt to challenge a non-existent "non-refundable policy" in a vacuum,

5   without ever having sought a refund, is as untenable as it is unprecedented.

6          The closest analogue to Plaintiffs' apparent claim here, at least as now described in

7   Plaintiffs' opposition brief, is that which failed in *T. K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK,

8   2018 WL 1812200 (N.D. Cal. Apr. 17, 2018).  The plaintiff in *T.K.* claimed that a provision in the

9   defendant's online terms of service—"termination of your account does not relieve you of any

10  obligation to pay any outstanding fees"—suggested Adobe may not allow minors to disaffirm

11  purchases and receive refunds.  *Id.* at *1.  Epic Games' EULA has no equivalent provision, but the

12  *T.K.* plaintiff and Plaintiffs here do have one trait in common:  Neither in *T.K.* nor in this case did

13  the plaintiffs claim to have read the online terms or relied on them.  *See id.* at *7.  As a result, the

14  *T.K.* court dismissed that plaintiff's claims arising from the terms of service.  The *T.K.* court allowed

15  that plaintiff to pursue other theories only because she had requested a refund pursuant to her

16  disaffirmation rights and the defendant refused to provide a refund.  *See id.*  Plaintiffs here can

17  make no such claim.

18         The *T.K.* court dismissed all claims about the defendant's online terms because the minor

19  had not read the terms and could not have been misled by them.  That court, therefore, did not have

20  to confront a much more fundamental failing that Plaintiffs' claims here share:  Plaintiffs are suing

21  over one aspect of a contractual relationship—the EULA's refund provision—while proposing to

22  disaffirm others (*i.e.*, the EULA's dispute resolution terms).  Courts consistently have rejected such

23  attempts.  *See C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015);

24  *see also I.B. v. Facebook, Inc.*, No. C 12-1894 CW, 2013 WL 6734239, at *4 (N.D. Cal. Dec. 20,

25  2013) ("if a minor seeks to disaffirm a contract … equitable principles dictate that he or she must

26  disaffirm the entire contract, not just the irksome portions") (internal quotations and citation

27  omitted); *see also A.V. v. iParadigms Liab. Co.*, 544 F. Supp. 2d 473, 481 (E.D. Va. 2008), *aff'd in*

28  *part, rev'd in part sub nom. A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630 (4th Cir.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S REPLY ISO
MOTION TO DISMISS PLAINTIFFS' COMPLAINT                - 4 -                CASE NO. 4:19-cv-3629-YGR

1  2009) ("Plaintiffs cannot use the infancy defense to void their contractual obligations while

2  retaining the benefits of the contract."). Equity does not allow, and no court ever has permitted, a

3  plaintiff to enjoy the benefits of a contract, sue over it, and reject only certain of the contract's

4  provisions so they can strengthen their case or sue in their preferred venue.

5      As Epic Games' Opening Brief (at 2) demonstrated, the only disaffirmation claims that have

6  ever survived dismissal were those predicated on an actual refusal to honor a disaffirmation. Even

7  assuming it is possible for a company to reject disaffirmation anticipatorily, Plaintiffs cannot claim

8  that Epic Games did so in its EULA or anywhere else. Plaintiffs' bobbing-and-weaving through

9  the EULA—mischaracterizing its clear refund language, flouting its dispute resolution provisions,

10  and asserting a right to disaffirm only "selective" transactions made pursuant to the EULA—does

11  not satisfy the equitable principles behind a minor's limited disaffirmation rights.

12  **C.**  **Unable To Plead Facts Or Rely On Relevant Precedent, Plaintiffs Set Up Straw Men.**

13      Because Plaintiffs' Complaint alleges none of the necessary facts and they cannot rely on

14  precedent to support any of their claims, Plaintiffs' opposition brief is a tough slog through tortured

15  analogies and straw-man arguments.

16      Plaintiffs cannot analogize their case to settlements involving Apple and Google. Parents

17  in those cases sued after their children were able make purchases on the parents' credit accounts

18  without authorization. *See* Opp. Br. at 4-5. Those were settlements, however, not judicial findings.

19  Plaintiffs here, moreover, allege only that Johnny Doe intentionally made purchases using "his own

20  money." Compl. ¶ 35. They are not complaining about any purchases Johnny made on his parents'

21  payment accounts without permission.

22      Next, for no discernible reason (except perhaps to inflame), Plaintiffs attempt to rely on

23  statutes proposed or enacted to protect the online privacy of minors. *See* Opp. Br. at 4 (citing

24  California S.B. 568 ("Privacy Rights for Minors in the Digital World") and the Children's Online

25  Protection Privacy Act). Even if California S.B. 568 is "*persuasive authority* on standard of care,

26  diligence and obligations on Corporations offering online transactions to minors" *id.* at 13

27  (emphasis in the original)—and it is not—this has no relevance to the question of whether a seller

28  may describe an item for sale as "non-refundable … except where required by law." Neither statute

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S REPLY ISO
MOTION TO DISMISS PLAINTIFFS' COMPLAINT   - 5 -   CASE NO. 4:19-CV-3629-YGR

1    addresses a minor's ability to disaffirm contracts or impacts refund policies.  Plaintiffs' opposition

2    brief does not provide any explanation as to why they have cited these statutes, and none is apparent.

3         Plaintiffs then contend that the EULA is "[not a] binding contract for the in-App Content

4    or Game Currency purchases" because Epic Games does not present the EULA to players over and

5    over again each time they make a new purchase.  Opp. Br. at 5.  Plaintiffs do not cite any authority

6    suggesting a requirement to do so, and none exists.  Nor can Plaintiffs cite any authority that a

7    binding contract does not apply to actions later performed pursuant to it.  Players like Johnny Doe

8    cannot enter the *Fortnite* game environment without having first agreed to the EULA, which is

9    presented to them on-screen.  That single presentation and agreement suffices to create the binding

10   contract under which Johnny made his purchases.  Further, it is hard to understand the logic of

11   Plaintiffs' argument.  If they believe that it is the EULA's refund provisions which give rise to a

12   cause of action, how could the fact that Epic Games did *not* present the EULA upon each

13   independent transaction have "misled" Johnny Doe into believing he could not disaffirm a contract?

14        Plaintiffs' reliance on *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1035 (N.D.

15   Cal. 2012) is misplaced.  Parents in that case alleged that their children had been able to make

16   unauthorized in-game purchases because, after the parents entered their account passwords and let

17   their children download games, Apple allowed their children to make additional purchases for 15

18   minutes without requiring re-entry of the passwords.  The parents contended that each purchase

19   was a separate and independently voidable "contract," while Apple contended that its terms of

20   service were the only relevant contract.  At the motion to dismiss stage, Judge Davila held that

21   Apple had not sufficiently demonstrated that a provision in its terms of service addressing

22   "unauthorized use" of its application store barred the plaintiffs' claims about their children's

23   individual purchases.  *Id.* at 1035-36.

24        It is not entirely clear from the *Apple* opinion why Judge Davila believed those plaintiffs

25   could disaffirm individual transactions without disaffirming the terms and conditions of Apple's

26   application store.  Judge Davila appeared to hold that Apple had not sufficiently demonstrated the

27   relationship between the "unauthorized use" term of the online agreement and Plaintiffs' claims

28   about separate purchases from app developers selling within the store.  There is, by contrast, no

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S REPLY ISO
MOTION TO DISMISS PLAINTIFFS' COMPLAINT        - 6 -        CASE NO. 4:19-CV-3629-YGR

1   room for doubt here about the relationship between the *Fortnite* EULA—which discusses refunds

2   for in-game purchases—and the refunds Plaintiffs are seeking for those purchases.  Whereas the

3   plaintiffs in *Apple* contended that Apple's terms of service were irrelevant, Plaintiffs here are

4   explicitly suing over a provision of the EULA that they (wrongly) portray as "misleading."  This

5   flatly precludes them from relying on the rationale of *Apple* in defense of their claim.

6      *Apple* and its unique facts notwithstanding, other courts have found that online terms

7   accepted upon creation of an account govern future transactions made pursuant to it.  *See, e.g.,*

8   *Imber-Gluck v. Google, Inc.*, No. 5:14-CV-01070-RMW, 2014 WL 3600506, at *3 (N.D. Cal. July

9   21, 2014).  That is, in fact, the entire point of an EULA: to set forth the rights and obligations of

10   both contracting parties during the user's enjoyment of the software.

11      Finally, Plaintiffs set up a straw-man argument.  They ask the Court not to imply an

12   "entertainment purchase" exception to California's disaffirmation statute.  *See* Opp. Br. at 4.  Epic

13   Games, however, is positing no such exception.

14      Epic Games has brought a separate motion to compel arbitration or to transfer this case, and

15   it bases that motion on a simple principle clearly embodied in precedent:  Because Johnny Doe

16   already received and enjoyed the benefits of the purchases he made pursuant to the EULA, equity

17   precludes him from disaffirming only the EULA's dispute resolution provisions, which are the only

18   remaining aspects of the contract yet to be performed.  *See, e.g., Paster v. Putney Student Travel,*

19   *Inc.*, No. CV 99-2062 RSWL, 1999 WL 1074120, at *1 (C.D. Cal. June 9, 1999); *see also, e.g.,*

20   *Hastings v. Dollarhide*, 24 Cal. 195, 216 (1864) ("The law intends [the right to disaffirm] simply

21   as a shield to prevent the infant from injustice"; it is not "a sword to be used to the injury of

22   others.").  That principle applies in all contractual contexts, not just contracts for entertainment.

23      This motion to dismiss, by contrast, is premised upon nothing more or less than Plaintiffs'

24   failure to state a claim under any of the statutes or common law causes of action they invoke.

25   **D.  Plaintiffs Have Not Satisfied The Elements Of Any Cause of Action.**

26      **1.  *Plaintiffs Are Not Entitled To A Declaratory Judgment.***

27      Before a plaintiff may seek a declaratory judgment, there must be an actual controversy.

28   Here, there is none.  Nothing in Epic Games' EULA suggests that the company would fail to honor

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S REPLY ISO
MOTION TO DISMISS PLAINTIFFS' COMPLAINT

- 7 -

CASE NO. 4:19-CV-3629-YGR

1   a disaffirmation.  Johnny Doe never actually communicated with Epic Games before suing, so he

2   never gave Epic Games a chance to consider a disaffirmation or a refund request.

3          Plaintiffs contend that "declaratory judgment is the applicable remedy for on-going and

4   continuing interactions that harm Minor Plaintiff" and that "this [is] clear," supposedly, because

5   [*Apple*] is "similar to the facts here."  Opp. Br. at 10.  As shown above, however, the facts of this

6   case and *Apple* are quite different.  The parent-plaintiffs in *Apple* were seeking new protections to

7   stop minors from making future purchases without permission.  Plaintiffs here are seeking to force

8   a change to Epic Games' EULA which they do not claim ever to have read and which does not say

9   anything misleading or omit any material information about the availability of refunds.

10          **2.      *Plaintiffs Cannot Pursue A Claim Under the CLRA.***

11                 **i)      <u>*Virtual Currency Is Not A "Good" Or "Service."*</u>**

12          Every court that has considered whether digital currency qualifies as a good or service under

13   the Consumers Legal Remedies Act ("CLRA") has found digital currency to be neither a good nor

14   a service.  *See* Opening Brief at 8-9.  The arguments Plaintiffs make in response were the same

15   ones rejected by the court in *I.B. v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012).

16   Plaintiffs brief (at 14) cites cases finding that <u>software</u> may constitute a good or a service under the

17   CLRA.  The Court in *I.B.*, however, distinguished those same cases because they "d[id] not address

18   the type of <u>digital currency</u> [Facebook Credits] at issue here."  *Id.* (emphasis added).  Indeed,

19   Plaintiffs' brief—without saying so—lifted the exact same authority and exact same parentheticals

20   that the *I.B.* court used in rejecting Plaintiffs' exact arguments.[1]

21          Plaintiffs attempt to distinguish *I.B.* on the supposed basis that the "issue here [is] digital

22   'Content'" and "digital 'Content' is a 'good' in the digital world."  Opp. Br. at 14.  They cite no

23   authority supporting these statements.  Plaintiffs are not suing over any shortcoming in the *Fortnite*

24   software; they are suing over their purchases of digital currency for use in that software.  As the

25   ───────────────

26   [1] The *I.B.* court cited and distinguished *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1112 (N.D. Cal.
     2010); *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235 (2009); and *American*
27   *Online, Inc. v. Sup. Ct.*, 90 Cal. App. 4th 1 (2001), which are the same cases upon which Plaintiffs
     rely.  The only case Plaintiffs cite that the *I.B.* court did not is *Khoday v. Symantec Corp.*, 858 F.
28   Supp. 2d 1004, 1011-12 (D. Minn. 2012).  That case, however, also considered only whether anti-
     virus software was a good or service under the CLRA.  It did not address digital currency.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S REPLY ISO
MOTION TO DISMISS PLAINTIFFS' COMPLAINT          - 8 -          CASE NO. 4:19-CV-3629-YGR

1  *I.B.* court found, that is akin to an "extension of credit" which cannot form the basis of a CLRA

2  claim, not a "good" or a "service" which can.

3                 *ii)*      **_Johnny Doe Was In No Way "Misled."_**

4        Even if Johnny Doe's purchases of virtual currency could form the basis of a CLRA claim,

5  they have not adequately pleaded that any aspect of Epic Games' EULA or any other statement

6  Epic Games made could have misled him and caused him damages, as required by Cal. Civ. Code

7  § 1770(a)(5) and (a)(14). Plaintiffs state that the "not eligible for refund" language appearing below

8  some in-game purchase items was "very small for the minor plaintiff to view at the time of

9  purchase." Opp. Br. at 15. This appears to be a preemptive concession that Johnny never saw it,

10  and the Complaint does not allege he did. The EULA says, moreover, that refunds are available

11  when applicable law requires them.

12        If Plaintiffs did not read the EULA's refund policy before instituting their case, they cannot

13  have been misled by it. *See T. K.*, 2018 WL 1812200, at *7 ("Nowhere else in the FAC does T.K.

14  allege that she ever read § 10.1 of the terms of service, nor that she relied on the statement in § 10.1

15  that is the basis of her CLRA claim."). If they did read it, they have not alleged that Johnny Doe

16  suffered an injury from the representation when he failed to seek a refund. *Id.* ("T.K. does not

17  explain how her confusion about her rights under California law, which she alleged was caused by

18  the language in § 10.1 of the terms of service, is related to her injury, which she sustained after

19  exercising the very right she alleged that Adobe misled her about—her right to disaffirm."). Either

20  way, Plaintiffs' claim under the CLRA should be dismissed.

21        **3.**      ***Epic Games Did Not Breach The Implied Duty Of Good Faith.***

22        Plaintiffs have not alleged any of Epic Games's refund policies or practices "frustrated

23  [their] right to receive the benefits of the contract." *T.K.*, 2018 WL 1812200, at *9 (dismissing

24  implied duty claim). Plaintiffs cannot even allege that Epic Games had an opportunity to breach

25  because they never sought a refund. Plaintiffs' response is hard to follow, but none of it has to do

26  with non-refundable purchases or Epic Games' refund policy.

27        Plaintiffs brief (at 16) argues that Epic Games had "a duty to disclose material facts

28  including amount spent in past purchases and the timing of when its new digital content will be

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S REPLY ISO
MOTION TO DISMISS PLAINTIFFS' COMPLAINT

- 9 -

CASE NO. 4:19-CV-3629-YGR

1   released to minors.  Minors do not have access to their Parent's credit card statements or bank

2   account information to figure out for themselves how much they have already spent." *Id.*  Plaintiffs

3   do not explain the relevance of these assertions.

4           Plaintiffs did not address the authority Epic Games cited in its Opening Brief (at 10)

5   pertaining to the implied duty.  Plaintiffs cite instead to *Architectural Res. Grp., Inc. v. HKS, Inc.*,

6   No. C 12-5787 SI, 2013 WL 568921, at \*6 (N.D. Cal. Feb. 13, 2013), and contend that Epic Games

7   "actions are a conscious and deliberate act to unfairly frustrate the minors in making more and more

8   purchases and not enjoy[ing] purchases already made."  Opp. Br. at 16.  This is just another non-

9   sequitur; Plaintiffs have not claimed any lack of enjoyment with respect to Johnny Doe's purchases.

10  The court in *Architectural Resources Group*, moreover, *dismissed* the breach of implied covenant

11  of good faith and fair dealing claim.  *Id.* at \*6.  ("HKS has not alleged facts that demonstrate the

12  counter-defendants unfairly interfered with HKS's rights to receive the benefits of the contract.").

13  Plaintiffs have no basis for citing that case and no defense to dismissal of their implied duty claim.

14          **4.      *Epic Games Committed No "Negligent Misrepresentation."***

15          Plaintiffs allege none of the elements of negligent misrepresentation.  They plead no

16  misrepresentations, no intent to induce purchases based on misrepresentations, no detrimental

17  reliance on any statements Epic Games made, and no damages resulting from a supposed "denial"

18  of Johnny Doe's disaffirmation rights (which "denial," moreover, Plaintiffs do not allege actually

19  happened).  *See* Opening Brief at 11.  Plaintiffs' one-paragraph opposition (Opp. Br. at 16-17) fails

20  to explain how their complaint alleged any element for this claim.  This claim cannot stand.

21          **5.      *Plaintiffs Do Not Adequately Plead Any Violation By Epic Games Of The Unfair
                       Competition Law, Cal. Bus. & Prof. Code § 17200.***

22

23          Plaintiffs' Opposition offers factually incorrect arguments that they can bring a claim under

24  any one of the three prongs of the Unfair Competition Law ("UCL").  Plaintiffs argue that they

25  have satisfied the unlawful and unfairness prongs of the UCL because "Epic has denied Minor

26  Plaintiff's claim."  Opp. at 17.  That is wrong.  Epic Games has not had a chance to "deny" Johnny

27  Doe's refund claim because Johnny never made one and still refuses to say what purchases he wants

28  refunded.  As for the "fraudulent" prong, Plaintiffs' brief contends for the first time that Epic Games

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S REPLY ISO
MOTION TO DISMISS PLAINTIFFS' COMPLAINT            - 10 -            CASE NO. 4:19-CV-3629-YGR

commits fraud by not disclosing "how soon or quickly a certain digital content will get stale." Opp. at 17. It would perhaps have been better if Plaintiffs had simply stuck with their typical practice of citing nothing in support of this alleged but non-existent duty. Here, however, they cited a non-UCL case involving artificial insemination. *See Shin v. Kong*, 80 Cal. App. 4th 498 (2000) (former husband brought tort claims against a physician after learning for the first time after dissolution of marriage that child born to wife during marriage had been conceived through artificial insemination, and that physician who performed procedure was child's biological father). Needless to say, this case is inapposite, and Plaintiffs provide no other reason to keep their claim under the UCL's "fraudulent" prong alive.

Epic Games also moved to dismiss Plaintiffs' UCL claims because they have an adequate remedy at law. *See* Opening Brief at 13-14. The UCL provides only equitable remedies, and Plaintiffs' Complaint seeks legal remedies in its other claims (notwithstanding their fatal insufficiencies). Plaintiffs' opposition brief (at 17) contends only they have no adequate remedy at law with respect to *future* transactions. This seems to be yet another admission by them that Johnny Doe is continuing to play *Fortnite*. As Epic Games has argued in its motion to compel arbitration, these admissions demonstrate that Johnny cannot claim "disaffirmation" of the *Fortnite* EULA and must arbitrate his claims rather than litigating them. *See C.M.D. ex rel. De Young*, 621 F. App'x at 489 ("By continuing to use facebook.com after bringing their action, Plaintiffs manifested an intention not to disaffirm the contract.").

### 6. *Epic Games Has Not Been "Unjustly Enriched."*

Plaintiffs contend that their claim for unjust enrichment can proceed as an "alternative" pleading to their other theories. Opp. Br. at 18. California law, however, does not "provide an unjust enrichment remedy if the unjust enrichment claim arises from an actual contract." *Peterson v. AWJ Global Sustainable Fund, LP*, No. 15-cv-00650-CRB, 2015 WL 5921225, at *5 (N.D. Cal. Oct. 11, 2015); *see also, e.g., Smith v. Nationstar Mortg. LLC*, No. CV 15-02498, 2015 WL 4652699, at *6 (C.D. Cal. Aug. 4, 2015) ("The [existence of the] express [contract] precludes an unjust enrichment award under an implied contract theory"). Plaintiffs assert, however, that each "game purchase is an independent online contract that may or may not be subject to the EULA or

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT EPIC GAMES INC.'S REPLY ISO
MOTION TO DISMISS PLAINTIFFS' COMPLAINT

- 11 -

CASE NO. 4:19-CV-3629-YGR

1  amended EULA." Opp. Br. at 18.  That is not pleading legal theories in the alternative on the same

2  facts, but arguing alternative facts, which is improper in an opposition and in a complaint.

### III.   CONCLUSION

4       For the foregoing reasons, and as stated in Epic Games' Opening Brief, Epic Games

5  respectfully requests that the Court dismiss each of Plaintiffs' claims alleged in the Complaint.

Dated:  September 16, 2019              DRINKER BIDDLE & REATH LLP


                                        By: */s/ Jeffrey S. Jacobson*
                                            Matthew J. Adler
                                            Jeffrey S. Jacobson (*pro hac vice*)
                                            Ryan M. Salzman

                                        Attorneys for Defendant
                                        EPIC GAMES, INC.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO