MATTHEW J. ADLER (SBN 273147)
Matthew.Adler@dbr.com
DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111-4180
Telephone:    415-591-7500
Facsimile:    415-591-7510

JEFFREY S. JACOBSON (*pro hac vice*)
Jeffrey.Jacobson@dbr.com
Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
Telephone:    212-248-3140
Facsimile:    212-248-3141

RYAN M. SALZMAN (SBN 299923)
Drinker Biddle & Reath LLP
1800 Century Park East, Suite 1500
Los Angeles, CA 90067
Telephone:    310-203-4000
Facsimile:    310-229-1285

Attorneys for Defendant
EPIC GAMES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOHNNY DOE, a minor, by and through his Guardian, JANE DOE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EPIC GAMES, INC., a North Carolina corporation,<br><br>Defendant. | Case No. 4:19-cv-3629-YGR<br><br>**DEFENDANT EPIC GAMES, INC.'S MOTION FOR LEAVE TO SUBMIT RECENT DECISION**<br><br>Action Filed:  June 21, 2019<br>Trial Date:    None set |

Defendant Epic Games, Inc. ("Epic Games") respectfully seeks leave of Court to submit a recent decision (attached at Ex. A) that is relevant to Epic Games' pending Motion to Compel Arbitration, or in the Alternative Transfer. Dkt. No. 21.

On October 1, 2019, the Court held a hearing on this motion. *See* Dkt. No. 38. The Court raised the possibility, not argued by Plaintiffs, that if it was the minor Plaintiff who accepted Epic Games' End User License Agreement ("EULA"), which contains the arbitration provision at issue, the contract could potentially be void in light of a separate provision of the EULA requiring acceptance by an "adult."

On October 21, 2019, this Court (Donato, J.) issued an order granting a motion to compel arbitration in *Williams v. Eaze Solutions, Inc.*, No. 3:18-cv-02598-JD (N.D. Cal.), Dkt. No. 17. *See* Ex. A. The case holds that where a contract containing an arbitration clause may be void as a matter of law, the arbitration clause is severable and enforceable. The Court further held that where the arbitration agreement contains a delegation clause, the matter of the contract's alleged voidness must be decided by the arbitrator.

Under Civil L.R. 7-3(d), "[o]nce a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval." However, the rule contains an exception permitting counsel to, before the hearing date, submit "a relevant judicial opinion published after the date the opposition or reply was filed" by filing a "Statement of Recent Decision, containing a citation to and providing a copy of the new opinion–without argument." L.R. 7-3(d)(2).

Here, Epic Games could not have filed a Statement of Recent Decision under L.R. 7-3(d)(2) because the *Williams* decision was not issued until after the October 1 hearing. Further, the decision's relevance stems from the Court's questions raised for the first time at the hearing.

Accordingly, Epic Games respectfully seeks leave of Court to submit the attached decision for the Court's consideration in connection with its pending motion to compel arbitration (Dkt. 21).

Dated: October 23, 2019

DRINKER BIDDLE & REATH LLP

By: /s/ Jeffrey S. Jacobson
    Jeffrey S. Jacobson (*pro hac vice*)
    Matthew J. Adler
    Ryan M. Salzman

Attorneys for Defendant
EPIC GAMES, INC.

# EXHIBIT A

United States District Court<br>Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARRAH WILLIAMS,<br><br>    Plaintiff,<br><br>    v.<br><br>EAZE SOLUTIONS, INC.,<br><br>    Defendant. | Case No. 3:18-cv-02598-JD<br><br>**ORDER RE ARBITRATION**<br>Re: Dkt. No. 17 |

In this putative class action, plaintiff Farrah Williams alleges that defendant Eaze Solutions violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending her unsolicited, autodialed text messages. Eaze seeks to compel arbitration of her claims pursuant to its terms of service. Dkt. No. 17. While the case raises interesting issues about "ganjapreneurship" and the budding legal marijuana industry, the questions presently before the Court are limited to whether there was an agreement to arbitrate and, if so, whether the Court or an arbitrator decides the arbitrability of plaintiff's claims.

After an initial set of briefing on the motion to compel and oral argument, the Court called for supplemental submissions from the parties on the application of *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). Dkt. No. 35. In light of the Court's request for supplemental briefing, Williams's motion for leave to file a sur-reply on similar topics, Dkt. No. 25, is denied. Eaze's motion to compel arbitration is granted.

**BACKGROUND**

The parties do not dispute the salient facts. Eaze operates a marijuana mobile application ("app") and online marketplace. Dkt. No. 1 ("Compl.") ¶¶ 13-15. The app facilitates the delivery of cannabis products from dispensaries to consumers. Williams signed up for Eaze's service in

1  September 2017. Dkt. No. 17-1, Declaration of Daniel Erickson ("Erickson Decl.") ¶ 17; *see also*
2  Dkt. No. 21 at 2. Before creating her Eaze account, Williams checked a box consenting to Eaze's
3  terms of service. Erickson Decl. ¶ 17. The sign-up screen looked like this:



19  Dkt. No. 17-1, Ex. A.
20        Eaze's terms of service, which were hyperlinked in the sign-up box, contained a clause
21  providing for arbitration of disputes with a class-action waiver. *Id*., Ex. E at ECF pp. 28-30.
22  Specifically, the terms of service state that the customer and Eaze "agree that any dispute, claim or
23  controversy arising out of or relating to this Agreement or the breach, termination, enforcement,
24  interpretation or validity thereof or the use of the Service or Application (collectively, "Disputes")
25  will be settled by binding arbitration." *Id.* at ECF p. 28. Williams does not deny that she clicked
26  the box stating she consented to the terms of service, or that such a "clickwrap" agreement is
27  enforceable. *See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1165-66
28  (N.D. Cal. 2016).

Even so, Williams contends that no contract was ever formed between her and Eaze. She argues that, because the contract's purpose was to facilitate the selling and distribution of marijuana, which is illegal under federal law, the contract lacked a "lawful object," as required by California law, and so no contract or enforceable arbitration clause was ever formed. Cal. Civ. Code § 1550.

## DISCUSSION

### I. LEGAL STANDARD

The parties disagree about the governing legal standards. Eaze says that the Federal Arbitration Act ("FAA") applies for two reasons: (1) the terms of service state that the "Federal Arbitration Act will govern the interpretation and enforcement" of its dispute resolution provisions, Dkt. No. 17-1, Ex. E at ECF p. 29; and (2) the contract involves interstate commerce as contemplated by the FAA. *See* 9 U.S.C. § 2. Williams contends that California law controls because: (1) the terms of service state the parties' agreement will be "governed by the laws of the State of California," Dkt. No. 17-1, Ex. E at ECF p. 30; and (2) the contract does not involve interstate commerce.

The FAA governs the arbitration issues in this case. It applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has interpreted "involving commerce" "as the functional equivalent of the more familiar term 'affecting commerce' -- words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam).

The activity covered by Eaze's terms of service are within Congress's commerce power, and so the FAA applies here. In *Gonzales v. Raich*, 545 U.S. 1, 17 (2005), the Supreme Court determined that even purely intrastate marijuana possession and distribution in compliance with California's Compassionate Use Act had a "substantial effect on interstate commerce," and that regulation of that activity was within Congress's commerce power. By similar reasoning, Williams's own formation argument assumes the presence of interstate commerce. Since Eaze's business is legal under California state law, her claim that federal law applies to render her

3

contract with Eaze illegal necessarily requires that Eaze's business has a substantial interstate commerce effect.

The TCPA allegations in the complaint also depend on the presence of interstate commerce. The TCPA was passed under Congress's Commerce Clause power. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). Williams alleges Eaze has violated the TCPA by harassing her with text messages, and she seeks to represent a nationwide class. Compl. ¶ 1. The federal and nationwide claims in this case again require that Eaze be engaged in interstate commerce.

Consequently, the FAA controls. The parties could have agreed otherwise, *see DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015), but they did not do so. The terms of service expressly state that the "Federal Arbitration Act will govern the interpretation and enforcement" of the dispute resolution section. Dkt. No. 17-1, Ex. E at ECF p. 29. While the contract contains a more general choice-of-law provision that opts for California law, it is the specific provision designating the FAA that governs arbitration. *See Cronus Invs., Inc. v. Concierge Servs.*, 35 Cal. 4th 376, 387 (2005).

The "overarching purpose" of the FAA "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Under Section 4 of the FAA, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If the party seeking to compel arbitration establishes both factors, the district court "must order the parties to proceed to arbitration." *Id.* Any doubts about the scope of arbitrable issues should be decided in favor of arbitration. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1139 (9th Cir. 1991).

Unless the parties agree differently, the validity and scope of an agreement to arbitrate are determined by the Court. *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). The validity inquiry usually involves a determination of whether the arbitration agreement is unenforceable because it is unconscionable.

4

But the parties may delegate questions of validity and scope to the arbitrator. Delegation is accomplished by a "clear and unmistakable" agreement in the contract, typically in the form of a reference to arbitration rules that cover arbitrability, that is itself enforceable. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). When a delegation clause is in an arbitration agreement, the Court retains authority to determine any validity challenges directly addressed to delegation. *Rent-A-Center, W, Inc. v. Jackson*, 561 U.S. 63, 72 (2010); *Brennan*, 796 F.3d at 1132-33; *McLellan v. Fitbit, Inc.*, Case No. 16-cv-00036-JD, 2018 WL 1913832, at *1 (N.D. Cal. Jan. 24, 2018). This is because arbitration provisions -- including delegation clauses -- are severable and separately enforceable from the remainder of a contract. *Rent-A-Center*, 561 U.S. at 70-72. If a party challenges the overall agreement to arbitrate, without specifically challenging the delegation clause, the questions of validity and enforceability will go to the arbitrator. *McLellan v. Fitbit, Inc.*, Case No. 16-cv-00036-JD, 2017 WL 4551484, at *1 (N.D. Cal. Oct. 11, 2017).

## II.     CONTRACT FORMATION

Formation issues are for the Court to decide. *See Buckeye*, 546 U.S. at 444 n.1; *Rent-A-Center*, 561 U.S. 70 n.2. Arbitration may be ordered only when the Court is satisfied that a contract has been formed. *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 299 (2010). Our circuit has recognized that the formation of the arbitration agreement is for the court to decide even though the agreement referred to arbitration rules that provided the "arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence or validity of the arbitration agreement." *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1210, 1214 (9th Cir. 2016).

The parties dispute yet again what law should be used to resolve the contract formation question. Eaze says that, under the FAA and cases like *Buckeye*, the issue should be delegated to an arbitrator. Dkt. No. 39 at 4-10. Williams says that California law controls, and that the agreement's unlawful object to facilitate marijuana distribution and use means a contract was never formed. Dkt. No. 40 at 2-9.

Starting with Williams's position, it is important to understand that, under California law, a contract that has an unlawful object is deemed void and unenforceable, not that it was never formed. Williams argues California Civil Code § 1550, which states that it "is essential to the existence of a contract that there should be: (1) Parties capable of contracting; (2) Their consent; (3) A lawful object; and, (4) A sufficient cause or consideration," means no contract was ever formed. She also cites an unpublished California Court of Appeal decision equating these factors with contract formation principles. Dkt. No. 40 at 2.

But the California Code and decisions by the state Supreme Court critically undermine Williams's argument. These sources, some of which Williams herself cites, definitively establish that the consequence under California law of an unlawful object is not that a contract was not formed, but that the contract cannot be enforced. For example, California Civil Code § 1608 states that if consideration is unlawful, then "the entire contract is void." *See also* Cal. Civ. Code § 1598 ("Where a contract has but a single object, and such object is unlawful, whether in whole or in part . . . the entire contract is void."). This conclusion has also been stated by the California Supreme Court, which treats illegality as a matter of enforceability. *Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 124 (2000) ("Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced."); *see also Gatti v. Highland Park Builders, Inc.*, 27 Cal. 2d 687, 689 (1946) (holding that a "contract made contrary to the terms of a law designed for the protection of the public and prescribing a penalty for the violation thereof is illegal and void, and no action may be brought to enforce such contract."). Williams mentions some arguably different opinions by California appellate courts and federal courts, but they are not controlling authorities.

Because the consequence of a contract with an unlawful object under California law is that it is void and unenforceable, this case is controlled by *Buckeye* and its progeny. *Buckeye* held as a matter of substantive law under the FAA that an arbitration provision is severable from the rest of a contract that is challenged as being void or voidable for illegality. *Buckeye*, 546 U.S. at 445-46. There, the Supreme Court considered the question of "whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality." *Id.* at

442. It held that under the FAA when the "crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid" by illegality "the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 444, 446. It also determined that a contract's arbitration "provisions are enforceable apart from the remainder of the contract." *Id.* at 446. Consequently, the terms of service arbitration agreement can be severed and enforced even if Williams's underlying contract with Eaze has an unlawful object.

Eaze's argument takes a step further to suggest that the Supreme Court has applied substantive federal law to determine whether an issue is nondelegable. *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1428-29 (2017) (rejecting argument that state law definition of "formation" is determinative in FAA case). This rule would distinguish "treatment of the generally nonarbitral question whether an arbitration agreement was 'ever concluded' from the question whether an arbitration clause was illegal when formed." *Granite Rock*, 561 U.S. at 296-97 (citing *Buckeye*). On this view, questions going to whether a contract has been concluded are limited to whether a contract was signed, whether the signor had authority, and whether the signor possessed the mental capacity to assent and do not include issues related to legality. *Buckeye*, 546 U.S. at 445 n.1.

But the Court need not decide whether California or federal law determines the effect of a contract's illegality because the answer is the same under both regimes. No other formation challenges are presented here.

### III. THE DELEGATION CLAUSE

The parties agreed to arbitrate threshold issues concerning the arbitration agreement. Under the Supreme Court's decision in *Rent-A-Center*, Williams must challenge the delegation provision itself since "any challenge to the validity of the Agreement as a whole [is] for the arbitrator." *Rent-A-Center*, 561 U.S. at 72. Here, the arbitration clause provides that "any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof or the use of the Service or Application (collectively, "Disputes") will be settled by binding arbitration." Dkt. No. 17-1, Ex. E at ECF p. 28. There is no challenge to the delegation provision here and, so the Court will "treat it as

7

valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 72. It is also worth noting that *Rent-A-Center* turned aside the similar objections about fee-splitting and types of claims subject to arbitration that Williams raises here, and held those factors not to be "arguments specific to the delegation provision." *Id.* at 73; *see also Preston v. Ferrer*, 552 U.S. 346, 349 (2008).

The parties' incorporation of the AAA rules into the contract "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130; *see also Oracle*, 724 F.3d at 1074 ("Virtually every circuit" has found incorporation of AAA rules indicates that the parties agreed to delegate arbitrability to the arbitrator.). The contract in this case requires that the "arbitration will be administered by the American Arbitration Association ('AAA') in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the 'AAA Rules') then in effect, except as modified by this 'Dispute Resolution' section." Dkt. No. 17-1, Ex. E at ECF p. 29. Consequently, unless what is effectively a delegation provision is itself unconscionable, the arbitrator and not the Court decides the question of arbitrability. *Brennan*, 796 F.3d at 1132.

Williams makes a cursory run at suggesting she still should not be bound by the delegation clause because the links to the AAA rules in the terms of service were not working when she signed up with Eaze. Because there is no duty to attach the AAA rules, the allegedly broken link is of no moment. *See Lane v. Francis Capital Mgmt.*, 224 Cal. App. 4th 676, 690 (2014). Moreover, the terms of service also provided a toll-free number that Williams has not alleged was defective, and could have called, in order to obtain the AAA rules.

The Court declines to consider whether the arbitration clause itself is unconscionable because that question was delegated under the terms of service, and Williams did not challenge the delegation. *See Brennan*, 796 F.3d at 1132-34; *Fruth v. AGCS Marine Ins. Co.*, Case No. 15-cv-03311-JD, 2016 WL 6806368, at *3 (N.D. Cal. Mar. 31, 2016). "If a party challenges the overall agreement to arbitrate, without specifically challenging the delegation clause, the questions of

validity and enforceability will go to the arbitrator." *Alonso v. AuPairCare, Inc.*, Case No. 18-cv-00970-JD, 2018 WL 4027834, at *1 (N.D. Cal. Aug. 23, 2018).

## CONCLUSION

Eaze's motion to compel arbitration of Williams's claims, Dkt. No. 17, is granted. Williams's motion for a sur-reply, Dkt. No. 25, is denied. The case is dismissed.

**IT IS SO ORDERED.**

Dated: October 21, 2019

JAMES DONATO
United States District Judge