## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHNNY DOE,** | CASE NO. 19-cv-03629-YGR |
| Plaintiff, | |
| vs. | **ORDER (1) DENYING MOTION TO COMPEL ARBITRATION OR TRANSFER; (2) GRANTING IN PART MOTION AND DENYING IN PART MOTION TO DISMISS; (3) GRANTING MOTION TO COMPEL COMPLIANCE WITH F.R.C.P. 10(A)** |
| **EPIC GAMES, INC.,** | |
| Defendant. | Re: Dkt. Nos. 18, 20, 21, 44, 47, 49, 52 |

Plaintiff Johnny Doe, by and through his guardian Jane Doe, brings this putative class action against defendant Epic Games, Inc. arising out of plaintiff's in-application purchases made while playing defendant's video game, *Fortnite*.

Now pending before the Court are three concurrently-filed motions: (1) defendant's motion to compel arbitration, or in the alternative, to transfer; (2) defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6); and (3) defendant's motion to compel plaintiff to comply with Federal Rule of Civil Procedure 10(a). Having carefully considered oral argument, the pleadings in this action, and the papers submitted, and for the reasons set forth below, the Court rules as follows: (1) defendant's motion to compel arbitration or transfer is **DENIED**, (2) defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**; and (3) defendant's motion to compel compliance with Rule 10(a) is **GRANTED**.

## I. BACKGROUND

The following background is drawn from the complaint and declarations offered in support of the parties' briefs.

### A. *Fortnite*

Defendant is the creator of *Fortnite*, "an open-world survival video game in which players collect weapons, tools, and resources . . . in order to survive and advance in the game."  The game can be downloaded at no cost but allows players to make "in-App purchases" using virtual currency called "V-Bucks," which can be earned through game play or purchased for money.  One hundred V-Bucks general cost around $1.00, but a player can obtain V-Bucks at a discount for purchasing a higher quantity.  On certain platforms, defendant may refund a total of three items during the lifetime of the user if those purchases were made within the previous 30 days.  Other purchases are non-refundable.  Players allegedly do not have access to their historical purchases, within the game or otherwise.

### B. The End User Licensing Agreements

Plaintiff, a minor, created a *Fortnite* account on March 4, 2018.  Upon downloading the software for the video game, plaintiff accepted the terms of defendant's End User License Agreement ("EULA") by first clicking a box that read, "I have read and agree with the End User License Agreement," and then clicking a button that read, "Accept."  The EULA purported to set forth players' rights and obligations relating to the gaming experience.  The EULA contained a forum selection clause, which provided, in relevant part:

> **11.  Governing Law and Jurisdiction.**  Any action or proceeding brought to enforce the terms of this Agreement or to adjudicate any dispute must be brought in the Superior Court of Wake County, State of North Carolina or the United States District Court for the Eastern District of North Carolina.  You agree to the exclusive jurisdiction and venue of these courts[.]

The EULA further provided that defendant might "issue an amended Agreement, Terms of Service, or Privacy Policy at any time in its discretion," and if any such amendment "[wa]s not acceptable to [the player], [the player] may terminate th[e] Agreement and must stop using the Software."  Continued use of the software would "demonstrate [the player's] acceptance of the amended Agreement and Terms of Service[.]"  Plaintiff allegedly does not recall seeing, reading, or agreeing to the EULA, nor did plaintiff's parents seek, read, or agree to the EULA.

2

On June 7, 2019, plaintiff logged on to *Fortnite* and accepted an amended EULA,[1] which contained the following arbitration provision:

> **THIS AGREEMENT CONTAINS A BINDING, INDIVIDUAL ARBITRATION AND CLASS-ACTION WAIVER PROVISION. IF YOU ACCEPT THIS AGREEMENT, YOU AND EPIC AGREE TO RESOLVE DISPUTES IN BINDING, INDIVIDUAL ARBITRATION AND GIVE UP THE RIGHT TO GO TO COURT INDIVIDUALLY OR AS PART OF A CLASS ACTION, AND EPIC AGREES TO PAY YOUR ARBITRATION COSTS FOR ALL DISPUTES OF UP TO $10,000 THAT ARE MADE IN GOOD FAITH (SEE SECTION 12). YOU HAVE A TIME-LIMITED RIGHT TO OPT OUT OF THIS WAIVER.**

It also provided:

> TO ENTER INTO THIS LICENSE AGREEMENT, YOU MUST BE AN ADULT OF THE LEGAL AGE OF MAJORITY IN YOUR COUNTRY OF RESIDENCE. . . . YOU AFFIRM THAT YOU HAVE REACHED THE LEGAL AGE OF MAJORITY, UNDERSTAND AND ACCEPT THIS AGREEMENT (INCLUDING ITS DISPUTE RESOLUTION TERMS). IF YOU ARE UNDER THE LEGAL AGE OF MAJORITY, YOUR PARENT OR LEGAL GUARDIAN MUST CONSENT TO THIS AGREEMENT.

In addition, the amended EULA contained a "governing law and jurisdiction" clause like the one contained in the original EULA. The amended EULA, also like the original EULA, stated that continued use of the software would demonstrate acceptance of the amended agreement. Further, as with the original EULA, plaintiff's parents allegedly did not see, read, or agree to the amended EULA.

### C. The Instant Suit

On May 17, 2019, plaintiff's counsel sent a letter to defendant in which counsel claimed that defendant had "specifically target[ed] minors for in-App Purchases" without "includ[ing] any provisions to get parental consent before making purchases." The letter further asserted that plaintiff "can legally disaffirm contracts with [defendant] for in-App [p]urchases," including purchases that were made by using the minor's own money. The letter purported to put defendant on "notice of [its] violations of the state laws of California," and "demand[ed] that [defendant] correct, repair, replace or otherwise rectify" its policies regarding non-refundable in-App

---

[1] The amended EULA was promulgated by defendant on March 15, 2019.

purchases. The letter warned that if defendant did not respond, plaintiff would file a class action complaint. The letter further stated that plaintiff wished to remain anonymous, describing him as "a minor residing in California" and "a player of *Fortnite*."

On June 21, 2019, plaintiff filed the instant suit. In the complaint, plaintiff alleges that he made several non-refundable in-App purchases using V-Bucks, including, for example, purchases of "Battle Pass" or "Battle Pass Tiers." Plaintiff further alleges that he used his own money, through gift cards received on social occasions, to make these purchases. Plaintiff alleges that he made these purchases without understanding the dollar amounts involved, and although the later wanted to cancel the purchases, he was not allowed to do so under defendant's non-refundable policy. Plaintiff brings this putative class action on behalf of all minors in the United States (the nationwide class) and California (the statewide sub-class) who made an in-App purchase that was non-refundable or made an in-App purchase with their own gift card.

Plaintiff brings claims for declaratory judgment; violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. ("CLRA"); breach of duty of good faith and fair dealing; negligent misrepresentation; violation of California Business & Professions Code § 17200 *et seq*. ("UCL"); and restitution or unjust enrichment.

## II. MOTION TO COMPEL ARBITRATION

The Court first considers defendant's motion to compel arbitration. The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). "By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) (emphasis in original); *see also* 9 U.S.C. § 4. "The court's role under the Act is therefore limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Daugherty v. Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189, 1193 (N.D. Cal. 2012) (quoting *Chiron Corp. v. Ortho*

4

*Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

Defendant moves to compel arbitration pursuant to the arbitration provision contained in the amended EULA. In opposition, plaintiff argues, among other things, that he has disaffirmed the EULAs and therefore cannot be compelled to arbitrate. Thus, as a threshold issue, the Court must determine whether plaintiff disaffirmed the agreement in which he purportedly agreed to arbitration.

## A.    Disaffirmance

California law[2] provides that a minor has the capacity to contract, with the exception of certain contracts specifically prohibited by statute,[3] and subject to the power of disaffirmance. *See* Cal. Family Code § 6700 ("Except as provided in Section 6701, a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance[.]"). Under California Family Code section 6710, "[e]xcept as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards[.]" Cal. Fam. Code § 6710.

Disaffirmance "may be made by any act or declaration" indicating an intent to disaffirm. *Celli v. Sports Car Club of Am., Inc.*, 29 Cal.App.3d 511, 517 (1972). In other words, "express notice to the other party is unnecessary," *id.*, and "[n]o specific language is required to communicate an intent to disaffirm[,]" *Berg v. Traylor*, 148 Cal.App. 4th 809, 820 (2007). Whatever the method, "[d]isaffirmance by a minor rescinds the entire contract, rendering it a nullity." *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F.Supp.2d 989, 1000 (N.D. Cal. 2012)

---

[2] Plaintiff asserts that California law applies to the Court's disaffirmance analysis, and defendant does not appear to disagree. In any event, both California and North Carolina law recognize a minor's right to disaffirm, and the disaffirmance analysis would not necessarily vary based on which law was applied. *R.A. v. Epic Games, Inc.*, Case No. 2:19-cv-014488 (C.D. Cal. July 30, 2019), Dkt. No. 39 at 6.

[3] Under California law, a minor may not: (1) give a delegation of power; (2) make a contract relating to real property or any interest therein; or (3) make a contract relating to any personal property not in his or her immediate possession or control. Cal. Family Code § 6701. Such contracts are void and require no act of disaffirmance. *See id.* The parties do not contend that the contracts at issue here fall into any one of these categories.

(citing *Scollan v. Gov't Emps. Ins. Co.,* 222 Cal.App.2d 181, 183-84 (1963)).  The disaffirmance statute reflects a policy of "shield[ing] minors from their lack of judgment and experience and confer[ing] upon them the right to avoid their contracts in order that they may be protected against their own improvidence and the designs and machinations of other people."  *Sparks v. Sparks,* 101 Cal.App.2d 129, 137 (1950); *see also Fife,* 905 F.Supp.2d 1000 (same); *Berg v. Traylor*, 148 Cal. App. 4th 809, 818 (2007) ("Although in many instances such disaffirmance may be a hardship upon those who deal with an infant, the right to avoid his contracts is conferred by law upon a minor 'for his protection against his own improvidence and the designs of others.'" (quoting *Niemann v. Deverich*, 98 Cal.App.2d 787, 793 (1950)).  The statute also "discourag[es] adults from contracting with minors."  *I.B. ex rel. Bohannon v. Facebook, Inc.,* No. 12-cv-01894–BLF, 2015 WL 1056178, at *4 (N.D. Cal. Mar. 10, 2015) (collecting cases).  However, the "infancy defense may not be used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit."  *I.B. by & through Fife v. Facebook, Inc.*, No. C 12-1894 CW, 2013 WL 6734239, at *3 (N.D. Cal. Dec. 20, 2013) (citation omitted).  Accordingly, if a minor seeks to disaffirm a contract, "equitable principles dictate that [the minor] 'must disaffirm the entire contract, not just the irksome portions.'"  *Id.* at *4 (quoting *Holland v. Universal Underwriters Ins. Co.,* 270 Cal.App.2d 417, 421 (1969)).

Here, plaintiff claims that by sending the May 17 letter and later filing suit, he has disaffirmed both EULAs.  Defendant disagrees arguing that (i) plaintiff has not clearly communicated what he is or is not disaffirming, and (ii) plaintiff's briefs suggest that he may continue playing *Fortnite*, which means he cannot disaffirm the contract.

With respect to defendant's first argument, both the May 17 letter and the complaint convey plaintiff's intent to repudiate the binding force and effect of plaintiff's in-App purchases.  Neither, however, conveys disaffirmance of the EULAs more generally.  Indeed, the letter asserts that plaintiff "can legally disaffirm contracts with [defendant] for in-App Purchases" and purchases plaintiff made "us[ing] [his] own money from gift cards."  Consistent with this assertion, plaintiff's complaint purports to bring this declaratory judgment action "for a minor's

right to disaffirm in-App purchases in Epic's video game Fortnite."[4]  Given that the minor's power

to disaffirm a contract is broad and can be invoked through "any act or declaration" that conveys

his intent to repudiate a contract, *Celli,* 29 Cal.App.3d at 517, the Court finds this statement

sufficient to "disclos[e] [plaintiff's] unequivocal intent to repudiate [the] binding force and effect"

of both EULAs.[5]

   *Berg v. Traylor*, 148 Cal.App. 4th 809 (2007) is in accord.  There, one of the appellants, a

minor, purportedly entered into a contract giving the respondent authority to act as the minor's

exclusive personal manager in exchange for a commission and other consideration.  *Id*. at 812-

813.  After the minor obtained a recurring role on a network television show, the minor's parent

sent the respondent a letter stating they no longer needed her services and could no longer afford

to pay her commission.  *Id*. at 813.  The respondent filed suit.  *Id*.  Approximately three years

later, following issuance of an arbitration award and the filing of a petition to confirm said award,

appellants secured substitute counsel, which filed a "Notice of Disaffirmance of Arbitration

Award by Minor."  *Id*. at 815.  The notice assumed that the letter sent to the respondent had

disaffirmed the original contract but added that plaintiff disaffirmed "all other documents filed

under his name or affecting him as a minor in this litigation."  *Id*. at 820.  The court found that this

language was adequate to convey the minor's disaffirmance of the original contract, the arbitration

award, and the subsequent judgment.  *Id*. at 822.  Likewise, plaintiff's counsel's representations to

this Court constitutes disaffirmance of the EULAs.[6]

―――――――――――――――

   [4] During the hearing on this motion, however, plaintiff's counsel explicitly stated that
plaintiff was "not arguing for any selective disaffirmance.  We agree, it's all or nothing.  *The
whole EULA has been disaffirmed*[.]"  (Emphasis supplied.)  Thus, to the extent the May 17 letter,
the complaint, or plaintiff's briefing on the pending motions were unclear regarding what was
being disaffirmed, plaintiff's counsel statement on the record clarified.

   [5] In its reply, defendant avers that neither the May 17 letter nor the complaint disclosed
plaintiff's real name, address, or *Fortnite* user name, "without which Epic Games could not
possibly honor a disaffirmation."  Even assuming a minor must disclose such information in order
to disaffirm a contract—a proposition for which defendant provides no legal authority—plaintiff
has now identified himself to defendant.

   [6] Defendant contends that if a minor has already enjoyed the benefit of a contract, he
"cannot disaffirm it after-the-fact in order to avoid its dispute resolution provisions."  In *Berg*,

7

United States District Court
Northern District of California

As to defendant's second argument that plaintiff cannot disaffirm the contract because he continues to play *Fortnite*, this contention is directly contradicted by a notice filed by plaintiff's counsel shortly after the hearing on the motion, which stated that plaintiff "has not played the Fortnite game . . . after filing of the lawsuit" and "has no intention of playing Fortnite in the future." Thus, this is not a case in which a minor seeks to "adopt that part of an entire transaction which is beneficial, and reject its burdens." *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) (quoting *Peers v. McLaughlin,* 88 Cal. 294, 26 P. 119, 120 (1891)) (rejecting minor plaintiffs' attempt to disaffirm a forum selection clause in Facebook's terms of service while continuing to use facebook.com); 5 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 9:14 (4th ed. 1993 & Supp. 2011) ("If an infant enters into any contract subject to conditions or stipulations, the minor cannot take the benefit of the contract without the burden of the conditions or stipulations."). Instead, plaintiff has disaffirmed the EULAs in their entirety, including by not playing *Fortnite*.[7] *See T. K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK, 2018 WL 1812200, at *6 (N.D. Cal. Apr. 17, 2018) ("T.K. has disaffirmed the entire renewal agreement. There is . . . no evidence that T.K. continues to use ACCP. . . . In these

---

however, the California court of appeal expressly held that a minor may "disaffirm all obligations under a contract, *even for services previously rendered,* without restoring consideration or the value of services rendered to the other party." 148 Cal.App.4th at 810 (emphasis supplied); *see also I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1001 (N.D. Cal. 2012) (citing *Berg* for proposition that minors may disaffirm contracts even after receiving benefits). Absent controlling authority holding to the contrary, and in light of the broad language of Section 6710, the Court finds plaintiff's disaffirmance is valid notwithstanding that he has already played *Fortnite* and made in-App purchases. *See Lopez v. Kmart Corp.*, No. 15-CV-01089-JSC, 2015 WL 2062606, at *7 (N.D. Cal. May 4, 2015) ("California's rules on disaffirmance are set forth in a statute; in other words, the legislature considered the relevant policy implications and arrived at chosen language. It is not for the Court to impose additional limitations or remove those that the legislature included based on its own policy rationale.").

[7] In *R.A. v. Epic Games, Inc.*, Case No. 2:19-cv-014488 (C.D. Cal. July 30, 2019), Dkt. No. 39 at 9, which dealt with similar motions in a separate case brought against the same defendant, the court reached a similar conclusion. Specifically, the court found that plaintiff disaffirmed the EULA by submitting a declaration to the court conveying his disaffirmance. The court further found that there was "no evidence . . . that Plaintiff continued playing the Fortnite video game after he submitted his declaration that would contradict his intent to disaffirm the entirety of the EULAs." The same is true here.

circumstances, the Court sees no basis to enforce the arbitration or no-class-action terms of a contract that is now a 'nullity.'").

Because plaintiff validly disaffirmed the EULAs, plaintiff cannot be compelled to arbitrate this dispute pursuant to the arbitration provision contained in the amended EULA.[8]  Defendant's motion to compel arbitration is therefore **DENIED**.[9]

### III.    MOTION TO TRANSFER

Having found that plaintiff cannot be compelled to arbitrate this dispute, the Court considers defendant's motion to transfer this action to the Eastern District of North Carolina pursuant to 28 U.S.C. sections 1391(b) or 1404(a).

#### A.    28 U.S.C. § 1391(b)

Under 28 U.S.C. section 1391(b), venue is proper in (1) a district in which any defendant resides, if all of the defendants reside in the same state; (2) a district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.  Relevant here, with respect to the first prong, a corporate defendant "resides" "in any judicial district in which such defendant is "subject to the court's personal jurisdiction with respect to the civil action in question[.]"

---

[8]  The Court notes that the first page of the amended EULA states, in all-caps text, that an individual must be an adult of the legal age of majority or have the consent of a parent or legal guardian in order to enter into the agreement.  Neither occurred here, that is, plaintiff was a minor at the time he purportedly accepted the EULAs, and his parent or legal guardian did not authorize him to do so.  The original EULA, in contrast, did not contain a parallel provision.  However, in light of the Court's finding that both EULAs have been disaffirmed, the Court need not reach a decision on the enforceability of the agreements in light of an apparent lack of adult consent.

[9]  Defendant's motion for leave to submit a recent decision also is **GRANTED**.  (Dkt. No. 47)  In the decision submitted by defendant, an order granting a motion to compel arbitration in *Williams v. Eaze Solutions, Inc.*, No. 3:18-cv-02598-JK (N.D. Cal.), Dkt. No. 17, the court held that where a contract was unenforceable because of an unlawful object, the arbitration clause was severable and separately enforceable from the rest of the contract.  Here, in contrast, the parties do not argue that the EULAs had an unlawful object.  Rather, as discussed herein, the EULAs are unenforceable because of plaintiff's disaffirmance, which defendant itself argues cannot be selective as to certain parts of the agreement but not others.  Thus, *Williams* is distinguishable and has no bearing on this Court's decision to deny the motion to compel arbitration.

28 U.S.C. § 1391(c)(2). "[I]n a [s]tate which has more than one judicial district," such as California, "and in which a defendant that is a corporation is subject to personal jurisdiction . . . , such corporation shall be deemed to reside in any district in that [s]tate within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate [s]tate." 28 U.S.C. § 1391(d).

Where, as here, a defendant raises a venue challenge, the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). The court need not accept the pleadings as true and may consider facts outside of the pleadings. *See Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir. 2005). Plaintiff claims venue is proper for two reasons: (i) defendant waived its right to argue lack of personal jurisdiction by failing to move to dismiss on this basis, and venue therefore is proper under sections 1391(b)(1) and (c)(2); and (2) a substantial portion of the events at issue occurred in this jurisdiction, and venue therefore is proper under section 1391(b)(2).[10] The Court addresses each.

First, with respect to personal jurisdiction and venue under section 1391(b)(1), plaintiff argues defendant's failure to move on a timely basis to dismiss for lack of personal jurisdiction within 21 days of service constitutes waiver and is sufficient to establish the "residency" requirement under section 1391(b)(1). *See Agasino v. American Airlines*, No. 19-cv-03243-LB, 2019 WL 3387803, at *3 (N.D. Cal. July 26, 2019) (by failing to move to dismiss for lack of personal jurisdiction, defendant "therefore has waived any personal-jurisdiction arguments and is subject to personal jurisdiction here with respect to this case"); *Ward v. Certain Underwriters at Lloyd's of London*, No. 18-cv-07551-JCS, 2019 WL 2076991, at *4 (N.D. Cal. May 10, 2019) ("As far as this Court is aware, every court to consider the issue has held that personal jurisdiction even based on waiver is sufficient to establish 'residency' for the purpose of § 1391(c)(2).") (citing cases); *AT&T Corp. v. Teliax, Inc.*, No. 16-cv-01914-WHO, 2016 WL 4241910, at *2 (N.D. Cal. Aug. 11, 2016) ("A party waives a defense based on lack of personal

---

[10] Defendant contends that venue does not lie under any of the three prongs of section 1391(b). However, defendant did not address plaintiff's arguments on reply.

jurisdiction by omitting it from its first Rule 12(b) motion. . . . [B]ecause [defendant] did not contest personal jurisdiction, it is therefore 'subject to personal jurisdiction' in this district for the purposes of establishing venue.") (citing cases and treatise); *Markel Am. Ins. Co. v. Pac. Asian Enters., Inc.*, No. C-07-5749 SC, 2008 WL 2951277, at *2 (N.D. Cal. July 28, 2008) ("[Defendants], each having brought a Rule 12 motion without challenging personal jurisdiction, have waived that defense. As each of the Defendants is subject to personal jurisdiction in this district, each is considered to reside here for the purposes of venue.") (citations omitted).) Defendant does not distinguish these cases nor offer any contrary authority. Accordingly, this Court finds plaintiff has carried his burden of establishing that venue is proper in this district under section 1391(b)(1) based on defendant's waiver.

Even if venue was not proper under section 1391(b)(1), the Court finds plaintiff also has established proper venue under section 1391(b)(2), namely, because a substantial portion of events at issue occurred in this district. Notably, section 1391(b)(2) "does not require that a majority of the events have occurred in the district where the suit is filed, nor does it require that the events in that district predominate," and "venue may be proper in multiple districts if a 'substantial part' of the underlying events took place in each of those districts." *Ward v. Certain Underwriters at Lloyd's of London*, No. 18-CV-07551-JCS, 2019 WL 2076991, at *5 (N.D. Cal. May 10, 2019) (quoting *Tech. Credit Corp. v. N.J. Christian Acad., Inc.*, 307 F. Supp. 3d 993, 1002 (N.D. Cal. 2018)). Here, plaintiff contends, and defendant does not dispute, that plaintiff downloaded and played *Fortnite*, and completed all in-App purchases, in this district. This is sufficient to establish venue under section 1391(b)(2) given the dispute at issue.

**B.    28 U.S.C § 1404(a)**

The Court proceeds to consider whether transfer is appropriate under 28 U.S.C. section 1404(a). That statute provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Section 1404(a) "does not condition transfer on the initial forum's being 'wrong' . . . [a]nd it

permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Atlantic Marine Const. Co., Inc. v. United States District Court*, 571 U.S. 49, 59 (2013) ("*Atlantic Marine*").[11]  Importantly, the moving party carries the burden of showing that the transferee district is the more appropriate forum. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).

Courts considering transfer must first determine whether the action could have been brought in the target district in the first instance. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).  An action could have been brought in any court that has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and where venue would have been proper. *See id.*  Here, defendant contends, and plaintiff does not appear to dispute, that this action could have been brought in the Eastern District of North Carolina.

If the action could have been brought in the target district, courts then undertake an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)) (internal quotations omitted).  Relevant factors the Court may consider include: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009).[12]  The Court considers the relevant factors below.[13]

---

[11]  Where a valid forum selection clause governs, "a district court should ordinarily transfer the case to the forum specified in that clause" except "under extraordinary circumstances unrelated to the convenience of the parties[.]"  *Atlantic Marine*, 571 U.S. at 581.  The EULAs contain forum selection clauses, however, because they have been disaffirmed, they do not modify the Court's analysis of the motion to transfer pursuant to section 1404(a).

[12]  This list is non-exclusive and courts may consider other factors. *See Williams v. Bowman*, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001) (noting that this list of factors "does not exhaust the possibilities" and highlighting differing combinations of factors used by courts in conducting this analysis).

[13]  Neither party addresses the sixth and eighth factors, that is, feasibility of consolidation

*1. Plaintiff's Choice of Forum*

"While a plaintiff's choice of forum always weighs against transfer under section 1404(a), a court considering transfer must determine how much weight to give this choice under the circumstances." *Glob. Hawk Ins. Co. v. Vega*, No. 15-CV-02093-YGR, 2015 WL 7720801, at *4 (N.D. Cal. Nov. 30, 2015). "Although great weight is generally accorded plaintiff's choice of forum, when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987) (citation omitted). The rationale for a diminished degree of deference is that "where there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Koster v. (Am.) Lumbermens Mut. Cas., Co.,* 330 U.S. 518, 524 (1947). Where a case involves a putative statewide class, courts in this district have applied varying degrees of deference. *See, e.g., Hendricks v. StarKist Co.*, No. 13-CV-729 YGR, 2014 WL 1245880, at *2–3 (N.D. Cal. Mar. 25, 2014) (discussing "diminished degree of deference," and ultimately applying "at least some deference" where plaintiff sought to represent nationwide class and California class); *Bennett v. Bed Bath & Beyond, Inc.,* C 11–02220 CRB, 2011 WL 3022126, at *2 (N.D. Cal. July 22, 2011) (citation omitted) ("[A]s a putative class representative for a state-wide class, Plaintiff's forum choice is not entitled to the same degree of deference as an individual plaintiff pursuing her own claim on her own behalf."); *Cardoza v. T-Mobile USA Inc.*, 2009 WL 723843, at *4 (N.D. Cal. Mar. 18, 2009) ("The Court does not give less weight to Plaintiff's choice of forum based on Plaintiff's decision to bring this suit on behalf of a [statewide] class. Courts tend to do so in cases where the plaintiff seeks to represent a nationwide class.").

Further, in determining the appropriate amount of deference to accord plaintiff's choice of forum, courts consider the extent of the parties' contacts with the chosen forum, including contacts relating to the plaintiff's cause of action. *Belzberg,* 834 F.2d at 739 (citing *Pac. Car & Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir. 1968)). A plaintiff's choice of forum receives only

with other claims and relative court congestion.

minimal deference if the operative facts did not occur within the forum and the forum has no interest in the parties or subject matter. *Id.* In contrast, where "there is no evidence that plaintiffs engaged in forum shopping and both plaintiffs and defendant have significant contacts with the Northern District of California, plaintiffs' choice of forum carries significant weight." *Roling v. E*Trade Sec., LLC,* 756 F.Supp.2d 1179, 1186 (N.D. Cal. 2010).

Here, plaintiff purports to bring this action on behalf of a nationwide class and a California sub-class. That this case involves a putative nationwide class diminishes the deference afforded to plaintiff's choice of forum. Even if the classes are certified, however, the named plaintiff, who resides in this district, "would still bear a fiduciary responsibility to lead the class," and thus his choice of forum still is entitled to some deference. *Van Slyke v. Capital One Bank,* 503 F.Supp.2d 1353, 1363 (N.D. Cal. 2007). As to the extent of the parties' contacts with this forum, plaintiff avers that his contacts are significant because he resides, downloaded and played *Fortnite*, and accepted and disaffirmed the EULAs in this district. Defendant does not dispute these facts but counters that it has no relevant contacts with this district, and indeed, the relevant functions related to in-App sales and refunds are determined by employees located in North Carolina. That said, it also cannot be disputed that large numbers of *Fortnite* players reside in this district.

On balance, although defendant's relevant contacts with this district appear minimal, it is undisputed that plaintiff has substantial contacts with this forum. Thus, plaintiff's choice of forum is entitled to at least some deference. This factor weighs minimally against transfer.

### 2. Convenience of the Parties and Witnesses

Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient." *Adobe Sys. Inc. v. Childers*, No. 5:10-cv-03571-JF/HRL, 2011 WL 566812, at *9 (N.D. Cal. Feb. 14, 2011) (quoting *Van Dusen*, 376 U.S. at 646). Thus, transfer "should not be granted if the effect is simply to shift the inconvenience to the plaintiff." *Id.* (citing *Decker Coal Co. v. Commonwealth Edison Co.,*805 F.2d 834, 843 (9th Cir. 1986)). Further, "[t]he convenience of the witnesses, particularly non-party witnesses, is often the most important factor" in ruling on a motion to transfer venue under section 1404(a). *Grossman v. Johnson & Johnson*, No. 14-CV-03557-VC, 2015 WL 1743116, at *1 (N.D. Cal. Apr. 13, 2015)

(citation omitted). To evaluate witness convenience, "courts must consider not only the number of witnesses, but also the nature and quality of their testimony." *United States ex rel. Tutanes-Luster v. Broker Sols., Inc.*, No. 17-CV-04384-JST, 2019 WL 1024962, at *5 (N.D. Cal. Mar. 4, 2019) (citation omitted). Moreover, courts generally give less consideration to the convenience of party witnesses or witnesses employed by a party because these witnesses can be compelled by the parties to testify regardless of where the litigation will occur. *Allstar Mktg. Grp., LLC v. Your Store Online, LLC,* 666 F.Supp.2d 1109, 1132 (C.D. Cal. 2009). "[In] establishing inconvenience to witnesses, the moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Imran v. Vital Pharm., Inc.*, No. 18-CV-05758-JST, 2019 WL 1509180, at *4 (N.D. Cal. Apr. 5, 2019) (citation omitted).

As previously mentioned, defendant avers that the employees familiar with issues in this case, including the marketing of and refunds for in-App purchases, work at or near defendant's headquarters in Cary, North Carolina. Plaintiff counters that based on publicly-available job postings, some party witnesses, including defendant's software engineers and Chief Technology Officer, work at defendant's office in Larkspur, California. Plaintiff further emphasizes that defendant has not identified any witnesses who cannot be produced in this district or for whom this district would not be a more convenient forum.

Defendant's arguments fail to persuade. Although it is likely some witnesses would be inconvenienced by traveling from North Carolina headquarters to this district for trial, defendant does not identify any one of them—much less a non-party witness—with specificity. The absence of reference to non-party witnesses is notable because defendant's employees may be compelled to appear in this Court. Insofar as some employees may leave the company by the time this case is tried, the Court cannot predict where these former employees will reside, and thus, cannot assume either district will be a more convenient forum. With respect to depositions, those can be conducted in North Carolina if appropriate.

Defendant has not carried its burden of demonstrating that North Carolina is a more convenient location for the parties or most witnesses. Plaintiff, for his part, has not identified any witnesses that would be inconvenienced by transfer either. Therefore, this factor is neutral.

15

### 3. *Ease of Access to Evidence*

"[I]n the age of electronically stored information, the ease of access to evidence is neutral because much of the evidence in this case will be electronic documents, which are relatively easy to obtain in any district." *See Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*, 2018 WL 3956430, at *8 (N.D. Cal. Aug. 17, 2018) (internal citation and quotation marks omitted). As such, this factor is neutral.

### 4. *Familiarity with Applicable Law*

Plaintiff contends that this Court is more familiar with California law, which governs at least two of his six claims in this action. Defendant counters that there is a dispute regarding whether California law or North Carolina law will apply to the substantive claims, and thus, it is premature for the Court to consider which if either court is more familiar with the applicable law. Defendant's argument persuades. Given that a dispute remains regarding what state's law applies, this factor is neutral.

### 5. *Local Interest in the Controversy*

Defendant argues that this factor is, at worst, neutral, because North Carolina has as much interest in regulating the conduct of one of its corporations as California does in protecting its residents. In *R.A. v. Epic Games, Inc.*, Case No. 2:19-cv-014488 (C.D. Cal. July 30, 2019), Dkt. No. 39 at 15 n.4, the court found California and North Carolina both had interests in the outcome of the litigation based on this rationale, especially given the reach of defendant. This Court agrees. Thus, this factor is neutral.

### 6. *Balancing of Factors*

In sum, all section 1404(a) factors are neutral except for plaintiff's choice of forum, which weighs minimally against transfer. As such, defendant has not established that the Eastern District of North Carolina is the more appropriate forum, and its request for transfer is **DENIED.**[14]

---

[14] Defendant notes that this is the third putative class action brought against Epic Games in recent months, all which were filed in districts outside of North Carolina. The other two were transferred to the Eastern District of North Carolina. *R.A. v. Epic Games, Inc.*, Case No. 2:19-cv-014488 (C.D. Cal. July 30, 2019), Dkt. No. 39; *Krohm v. Epic Games*, Case No. 5:19-cv-00173 (N.D. Ill. Apr. 30, 2019), Dkt. No. 13. Neither is binding on this Court, however, and in any

# IV. MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding whether the plaintiff has stated a claim, a court must assume that plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

Defendant moves to dismiss plaintiff's claims. Below, the Court analyzes each claim in turn.[15]

## A. Declaratory Judgment

Defendant moves to dismiss claiming that plaintiff lacks standing to pursue a declaratory judgment given the dispute over the legal effect of disaffirmance and the failure to plead whether defendant refused plaintiff's request for a refund.

Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy," the Court "may declare the rights and other legal relations of any interested party seeking such declaration,

---

event, both are distinguishable. In *R.A.*, the court found that in light of the parties' contacts with North Carolina, the number of witnesses located there, and the fact that the Central District of California bench is vastly understaffed weighed in favor of transfer. Here, the parties here have not provided any information regarding relative court congestion here. In *Krohm*, the court transferred the action because of the EULA's forum selection clause, which, as discussed, does not apply here in light of plaintiff's disaffirmance.

[15] Defendant devotes a portion of its motion to dismiss to its argument that plaintiff has not disaffirmed its in-App purchases. This argument is not tied to any specific cause of action defendant seeks to have dismissed. In any event, as previously discussed, the May 17 letter and the filing of this suit conveyed plaintiff's intent to disaffirm in-App purchases allegedly made using plaintiff's own money.

whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "This statute does not create new substantive rights, but merely expands the remedies available in federal courts."  *Shell Gulf of Mexico, Inc. v. Center for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014).  "To determine whether a declaratory judgment action presents a justiciable case or controversy, courts consider 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  A critical question is whether the declaratory relief "will serve a useful purpose in clarifying and settling the legal relations in issue[.]"  *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966).

Here, plaintiff seeks "a determination by the Court that: (a) this action may proceed and be maintained as a class action; (b) the sales contracts between [d]efendant and the children of the class members, relating to the purchase of Game Currency, are voidable at the option of the respective class members on behalf of their minor children; (c) if the class members elect to void the contracts, they will be entitled to restitution and interest thereon; (d) an award of reasonable attorneys' fees and costs of suit to Plaintiff and the Class is appropriate; and (e) such other and further relief as is necessary and just may be appropriate as well."

Defendant's standing arguments fail to persuade.  To claim that there is no dispute on disaffirmance strains credulity.  Nowhere in its numerous filings related to the pending motions does defendant suggest that it *agrees* with plaintiff's position on disaffirmance or refunds, such that there can be no dispute.  To the contrary, in its motion, defendant argues that plaintiff did not and cannot disaffirm contracts with defendant.  Further, the May 17 letter sent by plaintiff's counsel to defendant stated plaintiff's position that he "can legally disaffirm contracts with [defendant] for in-App [p]urchases" and that defendant's "non-refundable policy violates the laws of the state of California with respect to contracting with minors."  The letter "demand[ed] that [defendant] correct, repair, replace[,] or otherwise rectify the Fortnite video game non-refundable policy" and stated that plaintiff would file a complaint if defendant did not respond.  There is no

18

1    evidence, allegation, or suggestion that defendant responded.  Defendant therefore has indicated

2    its unwillingness to honor plaintiff's disaffirmance and refund the in-App purchases.

3         Next, with respect to the notion that plaintiff lacks standing because he has not alleged that

4    he purchased items labeled "not eligible for refund" or that he saw any non-refundable disclosures,

5    the complaint alleges that "[s]ome items remain non-refundable and outside Epic's refund policy

6    including for example, Battle Pass or BattlePass tiers," both which plaintiff allegedly purchased.

7    The complaint also includes screenshots indicating that when a player purchases "Battle Pass," at

8    the bottom-right of the screen, there is a disclaimer that the item "is not eligible for refund."

9    Whether or not he saw this or any other disclosure before making in-App purchases, plaintiff

10   alleges that he later "wanted to disaffirm" and "cancel" his in-App purchases but "was not allowed

11   to do so," in part because of defendant's non-refundable policy.  At this juncture, the Court must

12   construe the complaint in the light most favorable to plaintiff, resolving any ambiguity in his

13   favor.  *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  The Court thus finds that the

14   allegations in the complaint are sufficient to establish plaintiff's standing for purposes of his

15   declaratory judgment claim.

16        Finally, *T. K.*, on which defendant relies, does not compel a different result.  There, the

17   court *allowed* plaintiff to proceed with a declaratory relief claim, finding that the complaint

18   "show[ed] an apparent dispute between the parties about the legal effect of disaffirmance, insofar

19   as Adobe initially refused to refund all of T.K.'s payments made under the renewal agreement and

20   did so only after T.K. filed this action."  2018 WL 1812200, at *13.  Here, defendant is not

21   entitled to dismissal simply because it has not affirmatively rejected a refund request.  Nor can

22   defendant claim to be ignorant regarding plaintiff's position on disaffirmance.  Rather, like in *T.K*,

23   there exists an actual controversy between the parties over the rights of minors to disaffirm in-App

24   purchases and, if the contracts can be disaffirmed, whether minors are entitled to refunds.  *See In*

25   *re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1035-36 (N.D. Cal. 2012) (denying

26   motion to dismiss declaratory relief claim for determination that minors' sales contracts of in-app

27   game currency are voidable).

28        Defendant's motion to dismiss the claim for declaratory relief is therefore **DENIED**.

**B.      California Consumer Legal Remedies Act (CLRA)**

Defendant moves for dismissal of the CLRA claim on the grounds that virtual currency is not a good or service and because plaintiff was not misled.  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  Plaintiff alleges that defendant has violated the CLRA's proscription against (i) the concealment of the characteristics, use, benefit or quality of goods; (ii) representing that goods have uses or characteristics that they do not have; (iii) representing that goods are of particular standard or quality when they are not; and (iv) representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. The Court considers each argument in turn.

*1.      "Goods or Services"*

The CLRA applies to transactions involving the sale or lease of "goods or services." Relevant here, "goods," as defined in California Civil Code section 1761(a), means "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods."

Defendant argues that V-Bucks, the virtual currency plaintiff allegedly purchased while playing *Fortnite*, is not a "good or service" under the CLRA.  Defendant primarily relies on two cases for support.  In the first, *Berry v. American Express Publishing, Inc.*, 147 Cal. App.4th 224, 227, 229 (2007), the California Court of Appeal held that "the extension of credit" was not "tangible chattel."  Specifically, the court found that although a plastic credit card was tangible, it had "no intrinsic value and exist[ed] only as an indicia of the credit extended to the card holder." *Id*. at 229.  Thus, "separate and apart from the sale or lease of any specific goods or services, [the extension of credit] does not fall within the scope of the [CLRA]." *Id*.

In the second case, *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 996 (N.D. Cal. 2012), which relied on *Berry*, minors brought a CLRA claim against Facebook arising out of their alleged purchases of "Facebook Credits," a "payment system" that allowed "users to make purchases within the Facebook website."  On a motion to dismiss, the court found that Facebook

United States District Court
Northern District of California

1   Credits, like the extension of credit in *Berry,* were not "tangible chattel," and thus were not

2   covered by the CLRA. *Id.* at 1007-08.

3        Plaintiff avers that the "digital content" players can acquire through in-App purchases,

4   including "virtual supplies, ammunition, and skins," is more akin to a "real-world" good than the

5   credit at issue in *Berry* and *I.B.* The Court disagrees. The complaint alleges that *Fortnite* players

6   can use real money to purchase V-Bucks, which can then be used to purchase content with which

7   to play the game. Thus, the transactions at issue in this case involve purchases of virtual currency,

8   not virtual supplies, ammunition, and skins. As such, and contrary to plaintiff's contention, this

9   case bears close similarities to *I.B.*, in which Facebook Credits, which could be used as "payment"

10  on Facebook's website, were not considered "goods" under the CLRA. Additionally, like in

11  *Berry*, V-Bucks "exist only as an indicia of the credit extended" to a *Fortnite* player. Moreover,

12  although "supplies" and "ammunition" may sound tangible, they are, as plaintiff himself agrees,

13  "digital."[16]

14       Plaintiff's CLRA claim therefore fails because the virtual currency at issue is not a good or

15  service. Nevertheless, in order to fully address the claim on the merits, the Court proceeds to

16  consider the other proposed basis for dismissal, namely, whether plaintiff has adequately pleaded

17  that he was misled.

18            2.    *Whether Plaintiff Adequately Pleaded that He Was Misled*

19       The CLRA prohibits "unfair methods of competition" and "unfair or deceptive acts or

20  practices." Cal Civ. Code § 1770(a). To state a claim under the CLRA, a plaintiff generally must

21  allege a misrepresentation, reliance, and damages. *See Marolda v. Symantec Corp.,* 672

22  F.Supp.2d 992, 1002-03 (N.D. Cal. 2009). A plaintiff can state a claim under the CLRA by

23  alleging either an affirmative misrepresentation or a failure to disclose. *See Rasmussen v. Apple,*

24  *Inc.,* 27 F.Supp.3d 1027, 1032 (N.D. Cal. 2014). Claims under the CLRA are governed by the

25

26      [16] The cases on which plaintiff relies, *Doe 1 v. AOL LLC,* 719 F.Supp.2d 1102, 1112 (N.D.
    Cal. 2010), *Morgan v. AT & T Wireless Services, Inc.,* 177 Cal.App.4th 1235, 1260, 99
27  Cal.Rptr.3d 768 (2009), and *America Online, Inc. v. Sup. Ct.,* 90 Cal.App.4th 1, 108 Cal.Rptr.2d
    699 (2001), are inapposite, as all three involved internet and telephone *service* providers. Plaintiff
28  does not argue that, as currently alleged, his CLRA claim is based on purchase of a "service."

"reasonable consumer" test. *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir. 1995)).

Here, defendant argues that plaintiff's CLRA claim fails because plaintiff was not misled. Specifically, defendant contends that plaintiff does not claim that he saw statements about in-App purchases being "not eligible for refund," and even if he had, he has not alleged that these statements caused him damages. Plaintiff counters that the complaint sufficiently pleads that he was "misled and misinformed" by defendant and suffered harm from relying on these misrepresentations. The portions of the complaint to which plaintiff cites, however, do not support these contentions. For example, while plaintiff alleges that a disclaimer stating that purchases are "not eligible for refund" appears "in very small inconspicuous text," plaintiff does not allege whether he saw this disclosure, and if he did, how he was misled by it. Further, it is not clear whether plaintiff's theory regarding defendant's non-refundable policy is based on affirmative misrepresentations or a failure to disclose: in one part of the complaint, plaintiff describes the "non-refundable" disclosure as "inconspicuous," and in another part, he alleges there was a "publicized non-refund policy."[17]

*T.K.* is instructive. There, a minor brought a CLRA claim related to Adobe's sales of subscriptions to the "Adobe Creative Cloud Platform" to minors. 2018 WL 1812200, at *1. Adobe brought a motion to dismiss, arguing in part that plaintiff failed to allege that she relied on defendant's alleged misrepresentations, which purportedly led plaintiff to belief that she "had no right to either disaffirm the[] contracts or receive refunds." *Id*. at *7. The court agreed, finding that the complaint did not allege that plaintiff actually read the relevant terms of service or relied

---

[17] The Court notes that the complaint sets forth several theories for how defendant's conduct was misleading and unlawful. For example, plaintiff alleges that he was induced to make in-App purchases, did not understand how much actual money was involved, did not understand defendant's refund policy, and was not allowed to disaffirm or receive a refund. Plaintiff also alleges that defendant did not institute proper parental controls. While plaintiff may pursue any plausible theory at this juncture, the Court notes that any amended complaint would benefit from clarification regarding these separate theories, including which theory underlies each cause of action.

on them.  *Id*.[18]  Similarly here, plaintiff fails to allege that he relied on any particular misrepresentations or omissions when making in-App purchases.

In addition, the subsections of the CLRA cited in the compliant, namely sections 1770(a)(5) (representations regarding "characteristics, . . . uses, benefits, or quantities"), 1770(a)(7) (representations that goods "are of a particular standard, quality, or grade"), and 1770(a)(14) (representations regarding "rights, remedies, or obligations"), are unsupported. Nowhere in the complaint does plaintiff allege facts showing that defendant misrepresented the characteristics, uses, benefits, or quantities of V-Bucks, or failed to disclose that they were of lower standard or quality than represented.  Further, and as previously explained, plaintiff fails to explain how he was misled regarding his rights, remedies, or obligations when making the in-App purchases.

The Court finds plaintiff's CLRA claim fails on this ground as well.  However, because amendment of the pleadings could potentially cure the defects identified herein, the CLRA claim is **DISMISSED WITH LEAVE TO AMEND**.

## C.  Implied Duty of Good Faith and Fair Dealing

Defendant moves for dismissal of this claim on the basis that it is not grounded in any express contract provision.  Moreover, defendant argues there was no breach of these purported implied covenants because players must enter payment methods to make in-App purchases and plaintiff allegedly made such purchases using his own money.

Every contract in the state of California contains an implied covenant of good faith and fair dealing that neither party will injure the right of the other party to receive the benefits of the agreement.  *In re Apple In-App Purchase Litig.*, 855 F.Supp.2d at 1041 (citing *Wolf v. Walt Disney Pictures & Tel.*, 162 Cal. App. 4th 1107, 1120 (2008)).  "The covenant is implied in every contract in order to protect the express covenants or promises of the contract."  *Imber-Gluck v. Google,*

---

[18]  The *T.K.* court also found that the plaintiff could not draw a plausible connection between defendant's terms of service and the alleged injury because plaintiff was able to exercise her right to disaffirm the contract and received a refund.  The portion of the court's holding carries no weight here, where plaintiff does not allege that he received any refund from defendant.

23

*Inc.*, No. 5:14–CV–01070–RMW, 2014 WL 3600506, at *8 (N.D. Cal. July 21, 2014). As such, the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003) (quoting *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 352 (2000)). However, "breach of a specific provision of the contract is not a necessary prerequisite" for breach of implied covenant of good faith and fair dealing. *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.,* 2 Cal.4th 342, 373 (1992).

"A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must allege the following elements: (1) the existence of a contract; (2) the plaintiff did all, or substantially all of the significant things the contract required; (3) the conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Oculus Innovative Sciences, Inc. v. Nofil Corp.*, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007) (citation omitted). Here, plaintiff alleges that defendant breached its duty of good faith and fair dealing by not taking steps to ensure that minors obtained consent from their parents or guardians before playing *Fortnite* and by inducing minors to make non-refundable in-App purchases.

Defendant relies on *T.K.* to support its argument. There, the court dismissed plaintiff's good faith and fair dealing claim on the ground that plaintiff had not alleged that defendant frustrated her right to receive the benefits of the contract. 2018 WL 1812200, at *9. Specifically, the court found that plaintiff's entire case was premised on her claims that Adobe's terms of service misled her about her rights under California law and that Adobe refused to honor her disaffirmance. *Id*. By the plaintiff's own admission, however, the contract did not promise her the right to disaffirm, and thus, it was not actionable as a breach of the implied covenant of good faith and fair dealing, which covers "the express covenants or promises of the contract." *Id*. (quoting *Imber-Gluck*, 2014 WL 3600506 at *8).

The Court agrees that this case is similar to *T.K.* Namely, plaintiff alleges that defendant breached the implied covenant of good faith and fair dealing by misleading plaintiff with respect

to disaffirmance and refunds.  However, the EULA and the screenshot included in the complaint indicate that defendant never promised plaintiff such options would be available, and indeed, stated that certain products were non-refundable.  Further, although the amended EULA requires minors to obtain the consent of a parent or guardian before accepting the agreement, the Court is not persuaded that defendant breached an implied covenant by failing to ensure minors abide by this provision.  Indeed, the provision imposes a duty on the player, not defendant.  Thus, plaintiff has not alleged any failure to receive the benefits of a contract between him and defendant.  *See In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d at 1042 ("The Terms & Conditions signed by Plaintiffs expressly provide that Plaintiffs are responsible for activity occurring on or through their accounts and Apple may charge them for any such activity.  Thus, the implied covenant cannot negate Apple's ability to charge Plaintiffs.")

Accordingly, defendant's motion to dismiss plaintiff's good faith and fair dealing claim is GRANTED.  Because amendment would not be futile, however, the Court grants plaintiff LEAVE TO AMEND.

### D. Negligent Misrepresentation

Next, defendant avers that plaintiff has not established any of the five elements of a negligent misrepresentation claim.  "The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."  *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC,* 158 Cal.App.4th 226, 243 (2007) (citing *Shamsian v. Atlantic Richfield Co.,* 107 Cal.App.4th 967, 983 (2003)); *see also* Cal. Civ. Code § 1710(2) (defining "[d]eceit" as including "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true").  Plaintiff alleges that defendant misrepresented material facts by not giving notice to plaintiff of its "non-refundable policy" at the time of in-App purchases and by "omitting to give summaries or reports of purchases that have already occurred[.]"  Plaintiff further alleges that defendant had a duty to provide players, including minors, with honest and

accurate information and should have known that a reasonable minor would be misled by its policies.

Here, defendant argues that although the complaint alleges it did not give notice to plaintiff of its non-refundable policy at the time of his purchases, plaintiff also alleges that defendant "may allow a refund of a total of three items through the lifetime of the user" and identifies which items are not eligible for refund under this policy. Defendant also contends that under the EULA, purchases of V-Bucks and content are final and not refundable except "as otherwise required by applicable law."

As explained with respect to plaintiff's CLRA claim, plaintiff has failed to allege sufficiently that defendant made a misrepresentation or that plaintiff justifiably relied on any misrepresentation. Thus, as with the CLRA claim, plaintiff's negligent misrepresentation claim is **DISMISSED WITH LEAVE TO AMEND** insofar as plaintiff may be able to replead to meet the elements of the claim.

**E. UCL**

Defendant argues plaintiff's UCL claim fails because (i) plaintiff does not sufficiently allege claims under any of the UCL's prongs, and (ii) plaintiff cannot seek equitable relief under the UCL because he already has an adequate remedy at law. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Each "prong" of the UCL provides a separate and distinct theory of liability. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Plaintiff asserts claims under all three prongs. The Court addresses each.

*1. Unlawful*

The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999) (quotation marks and citations omitted). "By proscribing 'any unlawful' business practice, the UCL permits injured consumers to 'borrow' violations of other laws and treat them as unlawful competition that is independently actionable."

*In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1225 (N.D. Cal. 2014) (quoting *Cel-Tech Commc'ns.*, 20 Cal.4th at 180).

Plaintiff alleges that defendant's conduct is unlawful under the UCL because it (i) violates the CLRA, (ii) breaches the implied covenant of good faith and fair dealing, (iii) constitutes negligent misrepresentation, and (iv) violates the minor's right to disaffirm a contract. As to the first three claims, the Court has dismissed these causes of action. Accordingly, they may not form the basis for plaintiff's UCL claim. The Court also has found, however, that plaintiff's allegations are sufficient to support his theory that defendant is unwilling to honor plaintiff's disaffirmance of his in-App purchases.

Thus, plaintiff may proceed with his UCL claim for unlawful conduct to the extent it is predicated on defendant's alleged violation of the minor's right to disaffirm a contract. Defendant's motion to dismiss plaintiff's UCL claim on this ground is therefore **DENIED**.

### 2.     *Unfair*

There are two standards for determining what is "unfair competition" under the UCL. The first standard, in the context of claims brought by consumers, requires allegations that the challenged conduct violates a "public policy" that is "tethered" to a specific constitutional, statutory, or regulatory provision. *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 853 (2002). The second standard "involves balancing the harm to the consumer against the utility of the defendant's practice." *Lozano*, 504 F.3d at 735.

Plaintiff asserts that defendant's conduct is unfair under both standards. Specifically, plaintiff alleges that defendant engaged in unfair practices by actively advertising, marketing, and promoting applications as "free" with the intent to induce minors to purchase game currency. The complaint, however, does not contain a single factual allegation to support this conclusory statement. Indeed, plaintiff alleges that V-Bucks can be earned in-game *or* purchased for money, and players must enter and save a payment method in order to make in-App purchases. As such, the Court **GRANTS** defendant's motion to dismiss plaintiff's UCL claim insofar as that claim is premised on the unfair prong of the UCL. However, because amendment would not be futile, the Court grants plaintiff **LEAVE TO AMEND**.

### 3. Fraudulent

The "fraudulent" prong of the UCL "requires a showing [that] members of the public are likely to be deceived." *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on" a motion to dismiss. *See Williams*, 552 F.3d at 938. To state a claim under the fraudulent prong, a plaintiff also is "required to prove 'actual reliance on the allegedly deceptive or misleading statements,' and that 'the misrepresentation was an immediate cause of the injury-producing conduct.'" *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012) (quoting *Kwikset v. Superior Court*, 51 Cal. 4th 310 (2011) and *In Re Tobacco II Cases*, 46 Cal. 4th 298 (2009)). Here, plaintiff alleges that defendant's conduct was fraudulent under the UCL because defendant intentionally and knowingly "omitted giving information" on amounts spent on in-App purchases, thereby misleading plaintiff about his purchase history. Elsewhere in the complaint, plaintiff alleges that *Fortnite* players have no way of knowing and cannot track the money already spent on in-App purchases.

Defendant argues that plaintiff's claim under the fraudulent prong of the UCL fails because players can track through their credit or debit cards or through PayPal, and in any event, defendant is not obligated to provide players with such information. Plaintiff counters that minors do not have access to their parents' credit card or bank account statements and that non-disclosure of material information such as purchasing history is fraudulent.

Plaintiff's argument that minors do not have access to information about their purchase history is undermined by the fact that plaintiff's allegations in this case are based on in-App purchases he made using his own money. Moreover, it is reasonable to believe that at least some minors obtain the consent of their parents or guardians before using their credit cards or bank accounts to make in-App purchases, and for those who do not, the Court is not persuaded that defendant must make their purchase history easily accessible through *Fortnite*. In addition, plaintiff's allegation that defendant "omitted giving information" about purchase history does not explain whether plaintiff ever sought this information and whether defendant refused to provide it.

Plaintiff's UCL claim under the fraudulent prong is **DISMISSED WITH LEAVE TO AMEND**.

### 4. Adequate Remedy at Law

Having found that plaintiff's UCL claim survives to the extent it is brought under the unlawful prong and predicated on an alleged violation of the minor's right to disaffirm, the Court considers whether the claim nevertheless fails because plaintiff has an adequate remedy at law.

The Court recently considered this issue in *Luong v. Subaru of Am., Inc.*, 2018 WL 2047646 at *7 (N.D. Cal. May 2, 2018). There, like here, defendant argued that plaintiffs' UCL claim was subject to dismissal to the extent they sought equitable relief because plaintiffs already had an adequate remedy at law. *Id.* This Court held:

> [T]here is a split of authority in the California district courts on the question of whether plaintiffs should be barred from pleading claims for equitable relief under the UCL and CLRA if they have alleged a claim that would provide an adequate remedy at law. *See Aberin v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018) (denying dismissal); *Adkins v. Comcast Corp.*, No. 16-CV-05969-VC, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017) ("A few federal courts seem to have decided that claims for equitable relief should be dismissed at the pleading stage if the plaintiff manages to state a claim for relief that carries a remedy at law. . . . But this Court is aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in the alternative to legal remedies at the pleadings stage."); *Huu Nguyen v. Nissan N. Am., Inc.*, No. 16-CV-05591-LHK, 2017 WL 1330602, at *4 (N.D. Cal. Apr. 11, 2017) (granting dismissal because plaintiff had adequate remedy at law); *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1204 (N.D. Cal. 2017) (same); *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016) (same). ***The Court finds those decisions allowing claims for equitable relief to proceed as an alternative remedy, at the pleading stage, to be more persuasive, based upon the broad remedial purposes of the California consumer protection statutes.***

*Id.* (emphasis supplied). Specifically, the Court reasoned that Business & Professions Code section 17205 expressly states that the remedies provided for a UCL violation are "cumulative to each other and to the remedies or penalties available under all other laws of this state." *Id.*; *see also State v. Altus Fin., S.A.*, 36 Cal. 4th 1284, 1303 (2005) ("[T]he fact that there are alternative remedies under a specific statute does not preclude a UCL remedy, unless the statute itself provides that the remedy is to be exclusive.").

Accordingly, defendant's motion to dismiss plaintiff's UCL claim because plaintiff has an adequate remedy at law is **DENIED**.

## F.    Unjust Enrichment

The Ninth Circuit has held that under California law, while "there is not a standalone cause of action for unjust enrichment, . . . [w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal citations and quotations omitted). "The fact that one person benefits another is not, by itself, sufficient to require restitution.  The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it." *First Nationwide Savings v. Perry*, 11 Cal.App.4th 1657, 1663 (1992) (emphasis in original); *see also Astiana*, 783 F.3d at 762 (explaining that restitution and unjust enrichment "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request" (internal quotation marks omitted)).

Plaintiff alleges defendant was unjustly enriched through its policy of not refunding in-App purchases of digital products and game currency.  Plaintiff asserts that he is entitled to recover all revenue acquired as a result of this policy.  Defendant argues that this claim fails for the same reason as certain of the other claims, namely, because plaintiff has not alleged that he requested to disaffirm his contract with defendant or that defendant unjustly refused such a request.  This argument fails because, as explained above, plaintiff has sufficiently pleaded that defendant was unwilling to honor plaintiff's disaffirmance and refund plaintiff for his in-App purchases.  Plaintiff's unjust enrichment claim nevertheless fails, however, because plaintiff has not alleged that he was misled or that defendant breached any express or implied covenant as it relates to defendant's non-refundable policy.[19]

As such, defendant's motion to dismiss the unjust enrichment claim is **GRANTED**.  As with the other claims that have been dismissed, however, plaintiff shall be granted **LEAVE TO AMEND**.

---

[19]  Defendant additionally argues that plaintiff's unjust enrichment claim fails because he has an adequate remedy at law.  As discussed, however, plaintiff is permitted to pursue alternative forms of relief, notwithstanding the availability of a legal remedy.

United States District Court
Northern District of California

## V.  MOTION TO COMPEL COMPLIANCE WITH RULE 10(A)

Finally, the Court addresses defendant's motion to compel plaintiff to comply with Rule 10(a), which provides that every pleading must "name all the parties." Fed. R. Civ. P. 10(a). Defendant asks the Court to require Johnny Doe to litigate under his initials and require Jane Doe to litigate under her full name.

As a threshold matter, plaintiff contends that the motion is procedurally improper because it essentially is a motion for reconsideration of the Court's order granting plaintiff leave to proceed under a pseudonym, filed absent leave of Court. Plaintiff filed this action on June 21, 2019 and concurrently field an *ex parte* motion to seek leave from the Court to proceed under a pseudonym. In its *ex parte* motion, plaintiff noted that defendant would not be prejudiced by the Court allowing plaintiffs "to press their claims anonymously at this juncture[,] given the limited, initial stage through which [p]laintiffs seek this relief: as [p]laintiffs plead their case, and [d]efendant presents its answer and defenses." On June 25, 2019, defendant executed a waiver of service of summons that included receipt of the motion. Just over two weeks later, on July 11, 2019, the Court granted plaintiff's motion.

The Court granted plaintiff's motion to proceed under a pseudonym when this case was in its infancy, before defendant's counsel had appeared let alone responded to the complaint. Now that defendant's counsel has appeared and the parties have engaged in motion practice that provides additional insight into the case, the circumstances have changed materially. This is sufficient to warrant consideration of the motion to compel compliance with Rule 10(a) on the merits. *See Jane Doe v. John F. Kennedy University*, No. 4:13-cv-1137-DMR (N.D. Cal.), Dkt. Nos. 4, 34 (granting an *ex parte* motion to proceed under a pseudonym and later granting motion for an order requiring plaintiff to refile under her true name).

Turning to the merits, in the Ninth Circuit, parties may proceed under pseudonyms only "in the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment." *Does I Thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1067–68 (9th Cir. 2000) (quoting *United States v. Doe,* 655 F.2d 920, 922 n. 1 (9th Cir. 1981)). The Court determines whether the plaintiff may

proceed anonymously by balancing five factors: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, (3) the anonymous party's vulnerability to such retaliation, (4) the prejudice to the opposing party, and (5) the public interest. *Id*. at 1068–69.

Here, plaintiff contends that he should be permitted to proceed under pseudonym because his gaming habits constitute highly sensitive personal information and he fears retaliation from the community if his identity is revealed. Plaintiff further argues that defendant will not suffer any hardship from plaintiff proceeding anonymously because defendant knows plaintiff's identity. Further, plaintiff avers that the public interest in seeing this case resolved on the merits weighs in favor of granting anonymity, implying that plaintiff may not proceed with the litigation if he must face public scrutiny.

Plaintiff's arguments fail to persuade. Although plaintiff's position in this litigation may be unpopular to some, his fear of social stigmatization is speculative and there is no indication plaintiff is likely to suffer more severe retaliation than in the typical consumer action. Further, plaintiff's "technology preferences" and "video-gaming habits," while perhaps sensitive, do not justify the use of a pseudonym, which runs contrary to the "normal presumption in litigation [] that parties must use their real names." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010) (citing *Advanced Textile Corp.,* 214 F.3d at 1043). Indeed, information about plaintiff's use of *Fortnite* is of an entirely different nature than that which typically justifies the use of pseudonyms, such as information about sexual abuse, human trafficking, or mental illness. Moreover, the public interest in resolution of this case on the merits does not outweigh the public's interest in the openness of the proceeding.

As such, defendant's motion to compel compliance with Rule 10(a) is **GRANTED**.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS**:

(i)     defendant's motion to compel arbitration is **DENIED**;

(ii)    defendant's motion to transfer this case to the Eastern District of North Carolina is **DENIED**;

(iii)   defendant's motion to dismiss is **DENIED** as to (A) declaratory judgment, and (B)

the UCL, insofar as plaintiff's claim is brought under the unlawful prong and predicated on an alleged violation of the minor's right to disaffirm;

(iv) defendant's motion to dismiss is **GRANTED WITH LEAVE TO AMEND** as to (A) the CLRA, (B) the implied covenant of good faith and fair dealing, (C) negligent misrepresentation claim, (D) the UCL, except as set forth above, and (E) unjust enrichment; and

(v) defendant's motion to compel compliance with Rule 10(a) is **GRANTED**.[20]

An amended complaint must be filed within **twenty-one (21) days** of issuance of this order.[21] Such complaint must identify plaintiff Johnny Doe and his guardian Jane Doe by name in accordance with Rule 5.2 as it relates to minors. Any response to thereto is due **fourteen (14) days** after plaintiff's filing.[22]

This Order terminates Docket Numbers 18, 20, 21, 44, and 47, 49, and 52.

**IT IS SO ORDERED.**

Dated: January 23, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[20] In light of the Court's grant of the motion to compel compliance with Rule 10(a), plaintiff's unopposed administrative motion to file under seal Docket Number 42-1, which includes plaintiff's screen name for playing *Fortnite*, is **DENIED**.

[21] On December 18, 2019, while the instant motion was pending, plaintiff filed a motion for leave to file a first amended complaint. (Dkt. No. 49.) In light of this order, plaintiffs' motion is **DENIED WITHOUT PREJUDICE** to plaintiff to review this order and file an amended complaint in conformity thereof.

[22] On January 9, 2020, the parties filed a joint discovery letter brief. (Dkt. No. 52.) The parties are advised that the court shall issue a protective order with respect to source code when and if such an order is necessary. There is no need to issue it at present. Additionally, the instant order addresses, at a minimum, some of the other discovery issues, and accordingly, the requests set forth in the letter are **DENIED WITHOUT PREJUDICE**. The parties are ordered to meet and confer and determine whether any disputes remain. If another motion is brought, the parties **SHALL** comply with this Court's standing order and submit letter briefs.