MATTHEW J. ADLER (SBN 273147)
Matthew.Adler@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111-4180
Telephone:    415-591-7500
Facsimile:    415-591-7510

JEFFREY S. JACOBSON (*pro hac vice*)
Jeffrey.Jacobson@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York  10036-2714
Telephone:    212-248-3140
Facsimile:    212-248-3141

RYAN M. SALZMAN (SBN 299923)
Ryan.Salzman@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California  90067-1517
Telephone:    310-203-4000
Facsimile:    310-229-1285

Attorneys for Defendant
EPIC GAMES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| C.W., a minor, by and through his Guardian, REBECCA WHITE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EPIC GAMES, INC., a North Carolina corporation,<br><br>Defendant. | Case No. 4:19-cv-3629-YGR<br><br>**DEFENDANT EPIC GAMES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        May 19, 2020<br>Time:        2:00 p.m.<br>Courtroom:   1<br>Judge:       Hon. Yvonne Gonzalez Rogers<br><br>Action Filed:  June 21, 2019<br>Trial Date:    None set |

**NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT**

TO THE COURT AND PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 19, 2019 at 2:00 p.m., or as soon thereafter as this matter may be heard by the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, 4th Floor of the above-entitled court located at 1301 Clay Street, Oakland, CA 94612, Defendant Epic Games, Inc. ("Epic Games"), by and through its counsel of record, will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing all claims in the Amended Complaint of Plaintiff "C.W.," a minor, who has filed suit by and through his guardian, Rebecca White (together, "Plaintiffs").

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support, the Declaration of Jeffrey S. Jacobson and exhibits thereto filed concurrently herewith, [Proposed] Order, as well as all papers and pleadings on file herein, and such argument as properly may be presented at the hearing.

Dated: March 12, 2020                     FAEGRE DRINKER BIDDLE & REATH LLP


                                          By: /s/ Jeffrey S. Jacobson
                                              Jeffrey S. Jacobson (*pro hac vice*)
                                              Matthew J. Adler
                                              Ryan M. Salzman

                                          Attorneys for Defendant
                                          EPIC GAMES, INC.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT
- ii -
CASE NO. 4:19-CV-3629-YGR

<u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 2

III.    PROCEDURAL HISTORY ................................................................................. 4

IV.     ARGUMENT ....................................................................................................... 5

    A.   The FAC's Allegations Do not Entitle Plaintiffs to Any Declaratory Judgment. ........................................................................................... 5

        1.   Minors Cannot Disaffirm Purchases of Consumables. ............................ 6

        2.   A Minor Acting as an Agent of a Parent May Not Disaffirm a Transaction. ....................................................................................... 8

        3.   Disaffirmation of Transactions Made with C.W.'s "Own Money" Using Third-Party Gift Cards Is Not Appropriately Directed to Epic Games. .............................................................................................. 10

    B.   Plaintiffs' Amended Complaint Fails to State a Viable Claim Under the CLRA. ...................................................................................................... 11

        1.   Virtual Currency Is, Still, Not a "Good" or "Service." .......................... 12

        2.   C.W. Was Not "Misled." .................................................................... 13

    C.   Epic Games Did Not Breach the Implied Duty of Good Faith. ...................... 14

    D.   Epic Games Committed No "Negligent Misrepresentation." .......................... 15

    E.   Plaintiffs Fail to Plead Any Violation of California's Unfair Competition Law. ......................................................................................................... 16

        1.   Epic Games Did Not Act "Unfairly." .................................................. 16

        2.   Epic Games Did Not Act "Fraudulently." ............................................ 17

        3.   Epic Games Did Not Act "Unlawfully" ............................................... 18

    F.   Plaintiffs' FAC Did Not Cure Plaintiffs' "Unjust Enrichment" Claim. ............ 19

    G.   Plaintiffs' Attacks on Fortnite Are Not Relevant to Any of Plaintiffs' Claims. ....................................................................................................... 20

    H.   Leave to Amend Would Be Futile and Should Be Denied. ............................. 20

IV.     CONCLUSION ................................................................................................... 20

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

- iii -

CASE NO. 4:19-cv-3629-YGR

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. City of Beverly Hills,*
911 F.2d 367 (9th Cir. 1990) ................................................................................. 20

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC,*
158 Cal.App.4th 226 (2007) .................................................................................. 15

*In re Apple In-App Purchase Litig.,*
855 F. Supp. 2d 1030 (N.D. Cal. 2012) ................................................................ 14

*Berg v. Traylor,*
148 Cal. App. 4th 809 (2007) ................................................................................. 6

*Berry v. American Express Publishing, Inc.,*
147 Cal. App.4th 224 (2007) ................................................................................ 12

*Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.,*
2 Cal.4th 342 (1992) ............................................................................................. 14

*Cervantes v. Countrywide Home Loans, Inc.,*
656 F.3d 1034 (9th Cir. 2011) .............................................................................. 20

*Doe #1 v. College Board,*
No. 19 Civ. 6660 (LGS), 2020 WL 882019 (S.D.N.Y. Feb. 24, 2020) .................. 8

*E.K.D. ex rel. Dawes v. Facebook, Inc.,*
885 F. Supp. 2d 894 (S.D. Ill. 2012) ...................................................................... 7

*Fisher v. Taylor Motor Co.,*
107 S.E.2d 94 (N.C. App. 1959) ............................................................................. 8

*Gillis v. Whitley's Discount Auto Sales, Inc.,*
319 S.E.2d 661 (N.C. App. 1984) ........................................................................... 8

*Grube v. Amazon.com, Inc.,*
No. 16-CV-126-LM, 2017 WL 3917602 (D.N.H. Sept. 6, 2017) ........................... 9

*Hoey v. Sony Elecs. Inc.,*
515 F. Supp. 1099 (N.D. Cal. 2007) ..................................................................... 13

*I.B. v. Facebook, Inc.,*
905 F. Supp.2d 989 (N.D. Cal. 2012) ........................................................ 6, 9, 10, 12

*In re Iphone 4S Consumer Litig.,*
No. C 12-1127 CW, 2014 WL 589388 (N.D. Cal. Feb. 14, 2014) ........................ 14

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

- iv -

CASE NO. 4:19-CV-3629-YGR

*Kearns v. Ford Motor Corp.*,
    567 F.3d 1120 (9th Cir. 2009) .......................................................................................... 12

*Lopez v. Kmart Corp.*,
    No. 15-CV-1089-JSC, 2015 WL 2062606 (N.D. Cal. May 4, 2015) .................................... 6

*In re: MacBook Keyboard Litig.*,
    No. 5:18-cv-2813-EJD, 2019 WL 1765817 (N.D. Cal. Apr. 22, 2019) ............................... 14

*McKinney v. Google, Inc.*,
    No. 5:10-CV-01177 EJD, 2011 WL 3862120 (N.D. Cal. Aug. 30, 2011)............................. 14

*Morrow v. Norwegian Cruise Line Ltd.*,
    262 F. Supp. 2d 474 (M.D. Pa. 2002) .............................................................................. 7, 8

*Paster v. Putney Student Travel, Inc.*,
    No. CV 99-2062 RSWL, 1999 WL 1074120 (C.D. Cal. June 9, 1999) .............................. 7, 8

*Rasmussen v. Apple Inc.*,
    27 F. Supp. 3d 1027 (2014).............................................................................................. 13

*Sateriale v. R.J. Reynolds Tobacco Co.*,
    697 F.3d 777 (9th Cir. 2012)............................................................................................ 17

*Shamsian v. Atlantic Richfield Co.*,
    107 Cal.App.4th 967 (2003).............................................................................................. 15

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)............................................................................................ 12

*Wang v. Massey Chevrolet*,
    97 Cal. App. 4th 856 (2002).............................................................................................. 17

*Yastrab v. Apple Inc.*,
    173 F. Supp. 3d 972 (N.D. Cal. 2016) .............................................................................. 13

**STATUTES, RULES & REGULATIONS**

15 U.S.C. § 1644 .................................................................................................................... 2

Cal. BPC §17200 ............................................................................................................... 4, 16

Cal. Fam. Code § 6710 ..................................................................................................... 6, 11

Cal. Penal Code § 484(g) ....................................................................................................... 2

Fed. R. Civ. P. 9(b) .............................................................................................................. 12

Fed. R. Civ. P. 10(a) .............................................................................................................. 5

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS          - v -          CASE NO. 4:19-CV-3629-YGR
PLAINTIFFS' AMENDED COMPLAINT

1

**OTHER AUTHORITIES**

James Chang & Farnaz Alemi, *Gaming the System: A Critique of Minors'
    Privilege to Disaffirm Online Contracts*, 2 UC Irvine L. Rev. 627 (2012) .............................. 8

Restatement (Third) of Agency § 3.05, cmt. B, illus. 1 (2006)........................................................ 8

Restatement (Third) of Agency § 4.01(2) ..................................................................................... 9

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

- vi -

CASE NO. 4:19-CV-3629-YGR

1

## I.   **INTRODUCTION**

2   Epic Games seeks dismissal of Plaintiffs' First Amended Complaint ("FAC," Dkt. No. 56)

3   because their new allegations show that Plaintiffs (i) have sued the wrong defendant with respect

4   to C.W.'s alleged "gift card" transactions; and (ii) have added claims regarding purchases that C.W.

5   made as an authorized agent on his parent's credit account, which he cannot legally disaffirm.

6   Plaintiffs' attempt to resurrect their fraud-based claims fails because the FAC did not cure the

7   defects that caused the Court previously to dismiss those claims.  For these and other reasons,

8   Plaintiffs' FAC alleges *no* valid claims, and the Court should dismiss it with prejudice.

9   When this Court previously ruled on the legal sufficiency of Plaintiffs' prior Complaint,

10   Plaintiffs were pressing a simple theory:  They alleged that C.W., a minor, made certain purchases

11   from Epic Games with his "own money" in the form of "gift cards" he received for special

12   occasions.  Plaintiffs argued that California law permitted C.W. to "disaffirm" those alleged

13   purchases and to get his money back despite not being able to return the in-game benefits that he

14   already had used and enjoyed.  This Court held that a live dispute existed over whether California

15   law applied and could be interpreted in the manner Plaintiffs argued for, but it dismissed Plaintiffs'

16   fraud-based and other claims because Epic Games never stated or suggested that it would not follow

17   applicable law in responding to a disaffirmation request.

18   The FAC, however, withdrew the false claim that was at the very heart of Plaintiffs' prior

19   theory.  It admits that C.W. *never* made any purchase from Epic Games with his "own money," in

20   any form.  *None* of C.W.'s "gift card" transactions were with Epic Games.  Instead, Plaintiffs now

21   acknowledge that all of C.W.'s "gift card" purchases were made from Apple, Inc.'s iTunes store or

22   from Sony Interactive Entertainment Corp.'s PlayStation store, using those companies' gift cards,

23   and not from Epic Games.  It is axiomatic that if C.W. wishes to declare his disaffirmation rights

24   with respect to transactions with Apple or Sony, he has to sue Apple or Sony, not Epic Games.

25   Plaintiffs' FAC now admits that C.W.'s only virtual currency ("V-Bucks") purchases *from*

26   *Epic Games* were charged to credit cards belonging to C.W.'s mother, Rebecca White.  C.W. did

27   **not** use his "own money" or "gift cards" for any of these alleged transactions.  The law is clear that

28   minors cannot disaffirm purchases they made as agents on a parent's credit card account.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

- 1 -

CASE NO. 4:19-cv-3629

In light of Plaintiffs' new admissions in the FAC, the Court should dismiss Plaintiffs' declaratory judgment claim involving purchases from companies other than Epic Games. The Court then should dismiss the remainder of Plaintiffs' "disaffirmation" claims because C.W.'s purchases from Epic Games were as-agent transactions on Ms. White's payment accounts. Finally, the Court should dismiss Plaintiffs' fraud-based claims, this time with prejudice, because Plaintiffs' amended allegations did not cure any of the deficiencies the Court noted in its prior opinion.

## II.    FACTUAL BACKGROUND

Epic Games' highly popular video game *Fortnite* is "an open-world survival video game in which players collect weapons, tools, and resources…in order to survive and advance in the game." FAC ¶ 11. *Fortnite* is offered "for free and may be downloaded at no cost." *Id.* ¶ 3. Players do not need to pay any money to play or succeed in the game. Through game play, players earn Epic Games' in-game currency, called V-Bucks, which they can use to purchase "cosmetic" items like outfits ("skins") for characters that enhance the player's experience. Epic Games also allows players to purchase V-Bucks. *See id.* ¶¶ 25-26. A player wishing to purchase V-Bucks can do so on a one-time basis or else "enter[]…a payment method"—*i.e.*, a credit card or PayPal account— and store it in his *Fortnite* account, thereby facilitating subsequent purchases without having to re-enter the same payment information. *Id.* ¶ 32.

According to the FAC, C.W. "made V-Bucks purchases through his parents' credit cards and debit cards that were available from his gaming platforms." FAC ¶ 41. The FAC claims that C.W.'s "parent did not consent to the use of such information," *id.*, but if Plaintiffs are suggesting that C.W. stole a credit card and used it to commit the crime of credit card fraud (*see* Cal. Penal Code § 484(g); 15 U.S.C. § 1644), their use of the word "available" is a strange, passive-voice manner of making such a serious charge. Plaintiffs then suggest that Ms. White knew about C.W.'s purchases with the stored credit card information and "ignore[d] these expenses as onesie-twosie expenses at the early stages of [his] using *Fortnite*." *Id.* ¶ 56. Thereafter, Ms. White claims she did not review her credit card statements until "months afterwards." *Id.* ¶ 44. In other words, Ms. White made her credit accounts "available" to C.W. in his gaming platforms, did not supervise C.W.'s game play or his use of her credit accounts, learned about his initial purchases from her

credit card statements but ignored them as "onesie-twosie expenses," and then did not review her

subsequent financial statements until "months" later.  Plaintiffs are suing over these purchases.

Plaintiffs only changed their allegations about C.W.'s purchases because discovery, which Plaintiffs insisted should proceed while the Court considered Epic Games' prior motion to dismiss, forced Plaintiffs to admit the truth.  On January 15, 2020—just eight days before this Court's January 23 Order ("Dismissal Order," Dkt. No. 54) granting in part Epic Games' Motion to Dismiss—Plaintiffs served interrogatory responses stating that the only purchases C.W. made with "gift cards" were in the iTunes and PlayStation stores, which Epic Games does not control.  *See* Declaration of Jeffrey S. Jacobson ("Jacobson Decl.") ¶ 3; Ex. B (Response to Interrogatory No. 3 stating: "[C.W.] recollects that he used one or more Apple iTunes gift card from a friend for $40 and also used four PlayStation gift cards of $50 each around Christmas/Holiday time in 2018 that he received from his extended family members.").  *See* FAC ¶ 42 (same).

Unlike in both prior California cases involving disaffirmation of online purchases, where the plaintiffs began by asking the defendant companies for a refund, C.W. and Ms. White proceeded directly to a lawsuit in which they sued pseudonymously.  Plaintiffs' interrogatory responses confirmed that their first communication with Epic Games was a May 17, 2019, letter from their counsel.  *See* Jacobson Decl. Ex. A (May 17, 2019 Letter); Ex. B (Response to Interrogatory No. 6 referencing *only* Plaintiffs' May 17, 2019, letter and Plaintiffs' Complaint in responses to Epic Games' request that Plaintiffs detail each communication in which Plaintiff sought a refund from or attempted to disaffirm a contract with or relating to Epic Games).

The letter did not identify C.W. or Ms. White; it said "we represent a client who…wishes to remain anonymous," and did not say that this anonymous client wished to disaffirm any transactions.  It said only that "[o]ur client can legally disaffirm contracts," and it alleged that "Epic [Games'] current non-refundable policy violates the laws of the state of California with respect to contracting with minors."  Jacobson Decl. Ex. A.  As this Court ruled in dismissing Plaintiffs' fraud claims, however, Epic Games does not have a "non-refundable policy."  Its End User License Agreement ("EULA") states explicitly, in two places, that even if a purchase item is labeled as "final and…not refundable," Epic Games will provide refunds "as otherwise required by applicable

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

- 3 -

CASE NO. 4:19-cv-3629

law" or "to the extent required by law." *See* Dkt. No. 21-1 at 11 (Epic Games EULA). During discussions that followed the sending of that letter, moreover, Plaintiffs' counsel refused to identify C.W. and Ms. White by name or to provide any details that would have allowed Epic Games to investigate and act upon their pre-suit request. *See* Jacobson Decl. ¶¶ 4-5.

Nothing in Epic Games' refund policies precluded Plaintiffs from asking for a refund, and nothing suggested C.W. could not invoke disaffirmation rights. Epic Games does label some in-game purchases as "non-refundable" and, for refundable items, its ordinary policy is to limit players to three refunds per account, each made within 30 days of a purchase. *See* FAC ¶¶ 14, 43. The EULA states, however, that Epic Games would provide refunds whenever applicable law required.

Plaintiffs allege that C.W. wants to disaffirm his exchange of V-Bucks for a "Battle Pass," which gave him access to additional content and benefits, and which Epic Games listed as "not eligible for refund." FAC ¶¶ 14, 39. Plaintiffs also allege that C.W. used V-Bucks to purchase explicitly refundable items, then changed his mind more than 30 days later. He thus "want[s] to disaffirm" those purchases made outside the regular refund period. *Id.* ¶ 40. Plaintiffs did not, however, request a refund from Epic Games or invoke disaffirmation rights before suing. Plaintiffs allege that they "were not aware of a minor's right to disaffirm" until they "hir[ed] counsel in this action," *id.* ¶ 45, but ignorance of the law should not be the basis for a lawsuit. Further, Plaintiffs cannot claim that the EULA misled them with respect to the availability of refunds or disaffirmation because they admit that neither C.W. nor Ms. White ever read the EULA. *See id.* ¶ 38.

The facts as Plaintiffs currently plead them demonstrate that (1) C.W. made no purchases from Epic Games with his "own money"; (2) C.W.'s purchases of V-Bucks from Epic Games all were made exclusively as an authorized agent on Ms. White's credit accounts; and (3) Epic Games said nothing to suggest it would not honor any minor's legal rights. They have not stated a claim.

## III.   PROCEDURAL HISTORY

Plaintiffs filed their initial Complaint on June 21, 2019 (Dkt. No. 1). They asserted six causes of action, which included: (1) Declaratory Relief; (2) Violation of the California Consumers Legal Remedies Act ("CLRA"); (3) Breach of Duty of Good Faith and Fair Dealing; (4) Negligent Misrepresentation; (5) Violation of California Business & Professions Code §17200 ("UCL"); (6)

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT                - 4 -                CASE NO. 4:19-cv-3629

1   Restitution or Unjust Enrichment.  On August 26, 2019, Epic Games filed its Motion to Dismiss

2   Plaintiff's Complaint (Dkt. No. 18), Motion to Compel Compliance with Fed. R. Civ. Proc. 10(a)

3   (Dkt. No. 20), and Motion to Compel Arbitration or, in the Alternative Transfer the Action to the

4   Eastern District of North Carolina (Dkt. No. 21).

5        On January 23, 2020, the Court granted in part and denied in part Defendant's Motion to

6   Dismiss.  The Court dismissed all of Plaintiffs' fraud-based claims, with leave to amend, but let

7   stand Plaintiffs' claim for Declaratory Relief and their claim that, to the extent Epic Games did not

8   comply with applicable disaffirmation laws, Epic Games may have violated the UCL's "unlawful"

9   prong.  In doing so, this Court found that "[t]he May 17 letter and the filing of this suit conveyed

10  plaintiff's intent to disaffirm in-App purchases allegedly *made using plaintiff's own money*."

11  Dismissal Order at 6-7, 17 n.15 (emphasis added).

12       Plaintiffs' filed their FAC on February 13, 2020.  A redline of the FAC against the prior

13  Complaint is attached to the Jacobson Declaration as Exhibit C.  As set forth below, Plaintiffs' FAC

14  did **not** cure the fatal defects this Court found in their fraud-based claims.  With respect to the

15  Declaratory Relief and UCL unlawful-prong claims that the Court sustained from the prior

16  Complaint, Plaintiffs amended out of the FAC the very basis on which the Court allowed those

17  claims to proceed.  Specifically, the FAC newly asserts that C.W. made purchases using Ms.

18  White's credit cards, and that the only "gift cards" he used, representing his "own money" were

19  transactions not with Epic Games, but with third parties.

20                    **IV.   ARGUMENT**

21  **A.   The FAC's Allegations Do not Entitle Plaintiffs to Any Declaratory Judgment.**

22       Plaintiffs' FAC corrected their prior false allegations underlying two crucial issues: (i) who

23  paid for C.W.'s in-game transactions, and (ii) with which counter-parties those transactions

24  occurred.  Plaintiffs newly assert that the purchases C.W. seeks to disaffirm were made: (i) mostly

25  "through his parent's credit cards and debit cards" (FAC. ¶ 41); and (ii) only secondarily using his

26  "own money" in the form of "gift cards" from "[Sony] PlayStation and Apple iTunes." *Id.* ¶ 42.

27  These statements render moot Plaintiffs' prior claim for declaratory relief, which concerned only

28  non-existent "gift card" purchases that C.W. supposedly made directly from Epic Games.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT                  - 5 -                  CASE NO. 4:19-CV-3629

Plaintiffs' *instant* Declaratory Relief claims concern different issues on which the Court did not previously rule. Those include whether C.W. may disaffirm a transaction in which he acted as an agent, using his parent's credit card, and whether C.W. can exercise "disaffirmation" rights against Epic Games with respect to transactions to which Epic Games was not a party. Epic Games will demonstrate below that neither the California law that Plaintiffs contend applies, nor the North Carolina law that Epic Games contends applies, permits disaffirmation in either circumstance.

### 1.    Minors Cannot Disaffirm Purchases of Consumables.

As a starting point, even had Plaintiffs not upended their declaratory relief claims by finally alleging the true facts of C.W.'s in-game purchases, the relief they seek is fundamentally inequitable and beyond the scope of California Family Code § 6710. The Court held in its Dismissal Order (at 7 n.6), that § 6710 can be construed to allow a minor to disaffirm ordinary purchases, and not just "contracts." Most prior case law interpreting § 6710, however, considered it to be more limited in scope. One simply does not see cases involving minors attempting to recover money they spent on ordinary consumable purchases. A minor cannot, for example, enjoy a day at an amusement park and then "disaffirm" her payment of the entry fee, ask for his money back from the theater after having watched a movie, get her money back for gasoline already used in a car, or demand a refund for an opened pack of baseball cards after not finding the card he wanted. No such cases exist, from California or anywhere else.

This distinction, limiting application of § 6710 to true "contracts," also can be seen in the prior disaffirmation cases that the Court cited. Those cases disaffirmed a contract between an agent and an actor in one case and an employment agreement in the other. *See Berg v. Traylor*, 148 Cal. App. 4th 809 (2007); *Lopez v. Kmart Corp.*, No. 15-CV-1089-JSC, 2015 WL 2062606 (N.D. Cal. May 4, 2015). The only case of which Epic Games is aware that involved amusements—or, indeed, ordinary consumable purchases of any kind—is *I.B. v. Facebook, Inc.*, 905 F. Supp.2d 989 (N.D. Cal. 2012), which involved online "credits." The *I.B.* court, like this Court, wrote that if merchants want to avoid disaffirmation claims, they can do so by "declining to enter into" transactions with minors. *Id.* at 1003. But both this Court and the *I.B.* court cited *Berg*—a true "contract" case—for that premise. This Court and the *I.B.* court looked at the issue narrowly, confined to the facts of

the cases before them, and did not consider the broader implications of allowing minors to disaffirm small-dollar purchases after having consumed or enjoyed what they bought.

Other courts construing California law, recognizing that disaffirmation is an equitable remedy, have rejected claims from minors that they could disaffirm purchases after enjoying the benefits of those purchases. *See, e.g., Paster v. Putney Student Travel, Inc.*, No. CV 99-2062 RSWL, 1999 WL 1074120, at *1 (C.D. Cal. June 9, 1999) ("Plaintiff, however, cannot accept the benefits of a contract and then seek to void it in an attempt to escape the consequences of a clause that do not suit her."). *See also E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) (California law recognizes that the "disability of infancy [is not] a 'sword' rather than a 'shield,'" and cannot "be used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit.") (citation omitted).  In *Paster*, a minor entered into an agreement to spend four weeks on an Indian reservation. *Paster*, 1999 WL 1074120, at *1.  Paster sued the defendant for personal injuries she allegedly suffered on the reservation, and the defendant sought to enforce its contractual forum choice. *Id.*  The court held that Paster "cannot accept the benefits of a contract and then seek to void it." *Id.* at *2.  The court in *Morrow v. Norwegian Cruise Line Ltd.*, 262 F. Supp. 2d 474, 476 (M.D. Pa. 2002), reached the same conclusion: "Plaintiff boarded the Norwegian Wind with her family and took the cruise.  Since Plaintiff cannot give back, or in any way disgorge, the benefit of her contract, it would be inequitable to now release her from the obligations and consequences attached to that benefit."

The courts in *Paster* and *Morrow* held, specifically, that those plaintiffs had to live by their contracts' dispute resolution terms.  Here, C.W. could not have played *Fortnite*, earned V-Bucks, or exchanged V-Bucks for in-game benefits, without first having accepted the EULA, which provided that disputes between C.W. and the company would be decided under North Carolina law. Although this Court held that C.W. could avoid arbitrating his dispute by disaffirming a *subsequent* EULA with an arbitration requirement that he accepted in March 2019 (*see* Dismissal Order at 9), *after* he had made all of the purchases at issue in this case, C.W. cannot avoid the choice of law clause in the first EULA he accepted, and pursuant to which he made all of the purchases at issue. The Court made clear that it has not decided any choice of law issues. *See id.* at 16.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

- 7 -

CASE NO. 4:19-CV-3629

If this Court follows *Paster* and *Morrow*, it would bind C.W. to the dispute resolution terms he agreed to accept as a condition of playing *Fortnite*, acquiring V-Bucks, and exchanging V-Bucks for in-game benefits.  That means enforcing the North Carolina choice of law clause.  *Cf. Doe #1 v. College Board*, No. 19 Civ. 6660 (LGS), 2020 WL 882019, at *4 (S.D.N.Y. Feb. 24, 2020) (enforcing arbitration agreement against minor, holding under New York law that "after disaffirmance a minor is not entitled to retain an advantage from a transaction which he repudiates").  Although minors can disaffirm contracts under North Carolina law, too, that state's law allows disaffirmation only if the minor "restores whatever part he still has of the benefit he received under the contract."  *Gillis v. Whitley's Discount Auto Sales, Inc.*, 319 S.E.2d 661 (N.C. App. 1984), *citing Fisher v. Taylor Motor Co.*, 107 S.E.2d 94 (N.C. App. 1959).  No North Carolina case suggests disaffirmation is possible once the minor has consumed all of the purchased benefits.

If the Court determines that the laws of California and North Carolina conflict, Epic Games submits that the Court should apply North Carolina law to the dispute pursuant to the EULA.  The Court need not, however, find the two states' laws to be in conflict.  It should, instead, hold that California law—like North Carolina law—does not permit a minor to disaffirm entertainment purchases after consuming the entertainment.  The implications of such a ruling are too consequential to assume that the California Legislature intended them.

### 2.   A Minor Acting as an Agent of a Parent May Not Disaffirm a Transaction.

Even if the Court were to hold that a California minor, under some circumstances, can disaffirm consumable purchases, Plaintiffs' new admissions demonstrate that C.W. cannot disaffirm the transactions he has put at issue.  When a parent gives a minor access to the parent's credit card and the ability to charge purchases with it, the minor is acting as the parent's agent with actual authority, and the parent is liable for purchases made by the minor.  *See* Restatement (Third) of Agency § 3.05, cmt. B, illus. 1 (2006); James Chang & Farnaz Alemi, *Gaming the System: A Critique of Minors' Privilege to Disaffirm Online Contracts*, 2 UC Irvine L. Rev. 627, 651 n.115 (2012) ("When parents authorize minors to use their credit cards, they confer upon the minors the power to create additional obligations to pay between the cardholder—the parent—and the issuing bank ….  The cardholder has no right to disaffirm due to capacity, or lack thereof.").

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

- 8 -

CASE NO. 4:19-cv-3629

1    Epic Games has not located any case holding that a minor can disaffirm transactions entered

2    into on a parent's credit card with authorization.  At least one case, by contrast, has held that where

3    a minor uses a parent's credit card, an online retailer has sufficient reason to believe that the parent

4    authorized it.  *See Grube v. Amazon.com, Inc.*, No. 16-CV-126-LM, 2017 WL 3917602, at *1

5    (D.N.H. Sept. 6, 2017) (citing Restatement and holding that "[t]he principal's manifestation of

6    apparent authority need not be communicated directly to the third party").  The Court should hold

7    that C.W. cannot disaffirm his transactions with Epic Games using his mother's credit accounts.

8    The FAC asserts that "[C.W.'s] parent did not consent to use of such information."  FAC

9    ¶ 41.  That information, however, did not find its way into C.W.'s gaming platforms on its own.

10   Either Ms. White entered it, or she knew that someone else did after seeing the charges on her

11   payment accounts.  *See id.* ¶ 56.  Ms. White hedges this admission by alleging that she did not

12   supervise C.W.'s game play, did not see his charges, and did not review some of her financial

13   account statements for "months after the purchases occurred" and therefore "did not know of the

14   amounts [C.W.] spent."  *Id.* ¶ 44.  *See also id.* ¶ 52 (Ms. White was "not routinely monitoring her

15   credit cards, debit cards, and bank account information"); *id.* ¶ 60 (same).  She thus seems to be

16   complaining, without support, that Epic Games must reimburse her for charges that C.W. made on

17   her accounts which she knew C.W. was making, but which she failed to monitor.

18   If Ms. White intends to claim that she did not authorize C.W. to make purchases with the

19   credit cards that somehow "were available" for his use, Plaintiffs do not plead any facts suggesting

20   that Epic Games could or should have known this.  Plaintiffs do not allege that Ms. White disputed

21   the charges with her credit card company when she was billed for them.  Presumably, therefore,

22   she paid the charges on her card, and thereby ratified them, precluding disaffirmation by C.W. even

23   if the charges originally had been unauthorized.  *See* Restatement (Third) of Agency § 4.01(2)

24   (ratification occurs when the principal conducts himself in a way which manifests his intention to

25   approve an earlier act performed by his agent which did not bind him).

26   In the only case of which Epic Games is aware construing a minor's ability to disaffirm

27   online purchases made with a parent's credit card—*I.B.*, 905 F. Supp. 2d at 1004—the two minor

28   plaintiffs explicitly asserted (as C.W. does not) that they used their parents' credit or debit cards

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT                    - 9 -                    CASE NO. 4:19-cv-3629

*without permission*. One of the *I.B.* plaintiffs exceeded the limited purchase authority his mother had given him and the other outright stole his mother's credit card. Both of the adults in *I.B.* also immediately sought refunds from Facebook—in contrast to Ms. White, who did not—and sued only after Facebook refused. *See id.* at 996 ("Bohannon tried to obtain a refund from Facebook…."; "Wright submitted a complaint to Facebook … and request[ed] a refund."). Plaintiffs, by contrast, proceeded directly to file a lawsuit seeking a declaration of purported rights they never gave Epic Games a chance to honor. Plaintiffs' current allegations, and Ms. White's ratification of C.W.'s purchases, therefore do not support, and indeed preclude, the same kind of claim pleaded in *I.B.*

The Court should dismiss Plaintiffs' claims that they newly premise on purchases that C.W. made on Ms. White's payment accounts and that Ms. White paid without dispute.

### 3. Disaffirmation of Transactions Made with C.W.'s "Own Money" Using Third-Party Gift Cards Is Not Appropriately Directed to Epic Games.

Plaintiffs also have withdrawn the *prior* premise on which they sought declaratory relief. C.W. made no purchases *from Epic Games* with his "own money." His "own money" transactions were with third parties, Apple and Sony (*see* FAC ¶ 42), using gift cards redeemable only on those third parties' proprietary platforms. These transactions were not with Epic Games.

Plaintiffs' new claims respecting C.W.'s "own money" purchases thus differ fundamentally from their prior claims. Before, Plaintiffs posited only (i) a purchase by C.W. of V-Bucks, directly from Epic Games, using gift cards that were the equivalent of "cash"; and then (ii) use of those V-Bucks for in-game benefits. In theory, had C.W. truly exchanged his own cash for V-Bucks, he could get back that cash through disaffirmation of both of these steps. Now, however, C.W. is alleging an entirely different purchase process that had *five* separate steps, none involving money belonging to C.W., and only the last two of which involved transactions with Epic Games at all.

*First*, someone (not C.W.) purchased an iTunes or PlayStation gift card, either directly from those merchants or through some other retailer. That transaction converted the giftor's cash to credits that could only be used in the iTunes or PlayStation marketplace. Under both the Apple[1]

---

[1] Apple's gift card terms make clear that "Store Credit is not redeemable for cash and cannot be returned for a cash refund (except as required by law)." *See* "Restrictions" available at: https://www.apple.com/legal/internet-services/itunes/giftcards/us/terms.html.

and Sony[2] policies applicable to these purchases, gift cards are non-refundable except as required by law.  *Second*, that person gave the gift card to C.W. (or gave it to someone else, who gifted it to C.W.).  *Third*, C.W. visited the iTunes or PlayStation marketplaces and used his credits to purchase V-Bucks.  *Fourth*, C.W. deposited those V-Bucks into a particular *Fortnite* account of his choosing.  *Fifth*, within the game, C.W. exchanged those V-Bucks for particular in-game benefits he wanted.

Epic Games never took C.W.'s "own money" in any transaction.  *See* FAC ¶¶ 39-40.  If C.W. wants to get back the iTunes or PlayStation credits he "spent" on V-Bucks, he has to disaffirm his transactions with the merchants—Apple and Sony—that sold him V-Bucks in exchange for his credits in those merchants' marketplaces.  C.W. is not in a position to obtain cash, no matter how many of his own transactions he disaffirms, because he never had cash.  All C.W. ever had were merchant credits redeemable only in those merchants' marketplaces.  Epic Games did not take those credits from him and is not in a position to return them.  And C.W. cannot disaffirm his giftors' exchanges of cash for the gift cards because those were not his own transactions.  *See* Cal. Fam. Code § 6710 (minor may only disaffirm his own contracts).

Because C.W. cannot obtain from Epic Games the relief he is seeking with respect to his "own money" transactions, the Court should dismiss this vestige of his declaratory relief claims.

## B. <u>Plaintiffs' Amended Complaint Fails to State a Viable Claim Under the CLRA.</u>

As shown above, Plaintiffs' new claims in the FAC have left them without any valid basis to seek declaratory relief.  Even if the Court does not dismiss Plaintiffs' new declaratory relief claims, as it should, this case would remain a two-plaintiff dispute between Plaintiffs and Epic Gams over whether C.W., in his unique circumstances, can disaffirm some or all of his non-cash, in-game V-Bucks purchases that he made pursuant to the terms of the *Fortnite* EULA.  Plaintiffs have been trying, from the outset of this case, to manufacture a broader dispute sounding in "fraud," but this Court properly dismissed those claims from the prior Complaint.  Put simply, Epic Games never said or implied, in any manner, that it would deny a minor his rights to disaffirm contracts under applicable law.  Plaintiffs' FAC attempts to resurrect their fraud-based theories, but the FAC

---

[2] Sony's terms provide that "Funds added to the wallet are non-refundable and non-transferable except where the law requires that we take those actions."  *See* "Wallet" available at: https://www.playstation.com/en-us/network/legal/terms-of-service/.

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

- 11 -

CASE NO. 4:19-CV-3629

did not cure any of the defects that the Court noted.  The Court, therefore, should dismiss Plaintiffs' fraud claims, and do so this time with prejudice.

Plaintiffs' claims sounding in fraud must comply with Rule 9(b)'s heightened pleading requirements.  This requires that plaintiffs identify the time, place, and specific content of any alleged false misrepresentations.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  It is well settled that fraud-based claims brought under California's consumer protection statutes— like Plaintiffs' claims under the CLRA and the UCL—must meet Rule 9(b)'s heightened requirements.  *See Kearns v. Ford Motor Corp.*, 567 F.3d 1120, 1225 (9th Cir. 2009).  Plaintiffs have failed to satisfy these requirements in their amended pleading.

**1.      Virtual Currency Is, Still, Not a "Good" or "Service."**

This Court previously dismissed Plaintiffs' CLRA claim for two reasons.  First, the Court held that the "virtual currency" transactions C.W. seeks to disaffirm were not purchases of "goods" or "services" and thus fell outside the scope of the CLRA.  *See* Dkt. No. 54 at 20-21.  Second, the Court held that Plaintiffs had not sufficiently pleaded a claim that Epic Games "misled" C.W. with respect to his transactions.  *See* Dkt. No. 54 at 21-23.  The FAC did not cure either deficiency.

Plaintiffs' prior Complaint alleged that C.W. purchased "goods," and the FAC changed course by alleging that he purchased "entertainment services," or "entertainment or recreational service through the Internet."  *See, e.g.*, FAC ¶¶ 2, 93-95.  Parroting the words of a statute, however, is not the same as meeting the statute's requirements.  What C.W. allegedly purchased, either with Ms. White's credit card or with gift cards in transactions with Apple and Sony, was Epic Games' in-game virtual currency for *Fortnite*, V-Bucks.  Such in-game items remain outside the scope of the CLRA.  *See* Dkt. No. 54 at 21 ("Plaintiff's CLRA claim… fails because the virtual currency at issue is not a good or service.").  *See also Berry v. American Express Publishing, Inc.*, 147 Cal. App.4th 224, 227 (2007) ("the extension of credit, such as issuing a credit card, separate and apart from the sale or lease of any specific goods or services, does not fall within the scope of the [CLRA]"); *I.B.*, 905 F. Supp. 2d at 996 (relying on *Berry*; virtual currency is not "tangible chattel" covered by the CLRA).  As the Court held, this alone requires dismissal of Plaintiffs' CLRA claim.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT                    - 12 -                    CASE NO. 4:19-CV-3629

1          **2.      C.W. Was Not "Misled."**

2          Even if the CLRA conceivably could apply to in-game items like V-Bucks, the Court

3    separately dismissed Plaintiffs' CLRA claims because they have not pleaded that Epic Games

4    actionably "misled" them in any respect.  The Court's Dismissal Order (at 22-23) catalogued

5    numerous flaws in Plaintiffs' claims, including that Plaintiffs did not allege having read or relied

6    upon the EULA, or any other writing, that they claim was misleading.  The same is true in the FAC.

7          Plaintiffs' FAC newly asserts that "Epic [Games] represents through its pop-ups in

8    marketing within the *Fortnite* ecosystem that buying a digital item is a great value proposition and

9    is offered at a discounted price when Epic knows that soon such a digital item will be stale when

10   newer content is published within a week or less."  FAC ¶ 95.  The FAC, however, neither displays

11   nor quotes from "pop-ups" of any kind, much less "pop-ups" that discuss a "great value

12   proposition."  Plaintiffs also contend that Epic Games violated the CLRA by misrepresenting the

13   quality and characteristics of certain in-app purchases. *See Id.* ¶¶ 91–103. However, the purported

14   representations that certain in-app purchases were a "great value proposition," or "the latest in

15   keeping with the current fad," are not actionable.  *See, e.g., Rasmussen v. Apple Inc.*, 27 F. Supp.

16   3d 1027 (2014).  "Advertising which 'merely states in general terms that one product is superior is

17   not actionable.'"  *Id.* at 1040 (citation omitted); *see also id.* (finding that the plaintiff failed to state

18   an actionable misrepresentation under the CLRA where the plaintiff failed to allege the defendant

19   made any statements about specific or absolute characteristics of the product at issue); *see also*

20   *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 1099 (N.D. Cal. 2007) (dismissing a CLRA claim where the

21   plaintiffs "fail[ed] to identify any representation by [the defendant] that the subject [products] had

22   any characteristic they [did] not have or of a standard or quality they [were] not.")

23         Plaintiffs also do not allege that any in-game items C.W. bought became obsolete and

24   unusable for their intended purpose.  Plaintiffs allege only a loss of enjoyment knowing that

25   something newer is available (*see id.* ¶ 108), but a claim that newer goods became available after

26   C.W. bought older items at discounted prices is hardly a claim of "deception."  This is especially

27   true in the absence of promises that newer items would not be introduced.  *See, e.g., Yastrab v.*

28   *Apple Inc.*, 173 F. Supp. 3d 972, 979 (N.D. Cal. 2016) (dismissing CLRA claim for failure to plead

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT                    - 13 -                    CASE NO. 4:19-cv-3629

1    pre-purchase representations about consistency of iPhone features following software updates or

2    otherwise); *McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD, 2011 WL 3862120, at *5 (N.D.

3    Cal. Aug. 30, 2011) (dismissing fraud-based claims because plaintiff failed to specify a

4    representation "that the Nexus One would maintain consistent 3G connectivity"); *In re Iphone 4S*

5    *Consumer Litig.*, No. C 12-1127 CW, 2014 WL 589388, at *6 (N.D. Cal. Feb. 14, 2014), *aff'd sub*

6    *nom. In re iPhone 4s Consumer Litig.*, 637 F. App'x 414 (9th Cir. 2016) ("Plaintiffs do not allege

7    any specific statement by Apple that expressly indicates that Siri would be able to answer every

8    question, or do so consistently.").   Were the law otherwise, plaintiffs could sue whenever a

9    merchant comes out with a new style of merchandise.

10   **C.      Epic Games Did Not Breach the Implied Duty of Good Faith.**

11          The Court previously dismissed Plaintiffs' claim for breach of the implied duty of good

12   faith and fair dealing because Plaintiffs have "not alleged any failure to receive the benefits of a

13   contract between [them] and [Epic Games]."  Dkt. No. 54 at 25.  That remains true as to Plaintiffs'

14   FAC.  Plaintiffs' new allegations in this regard contend that Epic Games supposedly had a duty *not*

15   to offer newer items for acquisition with in-game currency after C.W. made an in-game purchase,

16   or an affirmative duty to advise players exactly when newer items would be made available.  FAC.

17   ¶ 108.  No such duties exist.  *See In re: MacBook Keyboard Litig.*, No. 5:18-cv-2813-EJD, 2019

18   WL 1765817 (N.D. Cal. Apr. 22, 2019) ("The purpose of the implied covenant is 'to protect the

19   express covenants or promises of the contract, not to protect some general public policy interest not

20   directly tied to the contract's purpose.'"), *quoting Carma Developers (Cal.), Inc. v. Marathon Dev.*

21   *California, Inc.*, 2 Cal.4th 342, 373 (1992).

22          It is hornbook law that "the scope of conduct prohibited by the covenant of good faith is

23   circumscribed by the purposes and express terms of the contract." *Carma*, 2 Cal.4th at 373. "As

24   such, the implied covenant will only be recognized to further the contract's purpose; it will not be

25   read into a contract to prohibit a party from doing that which is expressly permitted by the

26   agreement itself." *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1042 (N.D. Cal. 2012)

27   (dismissing claim for breach of implied covenant because implied term could not negate express

28   term of agreement).  Yet, in the FAC, this is precisely what Plaintiffs seek to accomplish.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

- 14 -

CASE NO. 4:19-CV-3629

The terms of Epic Games' EULA clearly state: "You agree that Epic May engage in actions that may impact the perceived value or purchase price, if applicable, of Game Currency and Content at any time, except as prohibited by applicable law." *See* Dkt. No. 21-1 at 11. Despite this, Plaintiffs contend that Epic Games has a duty not to release new in-game content, supposedly because such release could impact the perceived value of previously purchased content. This is squarely at odds with the plain language of the agreement, and it fails to demonstrate how Plaintiffs have not received the benefit of the bargain in the transaction, namely the content purchased in the *Fortnite* game. Accordingly, Plaintiffs' amended claim for breach of the implied duty of good faith and fair dealing should be dismissed without leave to amend.

**D.      Epic Games Committed No "Negligent Misrepresentation."**

The Court previously dismissed Plaintiffs' claim for negligent misrepresentation because they "failed to allege sufficiently that [Epic Games] made a misrepresentation or that plaintiff[s] justifiably relied on any misrepresentation." Dkt. No. 54 at 26. That remains true as to the re-pleaded claim set forth in Plaintiffs' FAC. In fact, Plaintiffs' "new" negligent misrepresentation allegations (FAC ¶¶ 113-17) include no material changes from the prior Complaint. *See* Jacobson Decl. Ex. C (redline comparison of Complaint and Amended Complaint).

To state a cognizable claim for negligent misrepresentation, Plaintiffs must show: (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 243 (2007), *citing Shamsian v. Atlantic Richfield Co.*, 107 Cal.App.4th 967, 983 (2003). The FAC satisfies none of these elements. It relies instead on the assertion that Epic Games has a duty to "provide honest and accurate information to its customers including minors so that the minors could make informed decisions on the in-App purchases." FAC ¶ 113. None of Plaintiffs' allegations, however, show a violation of this supposed duty. This includes claims that Epic Games uses virtual currency (*id.* ¶ 48); "promotes deals" (*id.* ¶ 49); does not incorporate parental or guardian controls to "promote prudent behavior in minors" (*id.* ¶ 52); releases new content and comprehensive updates on a weekly basis (*id.* ¶ 54); and

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT                    - 15 -                    CASE NO. 4:19-CV-3629

"induces minors to play for long hours and even during night to advance their levels, thereby promoting in-App purchases when minors are overall tired" (*id.* ¶ 55).

Plaintiffs also continue to rely on the assertion that Epic Games "conceal[s] the terms of the in-App purchase at the time of purchase by not displaying non-refundability or by displaying non-refundability in very small font." *Id.* ¶ 50. Yet, the FAC also states that Epic Games "may allow refund of a total of three items through the lifetime of the user" if requested within 30 days of a purchase, and identifies which items cannot be refunded within this policy. *Id.* ¶ 14. Even ignoring this inconsistency in pleading, Epic Games' saying that certain in-game purchases are "non-refundable," ***except as otherwise required by applicable law***, does not impact a minor's right to disaffirm a contract. Disaffirmation and refundability are discrete concepts, so to say that certain purchases are "non-refundable," ***unless applicable law requires a refund***, does not impact any right to disaffirm. The statement, therefore, cannot have misled Plaintiffs. Plaintiffs' negligent misrepresentation claim, therefore, fails as a matter of law, and should be dismissed with prejudice.

**E.    Plaintiffs Fail to Plead Any Violation of California's Unfair Competition Law.**

Plaintiffs' fifth count claims that Epic Games violated California's UCL, Cal. Bus. & Prof. Code § 17200, under that statute's "unfair," "fraudulent," and "unlawful" prongs. *See* FAC ¶¶ 118-127. The Court previously dismissed Plaintiffs' claims under the "unfair" and "fraudulent" prongs, and should do so again. The Court also should dismiss Plaintiffs' claims under the "unlawful" prong, although it did not dismiss those claims from the prior Complaint, because Plaintiffs' changed allegations do not suffice under that prong.

**1.    Epic Games Did Not Act "Unfairly."**

This Court previously dismissed Plaintiff's UCL "unfair" claim upon finding that the Complaint "[did] not contain a single factual allegation to support" Plaintiff's conclusory allegation that Epic Games promoted applications as "free" yet intended to induce minors to buy game currency. Dismissal Order at 27. As this Court observed, Plaintiff "alleges that V-Bucks can be earned in-game *or* purchased . . . ." *Id.* The FAC does nothing to cure this deficiency. The FAC still admits that *Fortnite* is free to download. *See id.* ¶¶ 2-3. It also still concedes that players "can earn V-Bucks in-game *or* purchase them for money." *Id.* ¶ 26 (emphasis added). No V-Bucks

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

- 16 -

CASE NO. 4:19-CV-3629

1   purchases ever are *required*, and Plaintiffs do not and cannot allege otherwise. The Court thus

2   should dismiss Plaintiffs' claim in the FAC for the same reason it dismissed them before.

3   Plaintiffs' new allegations (FAC ¶¶ 48-63) are just as conclusory as the allegations this

4   Court previously rejected. For example, Plaintiffs now complain that Epic Games "induces minors

5   to make purchases by its operation of V-Bucks currency within the *Fortnite* ecosystem" (*id.* ¶ 48)

6   referencing FAC ¶¶ 25-32. But FAC ¶¶ 25-32 are verbatim copies of the prior Complaint's ¶¶ 19-

7   26, which the Court found insufficient. As another example, in FAC ¶ 55, Plaintiffs now claim that

8   Epic Games "induces minors to play for long hours and even during night, . . . thereby promoting

9   in-App purchases when minors are overall tired." Plaintiffs nowhere supports this claim of

10  "inducement," however, and Epic Games has no control over whether and to what extent (or at

11  what time of day) anyone plays the game. This is made clear by new FAC ¶ 56, where Plaintiffs

12  claims that Epic Games "test[s] the tolerance levels of parents." This allegation suggests the

13  obvious: parents, not Epic Games, have control over their households and their children's gaming.

14  Plaintiff's UCL "unfair" claim fails for the same reasons as before and the Court, once

15  again, should dismiss these claims.

16  **2.      Epic Games Did Not Act "Fraudulently."**

17  A similar analysis disposes of Plaintiffs' claim under the UCL's "fraudulent" prong, which

18  requires a showing that "members of the public are likely to be deceived." *Wang v. Massey*

19  *Chevrolet*, 97 Cal. App. 4th 856, 871 (2002). Plaintiffs must also allege facts supporting both

20  causation by, and reliance on, the allegedly deceptive statements. *Sateriale v. R.J. Reynolds*

21  *Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012). The Court's Dismissal Order (at 28) held that

22  Plaintiffs' prior Complaint did not meet this standard, and neither does the FAC.

23  Plaintiffs had claimed that Epic Games "omitted giving information" on amounts spent on

24  in-App purchases. Dismissal Order at 28. The Court observed that this did not state a claim because

25  Plaintiffs failed to allege "whether [C.W.] ever sought this information and whether defendant

26  refused to provide it." *Id.* Further, although Plaintiffs argued that minors lack access to their

27  parents' credit card or bank statements, this Court found that Plaintiffs alleged purchases with "his

28  own money" and it was "reasonable to believe that at least some minors obtain the consent of their

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT                - 17 -                CASE NO. 4:19-CV-3629

parents . . . before using their credit cards or bank accounts to make in-App purchases . . . ." *Id.* Ultimately, this Court was "not persuaded that defendant must make [minors'] purchase history easily accessible through *Fortnite.*" *Id.*  Nonetheless, this Court granted leave to amend.

Plaintiffs' FAC abandoned the "failure to provide purchase history" argument.  In its place, the FAC asserts as a "fraudulent" practice that Epic Games "omitted giving information that refunds are allowed for minors without any restrictions under applicable law." FAC ¶ 122.  This seems to be a demand that Epic Games must advise minors of the provisions of the California Family Code. Plaintiffs cannot possibly identify any basis to require Epic Games to state this information affirmatively (and, in any event, the statement Plaintiffs demand—that "refunds are allowed for minors without any restriction"—is simply wrong as a matter of law).

Plaintiffs' remaining new factual allegations for this claim are FAC ¶¶ 48-63, the same as those for their "unfair" claim.  In none of these allegations do Plaintiffs identify any statements by Epic Games that were false or misleading (*i.e.*, "likely to deceive"), much less any facts that would support the required elements of causation and reliance.  Perhaps the only relevant allegation for this claim is Plaintiffs' conclusory statement that Epic Games "misrepresents the applicable law for transactions . . . with minors." *Id.* ¶ 57.  This, however, is substantially identical to the claim that the Court rejected from the prior Complaint because Epic Games nowhere states or suggests that minors *do not* have the right to disaffirm contracts.  To the contrary, Epic Games' EULA states and that all purchases ***are*** refundable to the extent required by law.  *See* Dkt. No. 21-1 at 11.

Moreover, as this Court noted, Plaintiffs cannot claim to have been misled by a policy they never read.  *See* Dismissal Order at 22.  The FAC still states clearly that Plaintiff never read Epic Games' refund policy or any other portion of the EULA.  *See* FAC ¶ 38.  Any claim of causation or reliance is therefore not merely implausible, but impossible.

### 3.    Epic Games Did Not Act "Unlawfully"

In its Dismissal Order, this Court rejected three of Plaintiff's four theories offered in support of his UCL "unlawful" claim.  It allowed this claim to proceed only "to the extent it is predicated on [Epic Games'] alleged violation of the minor's right to disaffirm."  Dkt. No. 54 at 27.  The FAC's new allegations, however, demonstrate that Epic Games did not even arguably "violat[e]

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

- 18 -

CASE NO. 4:19-CV-3629

1   [C.W.'s] right to disaffirm."  Previously, Plaintiffs' premised this "right" exclusively on purported

2   transactions between C.W. and Epic Games for which C.W. used his "own money."  *See* Dismissal

3   Order at 4 (summarizing C.W.'s allegations that "he used his own money, through gift cards . . . to

4   make . . . purchases" and that he "later wanted to cancel the purchases"); *id.* at 17 n.15 ("The May

5   17 letter and the filing of this suit conveyed plaintiff's intent to disaffirm in-App purchases

6   allegedly made using ***plaintiff's own money***.") (emphasis added).  Plaintiffs' new allegations,

7   however, pertain to transactions that C.W. made using Ms. White's credit accounts.

8       Between Plaintiffs' new allegations and their confirmation that they never gave Epic Games

9   any pre-suit opportunity to consider a disaffirmation request, Epic Games can in no sense be

10  considered to have "violated" (past tense) the California Family Code.  Rather than invoking their

11  purported rights with Epic Games, Plaintiffs came preemptively to this Court to declare whether

12  they have the rights they assert.  Epic Games, of course, subject to its appellate rights, will follow

13  the law as the Court construes it.  Without any basis to claim that Epic Games has ever acted

14  contrary to the law, with respect to Plaintiffs or anyone else, Plaintiffs' UCL "unlawful" claim

15  cannot stand and the Court should dismiss it.

16  **F.      Plaintiffs' FAC Did Not Cure Plaintiffs' "Unjust Enrichment" Claim.**

17      The Court also should reaffirm its dismissal of Plaintiffs' "unjust enrichment" claim.  The

18  Dismissal Order disposed of this claim previously because Plaintiffs did "not allege[] that [they

19  were] misled or that [Epic Games] breached any express or implied covenant as it relates to"

20  refunds for in-game purchases.  Dkt. No. 54 at 30.  This remains true in the FAC, as Plaintiffs'

21  unjust enrichment allegations (FAC ¶¶ 128-33) are materially unchanged from the prior Complaint.

22      Plaintiffs' FAC bases its unjust enrichment claim on the allegation that Epic Games has

23  "lured minors[] into making in-App purchases... [and] has misled and misinformed minors." *Id.*

24  132.  This boilerplate contention, however, suffers from the same fatal flaw as Plaintiffs' initial

25  pleading:  Plaintiffs do plead not with specificity that C.W. relied on any alleged misrepresentation

26  made by Epic Games, much less how C.W. was misled.  At most, they claim only that they did not

27  know about the California Family Code, or their counsel's aggressive interpretation of it, until they

28  consulted counsel.  *See* FAC ¶¶ 45-46.  This is not the same, however, as alleging that Epic Games

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

- 19 -

CASE NO. 4:19-CV-3629

1  misrepresented the law to them.  That is why the Court dismissed this claim previously (*see*

2  Dismissal Order at 22, 30), and the Court should dismiss it again, without leave to amend.

3  **G.      Plaintiffs' Attacks on *Fortnite* Are Not Relevant to Any of Plaintiffs' Claims.**

4          The only relevant issue in this case is whether C.W. can, or cannot, disaffirm any

5  transactions he entered into with Epic Games.  As much as Plaintiffs may want to turn this case

6  into a broader attack on *Fortnite*, on Epic Games, or on the video game industry as a whole, they

7  have not asserted any claims beyond disaffirmation.  The attacks Plaintiffs make in the FAC on

8  Epic Games, and video games generally, have no place in this dispute.

9          Plaintiffs continue to contend, for example, that video games are addictive, and they make

10  the same inflammatory and wholly inapt comparison to "crack cocaine and heroin" as set forth in

11  their initial Complaint.  FAC ¶ 12; *see also id.* ¶ 3.  The FAC even includes new outrageous and

12  unsupported allegations in this regard, including that Epic Games somehow "induces minors to

13  play for long hours and even during night to advance their levels, thereby promoting in-App

14  purchases when minors are overall tired" (*Id.* ¶ 55).  The Court should disregard these allegations.

15  **H.      Leave to Amend Would Be Futile and Should Be Denied.**

16          The Court allowed Plaintiffs to try again with the FAC.  If it dismisses claims from the

17  FAC, it should not grant further leave to amend.  Dismissal of a claim should be with prejudice

18  where a "plaintiff's proposed amendments would fail to cure the pleading deficiencies and

19  amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041

20  (9th Cir. 2011).  Further, "[t]he district court's discretion to deny leave to amend is particularly

21  broad where plaintiff has previously amended the complaint." *Allen v. City of Beverly Hills*, 911

22  F.2d 367, 373 (9th Cir. 1990) (citation and internal quotation marks omitted).  That is the case here.

23  Plaintiffs have already had two opportunities to state a claim—and they have failed to do so each

24  time.  Any further amendment would be futile and a waste of judicial resources.

25                                    **IV.      CONCLUSION**

26          For the foregoing reasons, Epic Games respectfully requests that the Court dismiss each of

27  Plaintiffs' claims alleged in the Amended Complaint without leave to amend.

28

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT                  - 20 -                  CASE NO. 4:19-CV-3629

1

2

Dated:  March 12, 2020

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER BIDDLE & REATH LLP


By: /s/ Jeffrey S. Jacobson
Jeffrey S. Jacobson (*pro hac vice*)
Matthew J. Adler
Ryan M. Salzman

Attorneys for Defendant
EPIC GAMES, INC.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT
- 21 -
CASE NO. 4:19-CV-3629