Peter R Afrasiabi (SBN 193336)
pafrasiabi@onellp.com
Deepali A. Brahmbhatt (SBN 255646)
dbrahmbhatt@onellp.com
ONE LLP
4000 MacArthur Blvd., East Tower, Suite 500
Newport Beach, CA 92660
Telephone:     (949) 502-2870
Direct:            (650) 600-1298
Facsimile:      (949) 258-5081

John E. Lord (SBN 216111)
jlord@onellp.com
ONE LLP
9301 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90210
Telephone:     (310) 866-5157
Facsimile:      (310) 943-2085

Attorneys for Plaintiff
C.W., a minor and through his Guardian,
REBECCA WHITE, on behalf of himself
and all others similarly situated

Matthew J. Adler (SBN 273147)
Matthew.Adler@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111-4180
Telephone: 415-591-7500
Facsimile: 415-591-7510

Jeffrey S. Jacobson (*pro hac vice*)
Jeffrey.Jacobson@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
Telephone: 212-248-3140

Attorneys for Defendant
EPIC GAMES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.W., a minor, by and through his Guardian, REBECCA WHITE, on behalf of himself and all others similarly situated,,<br><br>Plaintiff,<br><br>vs.<br><br>EPIC GAMES, INC., a North Carolina corporation,<br><br>Defendant. | Case No. 4:19cv3629-YGR<br><br>**JOINT DISCOVERY LETTER BRIEF REGARDING DEFENDANT'S DISCOVERY RESPONSES** |

Plaintiff C.W., by and through his Guardian, Rebecca White ("Plaintiffs"), and Defendant Epic Games, Inc. ("Defendant" or "Epic Games") submit this joint discovery letter brief pertaining to Defendant's discovery responses. The parties met and conferred in person and could not reach a resolution. Exhibit A and B are excerpts of the disputed discovery requests.

///

## I. PLAINTIFF'S STATEMENT – DEFICIENT DISCOVERY RESPONSES

Plaintiff filed this action on June 21, 2019 and served its First Requests for Production of Documents and Interrogatories on September 26, 2019. To date, after numerous meet and confers, Defendant has not produced a single document and has not substantively responded to a single interrogatory. Defendant's basis for a blanket objection to all discovery appears to be based on its contention that this case boils down to disaffirmation, and nothing else. This argument fails especially since the Court's ruling rejected it. First, this case involves much more than a disaffirmation of a contract by a minor. Broadly, the case encompasses Defendant's framework and mode of operating its video game platform targeted especially towards minors. Plaintiff has alleged six causes of action spanning from CLRA, UCL, negligent misrepresentation, good faith and fair dealing and unjust enrichment. For disaffirmation, the Court held "there exists an actual controversy between the parties over the rights of minors to disaffirm in-App purchases and, if the contracts can be disaffirmed, whether minors are entitled to refunds." (ECF 54 at 19.)

Second, Defendant classifies all discovery as targeted towards the class and, in its view, this case involves a single Plaintiff. Yet, even for the investigation conducted by Defendant regarding Plaintiff, Defendant ignores the Court's rulings on these issues and objects to any discovery related to "in-App purchases" or "refunds" by asserting that it is "*wholly unnecessary task, in that Plaintiff's claims relate only to purported disaffirmation of contracts – not requests for refunds.*" (*e.g.*, Response to ROG. 3-4.) Defendant even objects to the term "Digital Content" as ambiguous, despite Plaintiff's clarifying that Digital Content is Content sold in the Fortnite video game. To streamline only key issues for the Court's review, Plaintiff moves to compel responses to ROGs 1, 2, 3, 5 and 8 and RFPs 4, 19 and 20. The Court's ruling should also apply to any other discovery requests where the Defendant has made the same duplicative objections.

Third, Defendant may argue it has produced some documents, but it has only done so very selectively to further its own interests by producing documents about C.W.'s use from October 2018, while such documents are non-responsive to Plaintiff's request. Defendant, a sophisticated multi-billion dollar private company with an inexhaustible litigation budget, deep pockets and

**JOINT DISCOVERY DISPUTE LETTER BRIEF**

## I. PLAINTIFF'S STATEMENT – DEFICIENT DISCOVERY RESPONSES

Plaintiff filed this action on June 21, 2019, and served its First Requests for Production of Documents and Interrogatories on September 26, 2019.  To date, after numerous meet and confers, Defendant has not produced a single document and has not substantively responded to a single interrogatory.  Defendant's basis for a blanket objection to all discovery appears to be based on its contention that this case boils down to disaffirmation, and nothing else.  This argument fails especially since the Court's ruling rejected it.  First, this case involves much more than a disaffirmation of a contract by a minor.  Broadly, the case encompasses Defendant's framework and mode of operating its video game platform targeted especially towards minors.  Plaintiff has alleged six causes of action spanning from CLRA, UCL, negligent misrepresentation, good faith and fair dealing and unjust enrichment.  For disaffirmation, the Court held "there exists an actual controversy between the parties over the rights of minors to disaffirm in-App purchases and, if the contracts can be disaffirmed, whether minors are entitled to refunds." (ECF 54 at 19.)

Second, Defendant classifies all discovery as targeted towards the class and, in its view, this case involves a single Plaintiff.  Yet, even for the investigation conducted by Defendant regarding Plaintiff, Defendant ignores the Court's rulings on these issues and objects to any discovery related to "in-App purchases" or "refunds" by asserting that it is "*wholly unnecessary task, in that Plaintiff's claims relate only to purported disaffirmation of contracts – not requests for refunds*." (*e.g.*, Response to ROG. 3-4.)  Defendant even objects to the term "Digital Content" as ambiguous, despite Plaintiff's clarifying that Digital Content is Content sold in the Fortnite video game. To streamline only key issues for the Court's review, Plaintiff moves to compel responses to ROGs 1, 2, 3, 5 and 8 and RFPs 4, 19 and 20.  The Court's ruling should also apply to any other discovery requests where the Defendant has made the same duplicative objections.

Third, Defendant has shared some information, but it has only done so very selectively to further its own interests by producing documents about C.W.'s use from October 2018, while such documents are non-responsive to Plaintiff's request.  Defendant, a sophisticated multi-billion dollar private company with an inexhaustible litigation budget, deep pockets and resources, claims

producing this minimal discovery, required hours of investigation, over a period of weeks, by a senior Epic Games employee that required Herculean effort.

Fourth, Defendant objects to nearly every request based on relevancy, under its own unilateral definition, including ignoring explicit language in the Operative Complaint (ECF 56) and the Court's ruling (ECF 54).  For example, Plaintiff seeks discovery on Defendant's refund policy. Defendant objects on relevance by stating "*the refund policy is specified in the EULA. Moreover, Plaintiff did not request any refund, making this subject irrelevant.*"  Plaintiff also seeks discovery regarding the marketing of in-App purchases to minors.  Defendant objects on relevance arguing that it did not act, create or design policies or marketing as such specifically for Plaintiff and though it may be targeting minors, as a group category, it need not respond. Such discovery goes to the heart of this class action. Defendant also refuses to disclose whether there is any tracking as to the age of its users and any lack of precautions thereof.  Defendant also refuses to produce any sales information, hiding under an umbrella of V-Bucks as a virtual currency and different third-party vendors refuses to produce sales information

By stonewalling discovery, Defendant unfairly prejudices Plaintiff's ability to prosecute his claims and prepare for the case for the class.  Lastly, Defendant's objection to all discovery under the guise that a class is not certified is meritless when the Court has a broad discretion.  *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 942 (9th Cir. 2009*). See also Magic Link Garment Ltd. v. ThirdLove, Inc*., No. 418CV7366PJHKAW, 2019 WL 5419515, at *3 (N.D. Cal. Oct. 23, 2019) (allowing overall discovery on platform/framework as well as sales).

At the Motion hearing held on October 1, 2019, Defendant's verbal request to stay discovery was rejected ("But the point is I would ask that Your Honor keep discovery stayed until we get the case properly venued.")  The Court denied the stay of discovery request.  Further, the Court ruled in Plaintiff's favor regarding disaffirmance.  (ECF 54 at 19, 33.)  Plaintiff objects to Epic's Ex. C as violating Section 8(b) of Your Honor's Standing Order.  Epic fails to acknowledge that Fortnite accounts were hacked and C.W.'s friends playing from his house would have same IP Address.  Plaintiff is in compliance with Court Order.  Hence, finding no middle ground, Plaintiff respectfully requests the Court to compel discovery from Defendant.

**JOINT DISCOVERY DISPUTE LETTER BRIEF**

II.   **DEFENDANT'S STATEMENT**

Epic Games has provided discovery, but it has properly objected to the requests at issue. The letter attached as Ex. C demonstrates that Plaintiffs' characterizations above are incorrect.

**Interrogatories.** Plaintiffs' Interrogatory No. 1 seeks information about "each Epic Games User in the United States." The Court ruled orally on October 1, 2019, that Epic Games does not have to respond to this overbroad and irrelevant request. That ruling applied equally to Interrogatory No. 2, which seeks more information regarding every user "identified in response to . . . No. 1."

The other interrogatories at issue also seek information that is not relevant to Plaintiffs' claims. This case began as a dispute over whether Plaintiff C.W. can "disaffirm" in-game purchases he supposedly made from Epic Games with his "own money," without his parents' knowledge. Recently, however, Plaintiffs admitted that C.W. made no such purchases from Epic Games. The case thus has morphed into a dispute over whether C.W. can disaffirm purchases he made using his *parent's* payment accounts, to which his parent gave him access, and other purchases C.W. made using non-parties' non-cash gift cards on those non-parties' marketplaces. Epic Games asserts that C.W. has no valid claims anymore, and, accordingly, it has moved to dismiss all claims (Dkt. 59).

Nowhere above do Plaintiffs attempt to explain why their current claims should afford them broad discovery into "projections, estimates, and actual data for . . . [all] In-App Purchases; the "type of newly created Digital Content for sale and associated designations as allegedly consumable" (whatever that means); "packaging with bundles or discounts offered"; "costs associated with the creating [sic] such in-App Purchases"; and "in-App Purchases finalized and revenues collected." These myriad sub-parts fall within Interrogatory No. 3 alone. Interrogatory No. 5 is equally irrelevant, as it asks Epic Games to "[d]escribe in detail the process for verifying the identity of the Epic Games User playing [*Fortnite*], including any tracking of the user's gaming habits" (again with no explanation of what this means), as well as the user's "in-App purchases, refund requests," and responses to refund requests. Finally, Interrogatory No. 8 seeks "the total number of software licenses sold" (with no definition of "software licenses," which are not at issue), along with the "sales price," "gross revenue," and other information about these undefined "software licenses." These interrogatories simply fail to satisfy Rule 26(b)(1)'s baseline requirement of relevance.

**Requests for Production ("RFP").** Plaintiffs' RFPs are equally irrelevant. RFP No. 4 seeks "[a]ll documents that refer or relate to comments [and] complaints" about a purported and undefined Epic Games "non-refundable policy" that does not exist. The *Fortnite* End User License Agreement ("EULA") states that "[a]ll purchases…are final and not refundable…except as otherwise required by applicable law." *See* Dkt. No. 21-1 ¶ 4; *see also id.* ¶ 10 ("Except to the extent required by law, all payments and fees are non-refundable …."). This is not a "non-refundable policy," and Epic Games does not believe any documents exist—other than the pleadings in this case—reflecting any minor's attempt to invoke rights under Cal. Family Code § 6710 or similar statutes under any state's laws. Even C.W. himself did not communicate with Epic Games about disaffirmation before suing.

RFP No. 19 seeks "[a]ll Documents to show Epic Games users who have exceeded three refund requests for the lifetime of their account." Epic Games does not dispute that some players have requested and received three ordinary refunds, but C.W. has not made a single ordinary refund request. Plaintiffs' lawsuit seeks only disaffirmation under § 6710. Finally, RFP No. 20 seeks "[a]ll Documents to show all frequency [sic] of offering new Digital Content for in-App Purchases and frequency at which that becomes stale by newer offerings." To the extent this incoherent RFP ever had saliency, it no longer does, as the Court dismissed all of Plaintiffs' fraud-based claims and Plaintiffs' amendments have failed to cure any of the deficiencies the Court found in those claims.

This Court regularly denies discovery requests that exceed the scope of a party's claims, and it should do so here. *See, e.g., Travelers Indemnity Co. of Conn. v. Premier Organics, Inc.*, No. 17-cv-302-YGR, 2017 WL 4355043, at *4 (N.D. Cal. Sept. 29, 2017). Plaintiffs' citation to *Magic Link*, 2019 WL 5419515, at *3, does not help them. There, a magistrate judge held that a plaintiff had to produce documents relating to its production capacity because that plaintiff was seeking lost profits as part of its claim. *Magic Link* does not support Plaintiffs' request for information that is beyond the scope of their claims about alleged disaffirmation rights.

If Plaintiffs serve narrowly-tailored discovery that is relevant to their actual claims in their First Amended Complaint, Epic Games will respond to such discovery appropriately. The Court, however, should not compel responses to any of the irrelevant and burdensome discovery that Plaintiffs have put at issue in this submission.

Dated: March 27, 2020

**ONE LLP**

By: /s/Deepali A. Brahmbhatt
Peter R. Afrasiabi
Deepali A. Brahmbhatt
John E. Lord

Attorneys for Plaintiff C.W. by and through his Guardian White.

By: /s/Jeffrey S. Jacobson
Jeffrey S. Jacobson (pro hac vice)
Ryan M. Salzman
Matthew J. Adler

Attorneys for Defendant Epic Games, Inc.

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1

I, Deepali A. Brahmbhatt, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By: /s/Deepali A. Brahmbhatt
Deepali A. Brahmbhatt