Peter R Afrasiabi (SBN 193336)
pafrasiabi@onellp.com
Deepali A. Brahmbhatt (SBN 255646)
dbrahmbhatt@onellp.com
ONE LLP
4000 MacArthur Blvd., East Tower, Suite 500
Newport Beach, CA 92660
Telephone:   (949) 502-2870
Direct:        (650) 600-1298
Facsimile:    (949) 258-5081

John E. Lord (SBN 216111)
jlord@onellp.com
ONE LLP
9301 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90210
Telephone:   (310) 866-5157
Facsimile:    (310) 943-2085

Attorneys for Plaintiff
C.W., a minor and through his Guardian, Rebecca White, on
behalf of himself and all others similarly situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.W., a minor, by and through his Guardian, Rebecca White, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>        vs.<br><br>EPIC GAMES, INC., a North Carolina corporation,<br><br>                Defendant. | Case No.  4:19cv3629-YGR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS (ECF 59)**<br><br>**CLASS ACTION**<br><br>Date: May 19, 2020<br>Time: 2 pm<br>Courtroom: 1<br><br>Judge Hon. Yvonne Gonzalez Rogers |

## **TABLE OF CONTENTS**

I.      ISSUES TO BE DECIDED ............................................................................1

II.     INTRODUCTION AND SUMMARY OF ARGUMENT .................................1

III.    STATEMENT OF FACTS ............................................................................2

IV.     DEFENDANT'S MOTION TO DISMISS FAILS IN ITS ENTIRETY .................3

        A.    Legal Standards Governing Motion to Dismiss .................................3

        B.    The Court Should Deny Defendant's Motion to Dismiss Count I Because *Fortnite*'s in-App Purchases Are Software, Not Consumables .................................................4

              1.    There is no "consumable" exception to a Minor's right to disaffirm ................4

              2.    Defendant's characterization of "consumable" for in-App Purchases software does not fit .................................................5

        C.    Defendant's Choice of Law Argument is Improper ..........................6

              1.    Minor's disaffirmance includes disaffirming of in-App Purchases ..................6

        D.    Defendant is the Contracting Party .................................................8

              1.    The Dispute Relates to the Items Purchased with the Gift Cards, Not its Source .....9

              2.    In-App Purchases disputed here occurred within the *Fortnite* software and Defendant is the contracting party for those even with gift cards used ...................9

        E.    Count II for violation of the CLRA is Sufficiently Pled ....................10

              1.    In-App Purchases in a video game are an entertainment service ...........................10

              2.    Minor Plaintiff was induced and misled to make in-App Purchases ....................11

              3.    Plaintiff has properly pled the CLRA claim with specificity ................................12

        F.    Plaintiff Has Properly Pled Breach of Good Faith and Fair Dealing ...........................12

        G.    Negligent Misrepresentation is Sufficiently Pled ...........................13

        H.    UCL is Sufficiently Pled .............................................................15

        I.    Unjust Enrichment is Sufficiently Pled ..........................................15

V.      CONCLUSION .......................................................................................16

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Alger v. FCA US LLC*,
  2020 WL 799175 (E.D. Cal. Feb. 18, 2020) ...................................................................... 11

*Amadeo v. Principal Mut. Life Ins. Co.*,
  290 F.3d 1152 (9th Cir. 2002) .......................................................................................... 13

*Anderson v. SeaWorld Parks and Entertainment*,
  2016 WL 8929295 (N.D. Cal. Nov. 7, 2016) ................................................................... 11

*In re Apple in-App Purchase Litigation*,
  Civ. No. 5:11-cv-01758-EJD (N.D. Cal. October 18, 2013) ............................................. 6

*In the Matter of Apple Inc.*,
  Docket C-4444 (Mar. 25, 2014) ......................................................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................................. 3, 4

*Dawes v. Facebook, Inc.*
  885 F.Supp.2d 894 (2012) .................................................................................................. 5

*Dudek v. Dudek*,
  34 Cal. App. 5th 154, 246 Cal. Rptr. 3d 27 (Ct. App. 2019), review denied (July 10,
  2019) ................................................................................................................................... 9

*In re Ford Tailgate Litig.*,
  2015 WL 7571772 (N.D. Cal. Nov. 25, 2015) ................................................................. 12

*FTC v. Amazon.com, Inc.*,
  No. C14–1038–JCC, 2016 U.S. Dist. LEXIS 55569 (W.D. Wash. Apr. 26, 2016) ............ 7

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
  343 F.3d 1000 (9th Cir.), opinion amended ..................................................................... 14

*In the Matter of Google, LLC*,
  Docket C-4449 (Dec. 2, 2014) ........................................................................................... 6

*Grube v. Amazon.com, Inc.*,
  No. 16-CV-126-LM, 2017 WL 3917602 (D.N.H. Sept. 6, 2017) ...................................... 7

*Ileto v. Glock Inc.*,
  349 F.3d 1191 (9th Cir. 2003) ............................................................................................ 8

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ............................................................................................ 4

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

*Lopez v. Kmart Corp.*,
  2015 WL 2062606 (N.D. Cal. May 4, 2015) ................................................................ 4

*McNamara v. Voltage Pay Inc.*,
  2017 WL 3709057 (D. Nev. Aug. 28, 2017) ........................................................... 9, 10

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ....................................................................................... 4

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
  72 Cal. App. 4th 861, 85 Cal. Rptr. 2d 301 (1999) .................................................... 15

*Shaw v. CitiMortgage, Inc.*,
  201 F. Supp. 3d 1222 (D. Nev. 2016) ......................................................................... 13

*In re Sony Gaming Networks and Customer Data Breach Security Litigation*,
  996 F. Supp. 2d 942 (S.D. Cal. Jan. 21, 2014) .......................................................... 12

*T.K. v. Adobe Sys., Inc.*,
  2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) ............................................................ 15

*Walker v. Geico Cas. Co.*,
  2019 WL 6729315 (D. Nev. Dec. 11, 2019) ............................................................... 13

*White v. Hollister Co.*,
  2013 WL 30361 (Cal. Ct. App. Jan. 3, 2013) .............................................................. 9

**Statutes**

16 C.F.R. § 312.3 ............................................................................................................... 6

Cal. Bus. & Prof. Code §§ 17200 et seq. ..................................................................... 3, 15

Cal. Bus. & Prof. Code § 22580-22581 ............................................................................ 6

Cal. Civ. Code § 1749.5(b) ............................................................................................... 9

Cal. Civ. Code § 1750, et seq. ........................................................................................... 3

Cal. Civ. Code § 1761(b) ................................................................................................. 11

Cal. Fam. Code § 6712 (2010) .......................................................................................... 4

Cal. Legal Remedies Act ................................................................................... 8, 10, 11, 12

Cal. S.B. 568 ...................................................................................................................... 6

California Legal Remedies Act .......................................................................................... 1

Children's Online Privacy Protection Act ......................................................................... 6

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Good Faith and Fair Dealing, Negligent Misrepresentation, Unfair Competition Law ................................. 1

**Other Authorities**

Civil L.R. 7-9(b) ................................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1, 3

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**I.    ISSUES TO BE DECIDED**

1.      Whether the Court should reconsider its earlier ruling that Plaintiff C.W., a minor and through his Guardian (hereinafter, "Minor Plaintiff") has disaffirmed *Fortnite*'s EULAs and all of his in-App Purchases, and reconsider its earlier denial of Defendant's motion to dismiss the declaratory judgment and UCL claims?

2.      Whether Defendant induced and misled Minor Plaintiff, a 12 year old, under an objective and reasonable standard of a minor's age, that gives rise to adequately pled claims of California Legal Remedies Act ("CLRA"), Breach of Implied Duty of Good Faith and Fair Dealing, Negligent Misrepresentation, Unfair Competition Law ("UCL") and Unjust Enrichment?

**II.    INTRODUCTION AND SUMMARY OF ARGUMENT**

Minor Plaintiff brought this class action to remedy Defendant's ongoing failure to provide a minor's right to disaffirm in-App Purchases in Defendant's video game system *Fortnite* that is targeted towards children. After first unsuccessfully attempting to dismiss Minor Plaintiff's claims for improper venue, to compel arbitration, or to transfer venue, Defendant is attempting to dismiss these claims under Fed. R. Civ. P. 12(b)(6).  Defendant's Motion to dismiss (ECF No. 59, ("Motion")) each claims in the First Amended Complaint (ECF No. 56, ("FAC")) should be denied.  Minor Plaintiff has supplemented the allegations with plausible facts, as guided by the Court in its ruling (ECF No. 54 or "Order").

First, Defendant moves to dismiss "all" claims in the FAC.  The Court, however, has already ruled that Minor Plaintiff may proceed on his claims for declaratory judgment and UCL for unlawful conduct. (Order at pp. 32-33.)  Defendant provides no valid reason why the Court should reverse itself with respect to these claims.  Defendant merely recycles the same arguments it made in its first motion to dismiss, that Minor Plaintiff cannot and did not exercise his disaffirmation rights.  The Court has already rejected this argument and should deny it again for the same reasons.  As such, Defendant's motion to dismiss, or more aptly its motion to reconsider, Count I and Count V for unlawful conduct should be denied.  As for the remaining claims, all claims center around Defendant's lack of a refundable policy for its minor users, and its targeting of minors.  Defendant does not dispute, nor can it, that it specifically targets children. And in a willfully blind manner, Defendant violates the undisputed statutory right to disaffirm by children.

/ / /

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Second, Minor Plaintiff has adequately pled he was misled.  Under an objective and reasonable standard of a minor's age, Minor Plaintiff was induced and misled by Defendant's *Fortnite* ecosystem. Plaintiff's FAC includes numerous new allegations on how Minor Plaintiff relied on Defendant's misrepresentation regarding its refundability for Battle Pass purchases and non-refundability of other purchases, for example, skins, older than 30 days.  Defendant's actions were unreasonable, and Defendant has misrepresented material facts especially in the context of minors playing *Fortnite*.  Importantly, Defendant concedes that its non-refundable policy is truthfully alleged in the Complaint.  (Defendant's Memorandum Supporting its Motion to Dismiss ECF No. 18 ("First MTD") at pp. 7-8.)

Last, to support its unlawful policy, Defendant desperately attempts to hang its hat on the language from its end user license agreement that states "as otherwise required by applicable law."  (Motion at p. 1; 3-4, 11, 15, 16, 18; First MTD at p. 11; Farnsworth Decl. Ex. A at ¶ 18.)  The Court has rejected this argument.  (Order at pp. 18-19 ("To claim that there is no dispute on disaffirmance strains credulity. Nowhere in its numerous filings related to the pending motion…. Defendant therefore has indicated its unwillingness to honor plaintiff's disaffirmance and refund the in-App purchases.")).  Further, by using third-party payment vendors, Defendant attempts to shift the blame and pass the buck on refunds to the third-party vendors, all with detrimental impact on the financial health and mental peace of children and their families.

Minor Plaintiff has stated claims upon which relief can be granted with respect to his claims. The Court should deny Defendant's Motion in its entirety, and allow Minor Plaintiff to have his day in Court as a member of a class to remedy Defendant's failure to honor minor's rights.

## III.   STATEMENT OF FACTS

The Court denied Defendant's Motions to Arbitrate, and to Transfer, and denied dismissal of the declaration judgment claim and UCL claim predicated on the unlawful prong.  (Order at pp. 32-33.)  The Court granted Minor Plaintiff leave to amend the remaining claims.  (*Id*.)  Minor Plaintiff filed the first amended Complaint, the operative Complaint.  (ECF No. 56, FAC).  Defendant filed another motion to dismiss primarily citing the same case law.  (ECF No. 59, "Motion").

/ / /

The claims in this class action require an objective test and analysis of a reasonable person of minor's age standard to determine liability based on a child's navigation in the digital world (cyber world) of video-gaming. (*See generally* FAC.)  Well-established tenets of contract and statutory laws protecting minors apply equally in the world of technology.  In this class action, Minor Plaintiff brings claims against Defendant for declaratory, equitable and monetary relief under the Declaratory Judgment Act, California's contract laws, Consumers Legal Remedies Act Cal. Civ. Code § 1750, et seq, Breach of Good Faith and Fair Dealing, Negligent Misrepresentation, Business and Professions Code Sections 17200 et seq., and/or for Unjust Enrichment. (*Id.*)

Defendant released the video game *Fortnite* in 2017. (FAC at ¶ 6.)  The video game has been immensely popular, with an estimated 200 million gamers playing *Fortnite*. (*Id.*)  It is known for its addictive tendencies. (*Id*. at ¶ 12.)  Players, especially minors, spend money on microtransactions within the game, which consist of in-App Purchases. (*Id*. at ¶¶ 13, 14.)  Though many minors contract with Defendant in these microtransactions, Defendant does not allow for a general refund, as many items remain non-refundable and outside of Defendant's refund policy. (*Id*. at ¶ 14.)

The in-App Purchases include purchases of Game Currency and Content that are licenses for entertainment use. (FAC at ¶¶ 3, 14, 18, 20-32.)  Defendant was served additional details on the specific transactions by the Minor Plaintiff in discovery. (*See* accompanying declaration of Deepali Brahmbhatt ("Brahmbhatt Decl.") ¶ 2.)  Before filing of this lawsuit, on May 17, 2019, Plaintiff's counsel sent a letter notifying Defendant of Minor Plaintiff's legal right to disaffirm contracts, particularly the microtransaction in-game purchases and Defendant's non-refund policy that violates laws of California and most states nationwide. (FAC at ¶ 86.)  Minor Plaintiff subsequently filed this lawsuit on June 21, 2019. (*Id.*)

## IV.     DEFENDANT'S MOTION TO DISMISS FAILS IN ITS ENTIRETY

### A.     Legal Standards Governing Motion to Dismiss

Defendant moves to dismiss Minor Plaintiff's claims under Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

A claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Here, Minor Plaintiff has met and exceeded the plausibility standard as set forth below.

**B.     The Court Should Deny Defendant's Motion to Dismiss Count I Because *Fortnite*'s in-App Purchases Are Software, Not Consumables**

The Court has already denied Defendant's Motion to Dismiss Plaintiff's Declaratory Judgment claim. (Order at p. 19.)  Defendant offers no valid reason why the Court should reconsider and now dismiss this claim.  None of the amendments found in the FAC change the Court's analysis. As to Count I, the FAC includes two types of transactions that were also alleged in the Original Complaint: (i) in-App Purchases made using gift cards; and (ii) in-App Purchases charged directly to a guardian's bank account, credit card or debit card. (FAC ¶¶ 1, 42-43; Complaint (ECF No. 1) ¶¶ 1, 33-35.)

**1.     There is no "consumable" exception to a Minor's right to disaffirm**

Defendant makes the same argument now that it made in its initial motion to dismiss, except to reword its original argument regarding an alleged "entertainment" exception as a "consumables" exception to disaffirmation that the Court has already rejected.  None of the exceptions to disaffirmance apply here. Cal. Fam. Code § 6712 (2010).  The Courts have found that "the California legislature expressly excepted particular types of contracts and did not except . . . the agreement at issue here, further supports the Court's conclusion that Plaintiff's right to disaffirmance remains intact in this instance."  *Lopez v. Kmart Corp.*, 2015 WL 2062606, at *5 (N.D. Cal. May 4, 2015).  The agreement at issue here, relates to the purchase of digital content, which is not included in the exceptions.  It follows that under Defendant's own reasoning that the in-App Purchases (alleged "consumable") are not basic necessities of food, shelter, clothing or education and none of the exceptions to minor's right to disaffirm apply. *Id.*

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**2.      Defendant's characterization of "consumable" for in-App Purchases software does not fit**

Defendant's conclusory dressing of the same facts as "consumables" and equating digital content and service to "a day at an amusement park" (Motion at p. 6), do not cure the original defects of the argument.  The in-App Purchases are clearly returnable and non-consumed digital software can be easily uninstalled and retrieved back.  Defendant has control of its framework and the client-side software that resides with each user including minors who disaffirm.  Defendant's own software and refund policy makes distinctions between in-App Purchases that are not consumable (related to skins, motes, outfits, etc. are refundable) and those that are consumable (related to play mode or experience levels are non-refundable).  First, at a minimum, Defendant's statements on non-consumables by classifying in-App Purchases regarding its three-items in a lifetime within 30-days of purchase are party admissions.  (FAC ¶ 21-22).  Hence, Defendant's argument fails for those purchases.  Second, even the in-App Purchases related to play mode or experience levels can be uninstalled from a client software.  To the extent a minor enters that play mode or experience level in software and uses the software does not make it a consumable.  Simply speaking, there is nothing consumable in software.  All of Defendant's in-App Purchases are software.

Defendant's reliance on *Putney Student Travel* and *Norwegian Cruise* cases (Motion at p. 7) is misplaced.  In these cases, the minor plaintiff had accepted the benefits of the contract that could not be returned, *i.e.,* already spent time on an Indian reservation or Cruise where subsequently plaintiffs were injured.  Here, the minor can give back all of the in-App Purchases software.  Defendant creates the software once and sells the same to thousands of users including minors without incurring any additional cost.  The principles of inequitable relief do not apply here when Defendant is not incurring any costs for a single user and the "software" is not consumed as such.  *Dawes v. Facebook* is distinguishable given that the minor here has disaffirmed and is no longer playing *Fortnite*.  The Court agreed as such.  (Order at p. 8.)

Defendant has argued that a minor's right to disaffirm does not apply in the digital world.  But there is no reason why this should be true.  The playing of a computer game is playing a game in the digital cyberworld, and a minor's statutory rights to disaffirm applies equally in the digital cyberworld.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

*See, for e.g.*, California S.B. 568, "Privacy Rights for California Minors in the Digital World" (Cal. Bus. &
Prof. Code § 22580-22581) took effect on Jan. 1, 2015; Children's Online Privacy Protection Act
("COPPA"); Rules 16 C.F.R. § 312.3; *See* Apple Settlement Order by this Court, *In re Apple in-App
Purchase Litigation*, Civ. No. 5:11-cv-01758-EJD (N.D. Cal. October 18, 2013). "Apple shall provide full
refunds to Account Holders who have been billed by Apple for unauthorized In-App Charges incurred by
minors." FTC Consent Order, *In the Matter of Apple Inc.*, Docket C-4444 (Mar. 25, 2014). "Google shall
provide full refunds to Account Holders who have been billed by Google for unauthorized In-App Charges
incurred by minors" FTC Consent Order, *In the Matter of Google, LLC*, Docket C-4449 (Dec. 2, 2014).

      Thus, Minor Plaintiff's statutory right to disaffirm cannot be questioned.

### C.    Defendant's Choice of Law Argument is Improper

      Defendant argues that North Carolina is the proper choice of law pursuant to the EULA.  (Motion
at p. 8).  The Court, however, has already held that the Plaintiff has disaffirmed the contracts with
Defendant and ***both the EULA and the Amended EULA*** with its choice of law or forum selection
provisions ***no longer apply***.  (Order at 7-9; footnote 5.)  Defendant attempts to side-step this ruling by the
Court's comment in a footnote that applying North Carolina law would give the same result.  (Order at
footnote 2.)  The ruling speaks for itself.  Defendant's argument that North Carolina law should apply for
disaffirmance, and merely recycling its original arguments on disaffirmance by applying the first EULA
without any new material facts or any new case law citation is procedurally and substantively improper.
Civil L.R. 7-9(b).

      Notwithstanding, Defendant's argument fails on the merits because even under North Carolina law,
in-App Purchases are software that remains untouched by the Minor Plaintiff even after use that can be
undoubtedly restored back.  In fact, Defendant never loses control of the in-App purchase software and the
Minor Plaintiff merely uses a digital copy of the original software.  *See* Section B above on consumables.

### 1.    Minor's disaffirmance includes disaffirming of in-App Purchases

      Taking a 180-degree turn on its earlier arguments, Defendant now attempts to carve out and
distinguish the in-App Purchase transactions from the contract covered by the EULAs and as such argues
those are outside the scope of what can be disaffirmed.  (Motion at pp. 8-9.)  The FAC does not contradict
any of the facts asserted in the earlier Complaint.  The financial information used to make the in-App

1   Purchases was available on the Minor's gaming platform and there was no authorization or approval for

2   any of the *Fortnite* in-App Purchases.  (FAC ¶ 41.)  The credit card or bank account information was not

3   in minor's physical possession at any time, was not stolen and was not improperly used by the minor.

4   Defendant's *Fortnite* software accessed the information already residing in the gaming platforms

5   improperly without consent.  The sharing of the information was directly by Defendant through the

6   gaming platform and not through minor as an agent acting on behalf of his parent.  At best, Defendant can

7   only create an issue of fact on parental consent or authorization for credit card use when the minor is

8   accessing Defendant's software and nothing more.  Such an issue of fact cannot be grounds for dismissal

9   under 12(b)(6).

10          Defendant's reliance to construe "authorization" or "apparent authorization" by citing Restatement,

11   secondary sources as well as an unpublished opinion in *Grube v. Amazon* that applied laws of Utah or New

12   Hampshire (Motion at pp. 5-6.) should be heavily discounted.  Notably here, Defendant knows that its

13   software is targeted for minors and does not dispute that minors, not parents, make the in-App Purchases.

14   In *Grube v. Amazon*, Amazon had already taken corrective measures before the unpublished opinion was

15   issued.  "Amazon now offers parental control settings and the ability to disable all in-App Purchases,

16   giving parents like Grube the tools to prevent their children from making in-app purchase without their

17   knowledge and consent."  *Grube v. Amazon.com, Inc.*, 2017 WL 3917602, at *4 (D.N.H. Sept. 6, 2017).

18   Whereas Grube was prompted to make an affirmative choice with respect to in-App Purchases that were

19   password protected, Defendant does not have in place even such basic protection to protect the account

20   holder.  *Id*; *see also Id* at *1 relying on *FTC v. Amazon.com, Inc.*, No. C14–1038–JCC, 2016 U.S. Dist.

21   LEXIS 55569 (W.D. Wash. Apr. 26, 2016).

22          In Defendant's *Fortnite* ecosystem, there is no digital tracking of any parental authorization or

23   consent.  (FAC ¶ 37.)  Defendant cannot and does not claim otherwise.  (Motion at pp. 8-10.)  Payment to

24   Defendant can go inadvertently and without authorization through many channels.  (FAC at ¶¶ 33-34, 42,

25   98.)  Defendant operates through independent third-party payment vendors, including, for example, Apple

26   iPhone, Microsoft Xbox, Samsung Galaxy Phones, Sony PlayStation, Windows as well as using its own

27   payment system.  (*Id*.; *See also*, ECF 18-1, Declaration of John Farnsworth ("Defendant Decl.") at ¶ 19.)

28   / / /

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant's software when operating on such platforms may directly read that payment information and apply to transactions that occur in-App, i.e., by minors when playing the game. (FAC at ¶¶ 33-34, 42, 98.)

Defendant's reliance on *I.B.* is misplaced (Motion at 9-10). In *I.B,* the court held that Facebook Credits were closer to digital currency and hence CLRA would not apply. Here, however, it is Defendant's *Fortnite* software that has accessed without permission the financial information stored in the underlying gaming platform operated by the Minor Plaintiff. The Minor Plaintiff did not input steal or improperly use his parent's credit card information. Defendant, purposefully and intentionally, as explained in the FAC, has made the in-App Purchases one-click that do not require additional verification. (FAC ¶¶ 37, 51, 56.) Any subsequent lack of monitoring of the financial account statements are events that occur post in-App purchase transactions and as such cannot be a reason for dismissal on the bases of lack of causation. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1212 (9th Cir. 2003). While active monitoring by a parent may act as a remedial measure, such monitoring cannot prevent Defendant's acts through its software that are a substantial factor to the harm suffered. *Id*.

### D.    Defendant is the Contracting Party

The Court held that the EULAs govern all of the in-App Purchases that have been disaffirmed. (Order at p. 7.) Contradicting its own argument with regards to third party vendors, Defendant has argued that the EULAs applied to all in-App Purchases at dispute here, for example, as follows (emphasis added):

- Motion at p. 7 applying EULA for choice of law;
- Motion at p. 11, "V-Bucks purchases that he made pursuant to the terms of the *Fortnite* EULA.";
- Motion at p. 15 defending Defendant's right to arbitrarily or unilaterally change value of in-App Purchases as claimed in the EULAs, "You agree that Epic May engage in actions that may impact the perceived value or purchase price, if applicable, of Game Currency and Content at any time, *except as prohibited by applicable law*."
- Motion to Arbitrate pursuant to provisions in the EULAs (ECF No. 21)

The payment vendors merely facilitate the financial transactions on behalf of Defendant.

/ / /

1

### 1. The Dispute Relates to the Items Purchased with the Gift Cards, Not its Source

2

Defendant repeatedly argues that it did not provide the gift cards, but rather they were provided by

3

third parties, such as iTunes and PlayStation stores. (*See, e.g.,* Motion at p. 3.) The source of the gift

4

cards, however, is of no significance. California law makes clear that the holder of the gift card is the

5

owner of the money received and has rights of redeeming the same. Cal. Civ. Code § 1749.5(b) (West);

6

*See White v. Hollister Co.*, 2013 WL 30361, at *10 (Cal. Ct. App. Jan. 3, 2013) (certifying a class action

7

for holders (recipients) of the gift cards that were not redeemed, not buyers of gift cards.); *See also Dudek*

8

*v. Dudek*, 34 Cal. App. 5th 154, 165, 246 Cal. Rptr. 3d 27, 34 (Ct. App. 2019), review denied (July 10,

9

2019) (transfer of personal property, gift card here, occurs by actual delivery of the personal property, gift

10

card to donee.) The source of the gift cards is irrelevant here because the function of the gift card is not

11

disputed. That is, Defendant does not dispute that the gift cards function properly and allow its users

12

(mainly minors) to make purchases on its system using these gift cards. Minors who are holders of the gift

13

cards have rights to redeem the same including getting cash value for the same. Cal. Civ. Code §

14

1749.5(b) (West).

15

### 2. In-App Purchases disputed here occurred within the *Fortnite* software and Defendant is the contracting party for those even with gift cards used

16

17

The Court has already held that the contracting parties for in-App Purchases is between Minor

18

Plaintiff and Defendant, as governed by the EULAs that are both disaffirmed. (Order at pp. 18-19.) This

19

comports with case law that has held that the payment vendors are not the contracting parties on disputed

20

in-App Purchases (micro-transactions). *See, e.g., McNamara v. Voltage Pay Inc.*, 2017 WL 3709057, at

21

*1 (D. Nev. Aug. 28, 2017). In *McNamara*, the Court dismissed claims against a payment vendor for

22

fraudulent transfer, unjust enrichment, and accounting. *Id.* at *1. Plaintiff sued the payment vendor, who

23

acted as a middleman, for fraud micro-transactions from another online company. The Court said that:

24

"This would be like treating a burglar's purchase of a crowbar as a fraudulent transfer merely because he

25

later used the tool to carry out a crime. There are no allegations plausibly suggesting that the payment of

26

fees to Voltage was a sham or otherwise a fraudulent transfer of funds. Indeed, the complaint contains few

27

allegations about Voltage at all, alleging only that it was a 'middleman' between the Receiver Entities and

28

other payment processors. Because there are insufficient facts to support any claims against Voltage, I

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

grant its motion." *Id.* Here, similar to *McNamara*, the payment vendors (such as Apple or Sony Corp.) are not the contracting party with Plaintiff. The dispute lies squarely with Defendant and it cannot pass the buck to payment vendors.

The Court should deny Defendant's Motion as to Count I, as it did previously.

### E.   Count II for violation of the CLRA is Sufficiently Pled

The Court initially dismissed Plaintiff's CLRA count on the grounds that virtual currency is not a good or service and because Plaintiff did not adequately show how he was misled.  (Order at p. 20.) Specifically, the Court held that Plaintiff failed to "explain how he was misled regarding his rights, remedies, or obligations when making the in-App purchases." *Id.* at 23. By the FAC, Plaintiff has amended its pleadings to directly cure both of these defects.

#### 1.   In-App Purchases in a video game are an entertainment service

The FAC makes clear that the good or service at issue is not a "good" but rather a "service," particularly an entertainment service.  (FAC ¶¶ 93-101.)  The *Fortnite* ecosystem with its virtual currency V-Bucks and subsequent in-App Purchases are licenses to entertainment services.  (*Id.*)  Indeed, Defendant has admitted that it provides an "entertainment service" (collectively, "Defendant Admissions"):

- "To allow a minor to disaffirm an entertainment purchase after enjoying the entertainment is not fair or equitable."  (Defendant's First-MTD at p. 5);

- "It should, instead, hold that California law—like North Carolina law—does not permit a minor to disaffirm entertainment purchases after consuming the entertainment." (Defendant's Motion at p. 8);

- "Plaintiffs' suit arises from in-game purchases that "Johnny Doe" made while playing Defendant's highly popular video game *Fortnite*." (Defendant Memo (ECF No. 20) at p. 1);

- Game Currency and Content as a "limited license to use" (Section 4).  *Fortnite* End-User License Agreements EULA and Amended EULA (ECF No. 21-1, Exs. A-B):

- "for your personal entertainment use" (Section 1).  *Fortnite* End-User License Agreements EULA and Amended EULA (ECF No. 21-1, Exs. A-B).

Further, in its numerous service mark registrations, including for "*Fortnite*" itself, Defendant identifies as "goods and services" its *Fortnite* gaming system as "Entertainment services, namely, providing on-line

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

computer games." (*See* U.S. Patent and Trademark Office website, Registration No. 5375076, searchable at

https://tsdr.uspto.gov/documentviewer?caseId=sn87484706&docId=ORC20171224040449#docIndex=0&page=1.  Minor Plaintiff has contemporaneously filed a Request for Judicial Notice of these materials.)  Defendant cannot deny it provides an entertainment service to its customers.

The only remaining question before this Court is whether an "entertainment service" is a service that falls under the CLRA.  It does.  The CLRA, at Cal. Civ. Code § 1761(b), defines "services" as "work, labor, and services for other than a commercial or business use."  Thus, applying the plain language of the statute, entertainment services falls squarely under the statute.  And Courts have interpreted this phrase broad enough to cover entertainment services.  *See, e.g., Anderson v. SeaWorld Parks and Entertainment*, 2016 WL 8929295 at * 10 (N.D. Cal. Nov. 7, 2016) ("Based on the plain language of the statute, the Court finds that phrase is broad enough to encompass 'educational and entertainment' services.").

### 2.    Minor Plaintiff was induced and misled to make in-App Purchases

The FAC includes numerous new allegations showing how Defendant made affirmative misleading statements, including, for example, screenshots from the *Fortnite* video game in the FAC that struck out in red higher values suggesting a great value proposition.  (FAC ¶¶ 48-63 and screenshots).  Further, misleading statements can be shown by omissions.  *See, e.g., Alger v. FCA US LLC*, 2020 WL 799175, at *8 (E.D. Cal. Feb. 18, 2020) ("And, like the UCL, the CLRA prohibits fraudulent omissions"). In *Alger,* the Court granted plaintiff's motion for class certification, including for claims under the CLRA.  *Id.*  For its CLRA claim, plaintiff showed that Chrysler had a duty to disclose an alleged defect because Defendant had exclusive knowledge of "material facts."  *Id.*  The Court further found this omission to be material because "materiality is determined according to a reasonable person standard, the question of whether the omitted information is material is a common question of fact suitable for treatment in a class action."  *Id.*

Here, the same analysis applies, even more so because the claim is at the pleading stage, and not the class certification stage.  Defendant had a duty to disclose material facts regarding its in-App Purchases and its omission is material, applying the objective reasonable person standard for a minor.  *See Alger,* 2020 WL 799175, at *8 ("An omission is material if 'a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action in the transaction in

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

question.'").  Further, Defendant knows and controls the frequency of pushing out newer items for in-App Purchases and any omissions of disclosing to minors under the reasonable person of minor's age standard is material.  (FAC ¶¶ 24, 54, 63, 95-97, 108.); *see also In re Ford Tailgate Litig.*, 2015 WL 7571772, at *10 (N.D. Cal. Nov. 25, 2015) ("The duty to disclose arises when the omission is 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.' ) *In re Sony Gaming Networks and Customer Data Breach Security Litigation*, 996 F. Supp. 2d 942, 992 (S.D. Cal. Jan. 21, 2014) ("the CLRA claim may proceed on the basis that Sony omitted material information regarding the security of the PSN at the time Plaintiffs purchased their Consoles.").

### 3.    Plaintiff has properly pled the CLRA claim with specificity

Lastly, Defendant argues that the FAC lacks specificity for this claim.  (Motion at p. 19.) Plaintiff's FAC clearly lays out the time period (time of installation up to disaffirming, FAC ¶ 34), place (Northern District of California, FAC ¶¶ 9-10) and specific content (in-App Purchases, FAC ¶¶ 39-41.) Further, Minor Plaintiff has produced documents to Defendant that identifies additional details regarding his in-App Purchases.  (Brahmbhatt Decl. ¶ 2.)  Defendant's cry that the FAC lacks specificity rings hollow, given all the details Plaintiff has already shared with Defendant.  (*Id.*)

### F.    Plaintiff Has Properly Pled Breach of Good Faith and Fair Dealing

In its FAC, Minor Plaintiff supplemented its allegations for breach of duty of good faith and fair dealing to include facts regarding how Defendant has engaged in conduct separate and apart from the performance of obligations under the agreement without good faith.  (FAC, ¶¶ 107-108.)  Minor Plaintiff has also alleged his failure to receive benefits of a contract between him and Defendant, as required by the Court in its initial Order.  (Order at p. 25.)  Defendant has breached contract-based good faith and fair dealing by unreasonable acts in operating the *Fortnite* ecosystem and restrictive refund policy while complying with the terms of the contract as evidenced in the EULAs.  Defendant has acted unreasonably by inducing minors to make in-App Purchase and then misleading them on the restrictive refund policy even when its EULAs have the disclaimer "as otherwise applicable by law."  The FAC sets forth the facts of Defendant's unreasonable acts.  (FAC ¶¶ 48-63, 104-112.)  Defendant attempts to hide behind its network of payment vendors and gaming platforms to escape liability.  (Motion at p. 1, 10-11, footnote 2.) / / /

Defendant arguments fail because Defendant is the Contracting Party for its in-App Purchases.  (*See* Section D. above).

First, for a contractual bad-faith claim, the Ninth Circuit has held that a key factor concerns Defendant's arbitrary or unreasonable conduct despite compliance with terms of the contract.  *Amadeo v. Principal Mut. Life Ins. Co.,* 290 F.3d 1152, 1164 (9th Cir. 2002)*; see also, Walker v. Geico Cas. Co*., 2019 WL 6729315, at *3 (D. Nev. Dec. 11, 2019); *Shaw v. CitiMortgage, Inc*., 201 F. Supp. 3d 1222, 1253 (D. Nev. 2016).  Here, Defendant's reliance on the EULA language that allows it to change value of in-App Purchases stating "except as prohibited by applicable law" is misplaced.  (Motion at p. 15.)  Defendant now contradicts its earlier position in the brief and attempts to apply the explicit terms of the EULA on in-App Purchases contracts while attempting to walk away from even the existence or participation in a contract in other parts of the brief.  (*See* Section D. above.)  Here, Defendant's actions are unreasonable by its publicized restrictive refund policy and operating a framework that allows unilateral changes to valuation of in-App Purchases while alleging to comply with the express language in its EULAs.  (Motion at p. 15; FAC ¶¶ 48-63, 104-112.)

To the extent the Court finds that a contractual bad-faith claim does not apply because of disaffirmance, tortious bad-faith applies.  *Walker v. Geico Cas. Co*., 2019 WL 6729315, at *3 (D. Nev. Dec. 11, 2019) is instructive.  In *Walker*, the Court found that plaintiff's tortious bad faith claim was ripe at the motion to dismiss stage when the insurer used a biased doctor for evaluation by showing a contractual relationship between insurance company and the doctor that coexisted with breach of contract claims.  *Id*.  Here, similar to *Walker*, with the Minor Plaintiff disaffirming the contract, a bad-faith claim can coexist under tortious bad-faith prong.  Defendant's conduct of materially changing value of in-App Purchases without giving adequate notices to a reasonable person of minor's age at the time of purchase falls squarely within the claim.  (FAC ¶¶ 48-63, 104-112.)

### G.    Negligent Misrepresentation is Sufficiently Pled

With respect to Minor Plaintiff's Negligent Misrepresentation claim, the Court found that "although the complaint alleges it did not give notice to plaintiff of its non-refundable policy at the time of his purchases, plaintiff also alleges that defendant 'may allow a refund of a total of three items through the lifetime of the user' and identifies which items are not eligible for refund under this policy. Defendant also

contends that under the EULA, purchases of V-Bucks and content are final and not refundable except 'as otherwise required by applicable law.'" (Order at p. 26.)  The Court further held that "plaintiff has failed to allege sufficiently that defendant made a misrepresentation or that plaintiff justifiably relied on any misrepresentation." (*Id.*)  The FAC now includes allegations that spell out and clarify the misrepresentations and Minor Plaintiff's reliance on the same.  The FAC further clarifies how the timing of the misrepresentations led to the injury.  At the time of purchases, for example, the terms are concealed with pop-ups that have very small fonts on refund restrictions.  (FAC ¶¶ 50, 62.)  When the Minor Plaintiff seeks to request a refund, the *Fortnite* ecosystem makes the items ineligible to request refunds.  (FAC ¶¶ 56, 62.)

Defendant also made misrepresentations in statements to promote its in-App Purchases.  *See Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir.), opinion amended on denial of reh'g, 352 F.3d 367 (9th Cir. 2003) (citing the objective reasonable consumer standard to determine whether the statements were generalized, vague and unspecific assertions, constituting mere "puffery" upon which a reasonable consumer could not rely.)  In *Glen Holly*, the Ninth Circuit reversed and remanded the district court's summary judgment dismissal of fraud and negligence claims by considering the timing of different events to determine whether there was reliance on those misrepresentations.  Here, like *Glen Holly*, the FAC outlines the different phases including inducement before the in-App Purchases are made through pop-ups and subsequent restrictive refund policy when the minor regrets an in-App Purchase.  (FAC ¶¶ 113-117.)  Minor Plaintiff was induced to make in-App Purchases.  (FAC ¶¶ 48-56.)  Minor Plaintiff was misled.  (FAC ¶¶ 57-63.)  Minor Plaintiff's FAC clearly lays out the time period (time of installation up to disaffirming, FAC ¶ 34), place (Northern District of California, FAC ¶¶ 9-10) and specific content (in-App Purchases, FAC ¶¶ 39-41.)  Minor Plaintiff's document production to Defendant has identified additional details on the in-App Purchases.  (Brahmbhatt Decl. ¶ 2.)  Defendant's cry that the FAC lacks specificity is an objection, at best, on form and not substance, given that all the details have already been shared with Defendant.  (*Id.*)

/ / /

### H.    UCL is Sufficiently Pled

The Court has already held that the Minor Plaintiff adequately pled the UCL unlawful prong. Defendant's request to dismiss, or more aptly to reconsider, should be denied. Nothing in the FAC alters the Court's holding.

Defendant is liable under all three prongs of the UCL.  *See S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 877–78, 85 Cal. Rptr. 2d 301, 309–10 (1999).  The UCL is directed toward the public's right to protection (here, a minor's right to protection) from fraud, deceit, and unlawful conduct. *Id.*  The statute imposes strict liability. It is not necessary to show that the defendant intended to injure anyone.  *Id*.  "To state a claim under section 17200, a plaintiff "need not plead and prove the elements of a tort. Instead, one need only show that 'members of the public [here, minors] are likely to be deceived.'"  Allegations of actual deception, reasonable reliance, and damage are unnecessary.  *Id.*

Here, the FAC alleges facts to prove UCL claim under all of the three prongs.  (FAC ¶¶ 118-127.) Minor Plaintiff was induced to make in-App Purchases.  (FAC ¶¶ 48-56.)  Minor Plaintiff was misled. (FAC ¶¶ 57-63.)  Minor Plaintiff's FAC clearly lays out the time period (time of installation up to disaffirming, FAC ¶ 34), place (Northern District of California, FAC ¶¶ 9-10) and specific content (in-App Purchases, FAC ¶¶ 39-41.)  Minor Plaintiff's document production to Defendant has identified additional details on the in-App Purchases.  (Brahmbhatt Decl. ¶ 2.)  Defendant's cry that the FAC lacks specificity is an objection, at best, on form and not substance, given that all the details have already been shared with Defendant.  (*Id.*)

### I.    Unjust Enrichment is Sufficiently Pled

In its Order, the Court held that "Plaintiff's unjust enrichment claim nevertheless fails, however, because plaintiff has not alleged that he was misled or that defendant breached any express or implied covenant as it relates to defendant's non-refundable policy."  (Order at p. 30.)  As explained above and herein, Minor Plaintiff has supplemented its FAC with new allegations showing how he was misled (FAC ¶¶ 48-63) and how Defendant has breached the covenant of good faith and fair dealing.  (*See* Section F above.)  Minor Plaintiff may not have an adequate remedy at law for damages for some if not all of the in-App game transactions, and at minimum, for any future transactions by class members. *See T.K. v. Adobe Sys., Inc.*, 2018 WL 1812200 at *13 (N.D. Cal. Apr. 17, 2018).  Minor Plaintiff has sufficiently plead

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1  unjust enrichment as a quasi-contract claim seeking restitution.  (FAC ¶¶ 128-133.)  Minor Plaintiff was

2  induced to make in-App Purchases.  (FAC ¶¶ 48-56.)  Minor Plaintiff was misled.  (FAC ¶¶ 57-63.)  Minor

3  Plaintiff's FAC clearly lays out the time period (time of installation up to disaffirming, FAC ¶ 34), place

4  (Northern District of California, FAC ¶¶ 9-10) and specific content (in-App Purchases, FAC ¶¶ 39-41.)

5  Minor Plaintiff's document production to Defendant have identified additional details on the in-App

6  Purchases.  (Brahmbhatt Decl. ¶ 2.)

7  **V.      CONCLUSION**

8          For these reasons and such other reasons as may appear just to the Court, Minor Plaintiff C.W. and

9  his Guardian White, respectfully request that this Court deny Defendant's Motion to dismiss the

10  Complaint in its entirety.

11  Dated:  April 9, 2020                                    **ONE LLP**

12

13                                                          By:  /s/ Deepali A. Brahmbhatt

14                                                               Peter R. Afrasiabi
                                                                 Deepali A. Brahmbhatt
                                                                 John E. Lord

15                                                               Attorneys for Plaintiffs
16                                                               C.W., a minor and through his Guardian,
                                                                 Rebecca White, on behalf of himself and all
17                                                               others similarly situated

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**