**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **C.W., ET AL.,**<br>Plaintiffs,<br>vs.<br>**EPIC GAMES, INC.,**<br>Defendant. | CASE NO. 19-cv-03629-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br>Re: Dkt. No. 59 |

This is the second round of briefing on the complaint filed by plaintiff C.W., a minor, by and through his guardian, plaintiff Rebecca White. In its prior order, this Court denied defendant Epic Games, Inc's motion to dismiss plaintiffs' claims for (i) declaratory judgment and (ii) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*, insofar as the UCL claim was brought under the "unlawful" prong and predicated on an alleged violation of C.W.'s right to disaffirm. The Court also granted the motion with leave to amend as to plaintiffs' claims for (i) violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*; (ii) violation of the implied covenant of good faith and fair dealing; (iii) negligent misrepresentation; (iv) violation of the UCL, except as set forth above; and (v) unjust enrichment.

Now before the Court is defendant's motion to dismiss the first amended complaint ("FAC"). Having carefully considered the pleadings and papers submitted, and for the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** defendant's motion.

**1.    Declaratory Judgment & UCL "Unlawful" Prong (Counts I and V)**

In its prior order, the Court rejected Epic Games' request for dismissal of plaintiffs' claims for declaratory judgment on the grounds that there is an actual controversy between the parties over the rights of minors to disaffirm in-App purchases and, if the contracts can be disaffirmed, whether minors are entitled to refunds. The Court also denied dismissal as to plaintiffs' claim for

violation of the UCL "unlawful" prong to the extent it is predicated on defendant's alleged violation of the minor's right to disaffirm a contract. Epic Games now argues that plaintiffs' new allegations give rise to additional grounds for dismissal of these claims. The Court disagrees.

First, defendant contends that plaintiffs cannot invoke disaffirmance rights against defendant for purchases made using Apple Inc. and Sony Interactive Entertainment Corp. gift cards, which were redeemed on the iTunes and PlayStation marketplaces, respectively. In so arguing, defendant claims there is no factual support in the FAC for plaintiffs' characterization of Apple and Sony as "payment vendors" that "merely facilitate transactions on behalf of" defendant. Federal pleading standards do not require more specific factual support. Further, in another action currently pending before this Court, defendant itself refers to Apple's marketplace as a "payment processing platform" for selling "digital in-app content to [] consumers," from which defendant collects 70 percent of the consumer's payment. *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-5640, Dkt. 1, ¶¶ 3, 10 (N.D. Cal. August 13, 2020) ("*Epic Games v. Apple*").[1] In addition, plaintiffs assert that C.W. purchased in-App content pursuant to defendant's End User License Agreement. Defendant's suggestion that it has nothing to do with the transactions at issue is unavailing, at least at this juncture.[2]

Nor is the Court persuaded that plaintiffs legally are precluded from invoking disaffirmance as to transactions made by C.W. using his mother's credit card. The FAC alleges that C.W. "made V-Bucks purchases through his parents' credit cards and debit cards that were available from his gaming platforms." Plaintiffs do not allege how C.W.'s parents' "financial information" became "available" for use on C.W.'s devices, but the FAC elsewhere alleges that

---

[1] The Court sua sponte takes judicial notice of the complaint in *Epic Games v. Apple* as a matter of public record. *See Contest Promotions, LLC v. City & Cty. of San Francisco*, No. 16-CV-06539-SI, 2017 WL 76896, at *1 (N.D. Cal. Jan. 9, 2017) (granting request to take judicial notice of various documents, including federal court dockets and filings; explaining that a "court can take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

[2] Defendant also argues that plaintiffs cannot disaffirm transactions made using gift cards that C.W. received from others because he was not using his "own money." This argument fails to persuade. Regardless of who initially paid for the gift cards, they allegedly were given to C.W. as gifts on social occasions. California law suggests that the holder of a gift card is the owner of the money received and has rights of redeeming the same. *See* Cal. Civ. Code § 1749.5(b).

2

"[i]n many instances, parents ignore these expenses as onesie-twosie expenses at the early stages of using Fortnite." From these allegations, and plaintiffs' assertion that no credit card information was stolen, defendant infers that C.W.'s mother entered her credit card number into C.W.'s *Fortnite* account, failed to monitor his usage, and ratified the purchases by paying her credit card bills. At this stage, the Court cannot dismiss plaintiffs' claims based on Epic Games' preferred inference. The FAC alleges that C.W.'s parents "did not consent to use of [their financial] information" and "did not know of the amounts spent at the time of purchase." Defendant does not cite any controlling authority limiting a minor's right to disaffirm contracts under such circumstances.[3] Plaintiffs' allegations, taken as true, suffice to state a claim based on disaffirmance.

*I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989 (N.D. Cal. 2012) is in accord. There, a minor plaintiff obtained permission from his mother to use her credit card to make a $20 purchase on his Facebook account. *Id.* at 996. Subsequently, without any notice that Facebook stored his mother's credit card information, the minor made additional purchases. *Id*. Facebook argued that the minor could not disaffirm purchases to recover consideration paid by his parents. *Id*. at 1003. The court disagreed, and denied Facebook's motion to dismiss on this ground, in large part because the plaintiffs allegedly "used their parents' funds to purchase Facebook Credits without the parents' knowledge or authorization." *Id*. at 1004.

Finally, defendant does not present any change of law that would cause this Court to reconsider the remaining issues related to disaffirmance on which it already ruled, including whether C.W. can disaffirm purchases from which he already has benefitted, whether plaintiffs have stated what they wish to disaffirm, and whether plaintiffs were required to give defendant a pre-suit opportunity to consider a request for disaffirmance or a refund. The Court's prior rulings

---

[3] In Restatement (Third) of Agency § 3.05, cmt. B, illus. 1 (2006), unlike here, the parent gives the child consent to use the parent's computer to order goods from an online retailer who already has the parent's credit card information. Further, *Grube v. Amazon.com, Inc.*, No. 16-cv-126-LM, 2017 WL 3917602 (D.N.H. Sept. 6, 2017) is an out-of-circuit, unpublished decision that did not involve a claim of disaffirmance.

3

as to these issues stand.[4]

Defendant's motion to dismiss plaintiffs' claims for a declaratory judgment and violation of the UCL's "unlawful" prong is **DENIED**.

### 2. Breach of Good Faith and Fair Dealing (Count III)

In its prior order, the Court found plaintiffs had not stated a good faith and fair dealing claim based on allegations that defendant failed to ensure minors obtained their guardian's consent before playing *Fortnite* and induced minors to make non-refundable in-App purchases. The FAC does not cure the defects.

Plaintiffs supplement their allegations with a new theory that by frequently releasing new content without proper notice to players, rendering already-purchased content stale within a short period of time, the covenant is breached. Even construing these allegations in the manner most favorable to plaintiffs, the Court finds this theory too strained to support a claim. There is nothing inherently inconsistent with defendant marketing its in-App content as "in keeping with the current fad" and a "great value proposition," while introducing new and updated content on a weekly or bi-weekly basis. Moreover, the crux of plaintiffs' claims is that minors were induced to make frequent one-click purchases. Yet it is likely that after a few instances of defendant releasing new content in a short period of time, even a minor would be on notice of—and perhaps come to expect—this feature of *Fortnite*. The Court is not persuaded that defendant's conduct with respect to introducing in-App content is actionable as a breach of good faith and fair dealing.

The FAC also reiterates plaintiffs' claim that defendant breached the implied covenant by displaying its non-refundability terms inconspicuously and, separately, by promoting non-refundability, thereby making minors believe they could not recover amounts spent on digital

---

[4] In its prior order, the Court noted that to the extent there was a choice-of-law dispute, both California and North Carolina law recognize a minor's right to disaffirm, and the disaffirmance analysis would not necessarily vary based on which law was applied. Defendant's motion again raises the issue, arguing that North Carolina law applies, and thereunder, a minor can disaffirm a contract only if he "restores whatever part he still has of the benefit he received under the contract." *Gillis v. Whitley's Discount Auto Sales, Inc.*, 319 S.E.2d 661, 667 (N.C. App. 1984) (citation omitted). This argument fails to persuade. Even if North Carolina law applied, defendant does not identify any case authority suggesting disaffirmation is not possible in the case of digital content that can be restored by the software developer.

4

content as provided under law. None of these allegations change the Court's prior determination that there is no *contractual* basis for plaintiffs' good faith and fair dealing claim. Thus, as was the case with the initial complaint, there was no breach of an implied duty under the parties' contract.

Plaintiffs' expanded allegations regarding defendant's failure to provide receipts or historical statements for in-App purchases fails for the same reason. Although a "breach of a specific provision of the contract is not a necessary prerequisite" to plaintiffs' claim, *Carma Developers, Inc. v. Marathon Development California, Inc.,* 2 Cal.4th 342, 373 (1992), an implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement," *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003) (quotation omitted). Here, plaintiffs do not tie the absence of receipts or historical statements to the language or the spirit of the parties' contract.

Finally, plaintiffs contend that they have asserted a "tortious bad-faith" claim separate from their "contractual bad-faith claim." "Generally, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" *Pension Tr. Fund v. Fed. Ins. Co.,* 307 F.3d 944, 955 (9th Cir. 2002) (quoting *Mitsui Mfrs. Bank v. Superior Court,* 212 Cal.App.3d 726, 730 (1989)). There are no allegations suggesting a "special" or "fiduciary" relationship here, and thus, this theory, too, fails. Accordingly, the claim for breach of the covenant of good faith and fair dealing claim is **DISMISSED**. Further, as plaintiffs already have had an opportunity to amend the pleadings to state a plausible claim, and failed to do so, the claim is dismissed **WITH PREJUDICE**.

**3.    Negligent Misrepresentation (Count IV)**

The FAC also includes new allegations that purportedly support plaintiffs' negligent misrepresentation claim. To a large extent, these allegations of material misrepresentations and omissions are the same as those set forth with respect to the good faith and fair dealing claim discussed above. However, tortious conduct is distinctly different from that arising out of contract.

Three of plaintiffs' theories, rejected under a contractual rubric, are also rejected here. For the reasons set forth above, the Court finds that the FAC does not state a misrepresentation claim

5

with respect to the theory regarding (i) the frequently introduction of new content, rendering older content stale; (ii) the alleged failure to provide receipts or purchase history; and (iii) the practice of marketing items as "non-refundable" without an explicit disclaimer that minors have rights under state law to disaffirm contracts.

By contrast, plaintiffs also plead another theory of misrepresentation, namely, that C.W. relied on defendant's misrepresentations and omissions regarding the refundability of certain content, including Battle Pass. This theory was floated briefly in the initial complaint. In rejecting the claim, the Court noted that there were inconsistencies in plaintiffs' allegations that, on the one hand, defendant did not notify plaintiffs of its non-refundability policy, and, on the other hand, defendant allowed refunds on certain items, and according to at least one screenshot included in the complaint, identified which items were not eligible for refunds. The initial complaint also failed to include any factual allegations that C.W. relied on misrepresentations.

In the FAC, plaintiffs expand upon and clarify their earlier allegations, claiming that defendant "conceal[s] the terms of the in-App purchase at the time of purchase by not displaying non-refundability or by displaying non-refundability in very small font." Plaintiffs aver that minors "are not buyers who would look for refund policy options at the time of purchase," and thus, by not including "visibly cautionary language at the time of promoting in-App purchases," defendant's conduct is misleading. Specific to C.W., the FAC alleges that prior to making in-App purchases, he "was not aware of the non-refundable policy for Battle Pass, the non-refundability of purchases older than 30 days and the non-refundability of any items after exhausting three refunds for a given lifetime."[5] With respect to reliance, the FAC alleges that C.W. "relied on Epic's misrepresentation regarding non-refundability for Battle Pass purchases and non-refundability of purchases . . . older than 30 days." In sum, instead of simply stating that no notice was given, which was contradicted by one of the screenshots in in the initial complaint, plaintiffs now allege in greater detail that the manner in which defendant made or failed to make representations about refundability was confusing, inconspicuous, inadequate, and designed to induce frequent in-App

---

[5] In addition, plaintiffs no longer allege that C.W. made purchases "that were labeled non-refundable."

6

purchases, which it did by virtue of C.W.'s age, the nature of the *Fortnite* ecosystem, and the lack of parental controls. Taking plaintiffs' allegations as true, they suffice to state a claim that defendant made material misrepresentations or omissions on which C.W. justifiably relied to his own detriment.

As such, defendant's motion to dismiss the negligent misrepresentation claim is **DENIED** as to this last theory and **GRANTED** as to the others.

### 4. CLRA (Count II)

The Court previously dismissed plaintiffs' CLRA claim on the grounds that the virtual currency C.W. allegedly purchased while playing *Fortnite* is not a "good" under the CLRA and plaintiffs had not alleged that C.W. was misled.

Plaintiffs have amended their complaint to allege that C.W.'s in-App purchases for virtual currency and content were licenses for entertainment use, which qualify as "services" under the CLRA. The CLRA defines "services" as "work, labor, and services for other than a commercial or business use." Cal. Civ. Code § 1761(b). Plaintiffs cite *Anderson v. SeaWorld Parks and Entertainment*, 2016 WL 8929295 at *10 (N.D. Cal. Nov. 7, 2016) for the proposition that the statute encompasses "educational and entertainment services." *Anderson* is a non-citable case, however, and in any event, it is not squarely on point as it involved the purchase of tickets for admission to a theme park. In cases involving software, courts frequently find that the CLRA does not apply. *See, e.g., Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1116 (N.D. Cal. 2016) (transcription program that was "only available online and [] [did] not provide users with any kind of ongoing service" was not a "service" under the CLRA); *Ferrington v. McAfee, Inc.*, No. 10–CV–01455–LHK, 2010 WL 3910169, at *18-19 (N.D. Cal. Oct. 5, 2010) (software is not a good or service under the CLRA); *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1070 (N.D. Cal. 2012) ("[T]o the extent Plaintiffs' allegations are based solely on software, Plaintiffs do not have a claim under the CLRA.").

While traditional software products are not considered goods under the CLRA, it is not clear whether *Fortnite* technologically crosses over. In *Epic Games v. Apple*, Epic Games describes *Fortnite* as "a colorful virtual world where [millions of people] meet, play, talk,

7

compete, dance, and even attend concerts and other cultural events." No. 4:20-cv-5640, Dkt. 1, ¶ 24. The Court finds that it is plausible that this may be a cross-over product, and absent a full record, the CLRA claim is not subject to dismissal on this basis.[6]

Having so found, the Court must consider whether plaintiffs have amended their complaint to plead a misrepresentation or omission that is actionable under the CLRA.

In paragraphs 94 through 98 of the FAC, plaintiffs put forth the same theories of representation discussed and rejected above, namely, that defendant failed to represent that all purchases were refundable under state law, frequently pushed new content rendering older content stale, and failed to provide historical statements. For the same reasons the Court found those theories not actionable with respect to the good faith and fair dealing and negligent misrepresentation claims, those theories are not actionable under the CLRA.

Paragraph 98 of the FAC also references the one theory the Court has allowed to go forward in support of the negligent misrepresentation claim: that defendant misled C.W. regarding non-refundability terms. Specifically, plaintiffs allege that "Epic owes a duty of care to disclose material facts, including non-refundable terms[.]" Thus, as to non-refundability, plaintiffs attempt to plead an omission-based theory of liability under the CLRA.

The Ninth Circuit has held that to be actionable under the CLRA, an omission "must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose" *Hodson v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (citing *Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824 (2006)). As to the first option, the only actual, specific representation identified in the FAC is defendant's labeling of certain content as non-refundable. However, plaintiffs' theory of the case is that such representations were unclear

---

[6] The Court **GRANTS** plaintiffs' request for judicial notice of U.S. Trademark Registration No. 5,375,076 for FORTNITE, which is a matter of public record not subject to reasonable dispute. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (quoting in part Fed. R. Evid. 201) (noting that courts may take judicial notice of documents or information that "can be accurately and readily determined from sources whose accuracy cannot be questioned," including "undisputed matters of public record"). Therein, defendant classifies *Fortnite* as an "[e]ntertainment service[]" for purposes of registering its trademark. Such a designation, while not binding, further demonstrates the need to resolve the issue on a full record.

or inconspicuous, and consequently, C.W. was not aware of them.  Thus, the FAC fails to point to any affirmative representation that was contrary to an omission.  As to the second option, the Ninth Circuit has recognized a duty to disclose defects that relate to the "central functionality" of a product.  *Hodsdon*, 891 F.3d at 863.  Even construing the allegations in the manner most favorable to plaintiffs, the Court is not persuaded that plaintiffs have pleaded facts to show that refundability terms are central to *Fortnite*'s function as a "socially connected video game on the internet."  Indeed, the FAC alleges that defendant allows for free downloads of *Fortnite*, and thus, even if it tries to lure minors into spending large sums within the game, at least some *Fortnite* players are not concerned with the refundability terms at all.  As such, there was no omission of material fact that defendant was obliged to disclose.  *See id.* at 864 (the existence of child or slave labor in supply chain did not affect chocolate's central function); *Browning v. Unilever United States, Inc.*, No. SACV1602210AGKESX, 2018 WL 6615064, at *3 (C.D. Cal. Dec. 17, 2018) (fact that facial exfoliant might cause "micro-tears" on skin did not go to product's central functional).

Accordingly, the motion with respect to CLRA claim is **GRANTED WITH PREJUDICE**.

### 5. UCL "Unfair" and "Fraudulent" Prongs (Count V)

The Court previously dismissed with leave to amend plaintiffs' claims under the "unfair" and "fraudulent" prongs of the UCL.  Plaintiffs amend these claims in the FAC to incorporate their new allegations regarding defendant misleading and misinforming minors, thereby inducing them to make frequent in-App purchases.

In general, conduct is "unfair" against consumers when a practice "offends an established public policy"; "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; is "tethered to some legislatively declared policy"; or is "proof of some actual or threatened impact on competition."  *Hodsdon*, 891 F.3d at 866.  Here, given the Court's holding on the negligent misrepresentation claim, and in particular, plaintiffs' amended allegations regarding the manner in which defendant allegedly lures minors to spend large amounts of money on in-App purchases without parental consent, the Court finds plaintiffs state a plausible claim that defendant's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

The "fraudulent" prong of the UCL generally "requires a showing [that] members of the public are likely to be deceived," *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002), as well as proof of "actual reliance," *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012) (citation omitted).  For the same reasons discussed with respect to the negligent misrepresentation claim, the Court finds that plaintiffs have stated a plausible UCL claim based on allegedly material misrepresentations or omissions regarding refundability.

Accordingly, defendant's motion to dismiss plaintiffs' claim under the UCL's "unfair" and "fraudulent" prongs is **DENIED.**

**6.      Unjust Enrichment (Count VI)**

In its prior order, the Court held that plaintiffs' unjust enrichment claim failed because they had not alleged that C.W. was misled or that defendant breached any express or implied covenant as it related to defendant's non-refundability policy.  Although plaintiffs have amended their pleadings as to defendant's alleged misrepresentations or omissions, unjust enrichment ultimately is a quasi-contract claim.  *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  Because the Court finds, as set forth above, that plaintiffs have not pleaded sufficiently a claim based in contract, defendant's motion to dismiss the unjust enrichment claim again is **GRANTED**, this time **WITH PREJUDICE**.

\* \* \*

For the foregoing reasons, defendant's motion to dismiss is **GRANTED WITH PREJUDICE** as to the good faith and fair dealing, CLRA, and unjust enrichment claims.  The motion is **DENIED** as to all other claims.  Defendant shall respond to the amended complaint within **twenty-one (21) days** of this order.  Further, a case management conference shall be set for **Monday, October 5, 2020** at **2:00 p.m.**  A link to the Zoom platform will be posted in advance of the conference.

This Order terminates Docket Number 59.

**IT IS SO ORDERED.**

Dated: September 3, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**