1  MATTHEW J. ADLER (SBN 273147)
   Matthew.Adler@faegredrinker.com
2  FAEGRE DRINKER BIDDLE & REATH LLP
   Four Embarcadero Center, 27th Floor
3  San Francisco, California 94111-4180
   Telephone:    415-591-7500
4  Facsimile:    415-591-7510

5  JEFFREY S. JACOBSON (*pro hac vice*)
   Jeffrey.Jacobson@faegredrinker.com
6  FAEGRE DRINKER BIDDLE & REATH LLP
   1177 Avenue of the Americas, 41st Floor
7  New York, New York  10036-2714
   Telephone:    212-248-3140
8  Facsimile:    212-248-3141

9  RYAN M. SALZMAN (SBN 299923)
   Ryan.Salzman@faegredrinker.com
10 FAEGRE DRINKER BIDDLE & REATH LLP
   1800 Century Park East, Suite 1500
11 Los Angeles, California  90067-1517
   Telephone:    310-203-4000
12 Facsimile:    310-229-1285

13 Attorneys for Defendant
   EPIC GAMES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| C.W., a minor, by and through his Guardian, REBECCA WHITE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EPIC GAMES, INC., a North Carolina corporation,<br><br>Defendant. | Case No. 4:19-cv-3629-YGR<br><br>**DEFENDANT EPIC GAMES, INC.'S REPLY IN SUPPORT OF MOTION TO CERTIFY QUESTION PURSUANT TO 28 U.S.C. § 1292(b)**<br><br>Date:         October 20, 2020<br>Time:         2:00 p.m.<br>Courtroom:    1<br>Judge:        Hon. Yvonne Gonzalez Rogers<br><br>Action Filed: June 21, 2019<br>Trial Date:   None set |

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

EPIC GAMES' REPLY IN SUPPORT OF
MOTION TO CERTIFY QUESTION

CASE NO. 4:19-CV-3629-YGR

# **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. THE ORDER DECIDED CONTROLLING ISSUES OF LAW ........................................ 1

III. SUBSTANTIAL GROUNDS EXIST FOR A DIFFERENCE OF OPINION ................... 3

IV. AN IMMEDIATE APPEAL WOULD ADVANCE ULTIMATE TERMINATION ........ 7

V. CONCLUSION ................................................................................................................... 8

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A.D. v. Credit One Bank, N.A.*,
   885 F.3d 1054 (7th Cir. 2018) .......................................................................................... 4

*Couch v. Telescope Inc.*,
   611 F.3d 629 (9th Cir. 2010) ............................................................................................ 3

*In re Flor*,
   79 F.3d 281 (2d Cir. 1996) ............................................................................................... 6

*Hastings v. Dollarhide*,
   24 Cal. 195 (1864) ........................................................................................................... 6

*Hurley v. Southern Cal. Edison Co.*,
   183 F.2d 125 (9th Cir. 1950) ............................................................................................ 4

*I.B. v. Facebook, Inc.*,
   No. C 12-1894 CW, 2013 WL 6734239 (N.D. Cal. Dec. 20, 2013) ............................ 3, 5

*MacGreal v. Taylor*,
   167 U.S. 688 (1897) ......................................................................................................... 6

*Omni MedSci, Inc. v. Apple Inc.*,
   No. 19-cv-5924-YGR, 2020 WL 759514 (N.D. Cal. Feb. 14, 2020) ............................... 3

*Paster v. Putney Student Travel, Inc.*,
   No. CV 99-2062 RSWL, 1999 WL 1074120 (C.D. Cal. June 9, 1999) .......................... 6

*Peers v. McLaughlin*,
   88 Cal. 294 (1891) ........................................................................................................... 6

*Reese v. BP Expl. (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ............................................................................................ 3

*Union County, Iowa v. Piper Jaffray & Co.*,
   525 F.3d 643 (8th Cir. 2008) ............................................................................................ 6

**STATUTES, RULES & REGULATIONS**

Cal. Fam. Code § 6710 .......................................................................................................... *passim*

Fed. R. App. P. 5(a)(3) ................................................................................................................. 8

Unfair Competition Law, Cal Bus. & Prof. Code § 17200 *et seq.* ......................................... 2, 8

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

EPIC GAMES' REPLY IN SUPPORT OF
MOTION TO CERTIFY QUESTION
- ii -
CASE NO. 4:19-CV-3629-YGR

I.  **PRELIMINARY STATEMENT**

Whether merchants in California and nationwide always must "allow for full refunds" for any kind of purchase, "with no questions asked[,] when a purchase is consummated by a Minor," as Plaintiffs C.W and Rebecca White argue in their opposition brief ("Opp. Br.," Dkt. No. 76, at 2), is a matter of great importance. Cal. Family Code § 6710 provides that "a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards," but the statute does not explicitly address whether a simple purchase is such a "contract." As the Court correctly acknowledged in its September 3 Order (Dkt. No. 72), no controlling authority dictates whether § 6710 applies to a minor's simple purchase at a movie theater, a corner store, or an online store. Only this Court and one other, seven years ago, have ruled on that question. The Court also noted the absence of controlling authority on the related issue of whether minors may exercise the equitable power of disaffirmation after having consumed the benefits of a "contract." More courts have considered that question and reached differing opinions on it. The Court's Order construing § 6710, therefore, is exactly the type of decision for which 28 U.S.C. § 1292(b) exists.

Epic Games has asked the Court to certify the Order for immediate appeal to the Ninth Circuit. Plaintiffs' arguments in opposition to certification mischaracterize both the cases on which they rely and the standard for certification under § 1292(b).

II.  **THE ORDER DECIDED CONTROLLING ISSUES OF LAW**

C.W., while playing Epic Games' free-to-play *Fortnite* video game, wanted to acquire in-game enhancements to his play, like a "Battle Pass" providing multiple in-game benefits or cosmetic "skins" for his character. Players use Epic Games' virtual currency, known as "V-Bucks," to acquire these enhancements, and players may acquire V-Bucks through game play or, if they wish, by purchasing V-Bucks with real money. C.W. allegedly purchased V-Bucks, some from Epic Games using Rebecca White's credit card and some from third parties using those third parties' proprietary gift cards. Plaintiffs' claim in this case is for refunds of all of his purchases.

Plaintiffs assert that Family Code § 6710 entitles C.W. to these refunds, "no questions asked" (Opp. Br. at 2, 7), and that any other minor can invoke this law to request refunds from any merchant, for virtually any good or service, even for long-ago purchases. Ruling upon Epic Games'

FAEGRE DRINKER BIDDLE  
& REATH LLP  
ATTORNEYS AT LAW  
LOS ANGELES

EPIC GAMES' REPLY IN SUPPORT OF  
MOTION TO CERTIFY QUESTION            - 1 -            CASE NO. 4:19-CV-3629-YGR

Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"), the Court allowed Plaintiffs to pursue claims (1) for a declaratory judgment respecting C.W.'s disaffirmation rights (Order at 3–4); (2) under the "unlawful" prong of the Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code § 17200 *et seq.*, to the extent that Epic Games purportedly denied C.W.'s lawful right to disaffirm (*id.*); (3) for negligent misrepresentation, to the extent that C.W. "relied on [alleged] misrepresentations and omissions regarding the refundability of certain content" as conflicting with his alleged disaffirmation right (*id.* at 6–7); and (4) that these same alleged misrepresentations and omissions about refundability amounted to "unfair" or "fraudulent" practices actionable under those prongs of the UCL. *See e.g.,* FAC ¶¶ 115, 122. The Court dismissed Plaintiffs' other claims. The Court's rulings with respect to these four surviving claims all stemmed from its conclusions that Family Code § 6710 at least potentially has the breadth Plaintiffs ascribe to it, allowing C.W. to disaffirm his purchases of V-Bucks.

Whether Family Code § 6710 indeed has that breadth, allowing minors to disaffirm simple purchases and to disaffirm any kind of contract after having consumed its benefits, are controlling questions of law in this case. Plaintiffs' principal argument against certifying the Order is that, if Epic Games is correct about minors not being able to invoke § 6710 to disaffirm simple purchases, "the statute would essentially lose its bite." Opp. Br. at 1. That is not an argument against certifying the Order, however; it is a merits argument Plaintiffs can make to the Ninth Circuit on appeal. Plaintiffs also contend that whether C.W. "consumed" his purchases is a disputed issue in this case, supposedly because "[s]oftware cannot be consumed." *Id.* at 2. Epic Games disagrees that this is a disputed fact issue, but even if it were, Plaintiffs themselves concede it does not matter to their claim. Plaintiffs' argument in this case is that "California allows for disaffirmance of services previously rendered to Minors," regardless of whether or not minors consumed those services. *Id.* at 3–4. Under Plaintiffs' view of the law, therefore, C.W. and other minors can disaffirm simple purchases without returning what they bought, or even being able to do so. The Court agreed with Plaintiffs, and that is one of the two questions Epic Games seeks to appeal.

Plaintiffs are correct that *if* Family Code § 6710 allows disaffirmation of simple purchases, like C.W.'s alleged purchases of V-Bucks for use within *Fortnite*, the parties then would have to

1  litigate other "factual disputes," including "whether it was C.W. or another who made those
2  transactions." Opp. Br. at 4, *citing* Motion at 7. Those factual disputes, however, would become
3  wholly moot if the Ninth Circuit holds that minors cannot invoke § 6710 for simple purchases or
4  after having consumed the benefit of a purchase. As this Court held in *Omni MedSci, Inc. v. Apple
5  Inc.*, No. 19-cv-5924-YGR, 2020 WL 759514, at *1 (N.D. Cal. Feb. 14, 2020), "if the appellant's
6  success on appeal would result in dismissal of the case," then "the appeal involves a controlling
7  question of law." This case involves such dispositive legal questions.

### III.  SUBSTANTIAL GROUNDS EXIST FOR A DIFFERENCE OF OPINION

When a case involves "controlling questions of law," as this one does, the next step is to determine whether those questions pose "substantial grounds for difference of opinion." Under Ninth Circuit precedent, a question satisfies this test when it "presents a 'novel legal issue on which fair-minded jurists might reach contradictory conclusions,' and 'not merely where they have already disagreed.'" *Omni MedSci*, 2020 WL 759514, at *1, *quoting Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). *See also Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ("Courts traditionally will find that a substantial ground for difference of opinion exists where . . . novel and difficult questions of first impression are presented.").[1] Here, whether minors may invoke Family Code § 6710 to disaffirm simple purchases is a "novel legal issue," and the related question of whether minors may invoke § 6710 to disaffirm any contract after having consumed its benefits is an equally important matter on which courts "have already disagreed."

This Court and the court in *I.B. v. Facebook, Inc.*, No. C 12-1894 CW, 2013 WL 6734239 (N.D. Cal. Dec. 20, 2013), decided that Family Code § 6710 allows minors to disaffirm simple

---

[1] Plaintiffs cite *Couch* to argue that "even when a novel legal issue is presented and a court is the first to address a new area of law or technology, that does not *ipso facto* allow Section 1292 to be invoked." Opp. Br. at 5, *citing Couch*, 611 F.3d at 633. That is not what the Ninth Circuit held in *Couch*. The *Couch* defendant sought certification pursuant to § 1292(b) without being able to cite any "California law undermining the district court's holding." *Couch*, 611 F.3d at 630. The district court "concluded that there was no substantial ground for difference of opinion as to its ruling but certified a set of limited questions to [the Ninth Circuit] anyway." *Id.* Because "the requirements of § 1292(b) are jurisdictional," *id.* at 633 (citation omitted), but were not met in *Couch*, the Ninth Circuit ruled it could not hear the appeal. In reaching that decision, the Ninth Circuit differentiated between "novel and difficult questions of first impression," which suffice under § 1292(b), and cases where "a court is the first to rule on a particular question" but, as in *Couch*, the disappointed party could not raise any basis for judicial disagreement. *Id.* Here, by contrast, Epic Games has cited relevant authority raising substantial grounds for a difference of judicial opinion.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

EPIC GAMES' REPLY IN SUPPORT OF
MOTION TO CERTIFY QUESTION
- 3 -
CASE NO. 4:19-cv-3629-YGR

purchases. No other courts have opined on this question. Plaintiffs' opposition brief cites different cases, ostensibly to show that other courts have considered the issue, too, but those cases are far afield of this one and did not involve simple purchases. *Hurley v. Southern Cal. Edison Co.*, 183 F.2d 125 (9th Cir. 1950), for example, involved ownership of stock certificates that had passed to a minor by rights of survivorship. *See* Opp. Br. at 1. The Ninth Circuit construed a predecessor statute to Family Code § 6710 and held that the minor could disaffirm orders assigning his stock dividends to someone else. Nothing in *Hurley* addressed whether this predecessor statute applied to simple purchases or to contracts after a minor had consumed the contract's benefits.

*A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054 (7th Cir. 2018), is similarly irrelevant. Plaintiffs contend that *A.D.* "reached the same result consistent with this Court's ruling" (Opp. Br. at 2), but *A.D.* arose under the Telephone Consumer Protection Act ("TCPA") and had nothing to do with attempted disaffirmation of simple purchases. A.D.'s mother had a credit card account with the defendant and, on one occasion, "she used A.D.'s cell phone to access [that] account." *Id.* at 1058. Credit One recorded A.D.'s cell phone number when A.D.'s mother made that call, and when A.D.'s mother "later fell behind on her credit card payments, Credit One began calling the telephone numbers previously stored with her account," including A.D.'s phone. When A.D. sued over Credit One's alleged use of an auto-dialer to call A.D., in violation of the TCPA, Credit One tried to bind A.D. to her mother's credit card agreement, which contained an arbitration clause. *See id.* The arbitration clause, by its terms, extended to "Claims made by anyone connected with you or claiming through you, such as a co-applicant or authorized user of your account, your agent, representative or heirs." *Id.* A district judge held that this clause required A.D. to arbitrate her claim, but certified that question to the Seventh Circuit pursuant to § 1292(b).

The Seventh Circuit reversed. It found that A.D. was not an "authorized user" on her mother's account and therefore "simply did not consent to arbitrate with Credit One." *A.D.*, 885 F.3d at 1062. It then held that even if A.D. had contracted with Credit One and agreed to arbitrate, "[u]nder applicable state law, minors . . . can disaffirm their obligations under contracts formed before they reach the age of eighteen." *Id.* at 1062 & n.10 (citing both Nevada law and Family Code § 6710). Disaffirmation would have allowed A.D. to escape arbitration even if she had

1    previously agreed to it (which she did not).  Because the case did not involve any purchases A.D.

2    had made, the Seventh Circuit did not rule, and had no occasion to rule, on whether A.D. could

3    invoke § 6710 to demand refunds for any kind of purchases.

4        Plaintiffs' opposition brief thus does not alter the decisional landscape.  The only three court

5    opinions addressing the applicability of Family Code § 6710 to simple purchases are the Order and

6    the two decisions the court in *I.B.* rendered in 2012 and 2013.  There is no appellate authority from

7    the Ninth Circuit or from California state courts on point.

8        Plaintiffs' brief does not dispute the absence of appellate authority on this question, nor the

9    question's importance to businesses throughout California that transact with minors in the ordinary

10   course.  Instead, Plaintiffs' brief posited, "the majority of online platforms allow for full refunds

11   with no questions asked when a purchase is consummated by a Minor."  Opp. Br. at 2.  That,

12   however, is false.  Plaintiffs' FAC cites legal settlements in which Apple, Amazon, and Google

13   agreed to change how they disclose *to adults* how minors might be able to use credit cards that

14   adults store in their online accounts, and to provide refunds where minors allegedly made purchases

15   on their *parents'* accounts without authorization.  *See* Opp. Br. at 2, *citing* ECF No. 56 (FAC)

16   ¶¶ 64–65.  Those lawsuits against other companies did not involve those *minors'* purported

17   disaffirmation rights, however, and none required the defendants to refund any past purchases, or

18   to refund future purchases, simply because a minor allegedly made them.  Plaintiffs thus have no

19   basis to contend that "these major retailers recognize the reality of Minor's disaffirmance

20   principles," and "allow for full refunds with no questions asked."  Opp. Br. at 2.

21       With regard to the first question Epic Games seeks to appeal, therefore—whether Family

22   Code § 6710 allows disaffirmation of simple purchases—Epic Games submits that the question is

23   a "novel legal issue" on which reasonable jurists could reach different conclusions and as to which

24   appellate guidance would be helpful.  With regard to the second question, whether Family Code

25   § 6710 allows for disaffirmation after minors have consumed the benefits of the "contracts"

26   allegedly at issue, Epic Games submits that reasonable jurists already have reached different

27   conclusions.  Multiple courts have held that minors *cannot* disaffirm contracts after they have

28   enjoyed the contracts' benefits.  *See* Motion at 8–9, *citing, e.g., Paster v. Putney Student Travel,*

*Inc.*, No. CV 99-2062 RSWL, 1999 WL 1074120, at *1–2 (C.D. Cal. June 9, 1999). Plaintiffs elected not to discuss these cases in their brief or to dispute that they raise substantial grounds for a difference of opinion. *See* Opp. Br. at 8.

Plaintiffs did not dispute, either, that the only relevant "controlling authority" respecting minors' ability to disaffirm "contracts" after having received their benefits cuts strongly against their position. The United States Supreme Court ruled in *MacGreal v. Taylor*, 167 U.S. 688, 701 (1897), that "gross injustice will be done" if a minor can disaffirm a contract while retaining its benefits. The California Supreme Court ruled similarly in *Peers v. McLaughlin*, 88 Cal. 294 (1891) (minors "cannot retain the contract's fruits and at the same time deny its obligations"), and *Hastings v. Dollarhide*, 24 Cal. 195, 216 (1864) (disaffirmation must not "make the disability of infancy a 'sword' rather than a 'shield.'"). Plaintiffs' only response to these cases was to contend that they are too old to be relevant or precedential. *See* Opp. Br. at 8. Plaintiffs did not address, however, that *Paster* and the other recent cases Epic Games cited relied on these decisions to hold that § 6710 does *not* permit disaffirmation where minors have consumed their purchases. *See* Motion at 8–9.

The Court's Order stated that no "controlling authority" squarely addresses whether a minor can disaffirm purchases in circumstances like C.W.'s. *See* Order at 3–4. *See also* Dkt. No. 54 (Order dated January 23, 2020) at 7–8 n.6 (same). Clarity on this issue is of great importance not only to Epic Games, but to all merchants who engage in ordinary-course transactions with minors. Plaintiffs' brief notably did not dispute that their reading of Family Code § 6710 would apply to *any* purchase made by a minor (other than the statutory exceptions for food and "necessities").

The Ninth Circuit repeatedly has countenanced immediate appeals when cases raise such "novel" and significant legal questions. This is such a case. Plaintiffs' reliance on the out-of-circuit *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996), in which a defendant had "failed to request certification by the district judge" pursuant to 28 U.S.C. § 1292(b); and *Union County, Iowa v. Piper Jaffray & Co.*, 525 F.3d 643, 647 (8th Cir. 2008), where the plaintiff "offered no . . . Iowa opinions, statutes or rules" contradicting the district court's decision that the plaintiff impliedly waived its attorney-client privilege, should not avail them. Unlike those litigants, Epic Games has fully justified its request that this Court certify specified questions for immediate appeal.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

EPIC GAMES' REPLY IN SUPPORT OF
MOTION TO CERTIFY QUESTION
- 6 -
CASE NO. 4:19-CV-3629-YGR

## IV. AN IMMEDIATE APPEAL WOULD ADVANCE ULTIMATE TERMINATION

Plaintiffs argued in their brief that allowing an immediate appeal as to the proper construction of Family Code § 6710 would not advance the ultimate termination of this matter because, Plaintiffs say, their "claim counts here involv[ing] negligent misrepresentation and UCL's unfair and fraudulent prongs . . . apply independent of the issues around disaffirmance." Opp. Br. at 5. That is not Epic Games' interpretation of the Court's Order. Although Plaintiffs pleaded negligent misrepresentation under multiple theories, the Court explicitly "rejected" plaintiffs "theor[ies] regarding (i) the frequent[] introduction of new content, rendering older content stale; (ii) the alleged failure to provide receipts or purchase history; and (iii) the practice of marketing items as 'non-refundable' without an explicit disclaimer that minors have rights under state law to disaffirm contracts." Order at 5–6. The Court allowed Plaintiffs to advance their negligent misrepresentation claim *only* with respect to their theory that C.W. "relied on Epic's [alleged] misrepresentation regarding non-refundability for Battle Pass purchases and non-refundability of purchases older than 30 days." *Id.* at 6.[2] Because Plaintiffs' claim is that § 6710 requires Epic Games to provide C.W. with refunds even for purchases that Epic Games said would not be refundable, this claim, too, fails if § 6710 does not allow C.W. to disaffirm these particular purchases. The same is true with respect to Plaintiffs' claims under the "unfair" and "fraudulent" prongs of the UCL, which the Court declined to dismiss "[f]or the same reasons discussed with respect to the negligent misrepresentation claim." *Id.* at 10.

---

[2] Epic Games served an interrogatory requesting that Plaintiffs "[l]ist all Documents: that C.W. or Mrs. White "read, before bringing the Action, that pertain to Epic Games' policies for providing refunds for in-game purchases and/or responding to requests to disaffirm contracts." On January 15, 2020, Plaintiffs responded by "incorporat[ing] their Declarations in this action at ECF Nos. 4–3 and 32" and C.W.'s "response from ECF No. 40." Dkt. No. 4–3 is a declaration from Mrs. White that did not reference any documents C.W. or she allegedly read. Dkt. No. 32 is a declaration from Mrs. White stating that C.W. "does not recollect seeing, reading or agreeing to the EULA" and that Mrs. White herself "did not see, read, or agree to Defendant's EULA at the time of [C.W.]'s alleged acceptance" of it, or any other version of the EULA. Dkt. No. 32 did not say that C.W. read or relied on any other statements regarding refundability. Dkt. No. 40 was Plaintiffs' "Notice Regarding Compliance With Court Order," in which Plaintiffs' counsel stated that C.W. "had stopped playing the Fortnite game." That document also does not reference any statements regarding refundability that C.W. read or upon which he relied. Accordingly, although Plaintiffs' First Amended Complaint may allege that "C.W. justifiably relied" on unspecified materials regarding refundability, Plaintiffs apparently cannot identify any such materials or support their claim that C.W. relied upon them.

The question of whether Family Code § 6710 allows disaffirmation in C.W.'s alleged circumstances, therefore, is central to this litigation. These are important questions, and receiving appellate guidance on them on an interlocutory basis would advance the ultimate termination of this case. Plaintiffs offered no argument respecting "ultimate termination" beyond their seemingly incorrect assertion that an appellate ruling on the scope of § 6710 would not fully dispose of their negligent misrepresentation and UCL "unfair" and "fraudulent" prong claims.

## V. CONCLUSION

For each of the above reasons, and as discussed in Epic Games' opening brief, Epic Games respectfully requests that, pursuant to 28 U.S.C. § 1292(b) and Fed. R. App. P. 5(a)(3), the Court certify its Order for interlocutory appeal to the Ninth Circuit, limited to the question of whether California Family Code § 6710 permits minors in California to disaffirm simple purchases or to do so when they already have received the benefits of the bargain.

Dated:  October 1, 2020                     FAEGRE DRINKER BIDDLE & REATH LLP


By: */s/ Jeffrey S. Jacobson*
Jeffrey S. Jacobson (*Pro Hac Vice*)
Matthew J. Adler
Ryan M. Salzman

Attorneys for Defendant
EPIC GAMES, INC.