**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **C.W., ET AL.,**<br>　　　　　Plaintiffs,<br>　　vs.<br>**EPIC GAMES, INC.,**<br>　　　　　Defendant. | CASE NO. 19-cv-03629-YGR<br><br>**ORDER DENYING MOTION TO CERTIFY QUESTIONS PURSUANT TO 28 U.S.C. SECTION 1292(B) AND FED. R. APP. P. 5(A)(3)**<br><br>Re: Dkt. No. 73 |

On September 3, 2020, this Court issued an order granting in part and denying in part defendant Epic Games, Inc.'s motion to dismiss the first amended complaint ("FAC") filed by plaintiff C.W., a minor, by and through his guardian, plaintiff Rebecca White. (Dkt. No. 72 ("Order").) Defendant now requests, pursuant to 28 U.S.C. section 1292(b) and Federal Rule of Appellate Procedure 5(a)(3), that the Court certify for immediate appeal two questions purportedly decided in the Court's prior order, both relating to California Family Code section 6710: (1) whether section 6710 allows minors to disaffirm "simple purchases," and (2) whether section 6710 can be invoked where a minor has received and cannot return the benefits of the bargain.[1]

Section 1292(b) is a "departure from the normal rule that only final judgments are appealable." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002). This exception "must be construed narrowly." *Id.* Under section 1292(b), a federal district court may certify a non-dispositive order for interlocutory review where: (1) the order "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and

---

[1] The facts of this case as alleged in the operative complaint are set forth in detail in the Court's orders at Docket Numbers 54 and 72, and as such, the Court does not repeat them here.

(3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).[2]  The party seeking certification bears the burden of demonstrating that the requirements are satisfied and that such a departure is warranted. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).  Satisfaction of all three elements is required.

*1.  Controlling Question of Law*

With respect to the first question of whether the issue to be certified is a "controlling question of law," the moving party must show that "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981).

As an initial matter, and as discussed in detail in Section 3 below, the Court is not persuaded that the entirety of this action turns on whether section 6710 allows C.W. to disaffirm the purchases at issue.  Thus, the questions defendant seeks to present to the Ninth Circuit do not control the outcome of this litigation.

Furthermore, plaintiffs contend that the questions to which defendant seeks answers are not controlling questions of law because they depend on disputed facts.  Defendant dismisses as "irrelevant" any mention of contested facts, arguing that these issues fall away if section 6710 does not apply to C.W.'s transactions.  Quite simply, defendant puts the cart before the horse.  Interlocutory appeals are reserved for situations in which the appellate court can rule on a purely legal question without having to delve into or resolve issues involving the factual record.  Here, that means the record must contain sufficient facts about the transactions at issue for the Ninth Circuit to determine whether, and the extent to which, section 6710 may apply.  The Court concludes that the factual record requires development.

First, defendant requests that the Ninth Circuit decide whether section 6710 allows disaffirmance of "simple purchases," notwithstanding that the term "simple purchase" does not appear anywhere in the operative complaint, defendant's briefing on its motion to dismiss, the Order, or even the statute itself.  At the hearing on the instant motion, defense counsel suggested

---

[2] Federal Rule of Appellate Procedure 5(a)(3) further permits the Court to amend an order to include the certification set forth above.

that "simple purchase" refers to anything other a contract for employment or for a "major purchase." At this juncture, however, it is not evident whether the transactions at issue are "simple purchases" or arise under a "contract," and if the latter, the nature of the contractual agreement. These questions only can be answered through fact discovery addressing, among other things, the process for making in-App purchases through *Fortnite* and the amount spent by C.W. on actionable purchases.[3]

Defendant's second certification request concerns whether section 6710 allows disaffirmance where the minor already has consumed the benefits of the bargain. Again, however, it is not clear what "consumption" means in the context of this case or whether C.W. "consumed" the benefits of his purchases. That is, in order to determine the point at which the purchases have been "consumed," "enjoyed" or "cannot be returned," the record must contain facts about how *Fortnite* works, including, for example, how players use V-Bucks, Battle Passes, and skins within the gaming environment. Not only does the operative complaint not address these issues in sufficient detail to support appeal, but it actually raises factual questions, which the Court was not in a position to resolve at the motion to dismiss stage. The Court also emphasizes that section 6710 allows a minor to disaffirm a contract "within a reasonable time afterwards." Thus, it is not only the nature and size of the purchase, but also the time period for seeking disaffirmance, that matters in deciding the scope of section 6710. This Court, and by extension, the Ninth Circuit, would benefit from a more fulsome factual record on this issue, instead of considering defendant's question in vacuum, based only on allegations in the complaint.

Defendant also attempts to bolster its argument about the need for immediate appeal by mischaracterizing the Court's rulings as more expansive than they were, suggesting that the Court has given minors the go-ahead to demand a refund from a corner store without returning the comic books purchased, or from a movie theater after having watched a movie. Not so. The Court has simply concluded, based on the facts pleaded, that "plaintiff's disaffirmance [wa]s valid

---

[3] The FAC alleges that many young players spend hundreds or even thousands of dollars on V-Bucks and that defendant collects millions of dollars from minors downloading digital content.

3

1    notwithstanding that he has already played *Fortnite* and made in-App purchases."[4]  Elsewhere, the

2    Court noted that this case raises the particular issue of a minor's right to disaffirm a purchase for

3    *"digital content that can be restored by the software developer."*[5]  The Court's holding was

4    appropriately tailored to the facts before it on a motion to dismiss.

5    　　　　In sum, defendant's motion seeks a premature, advisory opinion from the Ninth Circuit on

6    questions involving unresolved facts.  Circumvention of the litigation process not only would be

7    inappropriate, but it would undermine the foundation and development of the common law.  The

8    first section 1292(b) requirement is not satisfied, and therefore the motion fails.  Nevertheless, the

9    Court proceeds to analyze the second and third section 1292(b) requirements.

### 2.   *Ground for Difference of Opinion*

　　　　Section 1292(b) next requires that a "substantial ground for difference of opinion" exists on the issue sought for certification.  "Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'"  *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citation omitted).  However, "just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal."  *Id.* (citation omitted).

　　　　With respect to the first question raised by defendant—whether section 6710 allows disaffirmance of simple purchases—defendant argues that ground for disagreement exists because this is a novel legal issue for which there is no controlling authority.  While case law is sparse, the issue has been considered previously.  Thus, in *I.B. v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1004 (N.D. Cal. 2012), another court in this district also upheld a minor's right to disaffirm online purchases of virtual currency.  *See also I.B. v. Facebook*, 2013 WL 6734239, at *4 (N.D. Cal. Dec.

---

[4] Dkt. No. 54 at 7-8 n.6.  On this issue, the Order left the prior order on the motion to dismiss the initial complaint unchanged.  *See* Dkt. No. 72 at 3.

[5] Dkt. No. 72 at 4 n.4, emphasis supplied.

20, 2013) (same).[6] An absence of controlling authority does not mean an issue is so difficult or controversial as to warrant interlocutory appeal. Indeed, this Court frequently is tasked with deciding issues on which the Ninth Circuit has not yet opined. Particularly given that defendant "do[es] not provide[] a single case that conflicts with the district court's construction or application," *Couch*, 611 F.3d at 633, there is no ground for difference of opinion, much less from circuit splits.

With respect to whether section 6710 permits disaffirmance after the minor consumes the benefits of a contract, defendant avers that conflicting case law exists. However, three of the cases cited by defendant were decided more than 100 years ago and thus provide minimal guidance on whether there is ground for difference of opinion here.[7] Likewise, the more recent cases cited by defendant are distinguishable because none involved disaffirmance of software purchases.[8] In any event, even if these cases offer some guidance on the questions at issue, defendant has not shown that there is a *substantial* ground for difference of opinion on whether a minor can disaffirm a purchase after consuming the benefit. The second requirement of section 1292(b) is not met.

### 3. *Advancement of Termination of Litigation*

As to the third requirement, the Court must determine whether interlocutory appeal on these issues would "materially advance the ultimate termination of the litigation." "The ultimate

---

[6] Plaintiffs also cite *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054 (7th Cir. 2018), arguing that the Seventh Circuit's ruling in that case is consistent with this Court's ruling. Defendants counter that *A.D.* is irrelevant because it involved disaffirmance of an arbitration clause in a credit card agreement, not disaffirmance of a "simple purchase." As explained, it is not entirely clear how defendant defines "simple purchase," nor is it clear that term applies in this case. Even if it does, however, the cases cited by plaintiffs generally are consistent with this Court's decision regarding disaffirmance of purchases, even if they are not precisely on point.

[7] *See MacGreal v. Taylor*, 167 U.S. 688, 701 (1897); *Peers v. McLaughlin*, 88 Cal. 294 (1891); *Hastings v. Dollarhide*, 24 Cal. 195, 216 (1864).

[8] In *Paster v. Putney Student Travel, Inc.*, No. CV 99-2062 RSWL, 1999 WL 1074120, at *1-2 (C.D. Cal. June 9, 1999) and *Morrow v. Norwegian Cruise Line Ltd.*, 262 F. Supp. 2d 474, 476 (M.D. Pa. 2002), minors signed contracts to participate in travel, filed negligence actions after returning from their trips, and sought to disaffirm forum selections clauses in the contracts. Similarly, in *Doe #1 v. Coll. Bd.*, 440 F. Supp. 3d 349, 355 (S.D.N.Y. 2020), the minor filed a negligence action against administrators of a standardized test and sought to disaffirm an arbitration agreement in their contract. In *Gillis v. Whitley's Discount Auto Sales, Inc.*, 319 S.E.2d 661, 667 (N.C. App. 1984), the court held that a minor was entitled to recover consideration paid for a car "since he [] returned the damaged car," but it did not address whether or not a minor could disaffirm a purchase if unable to return the "benefit of the bargain."

1  question is whether permitting an interlocutory appeal would minimize the total burdens of
2  litigation on parties and the judicial system by accelerating or at least simplifying trial court
3  proceedings." *Allen v. ConAgra Foods, Inc.*, No. 3:13-CV-01279-WHO, 2019 WL 1466889, at *3
4  (N.D. Cal. Feb. 6, 2019) (citation omitted).

5        To determine whether appeal would advance termination of the litigation, the Court must
6  evaluate the four claims remaining in this case. There is no dispute that two of the claims, for
7  declaratory judgment and violation of the "unlawful" prong of California's Unfair Competition
8  Law ("UCL"), are predicated on plaintiffs' alleged disaffirmance rights. Thus, the Court focuses
9  its attention on plaintiffs' claims for negligent misrepresentation and violation of the "unfair" and
10  "fraudulent" prongs of the UCL.

11        Defendant argues that the negligent misrepresentation and related UCL claims, like the
12  declaratory judgment claim, turn on the question of whether section 6710 allows a minor to
13  request a refund without restriction. In so arguing, defendant repeatedly, and misleadingly, cites
14  to allegations in the FAC that claim defendant misrepresented material facts about a minor's right
15  to a refund under state law. It is true that this misrepresentation theory was based on plaintiffs'
16  legal position regarding the reach of section 6710. Importantly, however, the Court *explicitly*
17  *rejected this theory*, finding that "the FAC [did] not state a misrepresentation claim with respect to
18  the theory regarding . . . the practice of marketing items as 'non-refundable' without an explicit
19  disclaimer that minors have rights under state law to disaffirm contracts."

20        This Court allowed plaintiffs to advance their misrepresentation claim only with respect to
21  their theory that C.W. "relied on Epic's [alleged] misrepresentation regarding non-refundability
22  for Battle Pass purchases and non-refundability of purchases older than 30 days." The Court so
23  held because plaintiffs had alleged, in sufficient detail, that "the manner in [which] defendant
24  made or failed to make representations about refundability was confusing, inconspicuous,
25  inadequate, and designed to induce frequent in-App purchases." This theory of recovery exists
26  independent of plaintiffs' disaffirmance-based claims.[9] Thus, even if the disaffirmance-based

27  ───────────────
28      [9] The Court recognizes that there is a logical connection between disaffirmance and refundability. That is, one of plaintiffs' theories in this case is that C.W. is entitled to disaffirm his

United States District Court
Northern District of California

1  claims were terminated at this juncture, plaintiffs' other claims for negligent misrepresentation and
2  violation of the "unfair" and "fraudulent" prongs of the UCL would go forward.  The Court also
3  cannot say—nor does defendant appear to argue—that permitting appeal of the disaffirmance-
4  based claims would materially narrow the scope or duration of discovery, as many of the same
5  factual issues would arise in either event.

An interlocutory appeal would not accelerate the pace of this litigation or minimize either party's burden.  Defendant fails on the third factor.

* * * * *

For the foregoing reasons, the Court **DENIES** defendant's motion to certify for interlocutory appeal.

This Order terminates Docket Number 73.

**IT IS SO ORDERED.**

Dated: October 14, 2020

	**YVONNE GONZALEZ ROGERS**
	**UNITED STATES DISTRICT COURT JUDGE**

---

in-App purchases and thus receive a refund.  However, as defendant itself has argued in its briefing, disaffirmance and refundability are separate concepts.  As explained herein, plaintiffs' surviving misrepresentation claim is based on alleged representations about the latter.   Indeed, nowhere in its discussion of the misrepresentation and related UCL claims did the Court's order even mention disaffirmance.

7