MATTHEW J. ADLER (SBN 273147)
Matthew.Adler@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111-4180
Telephone: 415-591-7500
Facsimile: 415-591-7510

JEFFREY S. JACOBSON (*pro hac vice*)
Jeffrey.Jacobson@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
Telephone: 212-248-3140
Facsimile: 212-248-3141

Attorneys for Defendant
EPIC GAMES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.W., a minor, by and through his Guardian, REBECCA WHITE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EPIC GAMES, INC.,<br><br>Defendant. | Case No. 4:19-cv-3629-YGR<br><br>**OPPOSITION TO L.R. 3-12 ADMINISTRATIVE MOTION TO RELATE CASES**<br><br>Trial Date: None set |

MEMORANDUM IN RESPONSE TO MOTION TO
RELATE CASES PURSUANT TO L.R. 3-12

CASE NO. 4:19-CV-3629-YGR

Defendant Epic Games, Inc. ("Epic Games") respectfully opposes this attempt by the Plaintiffs in *K.W. v. Epic Games, Inc.*, No. 3:21-cv-976-CRB (N.D. Cal.), to relate their case to the <u>dismissed</u> matter of *White v. Epic Games, Inc.*, No. 4:19-cv-3629-YGR (N.D. Cal.), and thereby effect a judicial reassignment. Plaintiffs' motion should not be granted for two reasons. First, it does not satisfy the L.R. 3-12 standard for relation. Second, this case should be not be litigated at all; it should be stayed. Its sole purpose is to serve as an improper collateral attack on a pending nationwide class action settlement, as part of a fee dispute between Plaintiffs' counsel and their former partner. The Court should not allow its limited resources to be used for this purpose.

***K.W.* is not "related" to the dismissed *White* case within the meaning of L.R. 3-12.** To be related, the two cases must involve the same "transaction or event." They do not. Epic Games is the defendant in both cases, but they involve different plaintiffs recounting different facts about different transactions that were subject to different policies and consumer-facing statements. Epic Games' sales policies, its disclosures to purchasers, and what it requires purchasers to do and affirm in connection with purchases, all changed between the time of the transactions at issue in *White* and the later transactions at issue in *K.W.* For the past year, Epic Games has (1) prohibited minors from entering payment information in connection with purchases, (2) required parents/guardians to enter their own payment information, and (3) required parents/guardians to affirmatively accept the *Fortnite* EULA when entering payment information and authorizing in-game transactions. Both cases include a minor plaintiff seeking a declaratory judgment that California Family Code § 6710 allows them to "disaffirm" electronic transactions, but the similarities end there. Epic Games' current transaction practices were not at issue in *White*; they were a response to it.

If pleading the same legal claim were enough for relation, the case could just as easily be related to the dismissed *I.B. v. Facebook, Inc.*, No. 12-cv-1894-BLF (N.D. Cal.) (closed on June 2, 2016), or *T.K. v. Adobe Systems Inc.* No. 17-cv-4595-LHK (N.D. Cal.) (closed on Aug. 31, 2018). Both of those cases also involved minors invoking Family Code § 6710 to disaffirm internet purchases. The parties may cite to decisions from those cases as persuasive authority, and may do the same with respect to decisions made in the dismissed *White* case. Those decisions, however, will not control any outcome in *K.W.* The facts and the claims are too different.

The L.R. 3-12 relation standard also requires likelihood of an unduly burdensome duplication of labor and expense, or conflicting results, if the cases are "conducted" before different Judges. *White* is closed, however, and Epic Games' changed sales policies make the few *White* decisions rendered before dismissal of that case largely, if not entirely, irrelevant to the different facts at issue in *K.W.* The two cases also involve not just different facts, but different claims. *K.W.* alleges, as *White* did not, that it was an unfair trade practice for Epic Games to use a virtual currency at all (*K.W.* Compl. ¶ 75), to offer limited-time items for sale with an "on-screen clock" (*id.* ¶ 34) or to make it "very easy to execute" purchases (*id.* ¶ 37). *K.W.* alleges, as *White* also did not, that Epic Games misleads <u>parents</u> (*id.* ¶¶ 38, 51, 84). Further, separate from alleging voidability of transactions under Family Code § 6710, *K.W.* claims, on behalf of a "Parent Class," that *parents* can declare transactions engaged in by minors using parents' payment accounts to be void *ab initio* under Family Code § 6701. *See id.* ¶¶ 66-71. Analyzing these different issues, which were not at issue in *White*, would not involve judicial "duplication."

*K.W.* also involves issues of standing and mootness that were not at issue in *White*. In *White*, this Court held the minor plaintiff had standing to seek a declaratory judgment because Epic Games did not accept his disaffirmation when he raised it in a pre-suit letter or after the plaintiff sued. *See [White] v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1044 (N.D. Cal. 2020). In K.W.'s case, by contrast, K.W. provided no pre-suit notice, and Epic Games immediately accepted his disaffirmation—and refunded all monies anyone spent on K.W.'s behalf while he played *Fortnite* (even though neither K.W. nor Jillian Williams themselves ever purchased anything from Epic Games)[1]—as soon as K.W. provided Epic Games with his real name and *Fortnite* screen name. *See* Jacobson Decl. ¶¶ 6-7; *K.W.* Dkt. No. 18 at 10-12. Epic Games' provision of this refund mooted Plaintiffs' claims, and Epic Games' motion to dismiss *K.W.* addresses that mootness. Mootness was not a legal or factual issue presented in *White*.

The *K.W.* plaintiffs also have standing problems even apart from mootness because **neither K.W. nor his mother actually purchased anything from Epic Games**. Epic Games has

---

[1] As Epic Games has demonstrated in its motion to stay the *K.W.* case, the two transactions with Epic Games in K.W.'s *Fortnite* account used a credit card belonging to a third party. *See* K.W. Dkt. No. 18 at 11. Neither transaction involved K.W.'s "own money" or Ms. Williams' money.

demonstrated this lack of standing in its motion to dismiss, and consideration of Rule 12(b)(1) dismissal in *K.W.* (if the case is not stayed) will not involve any matter decided in *White*. This further demonstrates the unlikelihood of any "duplication of labor and expense or conflicting results" if *K.W.* keeps its current judicial assignment.

Epic Games also has moved to compel arbitration of Plaintiffs' claims in *K.W.* This Court considered arbitration in *White*, but *K.W.* involves starkly different facts. In *White*, this Court held that the minor plaintiff could disaffirm his acceptance of the EULA, and thereby avoid arbitrating, because his counsel notified the Court that he had ceased playing *Fortnite* and "has no intention of playing *Fortnite* in the future." *White*, 435 F. Supp. 3d at 1037. K.W. neither pleads in his complaint that he has ceased playing *Fortnite* nor affirmed this by other means. He cannot enjoy the benefits of playing while purportedly disaffirming only some of a contractual relationship with Epic Games.

Further, even if it is true that the minor plaintiff in *K.W.* accepted the EULA on some or all of the **eight** occasions when the EULA was accepted in his account, despite the EULA prominently requiring an adult to do so, Epic Games has taken additional steps to ensure that an adult accepts the EULA in connection with any **purchases**. Pursuant to Epic Games' new payment policies, an adult who enters a payment method for a purchase must separately accept the EULA, even if it was a minor who (improperly) accepted it when opening a player account. Thus, the person who entered a method of payment into Epic Games' system to make a purchase for K.W. had to confirm that s/he was an adult and authorized user of the payment method, and had to agree independently to the EULA. *See* Jacobson Decl. ¶ 5. That adult cannot disaffirm the EULA as a means of avoiding arbitration. Notably, in *K.W.*, the minor's mother (Jillian Williams) is pursuing her own claims, such as the asserted right to declare void alleged transactions made in her accounts. These were not the facts or claims at issue in *White*, and Ms. Williams cannot disaffirm the EULA.

If the *K.W.* case is not stayed, and Epic Games' motions to dismiss or compel arbitration of the claims asserted in *K.W.* proceed to decision, the parties may argue that decisions made in *White* should inform the outcome. They may make that argument about other non-controlling precedent, too, including *I.B.* and *T.K.* The Court considering the motion, however, will have to consider the

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM IN RESPONSE TO MOTION TO
RELATE CASES PURSUANT TO L.R. 3-12      - 3 -      CASE NO. 4:19-CV-3629-YGR

1  specific circumstances of these Plaintiffs' transactions in ruling on the motions. Whether or not
2  the decisions in *White* may be citable as persuasive authority, it is not true that an "unduly
3  burdensome duplication of labor" necessarily would result from a different jurist presiding over
4  *K.W.*, as Local Rule 3-12(a) contemplates. Any "conflicting result" would stem from the entirely
5  proper reason that the facts and parties are not the same as those in *White*.

6  **The claims in *K.W.* would be extinguished by a class action settlement that has**
7  **preliminary approval and the case should be stayed during those settlement proceedings.**
8  Another reason why the *K.W.* case should not involve duplication of judicial effort, or any judicial
9  effort at all, is that the case should be stayed and may soon be resolved by a nationwide class action
10 settlement in *Zanca, et al. v. Epic Games, Inc.*, No. 21-CVS-534 (N.C. Super. Ct., Wake County).
11 A fully-briefed motion to stay already is pending in *K.W.* The order granting preliminary approval
12 to the *Zanca* settlement, dated February 25, 2021, is attached as Exhibit A to the Jacobson
13 Declaration. Wake County is where Epic Games is headquartered and the venue where the *Fortnite*
14 End User License Agreement ("EULA") requires non-arbitrable disputes between *Fortnite* players
15 and Epic Games to be heard. The settlement, negotiated with the assistance of a highly experienced
16 JAMS mediator—the Hon. Wayne Andersen, former U.S. District Judge for the Northern District
17 of Illinois—includes all those who purchased *Fortnite* in-game virtual currency and other items.
18 Jacobson Decl. ¶ 2 & Ex. A at 2.[2] It addresses, and provides substantial benefits for, minors who
19 purchased in-game items with their own money and claim a right of contractual disaffirmation. *See*
20 *id.* ¶ 2. The settlement class includes the *K.W.* plaintiffs and all those they seek to represent, and
21 provides relief for all the claims they assert. *See id.* ¶ 2.

22    It is routine for courts considering claims subject to a class action settlement to stay those
23 cases after a settlement has received preliminary approval. Epic Games' reply in support of its stay
24 motion notes Plaintiffs' failure to cite a single instance in which a court has *declined* to stay a case
25 that while another court considers the fairness of a settlement that would resolve all the claims

---

[2] The settlement website is www.epiclootboxsettlement.com. *See* Jacobson Decl. ¶ 4. The settlement agreement and notice to class members, along with other case documents, are posted on the website. *See id.* ¶ 3. Direct notice of the settlement has been sent by email to over 27 million settlement class members, and Epic Games already has deposited settlement benefits into the accounts of over 6.5 million *Fortnite* players. *See id.* ¶ 4.

1  pending in the parallel matter. The *K.W.* preliminary approval order, moreover, enjoins members
2  of the Settlement Class from litigating "in any court or tribunal . . . any of the matters . . . that are
3  to be released upon Final Approval." Jacobson Decl. Ex. A ¶ 29. Such injunctions also are routine,
4  including in this District, as Epic Games has explained in its stay motion. If the *K.W.* plaintiffs do
5  not agree with the terms of the *Zanca* settlement, they have the same options as all other class
6  members: They may opt out of the settlement class or object to the proposed settlement. If they do
7  neither, or if their objections are overruled, their claims will be extinguished by the *Zanca*
8  settlement. What they cannot do is try to attack the settlement in this Court. This case should be
9  stayed while the *Zanca* court weighs the settlement's fairness.

10  This new *K.W.* case is a blatant, knowing, and wholly improper attempt to interfere with
11  that orderly approval process, all as part of a fee fight between plaintiffs' counsel. The *K.W.*
12  plaintiffs are represented by former partners of Deepali Brahmbhatt, who had been lead counsel in
13  *White* and now is one of the attorneys representing the settlement class in North Carolina. These
14  lawyers served an "attorneys' lien" for fees allegedly owed to them from *White* just days before the
15  *Zanca* parties, including Ms. Brahmbhatt, signed the settlement agreement. They filed *K.W.* **after**
16  they learned of *Zanca* and the settlement, rushing to court so quickly that they did not vet their
17  clients' standing to sue, as explained above. These attorneys are setting themselves up as potential
18  objectors to the *Zanca* settlement to advantage themselves in their fee fight with Ms. Brahmbhatt
19  and her new firm, but this Court should not involve itself in that fight. The fight should play out,
20  if at all, in *Zanca*. If the Court wishes to hear argument about this intra-counsel dispute, Ms.
21  Brahmbhatt has asked Epic Games to advise the Court that she stands ready to address these issues.

22  **CONCLUSION**

23  For these reasons, Epic Games respectfully submits that *White* and the instant case should
24  not be considered related pursuant to Local Rule 3-12.
25  //
26  //
27  //
28  //

1  Dated: March 15, 2021

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ Jeffrey S. Jacobson*
    Jeffrey S. Jacobson (*pro hac vice*)
    Matthew J. Adler

Attorneys for Defendant
EPIC GAMES, INC.